**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PARTY CITY HOLDCO INC., *et al.*,[1] | ) | Case No. 24-90621 (ARP) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | (Emergency Hearing Requested) |

**DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE PREPETITION INSURANCE COVERAGE AND SATISFY PREPETITION OBLIGATIONS RELATED THERETO, (B) RENEW, AMEND, SUPPLEMENT, EXTEND, OR PURCHASE INSURANCE POLICIES, AND (C) MAINTAIN THEIR SURETY BOND PROGRAM, AND (II) GRANTING RELATED RELIEF**

**Emergency relief has been requested. Relief is requested not later than 10:00 a.m. (prevailing Central Time) on December 23, 2024.**

**If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the court may treat the pleading as unopposed and grant the relief requested.**

**A hearing will be conducted on this matter on December 23, 2024, at 10:00 a.m. (prevailing Central Time) in Courtroom 400, 4th Floor, 515 Rusk Avenue, Houston, TX 77002.**

**Participation at the hearing will only be permitted by an audio and video connection.**

**Audio communication will be by use of the Court's dial-in facility. You may access the facility at 832-917-1510. Once connected, you will be asked to enter the conference room number. Judge Perez's conference room number is 282694. Video communication will be by use of the GoTo platform. Connect via the free GoTo application or click the link on Judge Perez's home page. The meeting code is "JudgePerez". Click the settings icon in the upper right corner and enter your name under the personal information setting.**

**Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "electronic appearance" link on Judge Perez's home page. Select the case name, complete the required fields, and click "submit" to complete your appearance.**

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Party City Holdco Inc. (9758); Amscan Inc. (1359); Am-Source, LLC (8427); Party City Corporation (3692); Party City Holdings Inc. (3029); PC Intermediate Holdings, Inc. (1229); and Trisar, Inc. (0659). The location of the Debtors' service address for purposes of these chapter 11 cases is: 100 Tice Boulevard, Woodcliff Lake, New Jersey 07677.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state as follows in support of this motion:

## Relief Requested

1. The Debtors seek entry of an order, substantially in the form attached hereto (the "Order"), (a) authorizing, but not directing, the Debtors to (i) continue prepetition insurance coverage and satisfy prepetition obligations related thereto in the ordinary course of business,[2] (ii) renew, amend, supplement, extend, or purchase insurance coverage in the ordinary course of business on a postpetition basis, and (iii) continue their Surety Bond Program (as defined herein) on an uninterrupted basis and satisfy prepetition obligations related thereto in the ordinary course of business, and (b) granting related relief.

## Jurisdiction and Venue

2. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas*, dated May 24, 2012 (the "Amended Standing Order"). This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). The Debtors confirm their consent to the entry of a final order by the Court.

3. Venue is proper pursuant to 28 U.S.C. § 1408.

4. The statutory bases for the relief requested herein are sections 105(a) and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), rules 4002-

[2] Nothing herein shall be deemed an admission of any payments due or past due under or related to any of the Insurance Policies (as defined herein).

1 and 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules"), and the *Procedures for Complex Cases in the Southern District of Texas* (the "Complex Case Procedures").

## **Background**

5. On December 21, 2024 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors have filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b) substantially contemporaneously herewith. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated.

6. A detailed description of the Debtors and their businesses, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of Deborah Reiger-Paganis, Chief Restructuring Officer of Party City Holdco Inc., in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously herewith and incorporated herein by reference.[3]

## **Insurance Policies and Related Payment Obligations**

7. In the ordinary course of business, the Debtors maintain an insurance program (the "Insurance Program") consisting of approximately 55 insurance policies with various third-party insurance carriers (collectively, the "Insurance Carriers"). These policies provide coverage for, among other things, losses related to property damage, operation of vehicles, crime, business

[3] Capitalized terms used but not defined in this motion have the meanings ascribed to them in the First Day Declaration.

interruption, cyber liability, directors' and officers' liability, flooding, miscellaneous professional liability, errors and omissions, employee benefits liability, workers' compensation, and various other property-related and general liabilities (collectively, the "Insurance Policies"). Certain of the Insurance Policies include several layers of excess liability coverage. A schedule of the Insurance Policies is attached as **Exhibit A** to the Order.[4]

8. Continuation and renewal of the Insurance Policies and entry into new insurance policies is essential to preserving the value of the Debtors' businesses, properties, and assets. Moreover, coverage provided under the Insurance Policies is required by regulations, laws, and contracts that govern the Debtors' commercial activities, including the Bankruptcy Code and the operating guidelines issued by the United States Trustee for Region 7 (the "U.S. Trustee Guidelines"). Accordingly, the Debtors seek authorization to maintain the existing Insurance Policies, pay any prepetition obligations related thereto, and renew, supplement, or enter into new Insurance Policies in the ordinary course of business on a postpetition basis consistent with historical practice.[5]

[4] The descriptions of the Insurance Policies set forth in this motion constitute a summary only. The actual terms of the Insurance Policies and related agreements will govern in the event of any inconsistency with the descriptions in this motion. The Debtors request authority to honor and renew Insurance Policies regardless of whether the Debtors have inadvertently failed to include a particular Insurance Policy on **Exhibit A**, and any such omitted Insurance Policy is hereby included in the defined term "Insurance Policies" as used herein and in the Order. Moreover, and in addition to the Insurance Policies listed on **Exhibit A**, the Debtors maintain numerous insurance policies with respect to, among other things, employee health, disability, and life insurance benefits. These programs are described, and relief is requested with respect to such programs, in the *Debtors' Emergency Motion for Entry of an Order (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Employee Benefits Programs, and (II) Granting Related Relief* (the "Wages Motion"), filed contemporaneously herewith.

[5] For avoidance of doubt, the Debtors are not seeking authorization to satisfy any non-Debtor obligations related to the Insurance Policies.

## I. Premium Payments

9. In the ordinary course of business, the Debtors pay all premium obligations associated with their Insurance Policies (the "Premiums"). Most Insurance Policies have one-year policy periods and renew annually in either September or December. For certain workers' compensation, general liability, and automobile Insurance Policies, the Debtors pay Premiums directly to the Insurance Carrier through monthly installment payments over the course of the applicable policy period. For the remainder of the Insurance Policies, the Debtors prepay the entire amount of their annual Premiums through one of their insurance brokers at the beginning of the applicable policy period. The Debtors paid approximately $2.9 million in Premiums for the 2024–25 renewal cycle.

10. The Debtors seek authority to pay up to $8.3 million in connection with Premiums, including any administrative fees related to the Insurance Policies, and to continue to honor their obligations under the Insurance Policies as they come due in the ordinary course of business on a postpetition basis.

## II. Deductibles

11. Pursuant to the Insurance Policies, the Debtors may be required to pay various deductibles or retention amounts (collectively, the "Deductibles"), depending on the type of claim and the Insurance Policy involved. Under certain policies, the Insurance Carriers may pay claimants and then invoice the Debtors or draw funds directly from the Debtors' bank accounts for reimbursement for claims paid with any Deductible. In such situations, the Insurance Carriers may have prepetition claims against the Debtors. If the Debtors fail to make Deductibles payments, the Debtors could jeopardize the coverage provided by an Insurance Policy, have certain letters of credit drawn, and/or be in violation of applicable state law.

12. As of the Petition Date, the Debtors do not believe that there are any material prepetition obligations owed to Insurance Carriers relating to Deductibles, but, out of an abundance of caution, the Debtors seek authority to satisfy any outstanding prepetition Deductibles owed in connection with the Insurance Policies, and to continue to honor their obligations under the Insurance Policies as they come due in the ordinary course of business on a postpetition basis.

### III. Insurance Policy Audits

13. Certain of the Debtors' Insurance Policies under which the Debtors receive workers' compensation, general liability, and automobile coverage are subject to regular audits (the "Insurance Policy Audits"), which may result in an adjustment of the premiums owed on account thereof. As of the Petition Date, the Debtors believe they do not owe any additional amounts on account of the Insurance Policy Audits. Out of an abundance of caution, however, the Debtors seek the authority to honor any amounts owed on account of any Insurance Policy Audits, including prepetition amounts, in the ordinary course of business.

## Surety Bonds and Related Relief

14. In the ordinary course of business, certain third parties require the Debtors to maintain various surety bonds to secure the Debtors' payment and/or performance of obligations (the "Surety Bond Program"). A schedule of the surety bonds maintained by the Debtors (the "Surety Bonds") is attached as **Exhibit B** to the Order.

15. Most, if not all, of the obligations secured by the Surety Bond Program relate to customs regulations and applicable import duties, taxes, fines, and penalties. Specifically, the Debtors maintain bond(s) to assure United States Customs and Border Protection ("CBP") of the Debtors' ability to pay any applicable duties, penalties, or obligations, including any anti-dumping duties that may be incurred with respect to imports. The Debtors' customs bonds (the "Customs Import Bonds") provide up to $2.2 million in coverage over a 12-month period for all of the

Debtors' imports into the United States and guarantee the payment of import duties and taxes to CBP. The Debtors also maintain a duty drawback bond (the "Duty Drawback Bond"), which provides up to $400,000 in coverage for potential liability arising from the occurrence of errors or omissions in any drawback claims the Debtors make to CBP with respect to imported goods that are subsequently exported from the United States or destroyed.

16. The American Alternative Insurance Corporation is the issuer of the Debtors' current outstanding Surety Bonds. As of the Petition Date, the Debtors maintain approximately four Surety Bonds in an aggregate bond amount of approximately $2.6 million. The Debtors' outstanding Surety Bonds were obtained through Roanoke Insurance Group (the "Surety Broker").

17. In the ordinary course of business, the Debtors make premium payments (the "Surety Premiums") on account of the Surety Bonds on or about the annual renewal date of each Surety Bond. Surety Premiums are paid directly to the Surety Broker. The Debtors pay approximately $16,000 per year in Surety Premiums.

18. The Debtors must be able to provide financial assurance to third parties to continue their operations during the chapter 11 process. This, in turn, requires the Debtors to maintain the existing Surety Bond Program, including paying the Surety Premiums and providing collateral, renewing, or potentially acquiring additional bonding capacity as needed in the ordinary course of business, and executing other agreements, such as letters of credit, as needed, in connection with the Surety Bond Program. Failing to provide, maintain, or timely replace their Surety Bonds may prevent the Debtors from complying with their obligations under federal law, and consequently prevent them from undertaking essential functions related to their operations.

19. As of the Petition Date, the Debtors do not believe that they owe any amounts on account of the Surety Bonds. Out of an abundance of caution, however, the Debtors seek authority

to honor any prepetition amounts owed to the Sureties, and to obtain any new letters of credit as may be requested in the ordinary course of business by the Sureties, to ensure the uninterrupted continuation of their Surety Bond Program.

## Basis for Relief

### I. Maintaining Insurance Coverage Is Required by the Bankruptcy Code, U.S. Trustee Guidelines, and Other Applicable Law

20. In many instances, the coverage provided under the Insurance Policies is required by the regulations, laws, and contracts that govern the Debtors' commercial activities. For example, section 1112(b)(4)(C) of the Bankruptcy Code provides that "failure to maintain appropriate insurance that poses a risk to the estate or to the public" is "cause" for mandatory conversion or dismissal of a chapter 11 case. 11 U.S.C. § 1112(b)(4)(C). The U.S. Trustee Guidelines provide that, unless the United States Trustee otherwise directs or a debtor obtains a waiver from the Court, a debtor must maintain casualty insurance, workers' compensation insurance, and general liability insurance along with any other insurance customary in the debtor's business. U.S. Trustee Guidelines § III(B). In addition, Bankruptcy Local Rule 4002-1 requires debtors to maintain insurance coverage "to prevent the depletion of assets of the business during the proceedings."

21. The Debtors' Insurance Program provides comprehensive protection for the Debtors' businesses, properties, and assets. Accordingly, the Debtors believe the relief requested is necessary to ensure that the Debtors comply with their obligations under the Bankruptcy Code, U.S. Trustee Guidelines, the Bankruptcy Local Rules, and other applicable law.

### II. Payments to Maintain the Insurance Program and the Surety Bond Program Are Warranted and Should Be Authorized

22. The Debtors believe that payments required to maintain the Insurance Program and the Surety Bond Program fall within the ordinary course of business and are therefore authorized

pursuant to section 363(c)(1) of the Bankruptcy Code. To the extent any such actions do not constitute ordinary course transactions, however, the Debtors request that the Court authorize the Debtors to continue payments to maintain the Insurance Program and the Surety Bond Program.

23. Section 363(b)(1) of the Bankruptcy Code empowers the Court to allow a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(1). Courts in the Fifth Circuit have granted a debtor's request to use property of the estate outside of the ordinary course of business pursuant to section 363(b) of the Bankruptcy Code upon a finding that such use is supported by sound business reasons. *See, e.g.*, *Inst'l Creditors of Cont'l Air Lines, Inc.* v. *Cont'l Air Lines, Inc.* (*In re Cont'l Air Lines, Inc.*), 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business."). Courts emphasize that the business judgment rule is not an onerous standard and that it "is flexible and encourages discretion." *In re ASARCO, L.L.C.*, 650 F.3d 593, 601 (5th Cir. 2011). As long as a transaction "appears to enhance a debtor's estate, court approval of a debtor-in-possession's decision to [enter into the transaction] should only be withheld if the debtor's judgment is clearly erroneous, too speculative, or contrary to the Bankruptcy Code." *Richmond Leasing Co.* v. *Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985) (citation and internal quotation marks omitted).

24. The Debtors submit that the relief requested in this motion represents a sound exercise of the Debtors' business judgment. Maintaining coverage under the Insurance Program is essential to the Debtors' operations as the Debtors could be exposed to significant liability if such coverage were allowed to lapse or terminate prior to the Debtors' winddown. Such exposure could be detrimental to the success of these chapter 11 cases. Moreover, failure to timely pay

insurance premiums could expose the Debtors to potential penalties and other costs associated with reestablishing lapsed policies or obtaining new insurance coverage.

25. Similarly, to continue their operations during these chapter 11 cases, the Debtors must be able to provide financial assurances to regulatory agencies that oversee the Debtors' businesses. Failing to provide, maintain, or timely replace their Surety Bonds would prevent the Debtors from complying with federal law and consequently prevent them from undertaking essential functions related to their operations, such as shipping and receiving goods. Based on the Debtors' current circumstances, it is not likely that the Debtors will be able to renew, or obtain replacement of, existing bonds on terms more favorable than those offered by the Sureties. Moreover, the process of establishing a new Surety Bond Program would be burdensome to the Debtors and wasteful considering the goals for these chapter 11 cases, and it is doubtful that the Debtors could replace all of the Surety Bonds in time to avoid defaults or other consequences of the applicable obligations.

## III. Section 105 of the Bankruptcy Code and the Doctrine of Necessity Support Payment of Any Prepetition Obligations With Respect to the Insurance Program and the Surety Bond Program

26. To the extent the Debtors have any prepetition obligations related to the Insurance Program or the Surety Bond Program, payment of such obligations should be authorized pursuant to section 105(a) of the Bankruptcy Code and under the "doctrine of necessity." Section 105(a) of the Bankruptcy Code authorizes the Court "to issue any order . . . necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a). The doctrine of necessity is a well-settled doctrine that permits a bankruptcy court to authorize the payment of certain prepetition claims prior to the completion of the reorganization process where the payment of such claims is necessary to the reorganization. *See In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) (recognizing the "doctrine of necessity"); *see also In re CEI Roofing, Inc.*, 315 B.R. 50, 56,

60–61 (Bankr. N.D. Tex. 2004) (holding that payment of certain prepetition claims under the doctrine of necessity is "based on both common sense and the express provisions of the Bankruptcy Code"); *In re Mirant Corp.*, 296 B.R. 427, 429 (Bankr. N.D. Tex. 2004) (authorizing the debtors to pay certain prepetition claims because "the court d[id] not wish Debtors' businesses seriously damaged"); *In re Equalnet Commc'ns Corp.*, 258 B.R. 368, 369 (Bankr. S.D. Tex. 2000).

27. For the reasons stated herein, and in light of the risks to the Debtors' operations and the critical need for the Debtors to protect their assets through maintenance of the Insurance Program and the Surety Bond Program, payment of any prepetition obligations related to the Insurance Program and the Surety Bond Program is proper and justified under section 105(a) of the Bankruptcy Code as necessary to the Debtors' achievement of their chapter 11 objectives.

**The Court Should Authorize the Debtors' Financial Institutions to Honor and Process the Debtors' Payments**

28. The Debtors have sufficient funds to pay the amounts described herein in the ordinary course of business by virtue of expected cash flows from ongoing business operations, and anticipated access to cash collateral. Additionally, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to an authorized payment in respect of the relief requested herein. Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently. Therefore, the Debtors respectfully request that the Court authorize and direct all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this motion.

**Emergency Consideration**

29. Pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first 21 days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm," and Bankruptcy Local Rule 9013-1(i), the Debtors respectfully request emergency consideration of this motion. An immediate and orderly transition into chapter 11 is critical to the viability of the Debtors' operations. Failure to obtain the requested relief during the first 21 days of these chapter 11 cases would imperil the Debtors' restructuring. The Debtors have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and, therefore, respectfully request that the Court approve the relief requested in this motion on an emergency basis.

**Waiver of Bankruptcy Rules 6004(a) and 6004(h)**

30. The Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

**Reservation of Rights**

31. Nothing contained herein is intended to be or should be construed as: (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this motion or any order granting the relief requested by this motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection

of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

**Notice**

32. The Debtors will provide notice of this motion to the following parties or their respective counsel: (a) the U.S. Trustee; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the ABL Agent and counsel thereto; (d) counsel to the Ad Hoc Noteholder Group; (e) the Second Lien Notes Trustee and counsel thereto; (f) the United States Attorney's Office for the Southern District of Texas; (g) the Internal Revenue Service; (h) the United States Securities and Exchange Commission; (i) the state attorneys general for states in which the Debtors conduct business; (j) other regulatory agencies having a regulatory or statutory interest in these cases; (k) the Insurance Carriers; (l) the Sureties; (m) the Surety Broker; and (n) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the Debtors respectfully request that the Court enter an order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

December 22, 2024

Respectfully submitted,

By: /s/ John F. Higgins

**PORTER HEDGES LLP**
John F. Higgins (TX Bar No. 09597500)
Aaron J. Power (TX Bar No. 24058058)
M. Shane Johnson (TX Bar No. 24083263)
Jordan T. Stevens (TX Bar No. 24106467)
Grecia V. Sarda (TX Bar No. 24132092)
1000 Main St., 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Facsimile: (713) 226-6248
jhiggins@porterhedges.com
apower@porterhedges.com
sjohnson@porterhedges.com
jstevens@porterhedges.com
gsarda@porterhedges.com

- and -

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Kenneth S. Ziman (*pro hac vice pending*)
Christopher Hopkins (*pro hac vice pending*)
Stephanie P. Lascano (*pro hac vice pending*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
kziman@paulweiss.com
chopkins@paulweiss.com
slascano@paulweiss.com

*Proposed Co-Counsel to the Debtors and the Debtors in Possession*

**Certificate of Accuracy**

I certify that the facts and circumstances described in the above pleading giving rise to the emergency request for relief are true and correct to the best of my knowledge, information, and belief. This statement is made pursuant to Bankruptcy Local Rule 9013-1(i).

*/s/ Deborah Reiger-Paganis*
Deborah Reiger-Paganis

**Certificate of Service**

I certify that on December 22, 2024, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ John F. Higgins*
John F. Higgins