IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| PARTY CITY HOLDCO INC., *et al.*,[1] | ) | Case No. 24-90621 (ARP) |
| Debtors. | ) | (Jointly Administered) |
| | ) | **Re: Docket No. ___** |

**ORDER (I) APPROVING (A) PROCEDURES FOR THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, (B) PROCEDURES FOR THE DE MINIMIS SALE OF CERTAIN OF THE DEBTORS' ASSETS AND (C) ASSUMPTION AND ASSIGNMENT PROCEDURES, (II) APPROVING (A)THE SALE OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, (B) THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"), among other things, (a) approving the De Minimis Asset Sale Procedures, (b) establishing procedures authorizing the Debtors to sell or transfer all, substantially all, or any portion of their Assets, by Auction pursuant to the Bidding Procedures attached as Exhibit 1, (c) authorizing the Debtors to select Stalking Horse Bidders, enter into Stalking Horse Agreements, and provide appropriate and customary bid protections (including a Break-Up Fee), in connection therewith, (d) authorizing the Assumption and Assignment Procedures, (e) authorizing the Debtors to use certain forms of notice, substantially in the forms attached hereto as Exhibit 2, Exhibit 3, and Exhibit 4, and (f) granting related relief, all

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Party City Holdco Inc. (9758); Amscan Inc. (1359); Am-Source, LLC (8427); Party City Corporation (3692); Party City Holdings Inc. (3029); PC Intermediate Holdings, Inc. (1229); and Trisar, Inc. (0659). The location of the Debtors' service address for purposes of these chapter 11 cases is: 100 Tice Boulevard, Woodcliff Lake, New Jersey 07677.

[2] Capitalized terms used but not otherwise defined herein have the meanings given to them in the Motion and/or the Bidding Procedures (as defined herein).

as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Amended Standing Order; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. § 1408; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at any hearing before this Court; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

**I. De Minimis Asset Sale Procedures**

1. The De Minimis Asset Sale Procedures are hereby approved in their entirety, and the De Minimis Asset Sale Procedures shall govern the submission, receipt, and analysis of all offers related to any Sale in connection with the De Minimis Assets. Any party desiring to submit an offer for the De Minimis Assets shall comply with the De Minimis Asset Sale Procedures and this Order. The Debtors are authorized to take any and all actions necessary to implement the De Minimis Asset Sale Procedures.

2. The Debtors shall provide a written report or reports, within 30 days after each calendar quarter (to the extent De Minimis Asset Sales were consummated for the relevant quarter), concerning all De Minimis Asset Sales, if any (including the names of the purchasing

parties and the types of amounts of the sales), to the De Minimis Notice Parties and those parties requesting notice under Bankruptcy Rule 2002.

3. The Debtors may withdraw from any De Minimis Sale prior to the consummation thereof, in their sole discretion.

4. Notwithstanding anything to the contrary set forth in a sale or transfer agreement, all purchasers of the De Minimis Assets are deemed to understand and agree that the Debtors are conveying their rights to the applicable De Minimis Assets as is, without warranties or representations of any kind, whether express or implied.

**II. Bidding Procedures**

5. The Bidding Procedures are incorporated herein and are hereby approved in their entirety, and the Bidding Procedures shall govern the submission, receipt, and analysis of all bids related to any Auction in connection with the Assets. Any party desiring to submit a Bid shall comply with the Bidding Procedures and this Order. The Debtors are authorized to take any and all actions necessary to implement the Bidding Procedures.

6. If the Debtors do not receive a Qualified Bid as to a particular Asset by the Bid Deadline, at the Debtors' discretion, the Auction may be cancelled or adjourned as to such Asset. If the Debtors receive one or more Qualified Bids, the Debtors will file a Notice of Qualified Bids and may conduct the Auction in accordance with the Bidding Procedures.

7. At the Auction, each Qualified Bidder will be entitled, but not obligated, to submit overbids and will be entitled in any such overbids to credit bid all or a portion of the value of the secured portion of its claims, if any, within the meaning of section 363(k) of the Bankruptcy Code. With respect to the applicable proposed Cure Costs (if any), each non-Debtor counterparty to a Selected Contract (each, a "Selected Contract Counterparty") proposed to be sold or transferred at an Auction may credit bid all or a portion of the applicable Cure Cost proposed by such Selected

Contract Counterparty. If such Selected Contract Counterparty is the Successful Bidder on the Selected Contract, and it is later determined by this Court or agreement by and among the Debtors and Selected Contract Counterparty that the actual cure amount is a lesser amount, then the Selected Contract Counterparty shall pay the difference between the actual cure amount and the Cure Cost in cash prior to the Sale Closing Deadline (as defined herein). For the avoidance of doubt, any Selected Contract Counterparty shall be deemed a Qualified Bidder.

8. At or following an Auction, the Debtors may, in consultation with the advisors to the Consultation Parties (as defined in the Bidding Procedures): (a) select, in its business judgment, pursuant to the Bidding Procedures, (i) the highest or otherwise best Qualified Bid as the Successful Bid and (ii) the second highest or otherwise second-best Qualified Bid as the Backup Bid; and (b) reject any Bid (regardless of whether such Bid is a Qualified Bid) that, in such Debtor's business judgment, is (i) inadequate, insufficient, or not the highest or best Bid, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, or the Bidding Procedures, or (iii) contrary to, or otherwise not in the best interests of the Debtors' estates, affected stakeholders, or other parties in interest, in each case subject to and in accordance with the Bidding Procedures. For the avoidance of doubt, no Debtor is required to name a Successful Bidder for any given Asset or group thereof and may elect to not sell such Asset(s) to the highest or otherwise best bidder.

9. In the event the Successful Bidder does not close the sale of any given Asset, the Debtors shall file a supplemental notice as soon as reasonably practicable seeking to approve the sale to the Backup Bidder on expedited notice and request a hearing as soon as reasonably practicable for the parties and the Court, which hearing shall be on no less than seven-days' notice.

The Backup Bidder as identified by the Notice of Successful Bidders shall not be approved at the Sale Hearing.

**A. Notice of Sale, Auction, and Sale Hearing**

10. The Debtors may utilize the Bidding Procedures for future Auctions by filing and serving on the Consultation Parties (as defined in the Bidding Procedures) and, to the extent the Assets for sale include a Selected Contract, each applicable Selected Contract Counterparty (and its counsel, if known) a notice of auction and hearing, substantially in the form attached hereto as Exhibit 2 (each, an "Auction and Hearing Notice"), that contains, as applicable under the Bidding Procedures: (a) the relevant dates and times, including the dates by which (i) all Bids must be actually received by the Debtors (the "Bid Deadline"), (ii) the Debtors will file with the Court a Notice of Qualified Bids, (iii) the Auction (if any) will occur, (iv) a party must file and serve a written Objection, if any, to the sale, transfer, proposed assumption and assignment (including the Debtors' proposed related cure amounts), and/or to the Successful Bidder's proposed form of adequate assurance of future performance (the latest time a party may properly submit an Objection, the "Objection Deadline"), (v) the Court will hear the applicable proposed sale (the "Sale Hearing"), and (vi) the Debtors and Successful Bidder anticipate consummating the transfer or sale under the terms of the applicable agreement (the "Sale Closing Deadline"); (b) a list of Assets to be sold (the "Proposed Asset List"); and (c) a copy of the applicable procedures approved herein. The Debtors, in consultation with the advisors to the Consultation Parties, shall have the right to amend or rescind the Proposed Asset List at any time.

11. At least two business days prior to filing an Auction and Hearing Notice (the "Review Period"), the Debtors will provide a Proposed Asset List to counsel to the Consultation Parties. With respect to an Auction, parties will have the right to object to the proposed Auction (or related dates) with a written objection (such objection that meets the

requirements herein, an "Auction Objection") that is (a) filed with the Court and (b) served on the Objection Notice Parties so as to actually be received by no later than 5:00 p.m. (prevailing Central Time) 10 days after the Debtors file the Auction and Hearing Notice (the "Auction Objection Deadline"). If no Auction Objections are filed and served as set forth herein, the Auction (and related dates) will be deemed authorized and approved without any further order of or notice to the Court and the Debtors are authorized to proceed with the Auction and all applicable related dates. If the Debtors receive any Auction Objections that the parties cannot consensually resolve, the Debtors will set a hearing with the Court to approve the Auction as soon as reasonably practicable; *provided* that the Debtors may continue to conduct the Auction subject to the Court's later approval.

12. If, following the Auction Objection Deadline, there are any changes to the dates included in the Auction and Hearing Notice, or as soon as reasonably practicable following the Auction Objection Deadline, the Debtors will file and serve on the Objection Notice Parties and, if the Assets for sale at such Auction include a Selected Contract, each applicable Selected Contract Counterparty (and its counsel, if known), an amended Auction and Hearing Notice. The Auction and Hearing Notice will indicate that copies of the Order and any future sale documents, if applicable, can be obtained on the website of the Debtors' claims and noticing agent, Kroll Restructuring Administration LLC, https://cases.ra.kroll.com/ PCHI2024/ (the "Case Website").

13. The Debtors, in consultation with the advisors to the Consultation Parties and with the consent (not to be unreasonably withheld) of the Directing Cash Collateral Agent, shall be permitted to choose a Stalking Horse Bidder.

14. The Debtors shall file and serve by first-class mail (and email, where available) any Auction and Hearing Notice at least 21 days prior to the proposed Sale Hearing. Such notice is deemed sufficient and proper notice with respect to known interested parties.

15. After the conclusion of the Auction, the Debtors will file on the docket and serve on the Objection Notice Parties and any applicable Selected Contract Counterparties a notice identifying the Successful Bidder(s) and Backup Bidder(s) (the "Notice of Successful Bidders"), identifying the applicable Successful Bidder(s), Asset(s), the key terms of the agreement, any Breakup Fees proposed to be paid, and the Assumption and Assignment Information, substantially in the form attached to this Order as Exhibit 3.

16. The Debtors will file on the docket and serve on the Objection Notice Parties a notice identifying a Stalking Horse Bidder and associated Breakup Fee, if any, at least seven days prior to an Auction; *provided* that, for the avoidance of doubt, the amount of the Breakup Fee shall not exceed 3.0% of any proposed purchase price from the Stalking Horse Bidder; *provided*, *further* that the Debtors may only select one Stalking Horse Bidder per Asset or per group of Assets. If no Objection to a proposed Breakup Fee for a Stalking Horse Bidder is filed prior to the applicable Auction, such Breakup Fee shall be deemed approved. If an Objection to a proposed Breakup Fee is timely filed and not withdrawn or otherwise resolved, the Debtors will seek an expedited hearing on such Objection with the Court prior to the date of the applicable Auction.

**B. The Assumption and Assignment Procedures**

17. The assumption and assignment procedures below (the "Assumption and Assignment Procedures") are hereby approved and shall be the procedures by which the Debtors will notify Selected Contract Counterparties to the Selected Contract of Cure Costs.

a. **Service of Notice of Successful Bidders**: The Debtors will cause the Notice of Successful Bidders to be served (i) by overnight delivery or email upon the Selected Contract Counterparties affected thereby at the address

set forth in the notice provision of the applicable Lease (and their counsel by email, if known) and (ii) by first class mail or email upon the Objection Notice Parties.

b. **Service of Notice of Successful Bidders**: The Debtors will provide by overnight delivery or email to the applicable Selected Contract Counterparties (and their counsel by email, if known) within 24 hours of an Auction for the sale of a Selected Contract evidence that the Assignee has the ability to comply with the requirements of adequate assurance of future performance required under sections 365(b)(1) or 365(b)(3), as applicable, including the Adequate Assurance Package (as defined in the Bidding Procedures) on a confidential basis for all nonpublic information. For the avoidance of doubt, the Selected Contract Counterparties and their counsel may store the confidential information in its files, provide it on a confidential basis to their lenders and agents thereto to the extent deemed necessary, and a Selected Contract Counterparties may include confidential information in an Objection to the extent deemed necessary, if applicable, *provided* that such use must be in good faith and the applicable Selected Contract Counterparty shall provide notice to the Assignee's counsel and the Debtors' counsel if such Selected Contract Counterparty intends to use any confidential financial information in an Objection to the extent reasonably practicable.

c. **Notice of Objection**: Parties objecting to a proposed assumption and assignment, a Successful Bidder's proposed form of adequate assurance of future performance, and/or Cure Costs must file an Objection with the Court by the applicable Objection Deadline and serve such Objection on the Objection Notice Parties.

d. **Non-Withdrawn Objection**: If an Objection to the Cure Costs is timely filed and not withdrawn or resolved by the Sale Hearing, such cure Objection will not be heard at the Sale Hearing but will be heard at a subsequent hearing later set by the Court. Notwithstanding, the Debtors shall proceed with the assumption and assignment of a particular Lease at the Sale Hearing, and the pendency of a dispute relating to cure amounts shall not prevent or delay the assumption and assignment of a Selected Contract. Any dispute regarding the cure amounts will either be resolved consensually, if possible or, if the parties are unable to resolve, at a later date as set by the Court pursuant to this paragraph. To the extent an Objection relates solely to a disputed cure amount, the Court may approve the assumption and assignment subject to (a) the Selected Contract Counterparty's right to be heard at a later hearing date on the cure and (b) the below requirements regarding payment of the cure amount. The Debtors shall file and serve a notice for a hearing for the Court to consider the unresolved cure Objection(s) on a date to be agreed by the Debtors and the objecting parties, subject to the Court's schedule. Upon the effective date of the assumption and assignment of the Selected Contract, the

Successful Bidder shall pay all undisputed cure amounts (excepting any undisputed amounts already paid) pending resolution of the dispute, and any disputed cure amounts shall be reserved pending the subsequent hearing to resolve same.

e. **No Objection**: If no Objection to the assumption and assignment of any Selected Contract is timely filed, each Selected Contract shall be assumed as of the Assignment Date set forth in the applicable Notice of Successful Bidders or such other date as the Debtors and the Selected Contract Counterparties agree and the Cure Cost shall be binding on all Selected Contract Counterparties (and the Assignee) and no amount in excess thereof shall be paid for cure purposes; *provided*, *however*, that the Assignment Date for a Selected Contract shall not occur earlier than the date the Debtors filed and served the applicable Notice of Successful Bidders.

f. **Failure to Object**: If the Selected Contract Counterparty does not file an Objection with the Court and serve such Objection on the Objection Notice Parties by the applicable Objection Deadline in a manner that is consistent with the requirements set forth herein, absent a subsequent order of the Court in connection with such Objection that establishes an alternative cure amount or an agreement between the Debtors and the Selected Contract Counterparty resolving such Objection, (a) the Cure Costs, if any, set forth in the Notice of Successful Bidders shall be controlling, notwithstanding anything to the contrary in any assigned Lease or any other document and (b) the Selected Contract Counterparty will be deemed to have consented to the assumption and assignment of the Selected Contract and the Cure Costs, if any, and will be forever barred from asserting any other claims related to such Selected Contract against the Debtors or the Successful Bidder, or the property of any of them.

g. **Miscellaneous**: The inclusion of a Selected Contract on the Notice of Successful Bidders will not: (a) obligate the Debtors to assume and assign any Selected Contract listed thereon or the Successful Bidder to take assignment of such Selected Contract; or (b) constitute any admission or agreement of the Debtors that such Selected Contract is an executory contract. Only those Selected Contracts that are included on a schedule of assumed and acquired contracts attached to a final Purchase Agreement with a Successful Bidder (including amendments or modifications to such schedules in accordance with such Purchase Agreement) will be assumed and assigned to the applicable Successful Bidder. No Selected Contract shall be assumed absent closing on the assignment thereof to the applicable Successful Bidder.

## III. Miscellaneous

18. Any objections to the relief requested in the Motion that have not been withdrawn, waived, or settled as announced to this Court at the hearing on the Motion or by stipulation filed with this Court, are overruled.

19. Except to the extent deemed unenforceable under the Bankruptcy Code by this Court at the Sale Hearing, or subsequent hearing, as applicable, all provisions of the applicable assigned Selected Contract, including any provision limiting future assignment, shall be binding on the applicable Assignee after consummation of the assignment of such Selected Contract by the Debtors to the Assignee.

20. All Bids shall be irrevocable. If any Successful Bidder or Backup Bidder seeks to revoke its Bid for any reason or otherwise does not cooperate with the Debtors to seek approval of the Bid, then the Debtors shall be entitled to retain such bidder's deposit and pursue all contractual remedies against such bidder under law and equity.

21. The Assignee, or Debtors, pursuant to the applicable agreement, shall assume and cure all outstanding liabilities with respect to each Selected Contract, including, but not limited to, in the case of a Lease, accrued but unbilled amounts or adjustments related to common area maintenance, real estate taxes, and insurance. All parties reserve all rights with respect to the extent other obligations are assumed.

22. Nothing in this Order shall prohibit the Debtors from (a) removing any Asset from any Auction at any time, (b) adding any Asset to any Auction pursuant to the notice requirements included in this Order and the Bidding Procedures, or (c) selling any Asset pursuant to a separate order of this Court. The Debtors' right to seek authority to sell any of the Assets pursuant to a separate process or separate order of this Court is reserved.

23. Any Assets sold, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, shall (a) be free and clear of (i) all interests including, but not limited to, any Encumbrances, except with respect to any interests related to reciprocal easement agreements or that may be assumed liabilities under a Successful Bidder's Purchase Agreement ("Interests") and any Interests shall attach to the proceeds in the same order and priority, as applicable, and subject to all existing defenses, claims, setoffs, and rights and (ii) any and all claims (as that term is defined in section 101(5) of the Bankruptcy Code), obligations, demands, guarantees of or by the Debtors, debts, rights, contractual commitments, restrictions, interests, and matters of any kind and nature, whether arising prior to or subsequent to the commencement of these chapter 11 cases, and whether imposed by agreement, understanding, law, equity, or otherwise (including, without limitation, claims and encumbrances (A) that purport to give to any party a right or option to effect any forfeiture, modification, or termination of the interest of any Debtor or Assignee, as the case may be, in the Asset(s) (but only in connection with the assignment by the Debtor to the Assignee)), *provided* that any assignment of a Lease shall not be free and clear of any accrued but unbilled or not due rent and charges under such Lease, including adjustments, reconciliations, and indemnity obligations, which shall be assumed or assumed and assigned by the Debtors or the applicable Assignee, as agreed by and among the Debtors and the applicable Assignee or (B) in respect of any taxes, and (b) constitute a legal, valid, and effective transfer of such Asset(s) and vest the applicable purchaser with all rights, titles, and interests to the applicable Asset(s).

24. Except as otherwise set forth in the Bidding Procedures, any right of first refusal over the sale of any Asset shall be unenforceable pursuant to section 365(f) of the Bankruptcy Code.

25. The failure to include or reference a particular provision of the Bidding Procedures in this Order shall not diminish or impair the effectiveness or enforceability of such a provision in the Bidding Procedures.

26. The Debtors are authorized to establish an escrow account to accept deposits from Qualified Bidders and may pay any reasonable fees related to such account. Any deposits made by Qualified Bidders into the escrow account shall not be property of the Debtors.

27. In the event of any inconsistencies between this Order and the Motion, this Order shall govern. In the event of any inconsistencies between this Order and the Bidding Procedures, the Bidding Procedures shall govern.

28. Notwithstanding anything to the contrary contained in the Motion or this Order, any payment made or to be made by the Debtors pursuant to the authority granted herein, any obligation incurred and any relief or authorization granted herein, shall not be inconsistent with, and shall be subject to and in compliance with the requirements imposed on the Debtors under the terms of each interim and final order entered by the Court in respect of the *Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Use Cash Collateral and (B) Grant Liens and Provide Superpriority Administrative Expense Claims, (II) Granting Adequate Protection to Certain Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. [●]] (collectively, such interim and final orders, the "Cash Collateral Order") filed substantially contemporaneously herewith, including compliance with any approved budget or cash flow forecast in connection therewith (and any permitted variances thereto) and any other terms and conditions thereof. Nothing herein is intended to modify, alter, or waive, in any way, any terms, provisions, requirements, or restrictions of the Cash Collateral Order. To the extent

there is any inconsistency between the terms of the Cash Collateral Order and the terms of this Order or any action taken or proposed to be taken hereunder, the terms of the Cash Collateral Order shall control.

29. The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

30. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Houston, Texas
Dated: ____________, 2025

______________________________________
ALFREDO R. PEREZ
UNITED STATES BANKRUPTCY JUDGE

# Exhibit 1

## Bidding Procedures

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| PARTY CITY HOLDCO INC., *et al.*,[1] | ) | Case No. 24-90621 (ARP) |
| Debtors. | ) | (Jointly Administered) |

**BIDDING PROCEDURES TO SELL CERTAIN ASSETS**

On [●], 2025, the United States Bankruptcy Court for the Southern District of Texas (the "Court") entered the *Order (I) Approving (A) Procedures for the Sale of Substantially all of the Debtors' Assets, (B) Procedures for the De Minimis Sale of Certain of the Debtors' Assets and (C) Assumption And Assignment Procedures, (II) Approving (A) the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests, And Encumbrances, (B) the Assumption and Assignment of Executory Contracts and Unexpired Leases and (III) Granting Related Relief* [Docket No. [●]] (the "Order"), attached hereto as Exhibit A,[2] by which the Court approved the following procedures (the "Bidding Procedures"). These Bidding Procedures set forth the process by which Party City Holdco Inc. and affiliated debtors and debtors in possession (collectively, the "Debtors") are authorized to conduct an auction (the "Auction") for the sale of all, substantially all, or any portion of the Debtors' Assets.

## A. Solicitation Process; Distribution of Bidding Procedures

For the sale of Assets in these chapter 11 cases (the "Bankruptcy Case"), at the Debtors' direction, these Bidding Procedures shall be distributed to any potential bidders by: (i) with respect to the Debtors' Leases, A&G Realty Partners, LLC, (ii) with respect to the Debtors' Assets that are subject to the Store Closing Motion, Gordon Brothers Retail Partners, LLC and Gordon Brothers Commercial and Industrial, LLC; and (iii) with respect to all other Assets, AlixPartners, LLP and Party City Holdco Inc. or such other advisor or agent selected by the Debtors (in consultation with the Consultation Parties). The Debtors, in the exercise of their reasonable business judgment in consultation with the Consultation Parties, may elect to exclude

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Party City Holdco Inc. (9758); Amscan Inc. (1359); Am-Source, LLC (8427); Party City Corporation (3692); Party City Holdings Inc. (3029); PC Intermediate Holdings, Inc. (1229); and Trisar, Inc. (0659). The location of the Debtors' service address for purposes of these chapter 11 cases is: 100 Tice Boulevard, Woodcliff Lake, New Jersey 07677.

[2] All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Order or the Debtors' *Motion for Entry of an Order (I) Approving (A) Procedures for the Sale of Substantially all of the Debtors' Assets, (B) Procedures for the De Minimis Sale of Certain of the Debtors' Assets and (C) Assumption And Assignment Procedures, (II) Approving (A) the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests, And Encumbrances, (B) the Assumption and Assignment of Executory Contracts and Unexpired Leases and (III) Granting Related Relief* [Docket No. [•]] (the "Motion").

any Assets from these Bidding Procedures and sell such Assets at either a private or public sale, subject to Court approval of any alternative sale method. Furthermore, the Debtors may determine in their discretion (in consultation with the Consultation Parties) whether to proceed with the sale of any Asset pursuant to these Bidding Procedures.

**B. Eligibility of Bidders to Participate in Auction**

(i) To be eligible to bid for the sale of any Asset in these chapter 11 cases, subject to the bidding process or to otherwise participate in the Auction, each bidder must be determined by the Debtors, in their reasonable business judgment, to be a Qualified Bidder (as defined below). The Debtors' determination that a bidder is not a Qualified Bidder shall be made in consultation with the Consultation Parties.

(ii) If the Asset to be sold or transferred at the Auction is an executory contract or unexpired lease of non-residential real property (each, a "Contract"), any non-debtor counterparty to such Contract (each, a "Contract Counterparty") proposed to be sold or transferred at the Auction shall be deemed a Qualified Bidder. Contract Counterparties may credit bid all or a portion of the applicable cure amount proposed by such Contract Counterparty. If such Contract Counterparty is the Successful Bidder on the applicable Contract, and it is later determined by this Court or agreement by and among the Debtors and the Contract Counterparty that the actual cure amount is a lesser amount, then the Contract Counterparty shall pay the difference between the actual cure amount and the Cure Cost in cash prior to the Sale Closing Deadline.

**C. Qualification of Bidders**

Except as otherwise set forth herein or agreed to by the Debtors in writing after consultation with the Consultation Parties (email being sufficient), in order to be considered for status as a Qualified Bidder and to have a Qualified Bid, a bidder must:

(i) Deliver via email and first class mail to: (a) with respect to the Debtors' Leases, A&G Realty Partners, LLC, 445 Broadhollow Rd., Suite 410, Melville, NY 11747, Attn: Andy Graiser (andy@agrep.com); (b) with respect to the Debtors' Assets that are subject to the Store Closing Motion, Gordon Brothers Retail Partners, LLC and Gordon Brothers Commercial and Industrial, LLC, 11th Floor, Boston, MA 02199, Attn: Rick Edwards (redwards@gordonbrothers.com); and (c) with respect to all other Assets, (i) AlixPartners, LLP, 909 Third Avenue, 28th Floor, New York, NY 10022, Attn: David Orlofsky (dorlofsky@alixpartners.com) and Deborah Rieger-Paganis (dpaganis@alixpartners.com) and (ii) Party City Holdco Inc., 100 Tice Blvd., Woodcliff Lake, NJ 07677, Attn: Ian Heller (iheller@partycity.com) and Dan Lamadrid (dlamadrid@partycity.com), in each case, with a copy to: (w) Debtors' counsel, Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019, Attn: Kenneth S. Ziman (kziman@paulweiss.com), Christopher Hopkins (chopkins@paulweiss.com), and Stephanie P. Lascano (slascano@paulweiss.com); (x) Debtors' co-counsel, Porter Hedges LLP, 1000 Main St, 36th Floor, Houston, TX 77002, Attn: John Higgins

(jhiggins@porterhedges.com), Shane Johnson (sjohnson@porterhedges.com), and Aaron J. Power (apower@porterhedges.com) (collectively, the "Debtors' Advisors"); (y) counsel to any official committee of unsecured creditors appointed in these chapter 11 cases (a "Committee"), and (z) counsel to the Lender Notice Parties, so as to be received before 5:00 p.m. (prevailing Central time) on the applicable Bid Deadline, an irrevocable, good faith, and bona fide written offer (a "Bid") to purchase the applicable Asset (such Bid that meets the below requirements, a "Qualified Bid," and such bidder, a "Qualified Bidder") that:

(a) consists of (i) for Leases, an executed form of the Purchase Agreement attached hereto as Exhibit A, or (ii) for all other Assets, a form Purchase Agreement to be provided to potential bidders prior to the Bid Deadline.

(b) includes (i) a Microsoft Word copy of the form agreement and (ii) a PDF "redline" showing any proposed revisions to the form Purchase Agreement. Any bidder may propose to purchase more than one Asset. The agreement shall be marked to reflect differences as to the Asset proposed to be purchased.

(c) is accompanied by a completed bidder registration form, substantially in the form attached hereto as Exhibit B (the "Bidder Registration Form"), which must detail which of the Assets up for sale the Qualified Bidder proposes to purchase and list an allocation of a portion of the aggregate proposed purchase price to each Asset included in its total Bid. A single bidder or group of bidders may purchase one Asset or a combination of the Assets that the Debtors designate as available for sale. If a bidder or group of bidders submits an offer for a combination of Assets, such bidder or group of bidders must (i) indicate if it would be willing to purchase any of such Assets if not sold as a group and, if so, (ii) include a schedule indicating the Bid as to any individual or sub-group of Assets that such bidder would purchase and the allocation of a portion of the aggregate purchase price for any subgroup to each Asset in such subgroup. The Debtors reserve the right to determine in consultation with the Consultation Parties, whether to auction any Assets as part of a group or individually up through and including at the Auction or to conduct an Auction of any Assets both individually and as part of a group in order to determine which option maximizes value of the Assets.

(d) Contains no contingencies to the validity, effectiveness, and/or binding nature of the Bid, including without limitation, contingencies for due diligence and inspection or financing of any kind.

(e) Contains sufficient documentation acceptable to the Debtors (after consulting with the Consultation Parties) evidencing that the bidder has financial resources sufficient to close the transaction within 21 days after the Auction, which evidence may include, without limitation, evidence of cash on hand, a binding financing commitment from an established and

financially sound financial institution or investment fund and the identity of contact persons at the entity issuing such commitment letter.

(f) Demonstrates, to the Debtors' satisfaction after consulting with the Consultation Parties, that the bidder has the legal capacity to consummate the transaction it is proposing.

(g) Includes a statement from the bidder that: (i) it is prepared to enter into and consummate the transactions contemplated in the Purchase Agreement immediately upon entry by the Court of an order approving the sale of the Asset(s) to such bidder; and (ii) the Qualified Bid, if determined to be a Successful Bid (as defined below) or Backup Bid (as defined below), will then be irrevocable for a period of 30 days after the conclusion of the Auction.

(h) If the Asset to be sold or transferred is a Contract, includes audited and unaudited financial statements, tax returns, bank account statements, and a description of the proposed business to be conducted at the premises and/or any other documentation that the Debtors further request after consultation with the Consultation Parties (the "Adequate Assurance Package").[3] The Adequate Assurance Package should be submitted in its own compiled PDF document.

Notwithstanding anything to the contrary, any Contract Counterparty bidding on Contracts to which it is a party shall not be required to include the items listed in subparagraphs C(i)(c), C(i)(e), and C(i)(h) in any Bid.

(ii) **ALL QUALIFIED BIDS SHALL BE DEEMED IRREVOCABLE, NOTWITHSTANDING ANY CONDITIONS LISTED IN THE PURCHASE AGREEMENT. IN THE EVENT THAT A BIDDER SEEKS TO REVOKE SUCH BID, THE DEBTORS SHALL BE ENTITLED TO KEEP SUCH BIDDER'S DEPOSIT AND PURSUE ALL OTHER CONTRACTUAL REMEDIES UNDER LAW OR EQUITY.**

(iii) Contemporaneous with the submission of a Bid, tender an earnest money deposit of 10.0% of the proposed cash purchase price for the sale of the Lease (the "Qualified Bidder Deposit") by cashier's or certified check or wire transfer of immediately available funds, or such other amount agreed to by the Debtors in

[3] The Adequate Assurance Package may (but is not required to) include (a) the proposed assignee's and any guarantor's business plans for the current and subsequent year, including sales and cash flow projections; (b) any financial projections, calculations, and/or financing pro formas prepared in contemplation of purchasing each Asset; (c) audited or, if unavailable, non-audited financial statements and any supplemental schedules for the calendar years ending 2022 and 2023 for the Bidder and any proposed guarantor; (d) any documents regarding the proposed assignee's and any guarantor's experience in operating retail stores; (e) the number of retail stores the proposed assignee and any guarantor operates and the trade names used; and (f) any additional evidence of the proposed assignee's financial wherewithal, including available cash and any debt or equity commitments or other forms of liquidity post-closing.

writing, after consulting with the Consultation Parties, which deposit shall be held in an escrow account in accordance with the terms of the Purchase Agreement; *provided* that to the extent a Bid contains a non-monetary credit bid, the Qualified Bidder Deposit amount shall be based solely upon the cash portion of the Bid.[4] Notwithstanding the foregoing, any Contract Counterparty bidder may submit a Bid to acquire the Contract to which it is a counterparty without submitting a Qualified Bidder Deposit.

(iv) A Qualified Bidder Deposit will be refunded only if (a) the Bid corresponding to the Qualified Bidder Deposit is rejected or (b) the Bid corresponding with the Qualified Bidder Deposit is not approved by the Court. The Debtors reserve the right (after consulting with the Consultation Parties) to hold each Qualified Bidder Deposit until five days after the close of the Auction for all Qualified Bidders who are not the Successful Bidder or the Backup Bidder and, in the case of the Backup Bidder, five business days after the close of the sale to the Successful Bidder. The provisions of this subparagraph (iv) shall apply to Qualified Bidders and control notwithstanding any conflicting provisions in the Purchase Agreement.

(v) If the Asset to be sold of transferred is a Contract, the Qualified Bidder agrees the Adequate Assurance Package may be disseminated to the affected Contract Counterparty if such Qualified Bidder's Bid is determined to be a Qualified Bid. Prior to receiving any Adequate Assurance Package, the Contract Counterparty must agree to keep all the information contained therein confidential. If the requesting Contract Counterparty has submitted a ROFR Notice (as defined below) prior to the Bid Deadline, and the Debtors have confirmed such right of first refusal is valid under nonbankruptcy law, after consulting with the Consultation Parties, the Debtors shall provide the applicable Adequate Assurance Package and purchase price to such Contract Counterparty as soon as reasonably practicable after the determining the applicable bidder is a Qualified Bidder, but in all cases one day prior to the Auction.

## D. Rejection of "Qualified Bid" Status for Non-Conforming Bids

The Debtors shall provide a copy of each Bid received by the Debtors on or prior to the Bid Deadline to the Consultation Parties as soon as reasonably practicable after the Debtors receive such Bid. The Debtors shall determine in their sole discretion, in consultation with the Consultation Parties, which Bids qualify as Qualified Bids and which Bids shall be rejected as non-conforming Bids. The Debtors shall have the right (in consultation with the Consultation Parties) to reject a Bid as non-conforming (*i.e.*, a non-Qualified Bid); *provided*, *however,* the Debtors shall have the right to inquire or negotiate with any bidder with respect to clarification of any Bid.

[4] For the avoidance of doubt, these funds are not property of the Debtors.

**E. Breakup Fee**

Subject to entry of an order by this Court effectuating a sale or transfer (a "Sale Order"), the Debtors shall be further authorized, but not obligated, in an exercise of their business judgment, in consultation with the Consultation Parties and subject to the consent (not to be unreasonably withheld) of the Directing Cash Collateral Agent, to (a) select a Qualified Bidder to act as a stalking horse bidder (a "Stalking Horse Bidder") in connection with each Asset up for Auction and (b) in connection with any staking horse agreement with a Stalking Horse Bidder, provide for a breakup fee (the "Breakup Fee") in an amount not to exceed 3.0% of the proposed purchase price; *provided* that the Debtors shall file and serve a notice of the proposed Breakup Fee that provides parties in interest seven days to object to any Breakup Fee; *provided, further*, that (i) if no Objection to a proposed Breakup Fee for a Stalking Horse Bidder is filed within such seven-day period, the Breakup Fee will be deemed approved or (ii) if an Objection to a proposed Breakup Fee is timely filed, the Debtors (in consultation with the Consultation Parties) will work in good faith to consensually resolve such Objection, in consultation with the Consultation Parties, or seek an expedited hearing on such Objection with the Court. Upon entry into a Stalking Horse Agreement, the Debtors will file and serve notice of the proposed Stalking Horse Agreement on the master service list maintained in these cases no later than two business days after execution of the Stalking Horse Agreement. The notice will include the amount of the Breakup Fee, if any, any modifications or amendments to the Bidding Procedures, a summary of the Stalking Horse Agreement, a copy of the Stalking Horse Agreement, and a copy of the relevant proposed Sale Order. The Stalking Horse Bidder will be deemed to be a Qualified Bidder and the Stalking Horse Bidder's Bid will be deemed a Qualified Bid.

The Breakup Fee shall be allocated among the Assets included in the Stalking Horse Bidder's Qualified Bid in the same proportion as the allocation of its aggregate purchase price among Assets listed on the Stalking Horse Bidder's Bidder Registration Form. Any Breakup Fee shall be payable solely from the proceeds of the sale of Assets.

**F. Due Diligence**

Any Qualified Bidder may request diligence from the Debtors, and the Debtors may grant or deny the request in their reasonable business judgment and in consultation with the Consultation Parties. The Debtors may require such Qualified Bidder to execute a non-disclosure agreement prior to providing diligence to such Qualified Bidder.

**G. Bid Deadline**

All Qualified Bids must be submitted to the Debtors' Advisors in accordance with paragraph C (above), so as to be actually received no later than the Bid Deadline.

**H. Terms of Auction**

In the event that one or more Qualified Bids for an Asset or group of Assets are submitted in accordance with these Bidding Procedures, the Debtors will cause a notice to be filed on the docket of these chapter 11 cases indicating, if applicable, that there have been one or more Qualified Bids submitted (a "Notice of Qualified Bids") for such Assets and may conduct an

Auction sale of the Assets on the terms below. For the avoidance of doubt, there may be more than one Auction.

(i) **Time, Date, and Location of Auction; Adjournment of Auction; Appearance of Qualified Bidders at Auction.** The Auction will take place at the offices of Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019 or by videoconference or such other form of remote communication established by the Debtors. The Auction will be conducted on the date and time listed in the Auction and Hearing Notice. The Debtors will send written notice (email being sufficient) of the date, time, and place of the Auction and/or instructions to access the Auction by videoconference or such other form of remote communication established by the Debtors to the Qualified Bidders no later than two business days before such Auction, and file a notice of the date, time, and place of the Auction and/or instructions to access the Auction by videoconference or such other form of remote communication established by the Debtors with the Court no later than two business days before such Auction and post such notice on the Debtors' Case Website: https://cases.ra.kroll.com/ PCHI2024/. The Debtors may modify the date, time, and place of the Auction and/or instructions to access the Auction by videoconference or such other form of remote communication established by the Debtors, by providing written notice to Qualified Bidders and filing a notice with the Court so long as such notice is no later than two days before the Auction.

(ii) **Permitted Attendees at Auction.** Unless otherwise ordered or directed by the Court, only representatives of the Debtors, any other parties invited specifically by the Debtors, any Qualified Bidders, the Consultation Parties (as defined herein), Contract Counterparties (if the Asset to be sold or transferred is a Contract), and legal counsel and financial advisors for each of the forgoing shall be entitled to attend the Auction; *provided* that only the (i) Contract Counterparties that have either submitted a Qualified Bid or affirmatively provide evidence of a right of first refusal in writing (the "ROFR Notice") by the Bid Deadline and (ii) other Qualified Bidders that have submitted Qualified Bids by the Bid Deadline shall be entitled to bid at the Auction. Any permitted attendee may attend the Auction by videoconference or such other form of remote communication established by the Debtors; *provided* that such permitted attendee must provide actual notice via email to the Debtors' Advisors, as listed in paragraph C(i) herein, that it will make such an appearance at least one day prior to the Auction.

(iii) **Auction Bid Submission Procedures.** Auction bidding shall be subject to the following procedures:

(a) For a Qualified Bid to be considered and further bid at the Auction, each Qualified Bidder or duly authorized agent must appear at the Auction in person or via remote video, as applicable, unless alternative arrangements are agreed upon in advance by the Debtors (in consultation with the Consultation Parties).

(b) Only Qualified Bidders shall be entitled to make any subsequent Bids at the Auction.

(c) Bidding will commence with the announcement of the highest and best Qualified Bid with respect to each Asset or group thereof, which shall be determined solely by the Debtors in their business judgment in consultation with the Consultation Parties. Any Qualified Bidder may then submit successive Bids in minimum increments, which will be determined by the Debtors (in consultation with the Consultation Parties) at each Auction depending on the total dollar value of the Assets being sold (the "Minimum Overbid Amount"). The Minimum Overbid Amount may be different with respect to each Asset or group of Assets being auctioned. Any Contract Counterparty that submits a ROFR Notice by the Bid Deadline may submit successive Bids on the applicable Contract without offering any additional consideration, *provided* that the Debtors (in consultation with the Consultation Parties) have determined such Contract Counterparty's right of first refusal would be enforceable under nonbankruptcy law.

(d) If one or more Qualified Bids are received by the Debtors, each such Qualified Bidder shall have the right to improve its respective Bid at the Auction.

(e) Each successive Bid submitted by any bidder at the Auction must contain an actual cash purchase price (or, in the case of a credit bid, an additional credit bid amount, if applicable) that exceeds the then existing highest Bid by at least the Minimum Overbid Amount.

(f) At commencement of the Auction, the Debtors, in consultation with the Consultation Parties, may announce procedural and related rules governing the Auction, including time periods available to all Qualified Bidders to submit successive Bid(s) in an amount equivalent to at least the Minimum Overbid Amount.

(iv) **No Collusion.** Each Qualified Bidder participating at the Auction will be required to confirm on the record at the Auction that (i) it has not engaged in any collusion with respect to the bidding and (ii) its Qualified Bid is a good-faith bona fide offer and it intends to consummate the proposed transaction if selected as the Successful Bidder; *provided* that, notwithstanding anything to the contrary and solely to the extent that the following parties are not bidding on the assets on Auction, nothing in these Bidding Procedures shall prohibit or limit any discussion, communication, negotiation, or coordination between or among the ABL Agent, the Second Lien Notes Trustee, and the Ad Hoc Noteholder Group, and no conduct in connection therewith shall be deemed to be "collusion."

(v) **Selection of Successful Bid.** The Auction shall continue until there is only one Qualified Bid remaining to purchase a certain portion or all of the Assets that the Debtors determine, in consultation with the Consultation Parties, subject to Court

approval, is the highest and/or best Qualified Bid (such Qualified Bid, the "Successful Bid" and, such Qualified Bidder, the "Successful Bidder"). For the avoidance of doubt, if there are any Qualified Bids for different Assets, there may be multiple Successful Bidders. In making this decision, each Debtor shall consider, consulting with the Consultation Parties, the amount of the purchase price, the form of consideration being offered, the contents of the Purchase Agreement, the likelihood of such Qualified Bidder's ability to close the transaction, the timing thereof, and the net benefit to the estates. Each Debtor reserves the right to select the Successful Bid (after consulting with the Consultation Parties), even if it is not the highest Bid; *provided* that in the event a Stalking Horse Bidder is selected by the Debtors and is not the Successful Bidder, the aggregate amount of the Successful Bid or Successful Bids (other than credit bids) must exceed the amount of the Stalking Horse Bid plus the Breakup Fee payable to the Stalking Horse Bidder. The Debtors reserve the right to not select any Successful Bid or Successful Bidder with respect to any Asset or group thereof after consulting with the Consultation Parties. The Successful Bidder shall have such rights and responsibilities of the purchaser, as set forth in the Purchase Agreement. Prior to the Sale Hearing, the Successful Bidder shall complete and execute a final and revised Purchase Agreement, as necessary to conform to the terms of the Auction, and all other agreements, contracts, instruments, and other documents evidencing and containing the terms and conditions upon which the Successful Bid was made (such documents collectively, the "Successful Bidder Sale Documents"). The Successful Bid shall be irrevocable for a period of 30 days after the conclusion of the Auction.

(vi) **Selection of Backup Bidder.** The bidder of the second highest and best Bid for a portion or all of the Assets, as determined by the Debtors in their discretion and after consultation with the Consultation Parties, may be deemed a backup bidder (such bidder the "Backup Bidder" and such Bid the "Backup Bid"). For the avoidance of doubt, if there are Qualified Bids for different portions of the Assets, there may be multiple Backup Bidders. If the Debtors so designate a bidder as a Backup Bidder after consulting with the Consultation Parties, such Backup Bidder shall be required to complete and execute a purchase agreement in form and substance reasonably acceptable to the Debtors memorializing, among other things, the amount of the Backup Bid (the "Backup Bidder Agreement"). Upon the failure of the Successful Bidder to timely consummate its purchase of the Assets, pursuant to the terms of the Successful Bidder Sale Documents, the Debtors shall promptly file a supplemental notice seeking to approve the sale to the Backup Bidder, if applicable, on expedited notice and a hearing. The Backup Bidder Agreement shall be irrevocable for a period of 30 days after the conclusion of the Auction.

(vii) **Irrevocability of Bids; Rejection of Bids.** A Qualified Bid must be irrevocable unless and until the Debtors accept a higher Bid and such Qualified Bidder is not selected as the Backup Bidder. Unless determined by the Debtors (in consultation with the Consultation Parties) to be the Successful Bid or Backup Bid, all other Qualified Bids and all other successive Bids at the Auction shall be deemed rejected at the conclusion of the Auction. Notwithstanding the foregoing, all Bids shall be

deemed rejected on the Sale Closing Deadline; *provided*, *however*, in the event the Successful Bidder does not close the sale of any given Asset, and the Debtors promptly file a supplemental notice on or before the Sale Closing Deadline seeking to approve the sale to the Backup Bidder, if applicable, on expedited notice and a hearing, such Bids shall remain irrevocable until the transaction is approved and closed, or rejected by the Court.

## I. Sale Hearing

The Court shall hold a Sale Hearing on the date listed in the Auction and Hearing Notice to approve the sale of the Assets, if any. The Sale Hearing will be held at the United States Bankruptcy Court for the Southern District of Texas, or by such other virtual or electronic means as determined by the Court. At the Sale Hearing, the Debtors will seek entry of an order approving and authorizing the proposed sale to the Successful Bidder(s), if any. The Debtors shall also notify the Court of the Backup Bidder, if any. The Debtors shall ascertain (in consultation with the Consultation Parties) whether the Successful Bidder and the Backup Bidder are insiders of one or more of the Debtors, whether the sale represents an arm's-length transaction between the parties, made without fraud or collusion, and whether there has been any attempt by either party to take any unfair advantage of the other such that the Successful Bidder or Backup Bidder may be deemed to be purchasing the Assets in good faith pursuant to 11 U.S.C. § 363(m). At the Sale Hearing, the Debtors shall seek to make a record of these findings with respect to the Successful Bidder and any order approving the sales shall include such findings in order to approve the sale to the Successful Bidder(s), pursuant to 11 U.S.C. § 363(m). The Sale Hearing may be adjourned or rescheduled without notice other than by announcement of the adjourned date at the Sale Hearing or the Debtors' filing notice of a rescheduled Sale Hearing with the Court.

In the event the Successful Bidder does not close the sale of any given Asset, and the Debtors determine in their reasonable business judgment, after consultation with the Consultation Parties, to effectuate the transaction with the Backup Bidder, the Debtors will promptly file a supplemental notice on or before the Sale Closing Deadline, seeking to approve the sale to the Backup Bidder. The Backup Bidder (as identified by the Notice of Successful Bidders) shall not be approved at the Sale Hearing.

## J. Closing

The closing of the sale of the Asset(s) will occur no later than the Sale Closing Deadline, in accordance with the terms of the Successful Bidder Sale Documents or the purchase agreement of the entity otherwise authorized by the Court to purchase the Assets, as applicable.

## K. Failure of Successful Bidder to Consummate Purchase

If the Successful Bidder fails to consummate the purchase of the Asset(s) pursuant to the terms of the Successful Bidder Sale Documents, and such failure is the result of the Successful Bidder's breach of, or default or failure to perform under any Successful Bidder Sale Documents or the terms of these Bidding Procedures, including cooperating with the Debtors and their advisors to contest any Objections to the Sale and appearing for testimony, as needed, (the "Defaulting Bidder"), such Defaulting Bidder's Qualified Bidder Deposit shall be forfeited to

the Debtors as liquidated damages, and the Debtors shall have all rights and remedies available under applicable law.

**L. Disclosures**

Qualified Bidders shall disclose to the Debtors all communications with other Qualified Bidders following the submission of a Qualified Bid until the sale of the Assets.

**M. Commissions**

Subject to section E hereof, the Debtors shall be under no obligation to pay commission to any agent or broker, with the exception of any agent or broker used by the Debtors. All commissions, fees, or expenses for agents, other than as retained by the Debtors, may be paid by bidders at such bidder's discretion. In no case shall any commissions, fees, or expenses be deducted from the proceeds of the sale of the Assets or the agreed Successful Bid, subject to section E hereof.

**N. Consultation Parties**

The term "Consultation Parties" as used in these Bidding Procedures shall mean: (i) any Committee and its counsel and (ii) the Lender Notice Parties (as defined in the Motion). In the event that any Consultation Party, any member of a Committee, or any affiliate of any of the foregoing submits a Bid for any Asset at the Auction under these Bidding Procedures, any obligation of the Debtors to consult with such bidding party pursuant to these Bidding Procedures, solely with respect to any Asset on which such party placed a Bid, will be suspended without further action until such party advises the Debtors and the other Consultation Parties that it has irrevocably withdrawn its Bid for such Asset(s), at which time such party's consultation privileges will be reinstated. If a member of a Committee submits a Qualified Bid, such Committee and its counsel and financial advisors, as applicable, will continue to have consultation rights as set forth in these Bidding Procedures; *provided* that such advisors shall exclude such Committee member from any discussions of deliberations regarding the sale of the Asset in question and shall not provide any information regarding the sale of the Asset to such member.

Prior to the Bid Deadline, the Debtors' counsel shall provide all diligence that the Debtors and/or their advisors requested and received to the Consultation Parties, and respond to any inquiries from the Consultation Parties regarding the sales as soon as reasonably practicable. As soon as reasonably practicable following the Bid Deadline, the Debtors shall provide access to the data room to the Consultation Parties. Following the Bid Deadline, the Debtors shall consult with the advisors to the Consultation Parties prior to making all material decisions prior to the Auction (including for the avoidance of doubt, selection of a Stalking Horse Bidder), and shall consult with the advisors to the Consultation Parties present at the Auction prior to making all material decisions at the Auction (including, for the avoidance of doubt, minimum Bids and bidding increments and the selection of Successful Bidders and Backup Bidders). The failure to specifically identify consultation rights in any section of these Bidding Procedures and/or the Order shall not limit or otherwise impair the rights of the Consultation Parties to consult with the Debtors.

**O. No Representation; Qualified Bidder's Duty to Review**

The Debtors are not making and have not at any time made any warranties or representations of any kind or character, express or implied, with respect to the Assets, the truth, accuracy, or completeness of any documents related to the Assets, or any other information provided by or on behalf of the Debtors to a bidder, or any other matter or thing regarding the Assets. All bidders must acknowledge and agree that upon closing the Debtors shall sell and transfer to the Successful Bidder and the Successful Bidder shall accept the Assets "AS-IS, WHERE IS, WITH ALL FAULTS," except to the extent expressly provided otherwise in the Court's order approving the sale. All bidders must agree that they have not relied on and will not rely on, and the Debtors are not liable for or bound by, any express or implied warranties, guaranties, statements, representations, or information pertaining to the Assets or relating thereto made or furnished by the Debtors or any real estate broker or agent representing or purporting to represent the Debtors, to whomever made or given, directly or indirectly, orally or in writing, unless specifically set forth in the Bankruptcy Court's order approving the sale.

**P. Reservation of Rights**

The Debtors reserve their rights to modify these Bidding Procedures, in their business judgment and in consultation with the Consultation Parties, in any manner that will best promote the goals of these Bidding Procedures, or impose, at or prior to the Auction, additional customary terms and conditions on sales, including, without limitation: (a) extending the deadlines set forth in these Bidding Procedures; (b) adjourning the Auction at the Sale Hearing; (c) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction; (d) canceling the Auction; and (e) rejecting any or all Bids or Qualified Bids. Nothing in these Bidding Procedures shall abrogate the fiduciary duties of the Debtors. For the avoidance of doubt, this paragraph shall not authorize the Debtors to limit notice periods or other protections provided to Selected Contract Counterparties in the Order.

**Q. Consent to Jurisdiction**

All Qualified Bidders at the Auction shall be deemed to have (a) consented to the jurisdiction of the Court and (b) waived any right to a jury trial in connection with any disputes relating to the Auction, the construction, and enforcement of these Bidding Procedures.

**R. Return of Qualified Bidder Deposit**

The Qualified Bidder Deposit of the Successful Bidder shall be applied to the purchase price of any transaction that closes with respect to that Qualified Bidder. The Qualified Bidder Deposits for each Qualified Bidder shall be held in one or more escrow accounts on terms acceptable to the Debtors and shall be returned (other than with respect to the Successful Bidder and the Backup Bidder) on the date that is five business days after the close of the sales, or as soon as is reasonably practicable thereafter.

If a Successful Bidder (or Backup Bidder, as applicable) fails to consummate a proposed transaction because of a breach by such Successful Bidder (or Backup Bidder, as applicable) or by failing to cooperate to obtain approval of the Bid, the Qualified Bidder Deposit shall be released to the Debtors and the Debtors shall not have any obligation to return the

Qualified Bidder Deposit deposited by such Successful Bidder (or Backup Bidder, as applicable). Such Qualified Bidder Deposit released to the Debtors may be retained by the Debtors as liquidated damages, in addition to any and all rights, remedies, or causes of action that may be available to the Debtors and their estates.

**S. Fiduciary Out**

Nothing in these Bidding Procedures shall require each Debtor's management or board of directors to take any action, or to refrain from taking any action, with respect to these Bidding Procedures, to the extent each Debtor's management or board of directors determines, or based on the advice of counsel, that taking such action, or refraining from taking such action, as applicable, is required to comply with applicable law or its fiduciary obligations under applicable law.

# Exhibit A

## Form Purchase Agreement for Lease

**ASSUMPTION AND ASSIGNMENT AGREEMENT**

This ASSIGNMENT AND ASSUMPTION AGREEMENT (the "Agreement"), dated as of _____________, 2025, is by and between ________________________________ ("Assignor") and ______________________ ("Assignee").

**RECITALS**

WHEREAS, Assignor, along with its affiliated debtors and debtors in possession, has filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended, the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") in the jointly administered chapter 11 cases captioned *In re Party City Holdco Inc.*, Case No. 24-90621 (ARP) (the "Chapter 11 Cases"); and

WHEREAS, Assignor has agreed to assign and Assignee has agreed to assume the real property lease(s) listed on the attached Schedule A (referred to as the "Lease(s)") with respect to the premises set forth on Schedule A (the "Premises") pursuant to the terms and conditions of the Bidding Procedures approved by the Bankruptcy Court in the Chapter 11 Cases (the "Bankruptcy Court Approval").

NOW, THEREFORE, in consideration of the premises and the mutual agreements herein contained, the parties ("Parties") hereto agree as follows:

**AGREEMENT**

1. Assignment and Assumption. Effective upon the payment of the Purchase Price as set forth below:

(a) Assignor hereby sells, transfers, conveys, assigns and sets over to Assignee, its successors and assigns, all of Assignor's right, title, and interest in and to the Lease(s).

(b) Assignee hereby assumes and undertakes to pay, perform, and discharge all of Assignor's obligations and duties with respect to the Lease(s).

2. Payment of Purchase Price. Assignee shall, on or before __________, 2025, deliver the purchase price for the Lease(s) in the amount of ____________ (the "Purchase Price") in immediately available funds wired to the account specified by Assignor. Together with the Purchase Price, Assignee shall also pay to Assignor the sum of $________ respecting rent and other charges paid by Assignor under the Lease for the months in which the Closing (hereinafter defined) occurs and any subsequent months. If the assumption and assignment of the Lease(s) do(es) not occur by ________, 2025, Assignee will additionally reimburse Assignor for all amounts that came due, were required to be paid, and were in fact paid in connection with the Lease(s) on and after _________, 2025. The Parties acknowledge that if the assignment and assumption of the Lease(s) (the "Closing") does not occur before _____________, 2025, the Lease(s) may thereafter be rejected in the Bankruptcy Court proceeding referenced above.

3. Assumption of Liabilities. In addition to assuming all remaining obligations that exist with respect to the Lease(s), including, but not limited to, accrued but unbilled

adjustments for CAM, real estate taxes, and insurance, Assignee shall assume and cure all outstanding liabilities with respect to the Lease(s).

4. No Further Liability of Assignor. From and after Closing, Assignor shall have no further obligations and duties with respect to the Lease(s).

5. Further Assurances. At any time and from time to time after the date hereof, at the request of Assignee, and without further consideration, Assignor shall execute and deliver such other instruments of sale, transfer, conveyance, assignment, and confirmation or consents and take such other action as Assignee may reasonably request as necessary or desirable in order to more effectively transfer, convey, and assign to Assignee Assignor's rights to the Lease(s).

6. "As Is Where Is" Transaction. Assignee hereby acknowledges and agrees that Assignor makes no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Lease(s). Without limiting the foregoing, Assignor hereby disclaims any warranty (express or implied) of merchantability or fitness for any premises subject to the Lease(s). Assignee further acknowledges that the Assignee has conducted an independent inspection and investigation of the physical condition of premises subject to the Lease(s) and all such other matters relating to or affecting the Lease(s) as Assignee deemed necessary or appropriate and that in proceeding with its acquisition of the Lease(s), Assignee is doing so based upon such independent inspections and investigations. Accordingly, Assignee will accept the Lease(s) "AS IS" and "WHERE IS."

7. Compliance With Law. Assignee hereby agrees to comply with all applicable laws. Assignee agrees to indemnify and hold Assignor harmless for any violation or alleged violation of this section.

8. Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to principles of conflicts of law.

9. Jurisdiction. The Parties consent to the exclusive jurisdiction of the United States Bankruptcy Court for the Southern District of Texas with respect to all matters arising under or relating to this Agreement. The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law. The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

10. No Reliance. Each Party represents and warrants that in entering into this Agreement it is relying on its own judgment, belief and knowledge and, as applicable, on that of any attorney it has retained to represent it in this matter. In entering into this Agreement, no Party is relying on any representation or statement made by any other Party or any person representing such other Party.

11. Construction. This Agreement has been drafted through a cooperative effort of both Parties, and neither Party shall be considered the drafter of this Agreement so as to give rise to any presumption of convention regarding construction of this document. All terms of this Agreement were negotiated in good faith and at arm's-length, and this Agreement was prepared and executed without fraud, duress, undue influence, or coercion of any kind exerted by any of the Parties upon the other. The execution and delivery of this Agreement is the free and voluntary act of the Parties.

12. Execution in Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. All signatures of the Parties to this Agreement may be transmitted by facsimile or by electronic mail, and such transmission will, for all purposes, be deemed to be the original signature of such Party whose signature it reproduces, and will be binding upon such Party.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written

**ASSIGNOR:**
**[Relevant Debtor Entity]**

By: ____________________________
Name:
Title:

**ASSIGNEE:**
**[Assignee]**

By: ____________________________
Name:
Title:

# Exhibit B

## Bidder Registration Form

**OFFER AND BIDDER REGISTRATION FORM**

Bidder, ____________________________________________________________, hereby:

- Offers to purchase the following Assets for the Bid set forth below, pursuant to this Offer & Qualified Bidder Form and the terms and conditions of the accompanying Purchase Agreement, and

- Seeks to become a Qualified Bidder pursuant to the terms and conditions of the *Order (I) Approving (A) Procedures for the Sale of Substantially all of the Debtors' Assets, (B) Procedures for the De Minimis Sale of Certain of the Debtors' Assets and (C) Assumption And Assignment Procedures, (II) Approving (A) the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests, And Encumbrances, (B) the Assumption and Assignment of Executory Contracts and Unexpired Leases and (III) Granting Related Relief* [Docket No. [●]], subject to approval by the United States Bankruptcy Court for the Southern District of Texas in the chapter 11 cases of *In re Party City Holdco Inc.*, Case No. 24-90621 (ARP) (the "Bidding Procedures").

Bidder's offer is for the following Asset(s) at the following Bids:

| ASSET | BID/PURCHASE PRICE |
|---|---|
| 1. | |
| 2. | |
| 3. | |
| 4. | |
| 5. | |
| 6. | |
| 7. | |
| 8. | |
| **Aggregate Purchase Price:** | |

**Bidder hereby warrants and represents as follows:**

(a) Bidder has received, reviewed, understands, and agrees to abide by the terms and conditions of the Bidding Procedures, the terms and conditions of which are incorporated herein by reference.

(b) Bidder has received, reviewed, and understands the terms and conditions of the Assumption and Assignment Agreement, the terms and conditions of which are incorporated herein by reference.

(c) To the extent that the words and phrases which are capitalized in this Offer & Qualified Bidder Form have been defined in the Bidding Procedures or in the Assumption and Assignment Agreement, those definitions are incorporated herein by reference.

(d) Each Bid made at the Auction shall constitute a binding, irrevocable "Bid" pursuant to the Bidding Procedures.

(e) Each Bid is and shall be a good faith, bona fide, irrevocable offer to purchase the applicable Lease on an as-is, where-is basis, with no contingencies.

(f) Bidder (i) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Asset in making its offer; (ii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the Asset or the completeness of any information provided in connection therewith or the Auction other than as provided in the Assumption and Assignment Agreement; and (iii) is not entitled to any break-up fee, termination fee, expense reimbursement, or similar type of payment; (iv) and by submitting a Purchase Agreement, waives, and shall be deemed to waive, the right to pursue a substantial contribution claim under section 503 of title 11 of the United States Code (the "Bankruptcy Code") related in any way to the submission of its Bid, the Bidding Procedures, or any earnest money deposit.

(g) Bidder is either not represented by a broker seeking a commission, or if Bidder is represented by a broker, Bidder (i) exclusively authorizes broker to submit such offer on behalf of Bidder and that any commission or fee of any type due and payable to such broker as a result of a sale shall be paid solely by Bidder and Bidder shall indemnify the Debtors and their agents in this regard, and (ii) acknowledges that it will comply with the Bidding Procedures.

(h) Bidder acknowledges that, pursuant to, *inter alia*, 18 U.S.C. § 371, it is a federal crime to engage in collusive bidding or to chill the bidding.

(i) Bidder confirms that it has not engaged, and will not engage, in any collusion with respect to the bidding or the sale.

(j) Identification of how the Bidder will pay the purchase price at closing.

[*Signatures appear on following page*]

AGREED & ACCEPTED this ____ day of ___________, 2025

Company: ___________________

By: _________________________
Name:
Title:

*BIDDER I.D.*
Bidder's Company: ____________________________________________
Bidder's Address: _____________________________________________
Bidder's Contact: _____________________________________________
Bidder's Phone & Facsimile Numbers: ___________________________
Bidder's Email Address: ________________________________________
Bidder's Tax ID Number: _______________________________________

*ATTORNEY OR AUTHORIZED AGENT I.D.*
Attorney or Agent Name: ________________________________________
Law Firm or Company: __________________________________________
Address: _____________________________________________________
Phone & Facsimile Numbers: _____________________________________
Email Address: _________________________________________________

*BIDDER WIRING INFORMATION FOR DEPOSIT RETURN*
Bidder's Bank Name: ___________________________________________
Account Name: ________________________________________________
Account Number: ______________________________________________
ABA Number: _________________________________________________
Bidder's Address: _____________________________________________

# Exhibit 2

## Auction and Hearing Notice

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| PARTY CITY HOLDCO INC., *et al.*,[1] | ) | Case No. 24-90621 (ARP) |
| Debtors. | ) | (Jointly Administered) |

**NOTICE OF BID DEADLINE AND POTENTIAL SALE HEARING**

On [●], 2025, the United States Bankruptcy Court for the Southern District of Texas (the "Court") entered the *Order Approving (A) Procedures for the Sale of Substantially all of the Debtors' Assets, (B) Procedures for the De Minimis Sale of Certain of the Debtors' Assets and (C) Assumption And Assignment Procedures, (II) Approving (A) the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests, And Encumbrances, (B) the Assumption and Assignment of Executory Contracts and Unexpired Leases and (III) Granting Related Relief* [Docket No. [●]] (the "Order"),[2] attached hereto as Exhibit A, by which the Court approved procedures by which the Debtors are authorized to conduct an auction (the "Auction" and, such procedures, the "Bidding Procedures"), for the sale of their assets (each, an "Asset").

**PLEASE TAKE NOTICE** that the Debtors are soliciting offers for the sale, liquidation, or other disposition of certain of the Debtors' Assets attached hereto as Exhibit B consistent with the Bidding Procedures approved by the Court's Order. **All interested bidders should carefully read the Bidding Procedures and Order.** To the extent that there are any inconsistencies between this notice and the Bidding Procedures or Order, the Bidding Procedures or Order, as applicable, shall govern in all respects.

**PLEASE TAKE FURTHER NOTICE** that, if the Debtors receive qualified competing bids within the requirements and time frame specified by the Bidding Procedures, the Debtors will file a notice on the docket in these chapter 11 cases **on or about [●]** and conduct an Auction of certain of the Debtors' Assets **on or about [●]** at the offices of Paul, Weiss, Rifkind, Wharton & Garrison LLP or by videoconference or such other form of remote communication established by

---

1 The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Party City Holdco Inc. (9758); Amscan Inc. (1359); Am-Source, LLC (8427); Party City Corporation (3692); Party City Holdings Inc. (3029); PC Intermediate Holdings, Inc. (1229); and Trisar, Inc. (0659). The location of the Debtors' service address for purposes of these chapter 11 cases is: 100 Tice Boulevard, Woodcliff Lake, New Jersey 07677.

2 All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Order or the Debtors' *Motion for Entry of an Order Approving (A) Procedures for the Sale of Substantially all of the Debtors' Assets, (B) Procedures for the De Minimis Sale of Certain of the Debtors' Assets and (C) Assumption And Assignment Procedures, (II) Approving (A) the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests, And Encumbrances, (B) the Assumption and Assignment of Executory Contracts and Unexpired Leases and (III) Granting Related Relief* [Docket No. [●]] (the "Motion").

the Debtors (or at any other location, or virtually, as the Debtors may hereafter designate on proper notice).

**PLEASE TAKE FURTHER NOTICE** that the Debtors will seek approval of the sale(s) at the Sale Hearing scheduled to commence on or before **[●], 2025** (the "Sale Hearing"), before Judge Alfredo R. Perez, at the Court, 515 Rusk Street, 4th Floor, Courtroom 400, Houston, Texas 77002 or by videoconference or such other form of remote communication established by the Court.

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to a proposed Sale (each, an "Objection") must be filed with the Court so as to be **actually received** by **[●], 2025, at 5:00 p.m. (prevailing Central Time)** (the "Sale Objection Deadline") and serve such Objection on: (a) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019; (b) Porter Hedges LLP, 1000 Main Street, 36th Floor, Houston, Texas 77002; (c) the Office of the United States Trustee for the Southern District of Texas; (d) counsel to any official committee of unsecured creditors appointed in these chapter 11 cases; (e) the Lender Notice Parties (as defined in the Motion); and (f) the applicable Successful Bidder(s) and Backup Bidder(s).

## CONSEQUENCES OF FAILING TO TIMELY MAKE AN OBJECTION

**ANY PARTY OR ENTITY WHO FAILS TO TIMELY MAKE AN OBJECTION TO THE SALE ON OR BEFORE THE SALE OBJECTION DEADLINE IN ACCORDANCE WITH THE ORDER SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE SALE, INCLUDING WITH RESPECT TO THE DISPOSITION OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, EXCEPT AS SET FORTH IN SUCH OTHER AGREEMENT WITH THE SUCCESSFUL BIDDER.**

**PLEASE TAKE FURTHER NOTICE** that copies of the Bidding Procedures and the Order, as well as all related exhibits, including the form assumption and assignment agreement, are available: (a) upon request to Kroll Restructuring Administration LLC (the claims, noticing, and solicitation agent retained in these chapter 11 cases) by calling (877) 510-9565 (toll-free) or, for international callers, (646) 798-8469; (b) by visiting the website maintained in these chapter 11 cases at https://cases.ra.kroll.com/PCHI2024; or (c) for a fee via PACER by visiting http://www.txsb.uscourts.gov.

[*Reminder of page intentionally left blank*]

[____], 2025

Respectfully submitted,

By: /s/ ______________________________

**PORTER HEDGES LLP**
John F. Higgins (TX Bar No. 09597500)
Aaron J. Power (TX Bar No. 24058058)
M. Shane Johnson (TX Bar No. 24083263)
Jordan T. Stevens (TX Bar No. 24106467)
Grecia V. Sarda (TX Bar No. 24132092)
1000 Main St., 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Facsimile: (713) 226-6248
jhiggins@porterhedges.com
apower@porterhedges.com
sjohnson@porterhedges.com
jstevens@porterhedges.com
gsarda@porterhedges.com

- and -

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Kenneth S. Ziman (*pro hac vice pending*)
Christopher Hopkins (*pro hac vice pending*)
Stephanie P. Lascano (*pro hac vice pending*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
kziman@paulweiss.com
chopkins@paulweiss.com
slascano@paulweiss.com

*Proposed Counsel to the Debtors*
*and the Debtors in Possession*

**Exhibit A**

**Order**

# Exhibit B

## Proposed Asset List

# Exhibit 3

## Notice of Successful Bidders

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PARTY CITY HOLDCO INC., *et al.*,[1] | ) | Case No. 24-90621 (ARP) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |

**NOTICE OF SUCCESSFUL [AND BACKUP] BIDDER[S] WITH RESPECT TO THE AUCTION OF CERTAIN OF THE DEBTORS' ASSETS**

On [●], 2025, the United States Bankruptcy Court for the Southern District of Texas (the "Court") entered the *Order Approving (A) Procedures for the Sale of Substantially all of the Debtors' Assets, (B) Procedures for the De Minimis Sale of Certain of the Debtors' Assets and (C) Assumption And Assignment Procedures, (II) Approving (A) the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests, And Encumbrances, (B) the Assumption and Assignment of Executory Contracts and Unexpired Leases and (III) Granting Related Relief* [Docket No. [●]] (the "Order"),[2] attached hereto as Exhibit A, by which the Court approved procedures by which the Debtors are authorized to conduct an auction (the "Auction") for the sale of their Assets (the "Assets").

**PLEASE TAKE FURTHER NOTICE** that, on [●], 2025, pursuant to the Order, the Debtors conducted the Auction with respect to certain of the Assets at the offices of Paul, Weiss, Rifkind, Wharton & Garrison LLP, located at 1285 Avenue of the Americas, New York, New York 10019, and/or virtually.

**PLEASE TAKE FURTHER NOTICE** that, at the conclusion of the Auction, the Debtors, in consultation with their professionals, selected the following Successful Bidder and Backup Bidder with respect to each of the Assets listed on Exhibit B attached hereto. The Debtors hereby notify you that they have determined, in the exercise of their business judgment, that each Asset set forth on Exhibit B is hereby sold, transferred, or assumed and assigned, as applicable, effective as of the date (the "Assumption Date") set forth in Exhibit B or such other date as the Debtors, the

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Party City Holdco Inc. (9758); Amscan Inc. (1359); Am-Source, LLC (8427); Party City Corporation (3692); Party City Holdings Inc. (3029); PC Intermediate Holdings, Inc. (1229); and Trisar, Inc. (0659). The location of the Debtors' service address for purposes of these chapter 11 cases is: 100 Tice Boulevard, Woodcliff Lake, New Jersey 07677.

[2] All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Order or the Debtors' *Motion for Entry of an Order (I) Approving (A) Procedures for the Sale of Substantially all of the Debtors' Assets, (B) Procedures for the De Minimis Sale of Certain of the Debtors' Assets and (C) Assumption And Assignment Procedures, (II) Approving (A) the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests, And Encumbrances, (B) the Assumption and Assignment of Executory Contracts and Unexpired Leases and (III) Granting Related Relief* [Docket No. [●]] (the "Motion").

proposed purchaser or assignee, and, to the extent applicable, the relevant Contract Counterparty agree.

**PLEASE TAKE FURTHER NOTICE** that the Sale Hearing to consider approval of the sale, liquidation, or other disposition of the Assets to the Successful Bidders at the Auction, free and clear of all liens, claims, interests, and encumbrances in accordance with Bankruptcy Code section 363(f), will be held before Judge Alfredo R. Perez, 515 Rusk Street, Courtroom 400, 4th Floor, Houston, Texas 77002, **on [●], 2025**.

**PLEASE TAKE FURTHER NOTICE** that, at the Sale Hearing, the Debtors will seek the Court's approval of the Successful Bid. Unless the Court orders otherwise or as agreed to by the applicable parties, the Sale Hearing shall be an evidentiary hearing on matters relating to the sale and there will be no further bidding at the Sale Hearing. In the event that the Successful Bidder cannot or refuses to consummate the sale following entry of a Sale Order because of the breach or failure on the part of the Successful Bidder, the Debtors shall promptly file a supplemental notice on or before the Sale Closing Deadline, seeking to approve the sale to the Backup Bidder, if applicable, on expedited notice and a hearing.

**PLEASE TAKE FURTHER NOTICE** that, to the extent applicable, the Debtors believe that the party to which each Selected Contract will be assigned has the financial wherewithal to meet all future obligations under such Selected Contract and the Debtors will, within 24 hours of the Auction, provide evidence thereof to such applicable Selected Contract Counterparty (and their counsel, if known) thereby demonstrating that the proposed assignee of the Selected Contract has the ability to comply with the requirements of adequate assurance of future performance.

**PLEASE TAKE FURTHER NOTICE** that parties objecting to the proposed Sale, the proposed assumption and assignment, the Successful Bidder's proposed form of adequate assurance of future performance, and/or Cure Costs must file a written objection (each, an "Objection") so that such objection is filed with the Court by **[●], 2025, at 5:00 p.m. (prevailing Central Time)** and serve such Objection on: (a) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019; (b) Porter Hedges LLP, 1000 Main Street, 36th Floor, Houston, Texas 77002; (c) the Office of the United States Trustee for the Southern District of Texas; (d) counsel to any official committee of unsecured creditors appointed in these chapter 11 cases; (e) the Lender Notice Parties (as defined in the Motion); and (f) the applicable Successful Bidder(s) and Backup Bidder(s).

**CONSEQUENCES OF FAILING TO TIMELY MAKE AN OBJECTION**

**ANY PARTY OR ENTITY WHO FAILS TO TIMELY MAKE AN OBJECTION TO THE SALE ON OR BEFORE THE SALE OBJECTION DEADLINE IN ACCORDANCE WITH THE ORDER SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE SALE, INCLUDING WITH RESPECT TO THE DISPOSITION OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, EXCEPT AS SET FORTH IN SUCH OTHER AGREEMENT WITH THE SUCCESSFUL BIDDER.**

**PLEASE TAKE FURTHER NOTICE** that, absent an Objection being timely filed, the sale or assumption and assignment of each Asset shall become effective on the date set forth in Exhibit B, or such other date as the Debtors, the proposed purchaser or assignee, and, to the extent applicable, the relevant Selected Contract Counterparty agree.[3]

**PLEASE TAKE FURTHER NOTICE** that, if an Objection is timely filed and not withdrawn or resolved, such Objection will be heard at the Sale Hearing or such other date and time as agreed to by the Debtors and the objecting party or ordered by the Court. If such Objection is overruled or withdrawn, such Asset shall be sold as of the date set forth in Exhibit 2 or such other date as the Debtors, the proposed purchaser or assignee, and, to the extent applicable, the relevant Selected Contract Counterparty agree.

**PLEASE TAKE FURTHER NOTICE** that copies of the Bidding Procedures and the Order, as well as all related exhibits, including the form assumption and assignment agreement, are available: (a) upon request to Kroll Restructuring Administration LLC (the claims, noticing, and solicitation agent retained in these chapter 11 cases) by calling (877) 510-9565 (toll-free) or, for international callers, (646) 798-8469; (b) by visiting the website maintained in these chapter 11 cases at https://cases.ra.kroll.com/PCHI2024; or (c) for a fee via PACER by visiting http://www.txsb.uscourts.gov.

[*Reminder of page intentionally left blank]*

[3] An objection to the assumption and assignment of any particular Selected Contract listed in this Notice of Successful Bidders shall not constitute an objection to the assumption and assignment of any other Lease listed in this Notice of Successful Bidders. Any objection to the assumption and assignment of any particular Lease listed in this Notice of Successful Bidders must state with specificity the Lease(s) to which it is directed. For each particular unexpired lease whose assumption and assignment is not timely or properly objected to, such assumption and assignment will be effective in accordance with this Notice of Successful Bidders and the Order.

[____], 2025

Respectfully submitted,

By: /s/ ______________________________

**PORTER HEDGES LLP**
John F. Higgins (TX Bar No. 09597500)
Aaron J. Power (TX Bar No. 24058058)
M. Shane Johnson (TX Bar No. 24083263)
Jordan T. Stevens (TX Bar No. 24106467)
Grecia V. Sarda (TX Bar No. 24132092)
1000 Main St., 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Facsimile: (713) 226-6248
jhiggins@porterhedges.com
apower@porterhedges.com
sjohnson@porterhedges.com
jstevens@porterhedges.com
gsarda@porterhedges.com

- and -

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Kenneth S. Ziman (*pro hac vice pending*)
Christopher Hopkins (*pro hac vice pending*)
Stephanie P. Lascano (*pro hac vice pending*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
kziman@paulweiss.com
chopkins@paulweiss.com
slascano@paulweiss.com

*Proposed Counsel to the Debtors and the Debtors in Possession*

**Exhibit A**

**Order**

## Exhibit B

### Successful and Backup Bidder List

| Asset(s) | [Selected Contract Counterparty & Address, If Applicable] | Successful Bidder | [Backup Bidder] | [Proposed Breakup Fee] | Price | Cure Costs | Transfer / Assignment Date | Assignee |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

# Exhibit 4

## De Minimis Asset Sale Notice

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PARTY CITY HOLDCO INC., *et al.*,[1] | ) | Case No. 24-90621 (ARP) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |

**NOTICE OF DE MINIMIS ASSET SALE**

On [●], 2025, the United States Bankruptcy Court for the Southern District of Texas (the "Court") entered the *Order Approving (A) Procedures for the Sale of Substantially all of the Debtors' Assets, (B) Procedures for the De Minimis Sale of Certain of the Debtors' Assets and (C) Assumption And Assignment Procedures, (II) Approving (A) the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests, And Encumbrances, (B) the Assumption and Assignment of Executory Contracts and Unexpired Leases and (III) Granting Related Relief* [Docket No. [●]] (the "Order"),[2] attached hereto as Exhibit A, by which the Court approved procedures by which the Debtors are authorized to sell certain assets with an aggregate purchase price equal to or less than $2,500,000 (the "De Minimis Assets").

**PLEASE TAKE NOTICE** that, pursuant to the Order, the Debtors propose to sell the De Minimis Assets as set forth and described on Exhibit B attached hereto (the "De Minimis Sale Assets"). Exhibit B identifies, for each De Minimis Sale Asset: (i) a description of the De Minimis Sale Assets and their location, (ii) the De Minimis Asset Purchaser, and the purchaser's relationship, if any, with the Debtors, (iii) the material economic terms and conditions of the sale, (iv) the identity of any party asserting a lien, claim, interest, or encumbrance on any De Minimis Sale Asset, any such lien, claim, interest, or encumbrance attaching to the proceeds of the sale described in Exhibit B, and (v) other relevant information.

**PLEASE TAKE FURTHER NOTICE** that, any recipient of this notice may object to the proposed sale of any De Minimis Sale Asset must file a written objection (each, an "Objection") so that such objection is filed with the Court so as to be **actually received** within 10 days of service of this notice (the "De Minimis Sale Objection Deadline"). Any Objection must be in writing and

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Party City Holdco Inc. (9758); Amscan Inc. (1359); Am-Source, LLC (8427); Party City Corporation (3692); Party City Holdings Inc. (3029); PC Intermediate Holdings, Inc. (1229); and Trisar, Inc. (0659). The location of the Debtors' service address for purposes of these chapter 11 cases is: 100 Tice Boulevard, Woodcliff Lake, New Jersey 07677.

[2] All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Order or the *Debtors' Motion for Entry of an Order Approving (A) Procedures for the Sale of Substantially all of the Debtors' Assets, (B) Procedures for the De Minimis Sale of Certain of the Debtors' Assets and (C) Assumption And Assignment Procedures, (II) Approving (A) the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests, And Encumbrances, (B) the Assumption and Assignment of Executory Contracts and Unexpired Leases and (III) Granting Related Relief* [Docket No. [●]] (the "Motion").

must be filed on the docket of the Debtors' chapter 11 cases and served on: (a) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019; (b) Porter Hedges LLP, 1000 Main Street, 36th Floor, Houston, Texas 77002; (c) the Office of the United States Trustee for the Southern District of Texas; (d) counsel to any official committee of unsecured creditors appointed in these chapter 11 cases; (e) the Lender Notice Parties (as defined in the Motion); and (f) the applicable Successful Bidder(s) and Backup Bidder(s).

**CONSEQUENCES OF FAILING TO TIMELY MAKE AN OBJECTION**

**ANY PARTY OR ENTITY WHO FAILS TO TIMELY MAKE AN OBJECTION TO THE SALE ON OR BEFORE THE DE MINIMIS SALE OBJECTION IN ACCORDANCE WITH THE ORDER SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE SALE, INCLUDING WITH RESPECT TO THE DISPOSITION OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, EXCEPT AS SET FORTH IN SUCH OTHER AGREEMENT WITH THE DE MINIMIS ASSET PURCHASER.**

**PLEASE TAKE FURTHER NOTICE** that copies of the Order, as well as all related exhibits, are available: (a) upon request to Kroll Restructuring Administration LLC (the claims, noticing, and solicitation agent retained in these chapter 11 cases) by calling (877) 510-9565 (toll-free) or, for international callers, (646) 798-8469; (b) by visiting the website maintained in these chapter 11 cases at https://cases.ra.kroll.com/PCHI2024; or (c) for a fee via PACER by visiting http://www.txsb.uscourts.gov.

[____], 2025

Respectfully submitted,

By: /s/ ________________________________

**PORTER HEDGES LLP**
John F. Higgins (TX Bar No. 09597500)
Aaron J. Power (TX Bar No. 24058058)
M. Shane Johnson (TX Bar No. 24083263)
Jordan T. Stevens (TX Bar No. 24106467)
Grecia V. Sarda (TX Bar No. 24132092)
1000 Main St., 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Facsimile: (713) 226-6248
jhiggins@porterhedges.com
apower@porterhedges.com
sjohnson@porterhedges.com
jstevens@porterhedges.com
gsarda@porterhedges.com

- and -

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Kenneth S. Ziman (*pro hac vice pending*)
Christopher Hopkins (*pro hac vice pending*)
Stephanie P. Lascano (*pro hac vice pending*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
kziman@paulweiss.com
chopkins@paulweiss.com
slascano@paulweiss.com

*Proposed Counsel to the Debtors and the Debtors in Possession*

# **Exhibit A**

## **Order**

**<u>Exhibit B</u>**

**De Minimis Asset List**

| De Minimis Asset(s) | Encumbrances on De Minimis Asset(s) | De Minimis Asset Purchaser | Relationship of De Minimis Asset Purchaser to Debtors (if any) | Price | Conditions of De Minimis Asset Sale | Sale Effective Date | Identity of any Party Asserting Encumbrance on De Minimis Asset(s) |
|---|---|---|---|---|---|---|---|
| | | | | | | | |