## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PARTY CITY HOLDCO INC., *et al.*,[1] | ) | Case No. 24-90621 (ARP) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | (Emergency Hearing Requested) |

**DEBTORS' <u>EMERGENCY</u> MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO (A) USE CASH COLLATERAL AND (B) GRANT LIENS AND PROVIDE SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (II) GRANTING ADEQUATE PROTECTION TO CERTAIN PREPETITION SECURED PARTIES, (III) MODIFYING THE AUTOMATIC STAY, (IV) SCHEDULING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF**

> **Emergency relief has been requested. Relief is requested not later than 10:00 a.m. (prevailing Central Time) on December 23, 2024.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on December 23, 2024, at 10:00 a.m. (prevailing Central Time) in Courtroom 400, 4th floor, 515 Rusk Street, Houston, Texas 77002. Participation at the hearing will only be permitted by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. Once connected, you will be asked to enter the conference room number. Judge Perez's conference room number is 282694. Video communication will be by use of the GoTo platform. Connect via the free GoTo application or click the link on Judge Perez's homepage. The meeting code is "JudgePerez". Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Perez's homepage. Select the case name, complete the required fields, and click "Submit" to complete your appearance.**

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Party City Holdco Inc. (9758); Amscan Inc. (1359); Am-Source, LLC (8427); Party City Corporation (3692); Party City Holdings Inc. (3029); PC Intermediate Holdings, Inc. (1229); and Trisar, Inc. (0659). The location of the Debtors' service address for purposes of these chapter 11 cases is: 100 Tice Boulevard, Woodcliff Lake, New Jersey 07677.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state as follows in support of this motion:

## **Relief Requested[2]**

1.      The Debtors seek entry of an interim order, substantially in the form attached hereto (the "Interim Order"), and a final order (the "Final Order" and, together with the Interim Order, the "Cash Collateral Orders") granting the following relief:[3]

- ***Cash Collateral***:  Authorizing the Debtors to continue to use Prepetition Collateral, including Cash Collateral (as such term is defined in Section 363(a) of the Bankruptcy Code) of the Prepetition Secured Parties under the Prepetition Credit Documents, subject to the terms set forth in the Cash Collateral Orders;

- ***Adequate Protection***:  Authorizing the Debtors to grant adequate protection to the Prepetition Secured Parties, including the Adequate Protection 507(b) Claims and the Adequate Protection Liens, subject to the terms set forth in the Cash Collateral Orders;

- ***Automatic Stay***: Modifying the automatic stay under section 362 of the Bankruptcy Code (the "Automatic Stay") to the extent necessary to implement and effectuate the terms and conditions of the Cash Collateral Orders; and

- ***Final Hearing***:  Scheduling a final hearing (the "Final Hearing") to consider final approval of the use of Cash Collateral pursuant to a proposed Final Order, as set forth in this motion.

2.      In support of this motion, the Debtors submit the (a) *Declaration of Deborah Rieger-Paganis, Chief Restructuring Officer of Party City Holdco Inc., in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration") and (b) *Declaration of Deborah Rieger-Paganis in Support of Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors To (A) Use Cash Collateral and (B) Grant Liens And Provide Superpriority Administrative Expense Claims, (II) Granting Adequate Protection to Certain*

---

[2]     The Debtors will file the form of Final Order prior to the Final Hearing (as defined herein).

[3]     The summaries contained in this motion are qualified in their entirety by the provisions of the documents referenced.  To the extent anything in this motion is inconsistent with such documents, the terms of the applicable documents shall control.

*Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing,*
*and (V) Granting Related Relief* (the "<u>Rieger-Paganis Declaration</u>" and, together with the First
Day Declaration, the "<u>Declarations</u>").   Each of the Declarations is incorporated herein by
reference.

### Jurisdiction and Venue

3.     The United States Bankruptcy Court for the Southern District of Texas
(the "<u>Court</u>") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended*
*Standing Order of Reference from the United States District Court for the Southern District of*
*Texas*, dated May 24, 2012 (the "<u>Amended Standing Order</u>").  This matter is a core proceeding
within the meaning of 28 U.S.C. § 157(b).  The Debtors confirm their consent to the entry of a
final order by the Court.

4.     Venue is proper pursuant to 28 U.S.C. § 1408.

5.     The statutory bases for the relief requested herein are sections 105, 361, 362, 363,
503, and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*
(the "<u>Bankruptcy Code</u>"), rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy
Procedure (the "<u>Bankruptcy Rules</u>"), rules 4002-1 and 9013-1 of the Bankruptcy Local Rules for
the Southern District of Texas (the "<u>Bankruptcy Local Rules</u>"), and the *Procedures for Complex*
*Cases in the Southern District of Texas* (the "<u>Complex Case Procedures</u>").

6.     On December 21, 2024 (the "<u>Petition Date</u>"), the Debtors filed voluntary petitions
for relief under chapter 11 of the Bankruptcy Code.  On December 21, 2024, the Court entered an
order authorizing joint the administration and procedural consolidation of these chapter 11 cases.
The Debtors are operating their business and managing their property as debtors in possession
pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment

of a trustee or examiner has been made in these chapter 11 cases, and no committees have been
appointed or designated.

**Concise Statement Pursuant to Bankruptcy Rule 4001**

7.      In accordance with Bankruptcy Rules 4001(b) and 4001(d), the following is a
concise statement and summary of the proposed material terms of the Interim Order:[4]

| | **Summary of Material Terms** |
|---|---|
| **Parties with an Interest in Cash Collateral**<br><br>**Bankruptcy Rule 4001(b)(1)(B)(i)**<br><br>Interim Order ¶ G(i)–G(viii) | *The Prepetition ABL Secured Parties*:  The Prepetition ABL Lenders, the Prepetition ABL Agent, and all other holders of Prepetition ABL Debt<br><br>*The Prepetition 2L Notes Secured Parties*:  The Prepetition 2L Notes Trustee, the Prepetition 2L Holders, and all other holders of Prepetition 2L Notes Debt |
| **Purposes for Use of Cash Collateral**<br><br>**Bankruptcy Rule 4001(b)(1)(B)(ii)**<br><br>Interim Order ¶ 2 | Subject to any additional restrictions in the Interim Order or the Final Order, Cash Collateral shall be used in accordance with and as provided in the Approved Budget (subject to permitted variances). |
| **Budget and Variance Tests**<br><br>**Bankruptcy Rule 4001(b)(1)(B)(ii)**<br><br>Interim Order ¶ 6 | The use of Cash Collateral is subject to the Approved Budget, attached as Schedule 1 to the Interim Order.<br><br>The Debtors will update the Budget (including the Wind Down Reserve Amount) upon each of:  (a) January 31, 2024, (b) February 28, 2024, and (c) thereafter, as requested by the Directing Cash Collateral Agent or at the Debtors' election.<br><br>Starting on January 3, 2025, and on the last business day of each week thereafter, the Debtors will deliver a Variance Test comparing, for the applicable Testing Period (a) aggregate actual cash receipts compared to aggregate projected cash receipts and (b) aggregate actual cash disbursements compared to the projected cumulative cash disbursements.<br><br>The Permitted Deviation for any Variance Test is (a) for receipts solely with respect to the Budget line items reflecting Store |

---

[4]     This summary is intended only to assist the Court by reference to the Interim Order and is qualified in its entirety
by the terms of the Interim Order.  Capitalized terms used in this statement but not otherwise defined herein shall
have the meanings ascribed to such terms in the Interim Order.

| | **Summary of Material Terms** |
|---|---|
| | Closing Sales receipts, an aggregate unfavorable Variance equal to or less than (i) 20% for the first week of the chapter 11 cases and (ii) 15% thereafter and (b) for disbursements, an aggregate unfavorable Variance equal to or less than (i) 17.5% for the first week of the chapter 11 cases and (ii) 12.5% thereafter. |
| **Adequate Protection**<br><br>**Bankruptcy Rule 4001(b)(1)(B)(iv)**<br><br>Interim Order ¶ 5 | Pursuant to sections 361, 362, 363(e), 364(d)(1) and 507 of the Bankruptcy Code, the adequate protection provided to the Prepetition Secured Parties for the diminution in value of their respective interests in the Prepetition Collateral (including Cash Collateral) from and after the Petition Date includes (as applicable):<br><br>• allowed superpriority administrative expense claims;<br><br>• valid, binding, enforceable, and automatically perfected liens on all Adequate Protection Collateral;<br><br>• payment of the reasonable and documented professional fees and expenses of the Prepetition ABL Secured Parties and the Prepetition 2L Notes Secured Parties; and<br><br>• certain reporting obligations (as described further herein). |

| | **Summary of Material Terms** |
|---|---|
| **Carve-Out/Reserves**<br><br>**Bankruptcy Rule 4001(b)(1)(B)(iii)**<br><br>Interim Order ¶¶ 3, 9 | *Carve-Out.*  The Interim Order provides a carve out of certain statutory fees and allowed professional fees of the Debtors and any committee appointed in the chapter 11 cases pursuant to section 1103 of the Bankruptcy Code.  Upon the delivery of a Carve-Out Trigger Notice (which may only be delivered following the occurrence and during the continuation of a Cash Collateral Termination Event), the amount of Allowed Professional Fees of Estate Professionals included in the Carve-Out shall not exceed $1,750,000.<br><br>*Wind Down Reserve.*  The Interim Order provides for a Wind Down Reserve in the amount of $28 million, subject to adjustment in accordance with the Budget approval process.<br><br>*WARN/Severance Reserve.*  The Interim Order provides for a WARN/Severance Reserve in an amount up to $3.5 million<br><br>The Wind Down Reserve and the WARN/Severance Reserve shall be funded in accordance with the Approved Budget from Collections and the proceeds of the Prepetition Collateral (including Cash Collateral).  The Reserves are subject to the liens of the Prepetition ABL Agent and the Prepetition 2L Notes Trustee and constitute Collateral; *provided* that the Prepetition Secured Parties' right to exercise remedies with respect to the Reserves is subject to making the Required Reserve Payments. |
| **Liquidation**<br><br>**Bankruptcy Rule 4001(b)(1)(B)(iii)**<br><br>Interim Order ¶¶ 4 | On the second business day of each week beginning with the third full week after the date hereof, any cash received from the Debtors by any source, as of close of business on the previous Friday, that is in excess of the amounts necessary to fully fund the Reserves and Carve-Out shall be transferred to the Prepetition ABL Agent until repayment in full of all the Prepetition ABL Obligations. |
| **Termination Events/Remedies**<br><br>**Bankruptcy Rule 4001(b)(1)(B)(iii); Complex Case Procedures § C.8(e), (i)**<br><br>Interim Order ¶ 11(b) | Subject to a five business days' notice period, upon the occurrence of a Cash Collateral Termination Event, the Directing Cash Collateral Agent may take any action and exercise all rights and remedies provided to them by the Interim Order, the applicable Prepetition Documents, applicable law, or otherwise.<br><br>Cash Collateral Termination Events under the Interim Order include, but are not limited to, the following, which may be waived, extended, or consented to, as applicable, by the Directing Cash Collateral Agent:<br><br>• A failure by the Debtors of any Variance Test; |

| | **Summary of Material Terms** |
|---|---|
| | <ul><li>The failure to make any payments required by paragraphs 4 and 5 of the Interim Order</li><li>The Debtors' failure to comply with any Adequate Protection Milestone set forth on Schedule 2 to the Interim Order</li><li>A material breach by the Debtors of the Interim Order or Final Order (*provided* that the terms and provisions with respect to adequate protection shall be deemed material)</li><li>The failure to deliver any Borrowing Base Certificate when required, the failure to make any other adequate protection payments required to be made under the Cash Collateral Orders to the Prepetition Secured Parties</li><li>The failure to fund the Carve-Out Account pursuant to the paragraph 9 of the Interim Order</li><li>The creation of any liens on Collateral that are pari passu or senior to the liens in favor of the applicable Prepetition Secured Parties (except the Carve-Out)</li><li>The Debtors losing the exclusive right to file and solicit acceptances of a chapter 11 plan</li><li>The Debtors attempting to invalidate, reduce, or otherwise impair the Prepetition Secured Obligations</li><li>The conversion of the Debtors' chapter 11 cases to a case under chapter 7 of the Bankruptcy Code, the appointment of an examiner with expanded powers beyond those in sections 1106(a)(3) and (4) of the Bankruptcy Code, a trustee, or a responsible officer, in one or more of the chapter 11 cases, or the dismissal of the chapter 11 cases</li><li>The lifting of the Automatic Stay with respect to or the exercise of any remedies against any portion of the Collateral with a fair value in excess of $1,000,000</li><li>The stay, reversal, vacatur, rescission or other modification of the Interim Order or Final Order in a manner materially adverse to the Prepetition Secured Parties</li><li>Any of the Debtors file any motions, pleadings, briefs, or support any other parties in furtherance of any event that would constitute a Cash Collateral Termination Event</li></ul> |

| | **Summary of Material Terms** |
|---|---|
| | • The effective date of any chapter 11 plan<br><br>• The earlier of (i) the liquidation and sale of all Collateral or (ii) March 31, 2025, which may be extended by the Directing Cash Collateral Agent in its sole discretion |
| **Waiver/Modification of the Automatic Stay**<br><br>**Bankruptcy Rule 4001(b)(1)(B)(iii)**<br><br>Interim Order ¶¶ 8, 32 | Pursuant to the Interim Order, the automatic stay provisions of section 362 of the Bankruptcy Code are modified to the extent necessary to implement and effectuate the terms of the Interim Order. |
| **Modification of Non-Bankruptcy Law Relating to Perfection of Liens on Estate Property**<br><br>**Bankruptcy Rule 4001(b)(1)(B)(iii)**<br><br>Interim Order ¶ 8 | The Interim Order contains customary provisions providing that entry of the Interim Order shall be sufficient and conclusive evidence of the creation, validity, perfection, and priority of all liens granted therein, including the Adequate Protection Liens, without the necessity of any filings or recordings under non-bankruptcy law. |
| **Reporting**<br><br>**Bankruptcy Rule 4001(b)(1)(iii)**<br><br>Interim Order ¶ 5(i) | The Interim Order requires compliance with all reporting required under the Prepetition ABL Credit Agreement when due and any other reporting reasonably requested by the Prepetition ABL Agent or its advisors.  Such reporting shall also be provided in similar form to the Prepetition 2L Notes Trustee.<br><br>In addition to the Debtors' prepetition reporting obligations, the Interim Order also requires the Debtors' to provide additional reporting, including delivery of:<br><br>• a Borrowing Base Certificate<br><br>• Sales Process Reporting |
| **Provisions Providing for the Reaffirmation of Prepetition Debt**<br><br>**Bankruptcy Rule 4001(b)(1)(B)(iii)**<br><br>Interim Order ¶¶ G, 19 | The Interim Order provides stipulations by the Debtor reaffirming the Prepetition ABL Facility and Prepetition 2L Notes, and a waiver of any right to challenge the foregoing.<br><br>The Debtors' stipulations are binding on the Debtors as of the entry of the Interim Order, and shall only be binding on third parties if no proceeding has been commenced by the earlier of (a) with respect to any party in interest other than a Creditors' Committee, 75 days after entry of the Interim Order, and (b) with respect to the Creditors' Committee, no later than 60 days after its appointment, with typical exceptions for |

|  | **Summary of Material Terms** |
|---|---|
|  | trustees appointed prior to the conclusion of the Challenge Period. |
| **Adequate Protection Milestones**<br><br>**Bankruptcy Rule 4001(b)(1)(B)(iii)**<br><br>Interim Order, Schedule 2 | The Interim Order provides for the following Adequate Protection Milestones:<br><br>• *January 31, 2025.* The Debtors shall have delivered a reasonably detailed report from Gordon Brothers commenting on sales performance, and with respect to the going-out-of-business sales of inventory, including a recommendation whether to continue such sales into March 2025.<br><br>• *February 28, 2025.* The Debtors shall have completed all inventory liquidations and shall have vacated all retail premises and returned possession to the landlords in accordance with the leases governing such locations.<br><br>• *February 28, 2025.* The Debtors will have used their best efforts to have vacated all distribution centers, turned over possession to the landlords and will have filed a motion to either (i) reject the leases with respect to such distribution centers in accordance with section 365 of the Bankruptcy Code or (ii) assume and assign the lease to a third-party pursuant to sections 363 and 365 of the Bankruptcy Code by no later than March 31.<br><br>• *March 15, 2025.* The Debtors shall have completed a marketing and sale process to effectuate a sale of their intellectual property assets with qualified buyer(s) pursuant to a sales process reasonably acceptable to the Directing Cash Collateral Agent.<br><br>• *March 31, 2025.* The Debtors shall have completed a marketing and sale process to effectuate a sale or the assumption and assignment (as applicable), of their saleable real property assets (including leases) with qualified buyer(s) pursuant to a sales process reasonably acceptable to the Directing Cash Collateral Agent. |
| **Indemnification**<br><br>**Bankruptcy Rule 4001(b)(1)(B)(iii)**<br><br>Interim Order ¶ 21 | The Debtors shall indemnify and hold harmless the Prepetition Secured Parties in accordance with the Prepetition Credit Documents, subject to customary exceptions including (i) the gross negligence, bad faith, or willful misconduct of an indemnitee or (ii) a material breach of the Prepetition Credit Documents. |

|  | **Summary of Material Terms** |
|---|---|
| **Section 506(c) and 552(b) Waiver**<br><br>**Bankruptcy Rule 4001(b)(1)(B)(iii)**<br><br>Interim Order ¶ 14 | Subject to the entry of the Final Order, the Prepetition Secured Parties are entitled to a waiver of (a) any "equities of the case" exception under section 552(b) of the Bankruptcy Code and (b) section 506(c) of the Bankruptcy Code. |
| **Liens on Avoidance Proceeds**<br><br>**Bankruptcy Rule 4001(b)(1)(B)(iii)**<br><br>Interim Order ¶ 5 | Subject to the entry of the Final Order, the Avoidance Proceeds (but not the Avoidance Actions) shall be subject to liens in favor of the Adequate Protection Claims. |

**I.      The Debtors' Prepetition Capital Structure**

8.      Of the Debtors' wholly owned subsidiaries, seven entities are obligated on portions of the Debtors' prepetition funded debt.  As of the Petition Date, the Debtors have approximately $399 million in total funded debt obligations.

9.      The following table depicts the Debtors' prepetition capital structure:

| Funded Debt | Maturity | Approximate Outstanding Principal Amount as of the Petition Date |
|---|---|---|
| **Secured Debt** | | |
| Prepetition ABL Facility | October 2028 | $149,165,942 |
| FILO Facility | October 2028 | $13,311,969 |
| Prepetition 2L Notes | January 2029 | $267,527,394 |
| | **Total Secured Debt** | **$399,005,305** |

**A.      Prepetition ABL/FILO Facilities**

10.      Party City Holdings Inc. and Party City Corporation, as borrowers, and JPMorgan Chase Bank, N.A., as administrative agent (the "Prepetition ABL Agent"), are party to that certain Prepetition ABL Credit Agreement, dated as of October 12, 2023 (the "Prepetition ABL Credit Agreement").  The Prepetition ABL Credit Agreement, as amended pursuant to that certain Forbearance Agreement, dated as of December 17, 2024 (the "Forbearance Agreement"), provided

for an asset-based lending revolving credit facility in an amount up to $250 million, including $40 million in swingline loans and $60 million in letters of credit (the "Prepetition ABL Facility"). The Prepetition ABL Credit Agreement also provides for an asset-based revolving credit facility providing for an additional $17.1 million of revolving commitments on a first-in, last-out basis (the "Prepetition FILO Facility" and, together with the Prepetition ABL Facility, the "Prepetition ABL/FILO Facilities," the lenders under the Prepetition ABL/FILO Facilities, the "Prepetition ABL/FILO Lenders"). Each of the other Debtors guarantees the Prepetition ABL/FILO Facilities.

11.     The maturity date on the Prepetition ABL/FILO Facilities is October 12, 2028, and the obligations thereunder are secured by first liens on substantially all of the Debtors' assets. As of the Petition Date, approximately $118 million in principal amount was outstanding under the Prepetition ABL Facility and an additional $31 million was outstanding under the Prepetition FILO Facility.

### B.     Prepetition 2L Notes

12.     On October 12, 2023, PCHI issued approximately $232.4 million in aggregate principal amount of 12.00% senior secured second lien payable-in-kind toggle notes due 2028 (the "Prepetition 2L Notes") under an Indenture with the other Debtors, as guarantors, and Wilmington Savings Fund Society, FSB, as trustee, collateral trustee, paying agent, and registrar (the "Prepetition 2L Notes Trustee"). The maturity date of the Prepetition 2L Notes is January 20, 2029, and the Prepetition 2L Notes are secured by second-priority liens on all assets of PCHI and the guarantors, which are junior to the first-priority security interests securing the Prepetition ABL/FILO Facilities. As of the Petition Date, approximately $268 million in aggregate principal amount of Prepetition 2L Notes was outstanding.

### C.     Intercreditor Agreement

13.     The Prepetition ABL Agent and the Prepetition 2L Notes Trustee, together with Party City Holdings Inc., PCHI, and Party City Corporation, entered into that certain Intercreditor Agreement, dated as of October 12, 2023 (the "Prepetition Intercreditor Agreement").   The Prepetition Intercreditor Agreement sets forth the agreements between the ABL Agent and the Prepetition 2L Trustee with respect to the priority of liens on the collateral securing the Prepetition ABL/FILO Facilities and the Prepetition 2L Notes, and the respective rights and remedies of the various lenders, among other things.   As a general matter, the Prepetition Intercreditor Agreement generally provides the Prepetition ABL/FILO Lenders control over matters concerning the Collateral until the repayment in full of the obligations outstanding under the Prepetition ABL/FILO Facilities.

### The Debtors' Need for Use of Cash Collateral and Development of the Budget

14.     As of the Petition Date, the Debtors had approximately $16.4 million total cash on hand, substantially all of which constitutes Cash Collateral.   The Debtors' use of Cash Collateral is therefore critical to funding the Debtors' day-to-day operations and facilitating their orderly liquidation process in a value-maximizing manner.   The Debtors, with the assistance of their financial advisor, AlixPartners, developed an initial 13-week budget, a copy of which is attached as **Schedule 1** to the Interim Order (the "Initial Budget").   The Initial Budget incorporates a number of factors and reasonable assumptions, including the Company's substantial working capital requirements, the effect of filing for chapter 11 on the Debtors' operations, cash disbursements needed to maintain the Debtors' business during the course of their wind down, and cash flows from the Debtors' wind down operations.   Furthermore, the Initial Budget includes all of the expenditures that the Debtors seek authority to pay under various "first day" pleadings, if approved by the Court.

15.     With the consent of the Prepetition Secured Parties, the Debtors will use Cash Collateral to fund working capital, capital expenditures, and other general corporate purposes. Absent access to Cash Collateral, the Debtors will lack the liquidity necessary to continue their wind down operations to the material detriment of the Debtors' estates and their stakeholders. Therefore, the Debtors have an immediate need to access the Cash Collateral on an interim basis as well as throughout the pendency of these chapter 11 cases.

### Use of Cash Collateral

16.     The Interim Order contemplates that the Debtors will have immediate access to Cash Collateral on a consensual basis, subject to the terms and conditions of the Interim Order, which will:  (a) ensure that the Debtors have sufficient working capital to, among other things, continue operating through their store closing process by paying necessary employees, vendors, landlords, and service providers and (b) enable the Debtors to honor critical prepetition obligations under and in accordance with the proposed "first-day" relief if approved by the Court.   By providing the Debtors with the immediate ability to use Cash Collateral, the Interim Order also ensures that the Debtors avoid unnecessary business disruptions that would derail the Debtors' efficient and orderly wind down to the detriment of their estates and stakeholders.

### Forms of Adequate Protection

17.     After arm's-length, good faith negotiations, the Prepetition Secured Parties have agreed to consent to the use of the Prepetition Collateral, including Cash Collateral, subject to the provision by the Debtors of adequate protection.  Among other things, the adequate protection contemplated by the Cash Collateral Orders is designed to protect the Prepetition Secured Parties' interests in the Debtors' property from any diminution in value caused by, among other reasons, imposition of the automatic stay and the Debtors' use of the Prepetition Collateral, including Cash

Collateral, during the pendency of these chapter 11 cases.  Specifically, the Debtors have agreed

to provide the following forms of adequate protection:

- **Adequate Protection Liens:**  As further set forth in the Interim Order, the Debtors will grant the Prepetition ABL Agent and the Prepetition 2L Notes Trustee, for the benefit of the applicable Prepetition Secured Parties, a security interest in and lien on the Adequate Protection Collateral, with the priorities set forth in the Interim Order.

- **Adequate Protection 507(b) Claims**:  As further described in the Interim Order, each of the Prepetition ABL Agent and Prepetition 2L Notes Trustee, on behalf of the applicable Prepetition Secured Parties, will be granted adequate protection super-priority claims as provided in sections 503(b) and 507(b) of the Bankruptcy Code, with the priorities set forth in the Interim Order.

- **Adequate Protection Fees and Expenses**:  The Debtors will pay certain reasonable fees and expenses of the Prepetition ABL Secured Parties and Prepetition 2L Notes Secured Parties.

18.    The Adequate Protection Liens, Adequate Protection Superiority Claims, and

Adequate Protection Payments (as applicable), are each conferred separately to each of the

Prepetition ABL Agent and Prepetition 2L Notes Trustee for the benefit of the applicable

Prepetition Secured Parties.

**Use of Cash Collateral is Necessary to Preserve the Debtors' Estates**

19.    Given the Debtors' current projections and the absence of sufficient unencumbered

assets, immediate use of cash collateral is necessary for the orderly liquidation of the Prepetition

Collateral, to fund wages, salaries, and benefits of the Debtors' employees, to pay the Debtors'

landlords, to finance the costs of these chapter 11 cases, and to meet other working capital and

operational needs of the Debtors.  Without immediate access to use of Cash Collateral on the terms

requested in the Interim Order, the Debtors will suffer immediate and irreparable harm. Consequently, use of Cash Collateral is necessary to preserve the value of the Debtors' estates.

**Basis for Relief**

**II.     The Use of Cash Collateral Is Warranted and Should Be Approved**

20.     The Debtors' use of property of their estates, including the Cash Collateral, is governed by section 363 of the Bankruptcy Code, which provides in relevant part that if the debtor is authorized to continuing operating its business during its chapter 11 case, the debtor "may use property of the estate in the ordinary course of business without notice or a hearing."  11 U.S.C. § 363(c)(1).

21.     Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor may not use cash collateral unless "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section."  11 U.S.C. § 363(c)(2).  Section 363(e) of the Bankruptcy Code provides for adequate protection of interests in property when a debtor uses Cash Collateral. Further, section 362(d)(1) of the Bankruptcy Code provides for adequate protection of interests in property due to the imposition of the automatic stay.  *See In re Cont'l Airlines*, 91 F.3d 553, 556 (3d Cir. 1996) (en banc).  While section 361 of the Bankruptcy Code provides examples of forms of adequate protection, such as granting replacement liens and administrative claims, courts decide what constitutes sufficient adequate protection on a case-by-case basis.  *See*, *e.g.*, *In re Swedeland Dev. Grp., Inc.*, 16 F.3d 552, 564 (3d Cir. 1994) (explaining that the "determination of whether there is adequate protection is made on a case by case basis").

22.     Here, the Prepetition Secured Parties have consented to the Debtors' use of the Cash Collateral, subject to the terms and limitations set forth in the Interim Order.  Further, as set forth

15

below, the proposed adequate protection is customary, appropriate, and sufficient to approve the use of the Cash Collateral.

**III.    The Prepetition Secured Parties Are Adequately Protected**

23.     Section 363(c)(2) of the Bankruptcy Code provides that, absent consent, a debtor may use cash collateral where "the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section."  11 U.S.C. § 363(c)(2)(A)–(B).  Absent consent, section 363(e) of the Bankruptcy Code further conditions the use of collateral upon the debtor providing "adequate protection" of a secured creditor's interest in the property proposed to be used.  11 U.S.C. § 363(e); 3-363 Collier on Bankruptcy ¶ 363.05 (16th ed. 2010).  Additionally, as noted above, section 362(d)(1) of the Bankruptcy Code provides for the adequate protection of interests in property due to the imposition of the automatic stay.

24.     After extensive arm's length and good faith negotiations, the Prepetition Secured Parties have consented to the use of their Prepetition Collateral, including Cash Collateral, subject to the provision by the Debtors of adequate protection as set forth in the Interim Order.  Among other things, the Adequate Protection Liens and Adequate Protection 507(b) Claims contemplated by the Interim Order are designed to protect the Prepetition Secured Parties' interests in the Debtors' property from any diminution in value caused by the Debtors' use of the Prepetition Collateral, including Cash Collateral, during the pendency of these chapter 11 cases.  This considerable adequate protection provided to the ABL Secured Parties and Prepetition 2L Notes Secured Parties in the Interim Order—which goes beyond their prepetition entitlements—protects the ABL Secured Parties and Prepetition 2L Notes Secured Parties from any potential diminution of the value of their collateral.  Based on the adequate protection package the Debtors provided in the Interim Order, the ABL Secured Parties and Prepetition 2L Notes Secured Parties have

consented to the Debtors' use of the Cash Collateral, subject to the terms and limitations set forth in the Interim Order.

**IV.    The Scope of the Carve-Out and Reserves is Appropriate**

25.    The Interim Order subjects the security interests and administrative expense claims of the Prepetition Secured Parties to the Carve-Out.  Such Carve-Outs for professional fees have been found to be reasonable and necessary to ensure that a debtor's estate and any statutory committee appointed can reimburse their professionals in certain circumstances following an event of default under the terms of the debtor's use of cash collateral.  *See In re Ames Dep't Stores, Inc*., 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990).  The Interim Order does not directly or indirectly deprive the Debtors' estates or other parties in interest of possible rights and powers by restricting the services for which professionals may be paid in these cases.  *See id.* at 38 (observing that courts insist on carve-outs for professionals representing parties in interest because "[a]bsent such protection, the collective rights and expectations of all parties-in-interest are sorely prejudiced").

26.    The Interim Order also provides for the funding of the Reserves from proceeds of the Prepetition Collateral.  As noted above, the Wind Down Reserve will be funded with $28 million to cover costs incurred by the Debtors during their chapter 11 wind down process. The WARN/Severance Reserve, funded with $[3.5] million, will fund costs associated with the federal Worked Adjustment and Retraining Notification Act and state law equivalents.  Both the Carve-Out and Reserves protect against administrative insolvency during the course of the chapter 11 cases by ensuring that assets remain for the payment of administrative expenses incurred during the course of the chapter 11 cases, including the U.S. Trustee's fees, professional fees of the estate professionals, employee wages, benefits, and taxes, and other postpetition operating expenses, notwithstanding the grant of adequate protection liens and claims.

**V.      The Automatic Stay Should Be Modified on a Limited Basis**

27.      The Interim Order contemplates modification of the automatic stay to (a) permit the Debtors and their affiliates and the Prepetition Secured Parties to implement and effectuate the terms and provisions of the Interim Order and (b) permit the Prepetition Secured Parties to exercise rights and remedies under certain circumstances.  The Debtors believe that these provisions were required for the Debtors' to obtain the use Cash Collateral as provided in the Interim Order. Notably, the exercise of remedies is subject to five calendar days' notice to allow the Debtors to cure or seek other relief. Moreover, following the delivery of such notice, the Directing Cash Collateral Agent may file a Stay Relief Motion seeking emergency relief from the automatic stay and until such time as the Stay Relief Motion has been adjudicated by the Court, the Debtors may use Cash Collateral to fund operations in accordance with the Approved Budget.

28.      In the Debtors' business judgment, the stay modifications are reasonable and fair under the circumstances of these chapter 11 cases.

**VI.     Failure to Obtain Immediate Interim Access to Cash Collateral Would Cause Immediate and Irreparable Harm**

29.      Bankruptcy Rules 4001(b) and 4001(c) provide that a final hearing on a motion to obtain credit pursuant to section 364 of the Bankruptcy Code or to use cash collateral pursuant to section 363 of the Bankruptcy Code may not be commenced earlier than 14 days after the service of such motion.  Upon request, however, the Court may conduct a preliminary, expedited hearing on the motion and authorize the obtaining of credit and use of cash collateral to the extent necessary to avoid immediate and irreparable harm to a debtor's estate.  *See* Bankruptcy Rules 4001(b)(2) and 4001(c)(2); Complex Case Procedures ¶ 5.  Furthermore, section 363(c)(3) of the Bankruptcy Code authorizes the Court to conduct a preliminary hearing and to authorize the use of cash

collateral "if there is a reasonable likelihood that the [debtor] will prevail at the final hearing under [section 363(e) of the Bankruptcy Code]."  11 U.S.C. § 363(c)(3).

30.     As set forth in the First Day Declaration, the Debtors have an immediate need to use Cash Collateral.  Absent access to the use of Cash Collateral, the Debtors will not have sufficient funds to carry out the orderly liquidation process that they entered these chapter 11 cases to implement.  Such an outcome would dramatically diminish the value of the Debtors' assets and their estates, which would cause immediate and irreparable harm to the Debtors' stakeholders. Furthermore, the Debtors require use of Cash Collateral to meet working capital and business operating needs during their wind down, fund the administration of these chapter 11 cases, and implement the relief requested in the Debtors' other "first day" motions.

31.     Accordingly, pursuant to section 363(c)(3) of the Bankruptcy Code, Bankruptcy Rule 4001(b), and paragraph 5 of the Complex Case Procedures, the Debtors request that the Court conduct an expedited hearing on this motion, and enter the Interim Order authorizing the Debtors to obtain the use of Cash Collateral on an interim basis, pending approval on a final basis after the Final Hearing.

## **Emergency Consideration**

32.     Pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first 21 days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm," and Bankruptcy Local Rule 9013-1(i), the Debtors respectfully request emergency consideration of this motion.  Immediate access to Cash Collateral critical to the Debtors' ability to fund these chapter 11 cases and implement the carefully planned and orderly wind down of their operations.  Failure to obtain the requested relief during the first 21 days of these chapter 11 cases would imperil the Debtors' ability to maximize value for all stakeholders.  The Debtors have satisfied the "immediate and irreparable harm" standard of

Bankruptcy Rule 6003 and, therefore, respectfully request that the Court approve the relief requested in this motion on an emergency basis.

## **Waiver of Bankruptcy Rules 6004(a) and 6004(h)**

33.     The Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## **Notice**

34.     The Debtors will provide notice of this motion to the following parties or their respective counsel:  (a) the Office of the United States Trustee for the Southern District of Texas; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the Prepetition ABL Agent and counsel thereto; (d) counsel to the Ad Hoc Noteholder Group; (e) the Prepetition 2L Notes Trustee and counsel thereto; (f) the United States Attorney's Office for the Southern District of Texas, Houston Division; (g) the Internal Revenue Service; (h) the United States Securities and Exchange Commission; (i) the state attorneys general for states in which the Debtors conduct business; (j) other regulatory agencies having a regulatory or statutory interest in these cases; and (k) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors respectfully request that the Court enter an order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

December 22, 2024

Respectfully submitted,

By: */s/ John F. Higgins*

**PORTER HEDGES LLP**
John F. Higgins (TX Bar No. 09597500)
Aaron J. Power (TX Bar No. 24058058)
M. Shane Johnson (TX Bar No. 24083263)
Jordan T. Stevens (TX Bar No. 24106467)
Grecia V. Sarda (TX Bar No. 24132092)
1000 Main St., 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Facsimile:  (713) 226-6248
jhiggins@porterhedges.com
apower@porterhedges.com
sjohnson@porterhedges.com
jstevens@porterhedges.com
gsarda@porterhedges.com

- and -

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Kenneth S. Ziman (*pro hac vice pending*)
Christopher Hopkins (*pro hac vice pending*)
Stephanie P. Lascano (*pro hac vice pending*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
kziman@paulweiss.com
chopkins@paulweiss.com
slascano@paulweiss.com

*Proposed Counsel to the Debtors*
*and the Debtors in Possession*

**<u>Certificate of Accuracy</u>**

I certify that the facts and circumstances described in the above pleading giving rise to the emergency request for relief are true and correct to the best of my knowledge, information, and belief. This statement is made pursuant to Bankruptcy Local Rule 9013-1(i).

*/s/ Deborah Rieger-Paganis*
Deborah Rieger-Paganis

**<u>Certificate of Service</u>**

I certify that on December 22, 2024, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ John F. Higgins*
John F. Higgins
