IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| PARTY CITY HOLDCO INC., *et al*., | Case No. 24-90621 (ARP) |
| | (Jointly Administered) |
| Debtors. | |

**LIMITED OBJECTION OF WPG LEGACY, LLC TO DEBTORS' EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO (A) USE CASH COLLATERAL AND (B) GRANT LIENS AND PROVIDE SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (II) GRANTING ADEQUATE PROTECTION TO CERTAIN PREPETITION SECURED PARTIES, (III) MODIFYING THE AUTOMATIC STAY, (IV) SCHEDULING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF**

WPG Legacy, LLC ("WPG Legacy"), by its undersigned counsel, hereby files this limited objection (this "Limited Objection") to *Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Use Cash Collateral and (B) Grant Liens and Provide Superpriority Administrative Expense Claims, (II) Granting Adequate Protection to Certain Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 44] (the "Motion")[1]. In support of this Limited Objection, WPG Legacy respectfully states:

**BACKGROUND**

1. On December 21, 2024 (the "Petition Date"), the above-captioned debtors (the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas (this "Court").

---

[1] Capitalized terms used herein but undefined shall have the meanings ascribed to them in the Motion, the Store

2. Upon information and belief, the Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. WPG Legacy is the owner, or the managing agent for the owners of, certain real properties in which the Debtors lease retail space (the "Leased Premises") pursuant to those certain unexpired leases (collectively, the "Leases" and each a "Lease"). Specifically, the Debtors are currently leasing retail space from WPG Legacy at the following shopping centers:

| Shopping Center | Location |
|---|---|
| Countryside Plaza | Countryside, IL |
| Mall at Georgia Crossing | Buford, GA |
| Village Park Plaza | Carmel, IN |
| Lakeline Plaza | Cedar Park, TX |
| Fairfield Town Center | Houston, TX |

4. The Leased Premises are located in "shopping centers" as that term is used in section 365(b)(3) of the Bankruptcy Code. *See In re Joshua Slocum, Ltd.*, 922 F.2d 1081, 1086-87 (3d Cir. 1990).

5. On December 22, 2024, the Debtors filed the Motion seeking, *inter alia*, authorization to use the cash collateral and to grant adequate protection to the Prepetition Secured Parties. Attached as Schedule 1 to the proposed interim order approving the Motion is the Debtors' initial budget (the "Budget"). While the Budget includes a line-item for "Total Operating Disbursements", it is unclear if the Budget includes all amounts due and owing under the Leases for the Debtors' use and occupancy of the Leased Premises from and after the Petition Date, including, but not limited to, base rent, CAM, real estate taxes, insurance and reconciliations (the "Postpetition Obligations"). The Budget lacks any specificity and provides no assurances to WPG

Closing Motion or Interim Order (defined herein), as applicable.

2

Legacy and likely other similarly situated landlords that postpetition lease obligations that come due during the pendency of these cases will be paid.

6. The same day, the Debtors also filed the *Emergency Motion For Entry of Interim and Final Orders (I) Authorizing the Debtors to Assume the Consulting Agreement, (II) Approving Procedures For Store Closing Sales, and (III) Granting Related Relief* [Docket No. 43] (the "Store Closing Motion") seeking authorization to assume that certain Consulting Agreement with Gordon Brothers Retail Partners, LLC and Gordon Brothers Commercial & Industrial, LLC (collectively, "Gordon Brothers") and immediately commence Store Closing Sales. Pursuant to the Store Closing Motion, and as set forth in the First Day Declaration, the Debtors "commenced these cases to effectuate an orderly and value-maximizing wind up of their business" and the Store Closing Sales are a critical component of those efforts . . ." *See* Store Closing Motion, ¶8.

7. On December 23, 2024, this Court entered its *Interim Order (I) Authorizing the Debtors to (A) Use Cash Collateral and (B) Grant Liens and Provide Superpriority Administrative Expense Claims, (II) Granting Adequate Protection to Certain Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 65] (the "Interim Order") approving the Motion on an interim basis in accordance with the Budget.

8. The Interim Order provides, among other things, that subject to entry of the Final Order, (a) the Adequate Protection Liens shall attach to the Debtors' real property leasehold interests and (b) any provision of any lease that requires "(i) the consent or approval of one or more landlords or other parties or (ii) the payment of any fees or obligations, in order for any Debtor to pledge, grant, sell, assign, or otherwise transfer any the Debtors' interests in any lease, license, or

3

other agreement, or the proceeds thereof, or other collateral related thereto in connection with the granting of the Adequate Protection Liens is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code." (the "<u>Invalidation Provision</u>"). *See* Interim Order, FN 5 and ¶ 5(e). In addition, the Interim Order (i) waived the Debtors' right to surcharge the Collateral pursuant to section 506(c) of the Bankruptcy Code subject to entry of the Final Order and (ii) provided that the Prepetition Secured Parties shall not be subject to the equity doctrine of marshaling or any similar doctrine under section 552(b) of the Bankruptcy Code without prejudice to any provisions in the Final Order. *See* Interim Order at ¶¶ 13-15.

9. On December 23, 2024, this Court also entered an order granting the Store Closing Motion on an interim basis. *See* Docket No. 66.

10. On January 22, 2025, the Store Closing Motion was subsequently approved on a final basis pursuant to this Court's *Final Order (I) Authorizing the Debtors to Assume the Consulting Agreement, (II) Approving Procedures for Store Closing Sales, and (III) Granting Related Relief* [Docket No. 291].

11. WPG Legacy and other landlords are in discussions with the Debtors and the Prepetition Secured Parties, through counsel, regarding their concerns and have made significant progress; however, as of the filing of this Limited Objection the form of order has not been finalized and certain issues remain unresolved. WPG Legacy is hopeful the remaining issues will be resolved in an acceptable form of order and files this Limited Objection out of an abundance of caution to preserve its rights.[2]

---

[2] The Debtors extended WPG Legacy's deadline to object to the Motion to January 29, 2025.

**LIMITED OBJECTION**

12. Although WPG Legacy does not object to the Debtors' need to use the Prepetition Collateral, including the Cash Collateral, in order to operate postpetition, including to pay postpetition rent obligations owing under the Leases, WPG Legacy objects to any attempt by the Debtors and Prepetition Secured Parties to impair, limit and/or modify WPG Legacy's rights under the Leases, the Bankruptcy Code and applicable law.

> **A.  Debtors Should not be Permitted to Grant Direct Liens on Leases Where Not Permitted by the Leases and Render Such Provisions Unenforceable.**

13. WPG Legacy objects to entry of a Final Order that grants any liens on the Leases, rather than solely on the proceeds of the Leases, and renders ineffective any provisions in the Leases prohibiting the Debtors from unilaterally encumbering the Leases and the Leased Premises pursuant to the Invalidation Provision.

14. The Leases have no provision expressly permitting the granting of direct liens on the Debtors' leasehold interests, so the Debtors' proposed treatment represents an impermissible attempt to unilaterally modify the terms of such Leases and should not be approved by this Court. *See City of Covington v. Covington landing L.P.*, 71 F.3d 1221, 1226 (6th Cir. 1995) ("Neither the debtor nor the bankruptcy court may excise material obligations owing to the non-debtor contracting party."); *In re Air Vectors Assocs.*, 53 B.R. 668, 687 (Bankr. S.D.N.Y. 1985) (The bankruptcy court does not have authority to rewrite the terms of a lease.). The Debtors cite no authority to support this blatant and willful violation of the Leases; to the contrary, the Debtors' proposed treatment of the Leases disregards section 365(d)(3) of the Bankruptcy Code, which requires the Debtors to comply with the terms of the Leases and perform all obligations until such Leases are assumed or rejected. 11 U.S.C. § 365(d)(3).

15. Further, the Bankruptcy Code does not permit the Debtors or the Prepetition Secured Parties to override the terms of the Leases, to grant the Debtors an independent postpetition right to pledge the Debtors' interest in the Leases as security for their use of the Prepetition Collateral, or to render provisions of the Leases unenforceable pursuant to the Invalidation Provision. *See In re EES Lambert Assocs.*, 62 B.R. 328, 336 (Bankr. N.D. Ill. 1986) ("However expansive the bankruptcy court's power may be to protect the property interests of debtors-in-possession, it does not extend to enlarging the rights of a debtor under a contract or rewriting its terms."); *Matter of Lauderdale Motorcar Corp.*, 35 B.R. 544, 548–49 (Bankr. S.D. Fla. 1983) ("However great this Court's powers are to preserve a debtor's property interest, this Court cannot enlarge or increase the Debtor's property or rewrite the terms of a contract."). Provisions in the Leases that prohibit or restrict the ability of the Debtors to pledge the Leases as collateral are not anti-assignment provisions and are not contrary to the Bankruptcy Code or any bankruptcy policies. Moreover, nowhere does section 364 of the Bankruptcy Code grant the Debtors the right to modify lease provisions and impair the rights of WPG Legacy under the Leases or section 365 of the Bankruptcy Code.

16. Courts are required to uphold state law rights of creditors, including enforcement of contractual provisions governing those rights. *Butner v. United States*, 440 U.S. 48, 55 (1979). As the Supreme Court recognized in *Butner*, "[p]roperty interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Id.* Only certain contractual provisions not applicable in this case, such as sections 365(e) and 365(f), are unenforceable under the Bankruptcy Code. *In re Kopel*, 232 B.R. 57, 64 (Bankr. E.D.N.Y. 1999); s*ee Matter of Vill. Rathskeller, Inc.*, 147 B.R. 665, 671-72 (Bankr. S.D.N.Y. 1992)

(Citing sections 108(b), 365(e)(1), and 365(f)(1), the court acknowledged the Bankruptcy Code "alters certain [contractual] rights of the parties."); *Ramco-Gershenson Properties, L.P. v. Serv. Merch. Co.*, 293 B.R. 169, 174 (M.D. Tenn. 2003) ("Pursuant to § 365(f)(1), courts may temporarily render anti-assignment clauses unenforceable so that a debtor's assignment is not blocked."); *In re W.R. Grace & Co.*, 475 B.R. 34, 152 (D. Del. 2012), *aff'd sub nom. In re WR Grace & Co.*, 729 F.3d 332 (3d Cir. 2013), and *aff'd*, 532 F. App'x 264 (3d Cir. 2013), and *aff'd,* 729 F.3d 311 (3d Cir. 2013), and *aff'd sub nom. In re WR Grace & Co.*, 729 F.3d 332 (3d Cir. 2013) ("[I]t is well-established that *ipso facto* clauses are unenforceable as a matter of law under the Bankruptcy Code.").

17. Here, the Leases represent valid and enforceable contracts under applicable state law and their terms must be enforced by this Court. *See Butner*, 440 U.S. at 55. No party should be able to obtain rights in the Leases that they would not be entitled to absent the Debtors' bankruptcy cases. Any request to grant a lien against the Leases or render language of the Leases unenforceable with respect to the Debtors' use of the Prepetition Collateral is not supported by the Bankruptcy Code.

**B. All Postpetition Lease Obligations Should be Included in the Budget and Final Order Approved by this Court.**

18. It is undisputed that the Debtors' leased premises are critical to the Debtors' ability to maximize value for its stakeholders, the primary beneficiaries of which are the Prepetition Secured Parties, yet it is not clear from the Budget if all postpetition lease obligations, including, but not limited to, rent, CAM, real estate taxes, insurance and reconciliations, are accounted for in the "Total Operating Disbursements" line item.

19. Section 365(d)(3) of the Bankruptcy Code provides, in relevant part, that "[t]he Trustee shall timely perform all the obligations of the debtor… arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title." Thus, under section 365(d)(3) of the Bankruptcy Code, the Debtors have an affirmative obligation to stay current with post-petition obligations to WPG Legacy under the Leases.

20. Moreover, the use and occupancy of the Leased Premises by the Debtors provides an actual, necessary, and continuing benefit to the Debtors, the Prepetition Secured Parties and the Debtors' estates. Without access to and the ability to use the Leased Premises, the Debtors would not be able to operate their retail business and conduct their Store Closing Sales. For these reasons, this Court should order the Debtors to budget for the payment of all postpetition lease obligations, including, but not limited to, rent, CAM, real estate taxes, insurance and reconciliations, to WPG Legacy and the Debtors' other landlords in the Final Order. Absent the timely payment of these obligations, as required under section 365(d)(3) of the Bankruptcy Code, WPG Legacy is effectively providing an involuntary, unsecured, post-Petition Date loan to the Debtors in the amount of the postpetition lease obligations. *See In re Warehouse Club, Inc.*, 184 B.R. 316, 317 (Bankr. N.D. Ill. 1995) ("The purpose of § 365(d)(3) is to prevent landlords from becoming involuntary post-petition creditors of the bankruptcy estate. A landlord cannot be required to provide post-petition services without current payments for those services."). The Debtors should not be afforded the protections of the Bankruptcy Code, be permitted to waive their rights under sections 506(c) and 552(b) of the Bankruptcy Code, or gain the benefit of the continued operation of their business at the Leased Premises without paying all postpetition lease obligations owing to

WPG Legacy.

21. The Debtors' waiver of their right to assert surcharge claims against the Prepetition Secured Creditors under section 506(c) of the Bankruptcy Code increases the risk that the costs of the administration of these cases will be borne by WPG and all of the Debtors' landlords, rather than the Prepetition Secured Creditors. This result contravenes the essential purpose of section 506(c) of the Bankruptcy Code, which allows a debtor to charge the costs of preserving or disposing of a secured lender's collateral to the collateral itself. 11 U.S.C. § 506(c). *See In re Visual Indus., Inc.*, 57 F.3d 321, 325 (3d Cir. 1995) ("[Section] 506(c) is designed to prevent a windfall to the secured creditor . . . The rule understandably shifts to the secured party . . . the costs of preserving or disposing of the secured party's collateral, which costs might otherwise be paid from the unencumbered assets of the bankruptcy estate . . .") (citation omitted); *see also In re Codesco, Inc.*, 18 B.R. 225, 230 (Bankr. S.D.N.Y. 1982) ("The underlying rationale for charging a lienholder with the costs and expenses of preserving or disposing of the secured collateral is that the general estate and unsecured creditors should not be required to bear the cost of protecting what is not theirs."). Indeed, courts have rejected the waiver of surcharge rights under section 506(c) of the Bankruptcy Code under similar circumstances. *See, e.g., In re Colad Group, Inc.*, 324 B.R. 208, 224 (Bankr. W.D.N.Y. 2005) (refusing to approve postpetition financing agreement to the extent that the agreement purported to modify statutory rights and obligations created by the Bankruptcy Code by prohibiting any surcharge of collateral under section 506(c)).

22. To properly address this concern, WPG Legacy submits that the Budget should be modified to provide for the payment of all postpetition lease obligations, including rent, CAM,

real estate taxes, insurance and reconciliations, or, at a minimum, to include a reserve for payment of such amounts. WPG Legacy opposes the entry of a Final Order to the extent the Debtors seek to waive the protections under sections 506(c) and 552(b) of the Bankruptcy Code without providing for the payment of all ongoing postpetition obligations under the Leases to WPG Legacy.

### C. WPG Legacy is Entitled to Adequate Protection Pursuant to Section 363(e) of the Bankruptcy Code.

23. The payment of all postpetition obligations due and owing under the Leases is warranted as adequate protection for the Debtors' continued use and occupancy of the Leased Premises under section 363(e) of the Bankruptcy Code, which provides:

> Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest. This subsection also applies to property that is subject to any unexpired lease of personal property (to the exclusion of such property being subject to an order to grant relief from the stay under section 362).

11 U.S.C. 363(e).

24. Section 363(e) of the Bankruptcy Code provides a basis to grant adequate protection to real property lessors. *See, e.g.*, *In re Knight Jewelry*, 168 B.R. 199 (Bankr. W.D. Mo. 1994) (granting relief from the automatic stay because, among other things, retail debtor did not provide adequate protection to landlord creditor); *Matter of Cont'l Airlines, Inc.*, 154 B.R. 176, 180 (Bankr. D. Del. 1993) (concluding that adequate protection is available under § 363(e) of the Bankruptcy Code for a decrease in value due to the use, sale, or lease of an entity's interest in property); *In re P.J. Clarke's Restaurant Corp.*, 265 B.R. 392 (Bankr. S.D. N.Y. 2001) (providing that a "landlord's

right to adequate protection seems to follow clearly from the language of Section 363(e)…"); *In re Ernst Home Center, Inc.*, 209 B.R. 955, 966-67 (Bankr. W.D. Wash. 1997) (finding that adequate protection is available to real property lessors under Section 363(e)).

25. It is appropriate for adequate protection to take the form of timely cash payments for the Debtors' post-Petition Date use and occupancy of the Leased Premises. *See* 11 U.S.C. § 361; *In re Kellstrom Indus., Inc.*, 282 B.R. 787, 794 (Bankr. D. Del. 2002). Any administrative expense claim granted to WPG Legacy for postpetition lease obligations cannot serve as adequate protection, particularly due to the possibility of nonpayment to WPG Legacy. The Debtors continue to occupy the Leased Premises for the benefit of their estates and the Prepetition Secured Creditors. Because of the commencement of these cases, WPG Legacy has no choice but to allow the continued occupancy of the Leased Premises by the Debtors. WPG Legacy should not be expected to bear these risks and this Court should require the Debtors to budget and pay all postpetition lease obligations, including rent, CAM, real estate taxes, insurance and reconciliations, as adequate protection for the continued use and occupancy of the Leased Premises by the Debtors.

      **D.**    **The Prepetition Secured Parties' Access Rights to the Leased Premises in the Event of Default Should be Limited.**

26. WPG Legacy objects to the Motion to the extent that the Debtors seek to grant certain access rights to the Leased Premises contrary to the provisions of the Leases. The Debtors' right to occupy the Leased Premises is expressly set forth and limited by the terms of the Leases. The Debtors possess no right to use the Leased Premises beyond those rights granted within the Leases and, as such, cannot unilaterally grant the Prepetition ABL Agent, the Prepetition 2L Notes Trustee or the Prepetition Secured Parties access to and use of the Leased Premises. The Prepetition ABL Agent, the Prepetition 2L Notes Trustee and the Prepetition Secured Parties are

not parties to the Leases and do not have a right under the Leases to use or occupy the Leased Premises. If pursuant to the Final Order, this Court permits the Prepetition ABL Agent, the Prepetition 2L Notes Trustee, the Prepetition Secured Parties and/or any party other than the Debtors to access the Leased Premises, then such access should be limited by this Court, pursuant to written agreement acceptable to WPG Legacy and in accordance with Leases, and for the limited purpose of removing the Prepetition Collateral (unless WPG Legacy agrees in writing otherwise) consistent with the language in the Interim Order.

## **RESERVATION OF RIGHTS**

27. WPG Legacy reserves any and all rights to supplement and/or amend this Limited Objection and expressly reserves the right to assert any further objections with respect to the Motion as it deems necessary or appropriate. Nothing in this Limited Objection is intended to be, or should be construed as, a waiver by WPG Legacy of any of its rights under the Leases, the Bankruptcy Code, or applicable law. WPG Legacy expressly reserves all such rights.

## **JOINDER**

28. WPG Legacy joins in any objections that are filed by other parties in interest to the extent that they are not inconsistent with this Limited Objection.

**WHEREFORE**, WPG Legacy respectfully requests that this Court sustain this Limited Objection and grant WPG Legacy such other and further relief as this Court deems just and appropriate under the circumstances.

Dated:  January 29, 2025	Respectfully submitted,

**FROST BROWN TODD LLP**

*/s/ Ronald E. Gold*
Ronald E. Gold (Ohio Bar No. 0061351)
Erin P. Severini (Ohio Bar No. 91478)
3300 Great American Tower
301 East Fourth Street
Cincinnati, OH 45202
Tel: (513) 651-6800
Fax: (513) 651-6981
Email: rgold@fbtlaw.com
         eseverini@fbtlaw.com

-and-

Mark A. Platt (Texas Bar No. 00791453)
2101 Cedar Springs Road, Suite 900
Dallas, TX 75201
Tel: (214) 545-3474
Fax: (214) 545-3473
Email: mplatt@fbtlaw.com

**Counsel for WPG Legacy, LLC**

**CERTIFICATE OF SERVICE**

I hereby certify that on January 29, 2025 a true and correct copy of the foregoing *Limited Objection and Reservation of Rights of WPG Legacy, LLC to Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Use of Cash Collateral and (B) Grant Liens and Provide Superpriority Administrative Expense Claims, (II) Granting Adequate Protection to Certain Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* was sent via CM/ECF electronic mail to all parties receiving CM/ECF noticing.

*/s/ Ronald E. Gold*