IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |
|---|---|
| In re: | Chapter 11 |
| PARTY CITY HOLDCO INC., *et al.*,[1] | Case No. 24-90621 (ARP) |
| Debtors. | (Jointly Administered) |

**LIMITED OBJECTION OF CERTAIN LANDLORDS TO
DEBTORS' EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL
ORDERS (I) AUTHORIZING THE DEBTORS TO (A) USE CASH COLLATERAL
AND (B) GRANT LIENS AND PROVIDE SUPERPRIORITY ADMINISTRATIVE
EXPENSE CLAIMS, (II) GRANTING ADEQUATE PROTECTION TO CERTAIN
PREPETITION SECURED PARTIES, (III) MODIFYING THE AUTOMATIC STAY,
(IV) SCHEDULING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF**

Brookfield Properties Retail Inc., Centerco Properties, L.L.C., Kite Realty Group L.P., Lerner Properties, NewMark Merrill Companies, Pacolet Milliken Enterprises, Inc., Philips International Holding Corp., Regency Centers, L.P., SITE Centers Corp., and Turnberry Associates (each, a "Landlord," and, collectively, "Landlords") submit this limited objection (the "Objection") to the *Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Use Cash Collateral and (B) Grant Liens and Provide Superpriority Administrative Expense Claims, (II) Granting Adequate Protection to Certain Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling Final Hearing, and*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Party City Holdco Inc. (9758); Amscan Inc. (1359); Am-Source, LLC (8427); Party City Corporation (3692); Party City Holdings Inc. (3029); PC Intermediate Holdings, Inc. (1229); and Trisar, Inc. (0659). The location of the Debtors' service address for purposes of these chapter 11 cases is: 100 Tice Boulevard, Woodcliff Lake, New Jersey 07677.

*(V) Granting Related Relief* (the "Cash Collateral Motion")[2] filed by the above-captioned debtors (each, a "Debtor," and, collectively, "Debtors"), and respectfully state as follows:

## PRELIMINARY STATEMENT

1. Since the Petition Date, Debtors have made it clear that the unfortunate main purpose of these cases is for Debtors to immediately liquidate the collateral of their secured lenders (the "Secured Lenders"), selling substantially all of the Debtors' assets, including all inventory, by immediately conducting Going Out of Business Sales at stores leased from Landlords for the benefit of those Secured Lenders. Landlords are involuntary participants in this process in that have no choice but to permit Debtors to occupy their premises, even when the Debtors have failed to fairly compensate Landlords for the use and occupancy of their premises, including the rent and charges that accrued during the period from the Petition Date, December 21, 2024, through December 31, 2024 (the "Stub Rent"). Stub Rent includes both fixed rent and additional rent, such as insurance, real estate taxes, and common area maintenance.

2. Under these circumstances, the approved Cash Collateral budget should provide for immediate payment of all administrative expenses of Debtors' estates, including Stub Rent. Landlords should not be required to bear the burden of administrative insolvency in these cases while Secured Lenders benefit from the protections provided by the proposed Cash Collateral Order. Landlords, in contrast, would be forced to bear the direct burden of maintaining Debtors' stores and paying the costs of the liquidation process with no guarantee of administrative solvency or a successful case outcome.

3. Landlords object to the failure of Debtors to provide for immediate payment of all Stub Rent in the proposed budget, as well as Debtors' attempt to waive the

---

[2] Docket No. 44. Capitalized terms used but not defined in this Limited Objection shall have the meanings

estates' rights under sections 506(c) and 552(b) of the Bankruptcy Code without providing for payment of all rent and charges related to Debtors' post-petition use of the Leased Premises (defined below).

4. Two additional concerns with respect to the Cash Collateral Motion were addressed in a satisfactory manner in the Interim Cash Collateral Order (as defined below) and should also be addressed in the final order (or any further interim order) — limiting Secured Lenders' liens to the proceeds of the sale or disposition of leases (not attaching directly to lease-hold interests), and inappropriately broad default use and occupancy rights, as follows:

   a. **Disallowance of Liens on Leases:** The liens granted to Secured Lenders should not be placed directly on the Leases, in violation of the express provisions of certain Leases and the financing agreements that Landlords have with their own lenders. Instead, such liens should be limited to the proceeds of the sale or disposition of the Leases to maintain the status quo and honor the bargained-for provisions of the Leases. Specifically, the language in the Interim Cash Collateral Order at ¶ 5(a) n.5 should be carried into any further orders, including the Final Cash Collateral Order (with appropriate adjustments to reflect entry of the Final Cash Collateral Order).

   b. **Use and Occupation of the Leased Premises (Defined Below):** Landlords object to any broad grant of rights and remedies to Secured Lenders to use and occupy the Leased Premises if Debtors default, and request that the Court limit such rights to what is (i) permitted by applicable non-bankruptcy law; (ii) agreed to in writing by the applicable Landlord; or (iii) ordered by the Court on motion and notice appropriate under the circumstances. Specifically, the language in the Interim Cash Collateral Order at ¶ 12 should be carried into any further orders, including the Final Cash Collateral Order (with appropriate adjustments to reflect entry of the Final Cash Collateral Order).

5. Counsel to Landlords have been in discussions with counsel to Debtors and Secured Lenders and are hopeful that those discussions will result in a consensual resolution of these issues, but file this objection out of an abundance of caution.

---

ascribed to them in the Cash Collateral Motion.

**BACKGROUND**

6. Landlords are the owners, affiliates or managing agents of the owners of numerous shopping centers and distribution centers located throughout the United States where Debtors lease retail space pursuant to written leases (each, a "Lease," and, collectively, the "Leases") for the stores at the locations listed on the attached **Exhibit A** (collectively, the "Leased Premises"). Most or all of the Leased Premises are located in shopping centers as that term is used in section 365(b)(3) of the Bankruptcy Code. *See In re Joshua Slocum, Ltd.*, 922 F.2d 1081 (3d Cir. 1990).

7. On December 21, 2024 (the "Petition Date"), each Debtor filed a voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Since the Petition Date, Debtors remain in possession of their properties and continue to manage their businesses as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

8. On December 22, 2024, Debtors filed the Cash Collateral Motion seeking entry of interim and final orders authorizing Debtors to continue their use of Cash Collateral, as defined in section 363(a) of the Bankruptcy Code (the "Cash Collateral").

9. On December 23, 2024, the Court entered the *Interim Order (I) Authorizing the Debtors to (A) Use Cash Collateral, and (B) Grant Liens and Provide Superpriority Administrative Expense Claims, (II) Granting Adequate Protection to Certain Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* (the "Interim Cash Collateral Order")[3] approving the Cash Collateral Motion on an interim basis and scheduling a hearing for January 22, 2025 to

---

[3] Docket No. 65.

consider entry of a final order granting the Cash Collateral Motion. That hearing was subsequently adjourned to January 29, 2025, then further adjourned to January 31, 2025.[4] The Interim Cash Collateral Order also set out requirements for compliance with an Approved Budget (the "Initial Budget") which was attached as Schedule 1 to the Interim Order.

10. Since the Petition Date, Debtors have also been conducting store closing sales at each of their retail locations, including at the Leased Premises, pursuant to the *Final Order (I) Authorizing the Debtors to Assume the Consulting Agreement, (II) Approving Procedures for Store Closing Sales, and (III) Granting Related Relief*.[5]

11. Upon information and belief, Debtors have failed to pay any portion of the December post-petition rent and additional rent due to Landlords under the Leases. The Stub Rent amounts due to Landlords are listed on **Exhibit A**, attached hereto, and total approximately $352,937.35.

## OBJECTION

A. **Landlords Are Entitled to Adequate Protection Under Sections 363(e) and 361 of the Bankruptcy Code, Including Prompt Payment of Stub Rent in Full**

12. Section 363(e) of the Bankruptcy Code guarantees adequate protection to any party with an interest in property used by a debtor during the debtor's bankruptcy proceedings who makes a request for adequate protection:

> Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

---

[4] *See* Docket Nos. 269 and 351.

[5] Docket No. 291.

11 U.S.C. § 363(e).

13. Section 363(e) is straightforward and non-discretionary. If a creditor with an "interest" in property used by Debtors makes a request for adequate protection, then the court "shall" prohibit or condition the use of such property on the provision of adequate protection. 11 U.S.C. § 363(e); *see In re Worldcom, Inc.*, 304 B.R. 611, 618 (Bankr. S.D.N.Y. 2004); *see also In re Metromedia Fiber Network, Inc.*, 290 B.R. 487, 491 (Bankr. S.D.N.Y. 2003) ("[s]ection 363(e) is not permissive or discretionary . . .").

14. The U.S. Supreme Court has held that the term "interest" "is the most general term that can be employed to denote a right, claim, title, or legal share in something." *Russello v. U.S.*, 464 U.S. 16, 21 (1983).

15. Section 363(e) is not limited to secured creditors. A landlord undeniably holds an interest in the property that it owns and leases to a debtor, as well as an interest in the lease itself, the rents due under that lease, and the proceeds of the lease. *See In re P.J. Clarke's Rest. Corp.*, 265 B.R. 392, 404 (Bankr. S.D.N.Y. 2001) (citing several cases holding that a landlord has the right to adequate protection of its right to timely payment of post-petition rent); *see also In re Ernst Home Center, Inc.*, 209 B.R. 955, 966 (Bankr. W.D. Wash. 1997) (held that real property lessors may request adequate protection under § 363(e) and noted that the right to payment under § 365(d)(3) would be hollow without a remedy); *In re Mr. Gatti's, Inc.*, 164 B.R. 929, 946 (Bankr. W.D. Tex. 1994) (the enactment of § 365(d)(3) abrogated any argument against the entitlement of a landlord to adequate protection); *In re MS Freight Distribution, Inc.*, 172 B.R. 976, 980 (Bankr. W.D. Wash. 1994) (landlord's right to be kept current on post-petition obligations is entitled to adequate protection); *In re Ames Department Stores, Inc.*, 136 B.R. 357, 359 (Bankr. S.D.N.Y. 1992) ("[s]ection 363(e) of the Bankruptcy Code reserves for bankruptcy

courts the discretion to condition the time, place and manner of [store closing] sales, thereby providing adequate safeguards to protect shopping center landlords and their other tenants, while allowing the Trustee to fulfill its fiduciary obligations").

16. A landlord's interests in its lease and the premises it leases to a debtor are further evidenced by the allowance of landlords' stub rent claims in other cases pursuant to section 503(b) of the Bankruptcy Code. *See, e.g.*, *In re Goody's Family Clothing Inc.*, 401 B.R. 656, 665 (D. Del. 2009) (affirming the allowance of stub rent claims under section 503(b)(1) of the Bankruptcy Code). Thus, with an interest in property being used by Debtors, and the request made herein, Landlords are entitled to receive adequate protection.

17. The plain language of section 361 of the Bankruptcy Code states that adequate protection may take one of three forms: a debtor may (i) tender an upfront cash payment or periodic cash payments, (ii) grant replacement liens, or (iii) grant other related relief (other than an administrative claim under section 503(b)(1) of the Bankruptcy Code) amounting to the indubitable equivalent of the protected party's interest in the property. 11 U.S.C. § 361. Section 361(3) is also clear that adequate protection *may not* take the form of a deferred administrative claim. Under section 361 of the Bankruptcy Code, only a contemporaneous transfer of value satisfies the requirements of adequate protection.

18. Landlords recognize that Debtors or Secured Lenders may not be willing to make immediate payment of Stub Rent. Although Landlords are willing to work with the Secured Lenders to agree to an acceptable timeline that provides for payment of the Stub Rent in the short term, Debtors should be required to hold funds in escrow as adequate protection for the payment of Stub Rent, so Landlords are not forced to bear the risk that they may never be paid if a plan is not confirmed or these cases are or become administratively insolvent. This is

particularly important in these cases in which, since the Petition Date, Debtors have been operating in the Premises outside of the ordinary course of business to liquidate Secured Lenders' collateral.

19. The U.S. Bankruptcy Court for the Southern District of Texas granted similar relief in a recent case, *In re CEC Entertainment, Inc.* In that case, the Court directed the debtors to place funds in a segregated account to cover certain unpaid rent due to landlords. Specifically, the order, which is attached hereto as **Exhibit** B, provided:

> **Rent Reserve Account**. As soon as reasonably practicable following the Closing Date, the Debtors shall deposit $13 million in a segregated account (the "**Rent Reserve Account**"), the proceeds of which shall solely be used to pay post-petition claims of the Debtors' landlords as provided in the "Rent" line item of the DIP Budget for the week ending November 8, 2020, subject to adjustment or consensual reduction based upon agreements between the Debtors and the Debtors' landlords (the "**Catch-Up Payments**"). Upon payment in full of the Catch-Up Payments, any funds remaining in the Rent Reserve Account shall become available to the Debtors for use in any manner that is otherwise consistent with the DIP Order and DIP Documents.

*In re CEC Entertainment, Inc. et al.*, Case No. 20-33163 (MI) (Bankr. S.D. Tex. 2020) [Docket No. 1118] at 39.

**B.** **Debtors Should Not be Permitted to Waive the Estates' Rights Under Sections 506(c) and 552(b) of the Bankruptcy Code**

20. Landlords object to the Cash Collateral Motion and entry of any further interim or final order on the Cash Collateral Motion or approval of any budget that (i) includes waivers of sections 506(c) and 552(b) of the Bankruptcy Code and (ii) fails to direct the Debtors to immediately pay Stub Rent to the affected Landlords or escrow the total amount due, including fixed rent and additional rent (*e.g.*, real estate taxes, insurance, and common area maintenance). Absent such modifications, any waivers should be denied.

21. Waiver of the estates' rights under sections 506(c) and 552(b) of the Bankruptcy Code would be inappropriate in these cases. Section 506(c) of the Bankruptcy Code allows a debtor to surcharge a lender's collateral for the cost of preserving or disposing of that collateral. 11 U.S.C. § 506(c). The provision ensures that the cost of liquidating a secured lender's collateral is not paid from unsecured creditor recoveries. *See Borrego Springs Bank N.A. v. Skuna River Lumber, L.L.C.* (*In re Skuna River Lumber, LLC*), 564 F.3d 353, 355 (5th Cir. 2009) (the Bankruptcy Code protects unsecured creditors from bearing the costs of liquidating secured creditor's collateral by "allow[ing] administrative expenses to be surcharged against a creditor's collateral"); *see also Precision Steel Shearing v. Fremont Fin. Corp.* (*In re Visual Indus., Inc.*), 57 F.3d 321, 325 (3d Cir. 1995) ("section 506(c) is designed to prevent a windfall to the secured creditor"); *Kivitz v. CIT Group/Sales Fin., Inc.*, 272 B.R. 332, 334 (D. Md. 2000) ("the reason for [section 506(c)] is that unsecured creditors should not be required to bear the cost of protecting property that is not theirs"); *In re Codesco Inc.*, 18 B.R. 225, 230 (Bankr. S.D.N.Y. 1982) ("[t]he underlying rationale for charging a lienholder with the costs and expenses of preserving or disposing of the secured collateral is that the general estate and unsecured creditors should not be required to bear the cost of protecting what is not theirs").

22. In a tenant-debtor context, courts may surcharge lenders for post-petition rents and storage charges for storing lender's collateral, as necessary and directly beneficial to the lender. *See In re Scopetta-Senra Partnership III*, 129 B.R. 700, 701 (Bankr. S.D. Fla. 1991) (determining that landlord who provided post-petition lease space provided benefit to the secured creditor by storing its collateral, and ensuring the debtor's continued operations); *see also In re World Wines, Ltd.*, 77 B.R. 653, 658 (Bankr. N.D. Ill. 1987) (finding that landlord was entitled to

payment from the bank for the use and occupancy of its premises for storage of wine pursuant to section 506(c)).

23. Similarly, the "equities of the case" exception in section 552(b) of the Bankruptcy Code allows a debtor, committee, or other party-in-interest to exclude post-petition proceeds from pre-petition collateral on equitable grounds, including to avoid having unencumbered assets fund the cost of a secured lender's foreclosure. 11 U.S.C. § 552(b).

24. Debtors have been using the Leased Premises for the direct benefit of Secured Lenders since the Petition Date. Unfortunately, there is no hope for reorganization in these cases. On the Petition Date, Debtors made it clear that they were liquidating their businesses and selling off leases to the highest bidder. Therefore, the post-petition rent owed to Landlords is a reasonable and necessary cost for the preservation of Secured Lenders' collateral. Without the ability to use the Leased Premises, Debtors and Secured Lenders would receive no payments from the operations of Debtors' stores at the Leased Premises, and Debtors would have to find other locations to store and liquidate any inventory and personal property.

25. The preemptive waivers of sections 506(c) and 552(b) could also affect the recoveries of unsecured creditors, particularly in these cases when there may ultimately be insufficient liquidity to fund administrative claims. It is unreasonable to ask Landlords to bear any potential shortfall in the payment of administrative claims as a result of Debtors' waiver of rights under section 506(c). At least one court has refused to enforce such a waiver. *See, e.g.*, *Hartford Fire Ins. Co. v. Norwest Bank Minn.* (*In re Lockwood Corp.*), 223 B.R. 170, 176 (B.A.P. 8th Cir. 1998) (holding that a provision in the financing order purporting to immunize the post-petition lender from section 506(c) surcharge was unenforceable).

26. Absent sufficient funding in a consensual budget that reserves funds for the payment of all Stub Rent and ensures (i) immediate payment to Landlords or escrow of the Stub Rent; (ii) administrative solvency; and (iii) a controlled exit from these chapter 11 cases, Debtors should not be allowed to waive their statutory ability to surcharge Secured Lenders' collateral and/or recover costs, including Stub Rent, as adequate protection or under the equities of the case. *See, e.g.*, *In re Mortgage Lenders Network USA, Inc.*, Case No. 07-10146 (PJW) (Bankr. D. Del. Mar. 20, 2007) [Docket No. 346], Hearing Transcript at 20-21, (recognizing that 506(c) waivers require creditor consent); *see also In re Townsends, Inc.*, Case No. 10-14092 (CSS) (Bankr. D. Del. Jan. 21, 2011) [Docket No. 338], Hearing Transcript at 23-25 (refusing to approve financing for a sale process that would leave the estate administratively insolvent); *In re NEC Holdings Corp.*, Case No. 10-11890 (PJW) (Bankr. D. Del. July 13, 2010) [Docket No. 224], Hearing Transcript at 100 (requiring that secured creditors pay the "freight" of the bankruptcy by ensuring an administratively solvent estate).

27. As the Bankruptcy Court for the District of Delaware did in *In re Sports Authority Holdings, Inc.*, the advance waivers of sections 506(c) and 552(b) sought by Debtors and Secured Lenders should be denied. *In re Sports Authority Holdings*, Case No. 16-10527 (MFW) (Bankr. D. Del. Apr. 26, 2016) [Docket No. 1415] (the "Hearing Transcript"). In that case, the debtors requested approval of a DIP facility that rolled up the entire prepetition secured debt, proposed to pay off the prepetition lenders immediately upon an expedited sale, granted the DIP lenders a surcharge waiver, and failed to adequately fund administrative and priority claims, including rent and 503(b)(9) claims. In denying the surcharge waiver, Judge Walrath ruled:

> But in a case where the landlords and other administrative claims are clearly not budgeted or being paid while the . . . secured lenders' collateral is being liquidated and their secured claim is being paid, I have a serious problem with that. And I think the fix

11

>is no 506(c) waiver for anybody.  And to the extent that administrative claims are not paid at the end of this case, there will be a claim against the lenders for those costs under 506(c) to the extent they were necessary for the preservation or realization of their collateral.

*See* Hearing Transcript at 195:6-16 (relevant pages attached hereto as <u>Exhibit C</u>).

28. Secured Lenders will substantially benefit from Debtors' continued use and occupancy of the Leased Premises, including payment of their own claims. Therefore, Secured Lenders should be required to fund the expenses of those benefits rather than escape any responsibility for post-petition occupancy costs through waivers of the estates' rights under sections 506(c) and 552 of the Bankruptcy Code. *See Southwest Sec., FSB v. Segner* (*In re Domistyle, Inc.*), 811 F.3d 691, 696 (5th Cir. 2015) ("[A] secured creditor should not reap the benefit of actions taken to preserve the secured creditor's collateral without shouldering the cost") (citation omitted); *see also In re Isaac Cohen Clothing Corp.*, 39 B.R. 199, 201 (Bankr. S.D.N.Y. 1984) (granting surcharge because lender "clearly benefited from the property being stored on the [landlord's] premises").

**C.      Debtors and Secured Lenders Should Not be Permitted to Place Liens Directly on the Leases**

29. Landlords object to any attempt by Debtors and Secured Lenders to render unenforceable any provisions in the Leases that restrict placing a lien directly on the Leases. Anti-lien provisions in leases are enforceable under state law, bargained for at arm's-length, and critical to a landlord's ability to prevent a tenant from encumbering its lease when the applicable landlord's mortgage or loan documents prohibit such liens.

30. Section 365 of the Bankruptcy Code mandates that Debtors must "timely perform all of the obligations" under the Leases until such time as Debtors assume or reject the Leases. 11 U.S.C. § 365(d)(3). In addition, the imposition of direct liens on the Leases would

run counter to any provisions in the Leases that subordinate the Leases and any related liens to any existing or potential liens granted by Landlords against the Leased Premises.

31. The Cash Collateral Motion cites no authority that would authorize the Court to render any Lease provision unenforceable, including lease subordination or anti-lien language. It is settled law that a trustee "takes the contracts of the debtor subject to their terms and conditions." *Thompson v. Texas Mexican Ry. Co.*, 328 U.S. 134, 141 (1946). Accordingly, to the extent that the Leases contain subordination clauses, any new liens granted by the Court must be subordinated to any existing or potential liens against the affected Leased Premises.

32. Although Landlords object to the improper attempt to grant Secured Lenders liens or security interests that are prohibited by the Leases, Landlords do not object to granting the Secured Lenders a lien on the proceeds of the sale of the Leases. A lien on the potential proceeds of the disposition of Debtors' leases more than adequately protects the Secured Lenders' interests. The "bonus value" of the leases has been recognized as property of the bankruptcy estate, *see, e.g.*, *In re Ernst Home Center, Inc.*, 209 B.R. at 985–986, and a security interest in that bonus value, in the form of a lien on the proceeds of the disposition of leases, strikes a balance between (i) Secured Lenders' economic interests, (ii) Debtors' need for financing, and (iii) Landlords' rights under the Leases and the Bankruptcy Code.

33. Landlords respectfully request that the proposed liens attach only to the proceeds of the sale, assignment, or other disposition of the Leases. This provides the Secured Lenders with a lien on what they desire — the economic value of the Leases — and does not otherwise prejudice Debtors or Landlords.

34. Accordingly, the language agreed in the Interim Cash Collateral Order should be carried forward into any Final Cash Collateral Order (with appropriate adjustments to reflect entry of the Final Cash Collateral Order) to preserve the status quo, specifically:

> The Adequate Protection Collateral shall not include (and the Adequate Protection Liens shall not attach to) such real property leaseholds, but shall include the proceeds of any such real property leaseholds.

Interim Order ¶ 5(a) n.5.

### D. Secured Lenders' Right to Use and Occupy the Leased Premises After an Event of Default Must be Limited

35. Secured Lenders should not be granted the unfettered right, in the event of a default, to occupy and use the Leased Premises without performing Debtors' obligations under the Leases or providing Landlords with adequate assurance of future performance as required in connection with an assignment of the Lease pursuant to section 365 of the Bankruptcy Code. Secured Lenders are neither the tenants under the Leases, nor do they have the right to use the Leased Premises to liquidate their collateral without complying with all of the obligations under the Leases, and Debtors provide no authority that would support such a request.

36. Any final order on the Cash Collateral Motion should clarify that Secured Lenders do not have unrestricted rights of access to use and occupy the Leased Premises following a default. There is no basis for a bankruptcy court to grant a non-debtor party rights to use and occupy real property leased by a debtor outside the parameters of Section 365. *See, e.g.*, *In re Antwerp Diamond, Inc.*, 138 B.R. 865, 866–869 (Bankr. N.D. Ohio 1992).

37. Landlords respectfully request that any Final Cash Collateral Order (approving the Cash Collateral Motion contain the same limitations on access by Secured Lenders that are contained in paragraph 12 of the Interim Cash Collateral Order:

14

> Notwithstanding the foregoing, the rights of the [Secured Lenders] to use or occupy any premises subject to a lease of non-residential property shall be limited to (a) any such rights agreed in writing by the applicable landlord, (b) any such rights under applicable non-bankruptcy law, if any, or (c) further order of the Court following a notice and hearing appropriate under the circumstances.

Interim Order ¶ 12.

38. At a minimum, if the Court authorizes Secured Lenders to use and occupy the Leased Premises to liquidate their collateral, the Final Cash Collateral Order should provide that, if the Secured Lenders use and occupy the Leased Premises, then they must timely perform all of the obligations arising under the Leases going forward as required by section 365(d)(3) of the Bankruptcy Code, and cure all existing defaults as required by sections 365(b)(1) and (b)(3) of the Bankruptcy Code when a lease is assumed and assigned.

## **RESERVATION OF RIGHTS**

39. Landlords reserve their right to amend and/or supplement this Objection and to raise any additional objections to the Cash Collateral Motion at the final hearing.

## CONCLUSION

**WHEREFORE**, Landlords respectfully request that the Court enter an order (i) denying the Cash Collateral Motion unless any Final Cash Collateral Order (or interim order, as applicable) and the Approved Budget are modified as requested herein; and (ii) granting such other and further relief as this Court deems just and proper.

Dated: January 29, 2025

**KELLEY DRYE & WARREN LLP**

By: */s/ Robert L. LeHane*
Robert L. LeHane (SD Texas Bar No. 557150)
Jennifer D. Raviele
Steven Yachik
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Tel:  212-808-7800
Fax: 212-808-7897
E-mail:  rlehane@kelleydrye.com
        jraviele@kelleydrye.com
        syachik@kelleydrye.com

*Counsel to Brookfield Properties Retail, Inc., Centerco Properties, L.L.C., Kite Realty Group, L.P., Lerner Properties, NewMark Merrill Companies, Pacolet Milliken Enterprises, Inc., Philips International Holding Corp., Regency Centers, L.P., SITE Centers Corp., and Turnberry Associates*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| PARTY CITY HOLDCO INC., *et al.*,[1] | ) Case No. 24-90621 (ARP) |
| Debtors. | ) (Jointly Administered) |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 29, 2025, a true and correct copy of the foregoing document was served via ECF notification on all parties entitled to ECF notification in this case.

/s/ *Robert L. LeHane*
Robert L. LeHane

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Party City Holdco Inc. (9758); Amscan Inc. (1359); Am-Source, LLC (8427); Party City Corporation (3692); Party City Holdings Inc. (3029); PC Intermediate Holdings, Inc. (1229); and Trisar, Inc. (0659). The location of the Debtors' service address for purposes of these chapter 11 cases is: 100 Tice Boulevard, Woodcliff Lake, New Jersey 07677.

**SERVICE LIST**

**Via Email**

| | |
|---|---|
| Co-Counsel to the Debtors and the Debtors in Possession<br>Porter Hedges LLP<br>John F. Higgins<br>Aaron J. Power<br>M. Shane Johnson<br>Jordan T. Stevens<br>Grecia V. Sarda<br>1000 Main St., 36th Floor<br>Houston, Texas 77002<br>jhiggins@porterhedges.com<br>apower@porterhedges.com<br>sjohnson@porterhedges.com<br>jstevens@porterhedges.com<br>gsarda@porterhedges.com | Co-Counsel to the Debtors and the Debtors in Possession<br>Paul, Weiss, Rifkind, Wharton & Garrison LLP<br>Kenneth S. Ziman<br>Christopher Hopkins<br>Stephanie P. Lascano<br>1285 Avenue of the Americas<br>New York, New York 10019<br>kziman@paulweiss.com<br>chopkins@paulweiss.com<br>slascano@paulweiss.com |
| Office of the United States Trustee for the Southern District of Texas<br>Alicia Lenae Barcomb<br>Jana Smith Whitworth<br>515 Rusk Ave, Suite 3516<br>Houston, TX 7702<br>Email:  alicia.barcomb@usdoj.gov<br>Email:  jana.whitworth@usdoj.gov | Counsel to Official Creditors' Committee<br>Pachulski Stang Ziehl & Jones LLP<br>Theodore S. Heckel<br>700 Louisiana Street, Suite 4500<br>Houston, TX 77002<br>Email:  theckel@pszjlaw.com |
| Counsel to JP Morgan Chase, N.A.<br>Simpson Thacher & Bartlett LLP<br>Elisha Graff<br>425 Lexington Ave<br>New York, NY 10017<br>egraff@stblaw.com | Counsel to the Prepetition 2L Notes Secured Parties<br>Davis Polk & Wardwell LLP<br>Damian S. Schaible<br>Adam L. Shpeen<br>Abraham Bane<br>450 Lexington Ave<br>New York, NY 10017<br>Email:  damian.schaible@davispolk.com<br>Email:  adam.shpeen@ davispolk.com<br>Email:  abraham.bane@davispolk.com |