## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PARTY CITY HOLDCO INC., *et al.*,[1] | ) | Case No. 24-90621 (ARP) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## JOINT CHAPTER 11 PLAN OF LIQUIDATION OF
## PARTY CITY HOLDCO INC. AND ITS DEBTOR AFFILIATES

PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
Kenneth S. Ziman (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Stephanie P. Lascano (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
kziman@paulweiss.com
chopkins@paulweiss.com
slascano@paulweiss.com

PORTER HEDGES LLP

John F. Higgins (TX Bar No. 09597500)
Aaron J. Power (TX Bar No. 24058058)
M. Shane Johnson (TX Bar No. 24083263)
Jordan T. Stevens (TX Bar No. 24106467)
Grecia V. Sarda (TX Bar No. 24132092)
1000 Main St., 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Facsimile: (713) 226-6248
jhiggins@porterhedges.com
apower@porterhedges.com
sjohnson@porterhedges.com
jstevens@porterhedges.com
gsarda@porterhedges.com

Counsel to the Debtors and
Debtors-in-Possession

Co-Counsel to the Debtors and
Debtors-in-Possession

Dated: June 19, 2025

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Party City Holdco Inc. (9758); Amscan Inc. (1359); Am-Source, LLC (8427); Party City Corporation (3692); Party City Holdings Inc. (3029); PC Intermediate Holdings, Inc. (1229); and Trisar, Inc. (0659).  The location of the Debtors' service address for purposes of these chapter 11 cases is: 100 Tice Boulevard, Woodcliff Lake, New Jersey 07677.

17215756

## TABLE OF CONTENTS

Page

INTRODUCTION .................................................................................................1

ARTICLE I.     DEFINED TERMS, RULES OF INTERPRETATION,
COMPUTATION OF TIME AND GOVERNING LAWS..................1

    A.     Defined Terms ......................................................................1
    B.     Rules of Interpretation .......................................................12
    C.     Computation of Time .........................................................13
    D.     Governing Laws.................................................................13
    E.     Reference to Monetary Figures...........................................13
    F.     Reference to the Debtors or the Wind-Down Debtors.........14
    G.     Controlling Document ........................................................14

ARTICLE II.     ADMINISTRATIVE CLAIMS AND STATUTORY FEES .............14

    A.     Administrative Claims ........................................................14
    B.     Professional Compensation.................................................15
    C.     The Gordon Brothers Settlement .......................................16
    D.     Statutory Fees....................................................................16
    E.     ABL Claims........................................................................17
    F.     Payment of Prepetition 2L Notes Trustee, Prepetition 2L Notes Trustee
Advisor and the Ad Hoc Group Advisors............................17

ARTICLE III.     CLASSIFICATION AND TREATMENT OF CLAIMS AND
INTERESTS ......................................................................17

    A.     Summary of Classification..................................................17
    B.     Treatment of Claims and Interests......................................18
    C.     Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the
Bankruptcy Code ..............................................................21
    D.     Elimination of Vacant Classes ............................................21
    E.     Voting Classes; Presumed Acceptance by Non-Voting Classes..........21
    F.     Subordinated Claims and Interests......................................21

ARTICLE IV.     MEANS FOR IMPLEMENTATION OF THE PLAN......................22

    A.     Liquidating Trust ...............................................................22
    B.     Appointment of the Liquidating Trustee..............................27
    C.     Rights, Powers, and Duties of the Wind-Down Debtors and the
Liquidating Trustee ...........................................................28
    D.     Corporate Action................................................................28
    E.     Amended Organizational Documents ..................................29
    F.     Dissolution of Board of Directors.......................................29
    G.     Cancellation of Notes, Instruments, Certificates, and Other Documents
.........................................................................................29
    H.     General Settlement of Claims .............................................30
    I.     Section 1146(a) Exemption................................................30

i

| | | |
|---|---|---|
| J. | Preservation of Causes of Action | 31 |
| K. | Wind-Down Reserve | 31 |
| L. | Distributable Proceeds / Waterfall Recovery | 32 |
| M. | Release of Certain Avoidance Actions and Commercial Tort Claims | 33 |
| N. | Corporate Actions Regarding the Wind-Down Debtors | 33 |
| O. | Effectuating Documents; Further Transactions | 33 |
| P. | Closing the Chapter 11 Cases | 34 |

ARTICLE V.   TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES .................................................................................................34

| | | |
|---|---|---|
| A. | Rejection of Executory Contracts and Unexpired Leases | 34 |
| B. | Claims Based on Rejection of Executory Contracts and Unexpired Leases | 35 |
| C. | Preexisting Obligations to the Debtors under Executory Contracts and Unexpired Leases | 35 |
| D. | Indemnification Obligations | 35 |
| E. | Modifications, Amendments, Supplements, Restatements or Other Agreements | 36 |
| F. | Nonoccurrence of Effective Date | 36 |
| G. | Reservation of Rights | 36 |

ARTICLE VI.   PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS ................................37

| | | |
|---|---|---|
| A. | Allowance of Claims | 37 |
| B. | Claims Administration Responsibilities | 37 |
| C. | Estimation of Claims | 37 |
| D. | Adjustment to Claims Without Objection | 38 |
| E. | Time to File Objections to Claims | 38 |
| F. | Disallowance of Claims | 38 |
| G. | Amendments to Claims | 39 |
| H. | No Distributions Pending Allowance | 39 |
| I. | Disputed Claims Reserve | 39 |
| J. | Distributions After Allowance | 40 |

ARTICLE VII.   PROVISIONS GOVERNING DISTRIBUTIONS ............................40

| | | |
|---|---|---|
| A. | Disbursing Agent | 40 |
| B. | Timing and Delivery of Distributions | 41 |
| C. | Manner of Payment Under the Plan | 43 |
| D. | Allocation of Plan Distributions Between Principal and Interest | 43 |
| E. | Compliance Matters | 43 |
| F. | Foreign Currency Exchange Rate | 44 |
| G. | Fractional Dollars | 44 |
| H. | Undeliverable or Non-Negotiated Distributions | 44 |
| I. | Claims Paid by Third Parties | 45 |
| J. | Claims Payable by Third Parties | 45 |

ii

ARTICLE VIII.   SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS ............................................................................45

    A.    Release of Liens ............................................................................45
    B.    Debtor Release ..............................................................................46
    C.    Third-Party Release .......................................................................48
    D.    Exculpation ...................................................................................49
    E.    Injunction .....................................................................................50
    F.    Waiver of Statutory Limitations on Releases .....................................51
    G.    Finality of Cash Collateral Orders ...................................................51
    H.    Protection against Discriminatory Treatment .....................................52
    I.    Document Retention ......................................................................52
    J.    Reimbursement or Contribution .......................................................52

ARTICLE IX.   CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN ........................................................................................52

    A.    Conditions Precedent to the Effective Date .......................................52
    B.    Waiver of Conditions.....................................................................53
    C.    Substantial Consummation ..............................................................53
    D.    Effect of Nonoccurrence of Conditions to the Effective Date ...............53

ARTICLE X.   MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN ........................................................................................54

    A.    Modification and Amendments.........................................................54
    B.    Effect of Confirmation on Modifications ...........................................54
    C.    Revocation or Withdrawal of This Plan.............................................54

ARTICLE XI.   RETENTION OF JURISDICTION .........................................................55

ARTICLE XII.   MISCELLANEOUS PROVISIONS ........................................................58

    A.    Immediate Binding Effect...............................................................58
    B.    Waiver of Stay .............................................................................58
    C.    Additional Documents ...................................................................58
    D.    Payment of Certain Fees ................................................................59
    E.    Reservation of Rights.....................................................................59
    F.    Successors and Assigns...................................................................59
    G.    Notices ........................................................................................59
    H.    Term of Injunctions or Stays...........................................................60
    I.    Entire Agreement ..........................................................................60
    J.    Exhibits .......................................................................................60
    K.    Deemed Acts ................................................................................60
    L.    Severability of Plan Provisions........................................................60
    M.    Votes Solicited in Good Faith..........................................................61
    N.    Request for Expedited Determination of Taxes...................................61
    O.    No Waiver or Estoppel...................................................................61
    P.    Dissolution of the Creditors' Committee and Cessation of Fee and Expense Payment .........................................................................61
    Q.    Creditor Default ...........................................................................62

## INTRODUCTION

## ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION,
## COMPUTATION OF TIME AND GOVERNING LAWS

**A.**     *Defined Terms*

1.       "*ABL Claims*" means any and all claims arising from, under or in connection with the Prepetition ABL Credit Documents including, without limitation, the Prepetition ABL Obligations.

2.       "*Ad Hoc Group Advisors*" means Davis Polk & Wardwell LLP and Haynes and Boone, LLP.

3.       "*Ad Hoc Noteholder Group*" means the group of Holders of Prepetition 2L Notes Claims represented by the Ad Hoc Group Advisors.

4.       "*Administrative Claim*" means a Claim incurred by the Debtors before the Effective Date for costs or expenses of administration of the Debtors' Estates entitled to priority under sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors; (b) Allowed Professional Fee Claims; and (c) all fees and charges assessed against the Estates under chapter 123 of the Judicial Code.

5.       "*Administrative Claims Bar Date*" means the deadline for Filing proofs of, or requests for, payment of Administrative Claims pursuant to the Administrative Claims Bar Date Order.

6.       "*Administrative Claims Bar Date Order*" means the order granting the *Debtors' Motion for Entry of an Order (I) Setting a Bar Date for Filing Proofs of Administrative Claims Against the Debtors, (II) Establishing Administrative Claims Procedures, (III) Approving the Form and Manner of Filing Proofs of Administrative Claims, (IV) Approving Notice of the Administrative Claims Bar Date, and (V) Granting Related Relief* [Docket No. ●].

7.       "*Administrative / Priority Claim Consent Form*" means that certain notice served upon known Holders of Administrative Claims and Priority Claims attached to the Disclosure Statement Order, pursuant to which the Debtors are seeking the agreement of such Holder to the Administrative/Priority Waterfall Treatment afforded to such Holder under the Plan.

8.       "*Administrative/Priority Waterfall Treatment*" means the treatment of Administrative Claims and Priority Claims in accordance with the Waterfall Recovery from Distributable Proceeds as set forth in <u>Article IV.L</u>

9.       "*Affiliate*" shall have the meaning set forth in section 101(2) of the Bankruptcy Code.

1

10.      "*Allowed*" means, with respect to any Claim or Interest, as applicable, except to the extent that this Plan provides otherwise, any portion thereof: (a) that is allowed under the Plan, by Final Order, or pursuant to a settlement; (b) that is evidenced by a Proof of Claim timely Filed by the applicable Claims Bar Date or a request for payment of an Administrative Claim Filed by the Administrative Claims Bar Date, as applicable (or that is not required to be evidenced by a Filed Proof of Claim under the Plan, the Bankruptcy Code, or a Final Order); or (c) that is scheduled by the Debtors as not disputed, contingent, or unliquidated, and for which no Proof of Claim has been timely Filed; *provided* that, with respect to a Claim or Interest described in clauses (b) and (c) above, such Claim or Interest shall be considered Allowed only if and to the extent that such Claim or Interest is not Disallowed and no objection to the allowance of such Claim or Interest, request for estimation, motion to deem the Schedules amended, or other challenge has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim or Interest has been Allowed by a Final Order. No Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes such Debtor, Wind-Down Debtor, or the Liquidating Trust, as applicable. "Allow," "Allowing," and "Allowance" shall have correlative meanings.

11.      "*Avoidance Actions*" means any and all actual or potential claims and causes of action that may be brought by or on behalf of the Debtors, their Estates, or other authorized parties in interest to avoid a transfer of property or an obligation incurred by the Debtors pursuant to any applicable section of the Bankruptcy Code, including sections 502, 510, 542, 544, 545, 547 through and including 553, and 724(a) of the Bankruptcy Code, or under similar or related state or federal statutes and common law, including fraudulent transfer laws.

12.      "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as amended from time to time, as applicable to the Chapter 11 Cases.

13.      "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of Texas (Houston Division) presiding over the Chapter 11 Cases or, in the event of any withdrawal of reference under 28 U.S.C. § 157, the United States District Court for the Southern District of Texas.

14.      "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Cases, promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court, each as amended from time to time.

15.      "*Bar Date Order*" means the *Order (I) Setting Bar Dates for Filing Proofs of Claim, including Requests for Payment Under Section 503(b)(9), (II) Establishing Amended Schedules Bar Date, and Rejection Damages Bar Date, (III) Approving the Form of and Manner for Filing Proofs of Claim, including Section 503(b)(9) Requests, and (IV) Approving Notice of Bar Dates* [Docket No. 306].

16.      "*Business Day*" means any day, other than a Saturday, Sunday, or "*legal holiday*" (as defined in Bankruptcy Rule 9006(a)).

2

17.     "*Cash*" means the legal tender of the United States of America or the equivalent thereof.

18.     "*Cash Collateral Orders*" means (i) the interim orders approving the *Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Use Cash Collateral, and (B) Grant Liens and Provide Superpriority Administrative Expense Claims, (II) Granting Adequate Protection to Certain Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 44] (the "Cash Collateral Motion"), including the orders entered at Docket Nos. 65, 468, 1127, 1178, 1333 and 1480; (ii) any subsequent interim order approving the Cash Collateral Motion; or (iii) any final order approving the Cash Collateral Motion.

19.     "*Cash Collateral Stipulations*" means all of the stipulations, admissions, agreements, releases, and waivers of the Debtors contained in the Cash Collateral Orders.

20.     "*Causes of Action*" means, without limitation, any Claim, Interest, claim, damage, remedy, cause of action, controversy, demand, right, right of setoff, action, cross claim, counterclaim, recoupment, claim for breach of duty imposed by law or in equity, action, Lien, indemnity, contribution, reimbursement, guaranty, debt, suit, class action, third-party claim, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, or franchise of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, matured or unmatured, direct or indirect, choate or inchoate, liquidated or unliquidated, suspected or unsuspected, disputed or undisputed, secured or unsecured, assertable or existing directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, under the Bankruptcy Code or applicable non-bankruptcy law, or pursuant to any other theory of local, state, or federal U.S. or non-U.S. law. For the avoidance of doubt, Causes of Action include: (a) all rights of setoff, counterclaim, or recoupment and claims on contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to sections 362, 510, 542, 543, 544, 545, 546, 547, 548, 549, 550, or 553 of the Bankruptcy Code or similar non-U.S. or state law; and (d) such claims and defenses as fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code or similar local, state, or federal U.S. or non-U.S. law.

21.     "*Chapter 11 Cases*" means when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court, and when used with reference to all of the Debtors, the procedurally consolidated and jointly administered chapter 11 cases pending for the Debtors in the Bankruptcy Court.

22.     "*Claim*" means a claim, as defined in section 101(5) of the Bankruptcy Code, against any of the Debtors.

23.     "*Claims Bar Date*" means the applicable deadline set by the Bankruptcy Court pursuant to the Plan, Bar Date Order, or other Final Order for filing Proofs of Claim in these Chapter 11 Cases.

24.     "*Claims Objection Deadline*" means the deadline for objecting to a Claim asserted against a Debtor, which shall be (a) with respect to Administrative Claims (other than Professional Fee Claims) and Claims subject to section 503(b)(9) of the Bankruptcy Code, 120 days after the Effective Date or (b) with respect to all other Claims (other than Professional Fee Claims), the later of (i) the first Business Day that is at least 180 days after the Effective Date and (ii) such other period of limitation as may be specifically fixed by an order of the Bankruptcy Court for objecting to such Claims.

25.     "*Claims Register*" means the official register of Claims maintained by the Notice and Claims Agent.

26.     "*Class*" means categories of Holders of Claims or Interests classified together, as set forth in Article III pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

27.     "*Commercial Torts*" means any commercial tort Causes of Action held by the Debtors.

28.     "*Confirmation*" means the entry of the Confirmation Order on the docket of the Chapter 11 Cases, subject to the conditions set forth in the Plan, within the meaning of Bankruptcy Rules 5003 and 9021.

29.     "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

30.     "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

31.     "*Confirmation Order*" means an order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which shall be in a form reasonably acceptable to the Ad Hoc Noteholder Group.

32.     "*Consummation*" means the occurrence of the Effective Date.

33.     "*Creditors' Committee*" means the statutory committee of unsecured creditors, appointed in the Chapter 11 Cases by the U.S. Trustee, pursuant to *The United States Trustee's Notice of Appointment of Committee of Unsecured Creditors* [Docket No. 167], on January 6, 2025, as may be further reconstituted from time to time.

34.     "*D&O Policies*" means all insurance policies (including any "tail policy") issued at any time to any of the Debtors for certain liabilities of the Debtors and/or their current or former directors, managers, members and officers, and all agreements, documents or instruments related thereto.

35.     "*Debtors*" means, collectively: PCHI; Amscan Inc.; Am-Source, LLC; Party City Corporation; Party City Holdings Inc.; PC Intermediate Holdings, Inc.; and Trisar, Inc., the debtors and debtors in possession in the Chapter 11 Cases.

4

36. "*Disallowed*" means, with respect to any Claim, a Claim or any portion thereof that: (a) has been disallowed by a Final Order; (b) is Scheduled as zero or as contingent, disputed, or unliquidated and as to which no Proof of Claim or request for payment of an Administrative Claim has been timely Filed or deemed timely Filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely Filed under applicable law or the Plan; (c) is not Scheduled and as to which no Proof of Claim or request for payment of an Administrative Claim has been timely Filed or deemed timely Filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely Filed under applicable law or the Plan; (d) has been withdrawn by agreement of the applicable Debtor and the Holder thereof; or (e) has been withdrawn by the Holder thereof.

37. "*Disbursing Agent*" means, as applicable, the Wind-Down Debtors or any Entity designated or retained by the Wind-Down Debtors or the Liquidating Trustee, as applicable, in their sole discretion and without the need for any further order of the Bankruptcy Court, to make or to facilitate distributions in accordance with the Plan, including, without limitation, the Prepetition 2L Notes Trustee to the extent it makes or facilitates distributions under the Plan.

38. "*Disclosure Statement*" means the disclosure statement (as it may be amended, supplemented, or modified from time to time) for the Plan, including all exhibits and schedules thereto and references therein, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

39. "*Disclosure Statement Order*" means one or more orders entered by the Bankruptcy Court, in form and substance reasonably acceptable to the Ad Hoc Noteholder Group: (i) finding that the Disclosure Statement (including any amendment, supplement, or modification thereto) contains adequate information pursuant to section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017, and (ii) authorizing the use of the Disclosure Statement for soliciting votes on the Plan.

40. "*Disputed Claim*" means a Claim that is not yet Allowed or Disallowed.

41. "*Distributable Proceeds*" means all Cash of the Debtors held in the Wind-Down Account, other than Cash proceeds of GUC Assets or amounts set aside for the Wind-Down Budget, available on or after the Effective Date after the funding of the Disputed Claims Reserves and the Professional Fee Escrow Account, which Cash shall be available for distribution under Article IV.L hereof.

42. "*Distribution Record Date*" means the date for determining which Holders of Claims are eligible to receive distributions hereunder and shall be the Effective Date or such other date as designated in a Final Order of the Bankruptcy Court; *provided* that the Distribution Record Date shall not apply to publicly held securities.

43. "*DTC*" means the Depository Trust Company or any successor thereto.

44. "*Effective Date*" means, with respect to the Plan, the date that is a Business Day selected by the Debtors, with the consent of the Ad Hoc Noteholder Group, on which: (a) no stay of the Confirmation Order is in effect; (b) all conditions precedent specified in Article IX.A have been satisfied or waived (in accordance with Article IX.B); and (c) the Plan is declared effective.

5

45. "*Entity*" shall have the meaning set forth in section 101(15) of the Bankruptcy Code.

46. "*Estate*" means, as to each Debtor, the estate created for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

47. "*Exculpated Parties*" means collectively, and in each case in its capacity as such: (a) the Debtors; and (b) the Creditors' Committee.

48. "*Executory Contract*" means a contract to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

49. "*File,*" "*Filed,*" or "*Filing*" means file, filed, or filing in the Chapter 11 Cases with the Bankruptcy Court or, with respect to the filing of a Proof of Claim or proof of Interest, the Notice and Claims Agent.

50. "*Final Order*" means an Order, ruling, or judgment of the Bankruptcy Court (or any other court of competent jurisdiction) entered by the clerk of the Bankruptcy Court on the docket in the Chapter 11 Cases (or by the clerk of such other court of competent jurisdiction on the docket of such court), which has not been reversed, stayed, modified, amended, or vacated, and as to which (a) the time to appeal, petition for certiorari, or move for a new trial, stay, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or motion for new trial, stay, reargument, or rehearing has been timely taken or is pending or (b) if an appeal, writ of certiorari, new trial, stay, reargument, or rehearing thereof has been sought, such Order or judgment of the Bankruptcy Court (or other court of competent jurisdiction) shall have been affirmed by the highest court to which such Order or judgment was appealed, or certiorari shall have been denied, or a new trial, stay, reargument, or rehearing shall have been denied or resulted in no modification of such Order, and the time to take any further appeal, petition for certiorari, or move for a new trial, stay, reargument, or rehearing shall have expired, as a result of which such Order shall have become final in accordance with Rule 8002 of the Bankruptcy Rules; *provided*, *however*, that the possibility that a motion under rule 60 of the Federal Rules of Civil Procedure or any analogous Bankruptcy Rule that may be Filed relating to such Order shall not cause an Order not to be a Final Order.

51. "*General Unsecured Claim*" means any Claim, other than (a) an Administrative Claim, (b) an Other Secured Claim, (c) a Priority Claim, (d) an Intercompany Claim, (e) an ABL Claim, or (f) a Prepetition 2L Notes Claim.

52. "*Gordon Brothers*" means Gordon Brothers Retail Partners, LLC together with its affiliate, Gordon Brothers Commercial & Industrial, LLC.

53. "*Gordon Brothers Administrative Claim*" means the Allowed Administrative Claim in the amount of $2,729,333.03 granted to Gordon Brothers in accordance with Article II.C.

54. "*Gordon Brothers Motion*" means the motion, styled *Gordon Brothers Retail Partners, LLC's Motion Seeking Carve-Out Determination and Granting Related Relief* [Docket No. 1367], by which Gordon Brothers sought a declaration from the Court that amounts owed under a certain Asset Disposition Consulting Agreement dated as of December 16, 2024, totaling

6

$6,629,337.03 fit within the "Carve-Out" for the "Allowed Professional Fees" of "Estate Professionals" created by the Cash Collateral Orders.

55.     "*Gordon Brothers Settlement*" means the settlement between the Debtors and Gordon Brothers, pursuant to which the Ad Hoc Noteholder Group has assented, the agreed terms of which are incorporated herein (including in Article II.C) and described in the Disclosure Statement.

56.     "*Governmental Unit*" shall have the meaning set forth in section 101(27) of the Bankruptcy Code.

57.     "*GUC Assets*" means the Debtors' and their Estates' Avoidance Actions and Commercial Torts that are not otherwise released pursuant to this Plan.

58.     "*GUC Distributable Proceeds*" means all Cash of the Debtors received on account of GUC Assets available on or after the Effective Date.

59.     "*GUC Distribution*" has the meaning ascribed to such term in Article IV.L.

60.     "*GUC Waterfall Recovery*" means the priority of Claims to payments of GUC Distributable Proceeds as set forth in Article IV.L.

61.     "*Holder*" means an Entity holding a Claim or Interest, as applicable.

62.     "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

63.     "*Insurance Contracts*" means all insurance policies and all surety bonds and related agreements of indemnity that have been issued at any time or provide coverage, benefits, or proceeds to any of the Debtors and all agreements, documents, or instruments relating thereto, including the D&O Policies.

64.     "*Intercompany Claim*" means any Claim held by a Debtor or a Debtor's Affiliate against a Debtor or a Debtor's Affiliate.

65.     "*Intercompany Interest*" means, other than an Interest in PCHI, an Interest in one Debtor held by another Debtor or a Debtor's Affiliate.

66.     "*Interest*" means any equity security (as defined in section 101(16) of the Bankruptcy Code) in any Debtor.

67.     "*Interim Compensation Order*" means the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* [Docket No. 307].

68.     "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001, as amended from time to time, as applicable to the Chapter 11 Cases.

69.     "*Lien*" shall have the meaning set forth in section 101(37) of the Bankruptcy Code.

70.     "*Liquidating Trust*" means a trust, of which the Liquidating Trustee shall serve as trustee, established on the Effective Date for the benefit of the Liquidating Trust Beneficiaries pursuant to the terms of the Plan and the Liquidating Trust Agreement.

71.     "*Liquidating Trust Agreement*" means that certain agreement establishing and governing the Liquidating Trust.

72.     "*Liquidating Trust Assets*" means all Cash and other property (including all interests, rights, and privileges related thereto, and including, for the avoidance of doubt, all Causes of Action of each of the Debtors) held by the Debtors as of the Effective Date which Cash and property shall be treated as transferred to and beneficially owned by the Liquidating Trust as of the Effective Date.

73.     "*Liquidating Trust Beneficiaries*" means the Holders of (i) Allowed Administrative Claims, (ii) Allowed Priority Claims, (iii) Allowed Other Secured Claims, (iv) Allowed Prepetition 2L Notes Claims, and (v) Allowed General Unsecured Claims.

74.     "*Liquidating Trust Interests*" means means, collectively, the non-certified beneficial interest in the Liquidating Trust granted to each Liquidating Trust Beneficiary to distributed in accordance with this Plan and subject to the terms and conditions of the Liquidating Trust Agreement.

75.     "*Liquidating Trust Professionals*" means the agents, financial advisors, attorneys, consultants, independent contractors, representatives, and other professionals of the Liquidating Trust and the Wind-Down Debtors (in each case, solely in their capacities as such), including, for the avoidance of doubt, any such professional necessary to assist the Liquidating Trustee in its service as the trustee and administrator for the Liquidating Trust.

76.     "*Liquidating Trustee*" means, in its capacity as such, the trustee selected by the Ad Hoc Noteholder Group and Creditors' Committee and appointed by the Debtors on or prior to the Effective Date to serve as the sole officer and/or responsible Person for the Wind-Down Debtors and to (a) administer the Plan in accordance with the terms of the Plan and the Liquidating Trust Agreement, (b) serve as the trustee and administrator for the Liquidating Trust, and (c) take such other actions as may be authorized under the Liquidating Trust Agreement, and any successor thereto.

77.     "*Notice and Claims Agent*" means Kroll Restructuring Administration LLC.

78.     "*Other Secured Claim*" means any Secured Claim that is not an ABL Claim or a Prepetition 2L Notes Claim.

79.     "*PCHI*" means Party City Holdco Inc.

80.     "*Person*" shall have the meaning set forth in section 101(41) of the Bankruptcy Code.

81.     "*Petition Date*" means December 21, 2024.

82.   "*Plan*" means this plan, as it may be amended or supplemented from time to time, including all exhibits, schedules, supplements, appendices, annexes and attachments thereto.

83.   "*Plan Supplement*" means the compilation of documents and forms of documents, schedules, and exhibits to the Plan (as amended, supplemented, or modified from time to time in accordance with the terms hereof and the Bankruptcy Code and the Bankruptcy Rules), each of which shall be in form and substance acceptable to the Ad Hoc Noteholder Group. The Plan Supplement will include the following (including drafts or forms, as applicable), or the material terms of the: (a) a Liquidating Trust Agreement and (b) any other necessary documentation related to the Plan.

84.   "*Prepetition 2L Noteholders*" shall have the meaning ascribed to it in the Cash Collateral Orders.

85.   "*Prepetition 2L Notes Claims*" means any Claims on account of, arising under, derived from, or based upon the Prepetition 2L Notes Documents, including Claims for all principal amounts outstanding, interest, fees, expenses, costs, guarantees, and other charges arising thereunder or related thereto.

86.   "*Prepetition 2L Notes Documents*" shall have the meaning ascribed to it in the Cash Collateral Orders.

87.   "*Prepetition 2L Notes Indenture*" shall have the meaning ascribed to it in the Cash Collateral Orders.

88.   "*Prepetition 2L Notes Trustee*" shall have the meaning ascribed to it in the Cash Collateral Orders.

89.   "*Prepetition 2L Notes Trustee Advisor*" means K&L Gates LLP and any counsel or advisors providing advice to the Prepetition 2L Notes Trustee.

90.   "*Prepetition ABL Agent*" shall have the meaning ascribed to it in the Cash Collateral Orders.

91.   "*Prepetition ABL Credit Agreement*" shall have the meaning ascribed to it in the Cash Collateral Orders.

92.   "*Prepetition ABL Credit Documents*" shall have the meaning ascribed to it in the Cash Collateral Orders.

93.   "*Prepetition ABL Lenders*" shall have the meaning ascribed to it in the Cash Collateral Orders.

94.   "*Prepetition ABL Obligations*" shall have the meaning ascribed to it in the Cash Collateral Orders.

95.   "*Prepetition Intercreditor Agreement*" shall have the meaning ascribed to it in the Cash Collateral Orders.

9

96. "*Priority Claim*" means any Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, to the extent such Claims has not already been paid during the Chapter 11 Cases, other than an Administrative Claim.

97. "*Pro Rata*" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of all Allowed and Disputed Claims (but excluding Disallowed Claims) in such Class.

98. "*Professional*" means any Entity (a) employed pursuant to an Order of the Bankruptcy Court in connection with these Chapter 11 Cases pursuant to sections 327, 328, or 1103 of the Bankruptcy Code and to be compensated for services pursuant to sections 327, 328, 329, 330, or 331 of the Bankruptcy Code or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

99. "*Professional Fee Claims*" means a Claim by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code to the extent such fees and expenses have not been previously paid.

100. "*Professional Fee Escrow Account*" means an interest-bearing account (to the extent commercially reasonable) in an amount equal to the total Professional Fee Reserve Amount funded by the Debtors on the Effective Date.

101. "*Professional Fee Reserve Amount*" means the amount set forth for all Professional Fee Claims through the Effective Date.

102. "*Proof of Claim*" means a written proof of Claim Filed against any of the Debtors in the Chapter 11 Cases by the applicable Claims Bar Date as established by the Bankruptcy Court.

103. "*Reinstated*" or "*Reinstatement*" means, with respect to Claims and Interests, that the Claim or Interest shall be rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.

104. "*Released Party*" means each of the following, solely in its capacity as such: (a) the Debtors, Wind-Down Debtors and the Liquidating Trust; (b) the Liquidating Trustee, (c) the Prepetition ABL Agent; (d) the Prepetition ABL Lenders; (e) the Prepetition 2L Notes Trustee; (f) the Prepetition 2L Noteholders; (g) the Creditors' Committee and its members; (h) with respect to the foregoing clauses (a) through (g), each such Entity's successors and current and former Affiliates, and such Entities', their successors', and their current and former Affiliates' current and former directors, managers, officers, control persons, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, participants, managed accounts or funds, fund advisors, predecessors, successors, assigns, subsidiaries, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, investment managers, and other professionals, each in their capacity as such; (i) Holders of Administrative Claims that do not timely opt out and do not otherwise timely object to the Administrative/Priority Waterfall Treatment of their Claims under the Plan and (j) Holders of Priority Claims that (i) do

10

not timely opt out and do not otherwise timely object to the Administrative/Priority Waterfall Treatment of their Claims under the Plan and (ii) vote to accept the Plan; *provided that* any Holder of a Claim that opts out of the releases contained in the Plan shall not be a "Released Party."

105.   "*Releasing Party*" means each of the following, solely in its capacity as such: (a) the Debtors and Wind-Down Debtors; (b) the Prepetition ABL Agent; (c) the Prepetition ABL Lenders; (d) the Prepetition 2L Notes Trustee; (e) the Prepetition 2L Noteholders; (f) the Creditors' Committee and its members; (g) with respect to each of the foregoing entities in clauses (a) through (f), such entity's respective current and former Affiliates, and each of such entity's, and such entity's current and former affiliates', current and former equity holders (regardless of whether such interests are held directly or indirectly), subsidiaries, officers, directors, managers, principals, members, employees, agents, advisors, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such; (h) all Holders of Claims and Interests who do not opt out of the releases provided by the Plan.

106.   "*Schedules*" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified, or supplemented from time to time.

107.   "*Secured*" means when referring to a Claim: (a) secured by a Lien on property in which any of the Debtors has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Final Order of the Bankruptcy Court, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the applicable Holder's interest in the applicable Debtor's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) Allowed pursuant to the Plan or Final Order of the Bankruptcy Court, as a secured Claim.

108.   "*U.S. Trustee*" means the Office of the United States Trustee for the Southern District of Texas (Region 7).

109.   "*Unexpired Lease*" means a lease of nonresidential real property to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

110.   "*Unimpaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that are unimpaired within the meaning of section 1124 of the Bankruptcy Code, including through payment in full in Cash.

111.   "*Voting Deadline*" means July 30, 2025, at 4:00 p.m. (prevailing Central Time).

112.   "*Waterfall Recovery*" means the priority of Claims to payments of Distributable Proceeds as set forth in Article IV.L.

113.   "*Wind-Down*" means the Wind-Down and dissolution of the Debtors' Estates following the Effective Date as set forth in Article IV.A hereof.

114.   "*Wind-Down Account*" means the account that holds all Cash owned by the Liquidating Trust less the amounts in any Disputed Claims Reserve.

115.   "*Wind-Down Budget*" means a budget to be prepared by the Debtors and its advisors, and subject to the consent of the Ad Hoc Noteholder Group, which may be amended from time to time following the Effective Date by the Liquidating Trustee and which shall estimate the funds necessary to administer the Plan and wind down the Debtors' affairs, including, but not limited to, the costs of holding and liquidating the Estates' remaining property, objecting to Claims, paying the fees and expenses of the Liquidating Trust Professionals, making distributions, prosecuting Claims and Causes of Action held by the Estates against third parties that are not released, waived, or transferred pursuant to the Plan or otherwise, defending or estimating Claims or costs against the Estates, paying taxes, filing tax returns, funding payroll, and other employee costs, providing for the purchase of errors and omissions insurance and/or other forms of indemnification for the Liquidating Trustee, in each case, to the extent applicable, and for all such items and other costs of administering the Plan, the Estates, and the Wind-Down Debtors.

116.   "*Wind-Down Debtors*" means the Debtors, or any successor thereto, by merger, consolidation, or otherwise, on or after the Effective Date.

**B.**   ***Rules of Interpretation***

For purposes of this Plan: (a) each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter genders; (b) capitalized terms defined only in the plural or singular form shall nonetheless have their defined meanings when used in the opposite form; (c) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (d) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit shall mean such document, schedule, or exhibit, as it may have been or may be amended, restated, supplemented, or otherwise modified from time to time; (e) unless otherwise specified, all references herein to "Articles" are references to Articles of this Plan; (f) unless otherwise stated, the words "herein," "hereof," and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (g) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (h) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; (i) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (j) any term used in capitalized form herein that is not otherwise defined, but that is used in the Bankruptcy Code or the Bankruptcy Rules, has the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (k) all references to statutes, regulations, Orders, rules of courts, and the like shall mean such statutes, regulations, Orders, rules of courts, and the like as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; (l) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (m) any effectuating provisions may be interpreted by the Wind-Down Debtors in a manner consistent with the overall purpose and intent of this Plan or the Confirmation Order, all without further notice to or action,

12

Case 24-90621   Document 1636   Filed in TXSB on 06/19/25   Page 17 of 66

Order, or approval of the Bankruptcy Court or any other Entity, subject to the consent of the Ad Hoc Noteholder Group, and such interpretation shall control in all respects; (n) except as otherwise provided, any references to the Effective Date shall mean on the Effective Date or as soon as reasonably practicable thereafter; (o) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (p) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (q) all references herein to consent, acceptance, or approval shall be deemed to include the requirement that such consent, acceptance, or approval be evidenced by a writing, which may be conveyed by counsel for the respective parties that have such consent, acceptance, or approval rights, including by electronic mail; (r) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; and (s) unless otherwise specified, any reference herein to the Plan or any provision thereof shall mean the Plan as it may have been or may be amended, restated, supplemented, or otherwise modified by the Confirmation Order.

**C.**     *Computation of Time*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If any payment, distribution, act, or deadline under the Plan is required to be made or performed or occurs on a day that is not a Business Day, then the making of such payment or distribution, the performance of such act, or the occurrence of such deadline shall be deemed to be on the next succeeding Business Day, but shall be deemed to have been completed or to have occurred as of the required date.

**D.**     *Governing Laws*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated herein (including in the Plan Supplement), the laws of the State of New York, without giving effect to the principles of conflicts of law (except for section 5-1401 and 5-1402 of the General Obligations Law of the State of New York), shall govern the rights, obligations, construction, and implementation of this Plan and the Confirmation Order, any agreements, documents, instruments, or contracts executed or entered into in connection with this Plan or the Confirmation Order (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided*, *however*, that corporate or limited liability company governance matters relating to the Debtors, the Wind-Down Debtors, or Liquidating Trust, as applicable, shall be governed by the laws of the state of incorporation or formation (as applicable) of the applicable Debtor, Wind-Down Debtor or the Liquidating Trust.

**E.**     *Reference to Monetary Figures*

All references in this Plan to monetary figures shall refer to the legal tender of the United States of America, unless otherwise expressly provided.

17215756

**F.**     *Reference to the Debtors or the Wind-Down Debtors*

Except as otherwise specifically provided in this Plan to the contrary, references in this Plan to the Debtors or the Wind-Down Debtors shall mean the Debtors and the Wind-Down Debtors, as applicable, to the extent the context requires.

**G.**     *Controlling Document*

In the event of an inconsistency between this Plan and the Disclosure Statement, the terms of this Plan shall control in all respects.  In the event of an inconsistency between this Plan and the Plan Supplement, the terms of the relevant document in the Plan Supplement shall control (unless otherwise provided in such Plan Supplement document or in the Confirmation Order).  In the event of an inconsistency between the Confirmation Order and this Plan, the Disclosure Statement, or the Plan Supplement, the Confirmation Order shall control.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS AND STATUTORY FEES

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III hereof.

**A.**     *Administrative Claims*

Except as otherwise provided in this Article II.A and except with respect to Administrative Claims that are Professional Fee Claims, or subject to section 503(b)(1)(D) of the Bankruptcy Code, requests for payment of Allowed Administrative Claims must be made by the Administrative Claims Bar Date or in compliance with the Administrative Claims Bar Date Order. **Holders of Administrative Claims that are required to, but do not timely request payment on account of Administrative Claims as set forth in the Administrative Claims Bar Date Order or by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, Wind-Down Debtors, the Liquidating Trust or their property, and such Administrative Claims shall be deemed satisfied, settled, and released as of the Effective Date**.

All known Holders of Administrative Claims (other than Holders of Professional Fee Claims) shall be sent an Administrative / Priority Claim Consent Form pursuant to which the Debtors are seeking the agreement of such party to Administrative/Priority Waterfall Treatment afforded to such Holder hereunder.

**The failure of any Holder of Administrative Claims to object to Administrative/Priority Waterfall Treatment by the objection deadline for Confirmation or otherwise timely return the Administrative / Priority Claim Consent Form and opt out of the Administrative/Priority Waterfall Treatment shall be deemed to be such Holder's consent to receive the Administrative/Priority Waterfall Treatment and accept less than full payment of its Administrative Claim as required by section 1129(a)(9) and as contemplated under sections 1124 and 1123(a)(4) of the Bankruptcy Code, and in full and final satisfaction, compromise, settlement, and release of and in exchange for each Allowed Administrative**

14

**Claim, each such Holder of an Allowed Administrative Claim shall receive Liquidating Trust Interests entitling such Holder to its Pro Rata share of the Distributable Proceeds pursuant to the Waterfall Recovery.** If such Holder does not timely opt out or otherwise object to such the Administrative/Priority Waterfall Treatment, such Holder shall be deemed a Released Party for all purposes hereunder.

If a Holder of an Allowed Administrative Claim timely opts out of the Administrative / Priority Claim Consent Form or otherwise objects to the Administrative/Priority Waterfall Treatment by the objection deadline for Confirmation, then such Holder's Claim will receive the treatment required by section 1129(a)(9) of the Bankruptcy Code (unless otherwise agreed by such Holder and the Debtors, with the consent of the Ad Hoc Noteholder Group), *provided* that pursuant to Article IX.A.9 of this Plan, it is a condition to Consummation of the Plan that the aggregate amount of asserted Administrative Claims and Priority Claims (including both Allowed and Disputed Claims) held by Holders who have timely opted out of the Administrative / Priority Claim Consent Form or who have otherwise timely objected to the Administrative/Priority Waterfall Treatment shall be less than $1 million.

**B.** *Professional Compensation*

1.      Final Fee Applications and Payment of Professional Fee Claims

All final requests for payment of Professional Fee Claims incurred during the period from the Petition Date through the Effective Date shall be Filed no later than 45 days after the Effective Date. All such final requests will be subject to approval by the Bankruptcy Court after notice in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules, and prior orders of the Bankruptcy Court, including the Interim Compensation Order, and once approved by the Bankruptcy Court, shall be promptly paid from the Professional Fee Escrow Account up to the full Allowed amount. Notwithstanding anything to the contrary herein, to the extent that funds held in the Professional Fee Escrow Account are insufficient to satisfy the amount of Professional Fee Claims owing to the Professionals, such Professionals shall have an Allowed Administrative Claim for any such deficiency that shall be paid on the Effective Date or as soon as reasonably practicable thereafter.

2.      Professional Fee Escrow Account

On the Effective Date, the Wind-Down Debtors shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Reserve Amount. The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals. Such funds shall not be considered property of the Estates or the Liquidating Trust. The amount of Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals by the Wind-Down Debtors as soon as reasonably practicable after such Professional Fee Claims are Allowed. When all Allowed amounts owing to the Professionals have been paid in full, any amount remaining in the Professional Fee Escrow Account shall promptly be paid to the Liquidating Trust without any further action or order of the Bankruptcy Court.

3.      Professional Fee Reserve Amount

Professionals shall reasonably estimate their unpaid Professional Fee Claims through the Effective Date and shall deliver such estimate to the Debtors no later than five days before the Effective Date; *provided, that* such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of the Professional's final request for payment of Professional Fee Claims. If a Professional does not provide an estimate, the Debtors or Wind-Down Debtors may estimate the unpaid and unbilled fees and expenses of such Professional through the Effective Date.

**C.    *The Gordon Brothers Settlement***

As a proposed compromise and settlement of the Gordon Brothers Motion, the following treatment shall apply if the Gordon Brothers Settlement is accepted and approved:

(i)     Gordon Brothers will retain, and proportionally reduce its claims by, the $1,500,000.00 "Deposit" provided for in that certain Asset Disposition Consulting Agreement, which assumed by the *Interim Order (I) Authorizing the Debtors to Assume the Consulting Agreement, (II) Approving Procedures for Store Closing Sales, and (III) Granting Related Relief* [Docket No. 66] and the *Final Order (I) Authorizing the Debtors to Assume the Consulting Agreement, (II) Approving Procedures for Store Closing Sales, and (III) Granting Related Relief* [Docket No. 291];

(ii)    Gordon Brothers will receive a payment from Distributable Proceeds of $2,250,000.00 prior to any payments made pursuant to the Waterfall Recovery (the "Initial GB Payment"); *provided* that such payment may be made on or after the Effective Date;

(iii)   Gordon Brothers shall receive an Allowed Administrative Claim totaling $2,729,333.03 (the "Gordon Brothers Administrative Claim"); and

(iv)    Gordon Brothers agrees that it consents to, and shall not opt out of, the releases provided for in the Plan, including in Article VIII.C.

The Plan shall serve as a motion by the Debtors seeking entry of a Bankruptcy Court order approving the Gordon Brothers Settlement, including the Bankruptcy Court's findings that the Gordon Brothers Settlement is (i) in exchange for good and valuable consideration provided by each of the Estates (including, without limitation, performance of the terms of the Plan), and a good-faith settlement and compromise of the released claims, (ii) in the best interests of the Debtors, the Estates, and all holders of Claims, (iii) fair, equitable, and reasonable, and (iv) effected after due notice and opportunity for hearing.

**D.    *Statutory Fees***

All fees due and payable pursuant to section 1930 of Title 28 of the United States Code before the Effective Date shall be paid by the Debtors. On and after the Effective Date, the Wind-Down Debtors shall pay any and all such fees when due and payable and shall File with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee. Each Wind-Down Debtor shall remain obligated to pay quarterly fees to the U.S. Trustee until the earliest of the applicable Debtor's Chapter 11 Case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.

E.    ***ABL Claims***

The Allowed ABL Claims were indefeasibly paid in full in cash before the Effective Date pursuant to the Cash Collateral Orders.

F.    ***Payment of Prepetition 2L Notes Trustee, Prepetition 2L Notes Trustee Advisor and the Ad Hoc Group Advisors***

On the Effective Date, the Debtors shall pay in full in Cash all reasonable and documented fees and expenses of the Prepetition 2L Notes Trustee, the Prepetition 2L Notes Trustee Advisor and the Ad Hoc Group Advisors incurred, or estimated to be incurred, up to and including the Effective Date (to the extent not previously paid during the course of the Chapter 11 Cases) without the requirement to file a fee application with the Bankruptcy Court, without the need for time detail, and without any requirement for review or approval by the Bankruptcy Court or any other party. All such fees and expenses to be paid on the Effective Date shall be estimated prior to and as of the Effective Date and such estimates shall be delivered to the Debtors at least two (2) Business Days before the anticipated Effective Date; *provided* that such estimates shall not be considered to be admissions or limitations with respect to such fees and expenses.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.    ***Summary of Classification***

Claims and Interests, except for Administrative Claims, are classified in the Classes set forth in this <u>Article III</u>. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. Except as otherwise provided in this Plan, a Claim or Interest also is classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and has not been paid, released, or otherwise satisfied before the Effective Date.

1.    Class Identification

The classification of Claims and Interests against each Debtor (as applicable) pursuant to the Plan is as follows:

| Class | Claim or Interest | Status | Voting Rights |
|-------|-------------------|--------|---------------|
| 1 | Priority Claims | Impaired | Entitled to Vote |
| 2 | Other Secured Claims | Unimpaired | Presumed to Accept |
| 3 | Prepetition 2L Notes Claims | Impaired | Entitled to Vote |

17

| 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| 5 | Intercompany Claims | Impaired | Deemed to Reject |
| 6 | Intercompany Interests | Impaired | Deemed to Reject |
| 7 | Interests in PCHI | Impaired | Deemed to Reject |

**B.**     ***Treatment of Claims and Interests***

Subject to Article VI hereof, each holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Plan the treatment described below in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, such holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by the Debtors (with the consent of the Ad Hoc Noteholder Group) and the holder of such Allowed Claim or Allowed Interest, as applicable. Unless otherwise indicated, the holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the later of the Effective Date and the date such holder's Claim or Interest becomes an Allowed Claim or Allowed Interest or as soon as reasonably practicable thereafter.

1.     Class 1 – Priority Claims

a)   Classification: Class 1 consists of Priority Claims.

b)   *Treatment*: All known Holders of Priority Claims shall be sent an Administrative / Priority Claim Consent Form pursuant to which the Debtors are seeking the agreement of such party to the Administrative/Priority Waterfall Treatment afforded to such Holder hereunder.

**The failure of any Holder of Priority Claims to object to Administrative/Priority Waterfall Treatment by the objection deadline for Confirmation or otherwise timely return the Administrative / Priority Claim Consent Form and opt out of the Administrative/Priority Waterfall Treatment shall be deemed to be such Holder's consent to receive the Administrative/Priority Waterfall Treatment and accept less than full payment of its Administrative Claim as required by section 1129(a)(9) and as contemplated under sections 1124 and 1123(a)(4) of the Bankruptcy Code, and in full and final satisfaction, compromise, settlement, and release of and in exchange for each Allowed Administrative Claim, each such Holder of an Allowed Administrative Claim shall receive Liquidating Trust Interests entitling such Holder to its Pro Rata share of the Distributable Proceeds pursuant to the Waterfall Recovery.** If such Holder does not timely opt out or otherwise object to the Administrative/Priority Waterfall Treatment by the objection deadline for Confirmation, such Holder shall be deemed a Released Party for all purposes hereunder.

18

If a Holder of an Allowed Priority Claim timely opts out of the Administrative/Priority Claim Consent Form or otherwise objects to the Administrative/Priority Waterfall Treatment by the objection deadline for Confirmation, then such Holder's Claim will receive the treatment required by section 1129(a)(9) of the Bankruptcy Code (unless otherwise agreed by such Holder and the Debtors, with the consent of the Ad Hoc Noteholder Group), *provided* that pursuant to Article IX.A.9 of this Plan, it is a condition to Consummation of the Plan that the aggregate amount of asserted Administrative Claims and Priority Claims (including both Allowed and Disputed Claims) held by Holders who have timely opted out of the Administrative / Priority Claim Consent Form or who have otherwise timely objected to the Administrative/Priority Waterfall Treatment shall be less than $1 million.

c)   *Voting*: Class 1 is Impaired. Holders of Allowed Class 1 Priority Claims are entitled to vote to accept or reject the Plan.

2.   Class 2 – Other Secured Claims

a)   *Classification*: Class 2 consists of Other Secured Claims against any Debtor.

b)   *Treatment*: In full and final satisfaction of each Allowed Other Secured Claim, except to the extent that the Debtors and a Holder of an Allowed Other Secured Claim agree to less favorable treatment, each Holder thereof will receive: (a) payment in full in Cash of such Holder's Allowed Other Secured Claim; (b) delivery of the collateral securing any such Holder's Allowed Other Secured Claim and payment of any interest required under section 506(b) of the Bankruptcy Code; (c) Reinstatement of such Holder's Allowed Other Secured Claim; or (d) other treatment rendering such Holder's Allowed Other Secured Claim Unimpaired.

c)   *Voting*: Class 2 is Unimpaired. Holders of Class 2 Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code, and are not entitled to vote to accept or reject the Plan.

3.   Class 3 – Prepetition 2L Notes Claims

a)   *Classification*: Class 3 consists of all Prepetition 2L Notes Claims.

b)   *Allowance*: The Prepetition 2L Notes Claims shall be Allowed in the aggregate principal amount of $267,703,631.42.

c)   *Treatment*: In full and final satisfaction, compromise, settlement, release, and discharge of its Claim (unless the applicable Holder agrees to a less favorable treatment), each Holder of an Allowed Prepetition 2L Notes Claim shall receive Liquidating Trust Interests entitling such Holder to its (i) its Pro Rata share of the Distributable Proceeds pursuant to the Waterfall Recovery and (ii) its Pro

Rata share of the GUC Distributable Proceeds pursuant to the GUC Waterfall Recovery.

d) *Voting*: Class 3 is Impaired. Holders of Allowed Class 4 Claims are entitled to vote to accept or reject the Plan.

4. Class 4 – General Unsecured Claims

a) *Classification*: Class 4 consists of all General Unsecured Claims.

b) *Treatment*: In full and final satisfaction, compromise, settlement, release, and discharge of its Claim (unless the Debtors and the applicable Holder agree to a less favorable treatment), each Holder of an Allowed General Unsecured Claim shall receive Liquidating Trust Interests entitling such Holder to its Pro Rata share of the GUC Distributable Proceeds pursuant to the GUC Waterfall Recovery. For the avoidance of doubt, in accordance with the GUC Waterfall Recovery, the Holders of Prepetition 2L Notes Claims shall not receive any recovery on account of their deficiency claims from the GUC Distribution.

c) *Voting*: Class 4 is Impaired. Holders of Allowed Class 4 Claims are entitled to vote to accept or reject the Plan.

5. Class 5 – Intercompany Claims

a) *Classification*: Class 5 consists of all Intercompany Claims.

b) *Treatment*: In full and final satisfaction of each Allowed Intercompany Claim, each Allowed Intercompany Claim, unless otherwise provided for under the Plan, will be cancelled and released.

c) *Voting*:      Class 5 is Impaired and the Holders of Allowed Class 5 Claims are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Holders of Intercompany Claims are not entitled to vote to accept or reject the Plan.

6. Class 6 – Intercompany Interests

a) *Classification*: Class 6 consists of all Intercompany Interests.

b) *Treatment*: Intercompany Interests shall be canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and Holders of Intercompany Interests will not receive any distribution on account of such Intercompany Interests.

c) *Voting*: Class 6 is Impaired, and Holders of Intercompany Interests are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

7.      Class 7 – Interests in PCHI

     a)   *Classification*: Class 7 consists of all Interests in PCHI.

     b)   *Treatment*: In full and final satisfaction of each Allowed Interest in PCHI, each Allowed Interest in PCHI shall be canceled, released, and extinguished, and will be of no further force or effect and no Holder of Interests in PCHI shall be entitled to any recovery or distribution under the Plan on account of such Interests.

     c)   *Voting*: Class 7 is Impaired. Holders of Interests in PCHI are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

## C.      *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by at least one Impaired Class of Claims. The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class(es) of Claims and Interests. The Debtors reserve the right (with the consent of the Ad Hoc Noteholder Group) to modify the Plan in accordance with Article IX hereof to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims to render such Class of Claims Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

## D.      *Elimination of Vacant Classes*

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

## E.      *Voting Classes; Presumed Acceptance by Non-Voting Classes*

If a Class of Claims or Interests is eligible to vote and no Holder of Claims or Interests, as applicable, in such Class votes to accept or reject the Plan, the Plan shall be presumed accepted by such Class.

## F.      *Subordinated Claims and Interests*

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and their respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Debtors or Wind-Down Debtors, as

applicable, reserve the right, with the consent of the Ad Hoc Noteholder Group, to re-classify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.    *Liquidating Trust*

1.    <u>Creation of Liquidating Trust</u>.    On the Effective Date, in furtherance of the liquidation of the Wind-Down Debtors, the Liquidating Trust shall be established for the benefit of the Liquidating Trust Beneficiaries.  The Liquidating Trustee shall execute the Liquidating Trust Agreement on behalf of the Wind-Down Debtors and shall take all other steps necessary to establish the Liquidating Trust pursuant to the Liquidating Trust Agreement and consistent with the Plan.  The form of the Liquidating Trust Agreement shall be approved by the Liquidating Trustee or the Wind-Down Debtors, as applicable, and included in the Plan Supplement and approved pursuant to the Plan.   The powers, authority, responsibilities, and duties of the Liquidating Trust and the Liquidating Trustee are set forth in and shall be governed by the Plan and the Liquidating Trust Agreement.  The Liquidating Trust Agreement shall contain provisions customary to trust agreements utilized in comparable circumstances, including, without limitation, any and all provisions necessary to ensure the continued treatment of the Liquidating Trust as a grantor trust and the Liquidating Trust Beneficiaries as the grantors and owners thereof for federal income tax purposes.   The Liquidating Trust Agreement may provide powers, duties, and authorities in addition to those explicitly stated herein, but only to the extent that such powers, duties, and authorities are for the primary purpose of receiving all assets of the Estates, continuing the wind-down of such Estates in a commercially reasonable but expeditious manner, and distributing any such assets pursuant to the Plan, with no objective to continue or engage in the conduct of a trade or business except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidating Trust, and without effect to its status as a "liquidating trust" for United States federal income tax purposes.  In the event of any inconsistency between the Plan and the Liquidating Trust Agreement (as such conflict relates to anything other than the establishment of a Liquidating Trust or the assets to be transferred to the Liquidating Trust), the Liquidating Trust Agreement shall control.

2.    <u>Vesting of Assets</u>.  Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan or in the Confirmation Order, upon the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all Liquidating Trust Assets shall immediately, automatically, and irrevocably vest in the Liquidating Trust free and clear of all Claims, Liens, Interests, encumbrances, charges, and other interests.  All Claims, Liens, Interests, encumbrances, charges, and other interests shall be deemed fully released as of the Effective Date, except as otherwise provided in the Plan or the Confirmation Order.

3.    <u>Transfers to the Liquidating Trust</u>.  On the Effective Date, the Debtors and their Estates shall irrevocably transfer, and shall be deemed to have automatically and irrevocably transferred, to the Liquidating Trust for the benefit of the Liquidating Trust Beneficiaries all title and interest in all of the Liquidating Trust Assets, which transfer shall be free and clear of Claims,

22

Liens, Interests, encumbrances, charges, other interests, and contractually imposed restrictions except as otherwise provided herein. The Debtors, the Liquidating Trustee, the Liquidating Trust Beneficiaries, and any party under the control of such parties will execute any documents or other instruments and shall take all other steps as necessary to cause title to the Liquidating Trust Assets to be transferred to the Liquidating Trust. Upon the transfer of the Liquidating Trust Assets to the Liquidating Trust, the Debtors, the Wind-Down Debtors, nor any other party shall have any interest in or with respect to the Liquidating Trust Assets or the Liquidating Trust, except as expressly set forth herein. Upon delivery of the Liquidating Trust Assets to the Liquidating Trust, neither the Debtors and their predecessors, successors, and assigns shall be released from all liability with respect to the delivery thereof and shall have no reversionary or further interest in, or with respect to, the Liquidating Trust Assets or the Liquidating Trust in accordance with this Article IV.A of the Plan. Notwithstanding the foregoing, for purposes of section 553 of the Bankruptcy Code, the transfer of the Liquidating Trust Assets to the Liquidating Trust shall not affect the mutuality of obligations that otherwise may have existed prior to the effectuation of such transfer. Such transfer shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use, or other similar tax, pursuant to section 1146(a) of the Bankruptcy Code. In connection with the transfer of such assets, any attorney client privilege, work product privilege, or other privilege or immunity attaching to any documents or communications (whether written or oral) transferred to the Liquidating Trust shall vest in the Liquidating Trust and its representatives, and the Debtors and the Liquidating Trustee are directed to take all necessary actions to effectuate the transfer of such privileges.

4.      Purpose of the Liquidating Trust.  The Liquidating Trust shall be established for the sole purpose of liquidating and administering the Liquidating Trust Assets and making distributions on account thereof as provided for under the Plan and the Liquidating Trust Agreement, and shall be structured to qualify as a "liquidating trust" within the meaning of Treasury Regulations section 301.7701-4(d) and generally in compliance with Revenue Procedure 94-45, 1994-2 C.B. 684, and thus, as a "grantor trust" within the meaning of sections 671 through 679 of the Tax Code, consistent with the terms of the Plan; *provided*, that, subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt by the Liquidating Trustee of a private letter ruling if the Liquidating Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Liquidating Trustee), the Liquidating Trustee (a) may timely elect to treat any portion of the Liquidating Trust allocable to disputed claims as a "disputed ownership fund" governed by Treas. Reg. § 1.468B-9 and (b) to the extent permitted by applicable law, shall report consistently for state and local income tax purposes. To the extent the Liquidating Trustee makes such an election, all parties, including the Liquidating Trustee and any Liquidating Trust Beneficiaries, shall report consistently for U.S. federal, state, and local income tax purposes. The Liquidating Trustee shall file all income tax returns with respect to any income attributable to a disputed ownership fund and shall pay the U.S. federal, state, and local income taxes attributable to such disputed ownership fund based on the items of income, deduction, credit, or loss allocable thereto. Any taxes imposed on any disputed ownership fund or its assets will be paid out of the assets of the disputed ownership fund (including any assets of the Liquidating Trust allocable to disputed claims) and any subsequent distributions in respect of the allowance or disallowance of such claims will be reduced accordingly. In the event, and to the extent, that any Cash in any disputed ownership fund is insufficient to pay the portion of any taxes attributable to taxable income arising from assets of the

23

disputed ownership fund, assets of the disputed ownership fund (including those otherwise distributable) may be sold to pay such taxes.

5. <u>Non-Transferability of Liquidating Trust Interests</u>. Any and all Liquidating Trust Interests shall be non-transferrable other than if transferred by will, intestate, succession, or otherwise by operation of law. In addition, any and all Liquidating Trust Interests will not be registered pursuant to the Securities Act or any applicable state or local securities law pursuant to section 1145 of the Bankruptcy Code, and will be exempt from the Investment Company Act of 11940, as amended, pursuant to sections 7(a) and 7(b) of that Act and section 1145 of the Bankruptcy Code.

6. <u>Administration of the Liquidating Trust</u>

a) The Liquidating Trust shall be administered by the Liquidating Trustee pursuant to the Liquidating Trust Agreement and the Plan.

b) Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt of an adverse determination by the IRS upon audit if not contested by the Liquidating Trustee), and except to the extent that an election is made to treat a portion of the Liquidating Trust as a disputed ownership fund, the Debtors, the Wind-Down Debtors, the Liquidating Trustee, and Holders of Administrative Claims, Priority Claims, Prepetition 2L Notes Claims, and General Unsecured Claims shall treat, for United States federal income tax purposes, the transfer of assets to the Liquidating Trust as (i) a transfer of the Assets (subject to obligations relating to those Assets, if any) directly to such Holders of Claims, followed by (ii) the transfer by such Holders to the Liquidating Trust of the Assets in exchange for interests in the Liquidating Trust. Accordingly, such Holders shall be treated for U.S. federal income tax purposes (i) as direct recipients of an undivided interest in the Assets transferred to the Liquidating Trust and as having immediately contributed such Assets to the Liquidating Trust and, thereafter, and (ii) as the grantors and deemed owners of the Liquidating Trust and, thus, the direct owners of an undivided interest in the Assets held by the Liquidating Trust. The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes.

c) The Liquidating Trustee is hereby appointed in such instance, pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, to prepare and file (or cause to be prepared and filed), on behalf of the Debtors, the Wind-Down Debtors, and the Liquidating Trust, all tax returns, reports and statements required to be filed or that the Liquidating Trustee otherwise deems appropriate, including the filing of amended tax returns or requests for refunds for all taxable periods ended on or before the dissolution of the Debtors, and to handle all of the Debtors', Wind-Down Debtors', and Liquidating Trust's tax matters, including, without limitation, the handling of tax audits, claims, defenses, and proceedings. The Liquidating Trustee shall file (or cause to be filed) tax returns, reports, and statements for the Liquidating Trust treating the Liquidating Trust

24

as a grantor trust pursuant to Treas. Regs. §1.671-4(a) and in accordance with this Article IV.A of the Plan.

d) Assets deemed transferred to Liquidating Trust Beneficiaries pursuant to Article IV.A.3 and Article IV.A.6.b) of the Plan, and allocations of any Liquidating Trust taxable income among Liquidating Trust Beneficiaries (except to the extent that an election is made to treat a portion of the Liquidating Trust as a disputed ownership fund), shall be determined by reference to the manner in which an amount of Cash representing such Assets or taxable income, as the case may be, would be distributed (were such Cash permitted to be distributed at such time) if, immediately prior to such deemed distribution, the Liquidating Trust had distributed all of the Liquidating Trust Assets (valued at their tax book value, except to the extent that an election is made to treat a portion of the Liquidating Trust as a disputed ownership fund) to the Liquidating Trust Beneficiaries, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Liquidating Trust. Similarly, any taxable loss of the Liquidating Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a hypothetical liquidating distribution of the remaining Liquidating Trust Assets. The tax book value of the Liquidating Trust Assets for purpose of this paragraph shall equal their fair market value on the date the Liquidating Trust Assets are transferred to the Liquidating Trust, adjusted in accordance with tax accounting principles prescribed by the Tax Code, the applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.

e) In connection with the preparation of the valuation contemplated hereby and by the Plan, the Liquidating Trust shall be entitled to retain such professionals and advisors as the Liquidating Trust shall determine to be appropriate or necessary, and the Liquidating Trustee shall take such other actions in connection therewith as it determines to be appropriate or necessary, subject to certain approvals. Such valuation shall be used consistently by such parties for all United States federal income tax purposes.

7.      Tax Authority of Trustee; Expedited Tax Determination. The Liquidating Trustee shall have the same authority and responsibility in respect of all taxes of the Debtors (including as the common parent or other agent of any consolidated, combined, or unitary tax group of which any of the Debtors was the agent) and, to the same extent, as if the Liquidating Trustee were the Debtors. The Liquidating Trustee may request an expedited determination of taxes of the Liquidating Trust or of the Debtors or Wind-Down Debtors, under section 505(b) of the Bankruptcy Code, for all tax returns filed for, or on behalf of, such Liquidating Trust or the Debtors or Wind-Down Debtors for all taxable periods through the dissolution of such Liquidating Trust.

8.      Abandonment of Liquidating Trust Assets. Subject to the Liquidating Trust Agreement, after the Effective Date, the Liquidating Trustee may abandon any Liquidating Trust Assets that the Liquidating Trustee determines in its reasonable discretion to be of *de minimis* value or burdensome to the Liquidating Trust.

9.    Dissolution of Liquidating Trust

a)    The Liquidating Trust shall be dissolved at such time as (i) all of the Liquidating Trust Assets have been distributed pursuant to the Plan and the Liquidating Trust Agreement, (ii) the Liquidating Trustee determines that the administration of any remaining Liquidating Trust Assets is not likely to yield sufficient additional Liquidating Trust proceeds to justify further pursuit, or (iii) all distributions required to be made by the Liquidating Trustee under the Plan and the Liquidating Trust Agreement have been made; *provided*, that in no event shall the Liquidating Trust be dissolved later than five years from the creation of such Liquidating Trust pursuant to this Article IV.A of the Plan unless the Bankruptcy Court, upon motion within the six-month period prior to the fifth anniversary of such creation (or within the six-month period prior to the end of any extension period), determines that a fixed period extension (not to exceed three years, together with any prior extensions, without a favorable private letter ruling from the IRS or an opinion of counsel satisfactory to the Liquidating Trustee that any further extension would not adversely affect the status of the trust as a Liquidating Trust for United States federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Liquidating Trust Assets.  Notwithstanding the foregoing proviso, in the event that the Liquidating Trustee fails to satisfy all conditions of the proviso prior to the expiration of the initial five year period or any extension, it may cure and avoid dissolution of the Liquidating Trust retroactively as of such date if the Bankruptcy Court determines that such relief is appropriate to satisfy the purposes of the Liquidating Trust; *provided, however*, in no case shall the term of the Liquidating Trust extend more than three years beyond the original term without a favorable private letter ruling from the IRS or an opinion of counsel satisfactory to the Liquidating Trustee that any further extension would not adversely affect the status of the trust as a Liquidating Trust for United States federal income tax purposes.

b)    If at any time the Liquidating Trustee determines, in reliance upon such professionals as the Liquidating Trust may retain, that the expense of administering the Liquidating Trust so as to make a final distribution to Liquidating Trust Beneficiaries is likely to exceed the value of the assets remaining in such Liquidating Trust, the Liquidating Trustee may apply to the Bankruptcy Court for authority to (i) reserve any amount necessary to dissolve such Liquidating Trust, (ii) donate any balance to a charitable organization (A) described in section 501(c)(3) of the Tax Code, (B) exempt from United States federal income tax under section 501(a) of the Tax Code, (C) not a "private foundation," as defined in section 509(a) of the Tax Code, and (D) that is unrelated to the Debtors, the Liquidating Trust, and any insider of the Liquidating Trustee, and (iii) dissolve the Liquidating Trust.

26

**B.**     *Appointment of the Liquidating Trustee*

1.     On or prior to the Effective Date, the Liquidating Trustee shall be (a) appointed to serve as the sole officer, director, or manager of each of the Wind-Down Debtors and (b) appointed to serve as the trustee and administrator of the Liquidating Trust established pursuant to Article A.1 of the Plan and the Liquidating Trust Agreement.  The Liquidating Trustee, subject to the terms and conditions of the Plan, the Confirmation Order, and the Liquidating Trust Agreement, shall be authorized to execute, deliver, file, or record such documents, contracts, instruments, releases, and other agreements, and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Liquidating Trustee shall have and perform all of the duties, responsibilities, rights, and obligations set forth in the Plan and the Liquidating Trust Agreement, as applicable.  The initial Liquidating Trustee shall be selected by the Ad Hoc Noteholder Group and the Creditors' Committee to serve in such capacities, pursuant to the Liquidating Trust Agreement and the Plan, until the resignation or discharge and the appointment of a successor Liquidating Trustee in accordance with the Liquidating Trust Agreement and the Plan.

2.     From and after the Effective Date, the Liquidating Trustee shall be paid in accordance with the terms and conditions of the Liquidating Trust Agreement and solely from the Wind-Down Account (with no recourse to any Released Party or any Liquidating Trust Beneficiary).  Liquidating Trust Professionals shall be entitled to reasonable compensation, with reasonableness determined by the Liquidating Trustee in its sole discretion, for services rendered and reimbursement of expenses incurred from the Wind-Down Account subject to the Wind-Down Budget.  The payment of the fees and expenses of the Liquidating Trustee and the Liquidating Trust Professionals shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court; *provided*, that any disputes related to such fees and expenses shall be brought before the Bankruptcy Court.

3.     The Liquidating Trust shall indemnify and hold harmless (1) the Liquidating Trustee (solely in its capacity as such and in its capacity as officer and director of the Wind-Down Debtors and in its capacity as trustee and administrator of the Liquidating Trust) and (2) the Liquidating Trust Professionals ((1) and (2) collectively, the "**Indemnified Parties**"), from and against and with respect to any and all liabilities, losses, damages, claims, costs, and expenses, including, but not limited to, attorneys' fees arising out of or due to their actions or omissions, or consequences of such actions or omissions, other than actions or omissions resulting from such Indemnified Party's bad faith, willful misconduct (including, without limitation, actual fraud), or gross negligence, with respect to the Wind-Down Debtors, the Liquidating Trust, or the implementation or administration of the Plan or Liquidating Trust Agreement.  To the extent that an Indemnified Party asserts a claim for indemnification as provided above, (1) any payment on account of such claim shall be paid solely from the Wind-Down Account and (2) the legal fees and related costs incurred by counsel to the Liquidating Trustee in monitoring and participating in the defense of such claims giving rise to the asserted right of indemnification shall be advanced to such Indemnified Party (and such Indemnified Party undertakes to repay such amounts if it ultimately shall be determined that such Indemnified Party is not entitled to be indemnified therefore) out of the Wind-Down Account or any insurance purchased using the Wind-Down Account.  The indemnification provisions of the Liquidating Trust Agreement shall remain

27

available to, and be binding upon, any former Liquidating Trustee or the estate of any decedent of the Liquidating Trustee and shall survive the termination of the Liquidating Trust Agreement.

4.        The Liquidating Trustee shall be authorized to obtain and pay for, out of the Liquidating Trust Assets and, after the Effective Date, out of the Wind-Down Account, all reasonably necessary insurance coverage for itself, its agents, representatives, employees, or independent contractors, the Wind-Down Debtors and the Liquidating Trust, including, but not limited to, coverage with respect to (1) any property that is or may in the future become the property of the Wind-Down Debtors, their Estates or the Liquidating Trust and (2) the liabilities, duties, and obligations of the Liquidating Trustee and its agents, representatives, employees, or independent contractors under the Liquidating Trust Agreement (in the form of an errors and omissions policy or otherwise), the latter of which insurance coverage may remain in effect for a reasonable period of time as determined by the Liquidating Trustee after the termination of the Liquidating Trust Agreement.

**C.        *Rights, Powers, and Duties of the Wind-Down Debtors and the Liquidating Trustee***

The Liquidating Trustee shall retain and have all the rights, powers, and duties necessary to carry out its responsibilities under the Plan.  Such rights, powers, and duties, which shall be exercisable by the Liquidating Trustee on behalf of itself, the Wind-Down Debtors, the Estates and the Liquidating Trust pursuant to the Plan and the Liquidating Trust Agreement, shall include, among other things, (a) investigating and, if appropriate, pursuing Causes of Action, (b) administering and pursuing the Liquidating Trust Assets, including, without limitation, objecting to and defending against all Claims against the Debtors (including, without limitation, Administrative Claims and Priority Claims), (c) resolving all Disputed Claims and any Claim objections pending as of the Confirmation Date, and (d) making distributions to Holders of Allowed Claims as provided for in the Plan.  To the extent that the Liquidating Trustee deems necessary or appropriate, the Liquidating Trustee shall be automatically substituted or supplemented as a real party in interest in any objection to a Claim or any litigation commenced prior to the Effective Date by the Debtors.

**D.        *Corporate Action***

Upon the Effective Date, all actions contemplated by the Plan (including any document contemplated by the Plan Supplement) shall be deemed authorized, and approved, without any requirement for further action by Holders of Claims or Interests, directors, managers, or officers of the Debtors, the Liquidating Trustee or any other Entity, including, in each case, as applicable: (a) rejection or assumption, as applicable, of Executory Contracts and Unexpired Leases; and (b) all other acts or actions contemplated, or reasonably necessary or appropriate to promptly consummate the transactions contemplated by the Plan (whether to occur before, on, or after the Effective Date). All matters provided for in the Plan (including any document contained in the Plan Supplement) involving the corporate structure of the Debtors, and any corporate action required by the Debtors in connection therewith, shall be deemed to have occurred on, and shall be in effect as of, the Effective Date, without any requirement of further action by the security holders, directors, managers, authorized persons or officers of the Debtors or Liquidating Trustee. On or before the Effective Date, the appropriate officers of the Debtors or Liquidating Trustee, as applicable, shall be authorized and (as applicable) directed to issue, execute, and deliver the

28

agreements, documents and instruments contemplated by the Plan (or necessary or desirable to effectuate the transactions related to the Plan) in the name and on behalf of the Debtors to the extent not previously authorized by the Bankruptcy Court, if and as applicable. The authorizations and approvals contemplated by this Article IV.D. shall be effective notwithstanding any requirements under non-bankruptcy law.

### E.     *Amended Organizational Documents*

On the Effective Date, the organizational documents of each of the Debtors shall be deemed amended, amended and restated, or replaced as may be necessary to effectuate the transactions contemplated or permitted by this Plan and the Liquidating Trust Agreement, including to prohibit the issuance of nonvoting equity securities, to the extent required under section 1123(a)(6) of the Bankruptcy Code. After the Effective Date, the Liquidating Trustee may amend and restate the Amended Organizational Documents, and the Liquidating Trustee may file their respective certificates or articles of incorporation, bylaws, or such other applicable formation or dissolution documents, and other constituent documents as permitted by the laws of the respective states or countries of incorporation, the Liquidating Trust Agreement, and the Amended Organizational Documents.

### F.     *Dissolution of Board of Directors*

As of the Effective Date, the respective boards of directors and managers, as applicable, of each of the Debtors shall be terminated and the members of each of the boards of directors and managers, as applicable, of the Debtors shall be deemed to have resigned.

### G.     *Cancellation of Notes, Instruments, Certificates, and Other Documents*

1.     On the Effective Date, except as otherwise specifically provided for in the Plan: (1) any certificate, share, note, bond, indenture, purchase right, or other instrument or document, directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest, equity, or portfolio interest in the Debtors or any warrants, options, or other securities exercisable or exchangeable for, or convertible into, debt, equity, ownership, or profits interests in the Debtors giving rise to any Claim or Interest shall be canceled and deemed surrendered as to the Debtors and shall not have any continuing obligations thereunder; and (2) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificates or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, indenture, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors shall be fully released, settled, and compromised.

2.     The Prepetition 2L Notes Indenture shall terminate as of the Effective Date, except that (i) the Prepetition 2L Notes Documents shall continue in effect for purposes of preserving all rights and obligations not released under the Plan as between the Prepetition 2L Noteholders, on the one hand, and any non-Debtor Entities, on the other; and (ii) the Prepetition 2L Notes shall continue in effect solely for the purposes of (a) allowing the Holders of the Prepetition 2L Notes Claims to receive their Plan Distribution, (b) preserving the Prepetition 2L Notes Indenture Trustee's right to receive the Prepetition 2L Notes Trustee's fees and expenses, (c) permitting the

Prepetition 2L Notes Trustee to exercise its charging lien as set forth in the Prepetition 2L Notes Indenture, (d) allowing the Prepetition 2L Notes Trustee to enforce its rights, claims and interests vis-à-vis any other parties other than the Debtors and the Released Parties and to appear in the Chapter 11 Cases, (e) maintaining the right to indemnification, contribution or subrogation or any other claim or entitlement they may have from the Debtors pursuant to and subject to the respective terms of the Prepetition 2L Notes Indenture, and (f) permitting the Prepetition 2L Note Trustee to perform any functions that are necessary to effectuate the foregoing. Except for the foregoing with respect to such other rights of the Prepetition 2L Notes Trustee that survive the Prepetition 2L Notes Indenture, the Prepetition 2L Notes Trustee and their respective agents shall be relieved of all further duties and responsibilities related to the Prepetition 2L Notes Indenture and the Plan.

## H.      *General Settlement of Claims*

Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, including the Gordon Brothers Settlement, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their respective Estates, and holders of Claims and Interests and is fair, equitable, and reasonable. In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Wind-Down Debtors (with the consent of the Ad Hoc Noteholder Group) may compromise and settle Claims against the Debtors and their respective Estates and Causes of Action against other Entities.

## I.      *Section 1146(a) Exemption*

To the fullest extent permitted by Bankruptcy Code section 1146(a), any transfers of property under the Plan or pursuant to: (a) the issuance, distribution, transfer or exchange of any debt, equity security or other interest in the Debtors; (b) the creation, modification, consolidation, termination, refinancing and/or recording of any mortgage, deed of trust, or other security interest or the securing of additional indebtedness by such or other means; (c) the making, assignment or recording of any lease or sublease; or (d) the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, sales or use tax or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by

30

whomever appointed, shall comply with the requirements of Bankruptcy Code section 1146(c), shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

## J.    *Preservation of Causes of Action*

Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan, including pursuant to Article VIII herein, the Cash Collateral Orders or a Final Order, in accordance with Bankruptcy Code section 1123(b), the Debtors, the Wind-Down Debtors, the Estates, the Liquidating Trust, or the Liquidating Trustee shall retain and may enforce all rights to commence and pursue any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Plan Supplement, and the Debtors, the Wind-Down Debtors, the Estates, the Liquidating Trust, or the Liquidating Trustee's rights to commence, prosecute or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. **No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors, the Wind-Down Debtors, the Estates, the Liquidating Trust, or the Liquidating Trustee will not pursue any and all available Causes of Action against them. The Debtors, the Wind-Down Debtors, the Estates, the Liquidating Trust, or the Liquidating Trustee expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided herein.** Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised or settled in the Plan, including pursuant to Article VIII herein, the Cash Collateral Orders or a Final Order, the Debtors, the Wind-Down Debtors, the Estates, the Liquidating Trust, or the Liquidating Trustee expressly reserves all Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise) or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation. For the avoidance of doubt, in no instance will any Cause of Action preserved pursuant to this Article IV.I. include any claim or Cause of Action with respect to, or against, a Released Party.

In accordance with Bankruptcy Code section 1123(b)(3), any Causes of Action preserved pursuant to the first paragraph of this Article IV.I. that a Debtor may hold against any Entity shall vest in the Liquidating Trust on the Effective Date. The Liquidating Trust, through its authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action in accordance with this Plan and the Liquidating Trust Agreement. Subject to the terms of this Plan and the Liquidating Trust Agreement, the Liquidating Trust shall have the exclusive right, authority and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw or litigate to judgment any such Causes of Action, or to decline to do any of the foregoing, without the consent or approval of any third party or any further notice to or action, order or approval of the Bankruptcy Court.

## K.    *Wind-Down Reserve*

1.    Professional Fee Escrow Account. Before the Effective Date, the Debtors shall fund

31

the Professional Fee Escrow Account in accordance with Article II.B of the Plan.

2.    <u>Disputed Claims Reserve</u>. The Liquidating Trustee shall be authorized, but not directed, to establish, fund with Cash, and manage any Disputed Claims Reserves in accordance with Article VI.I of the Plan.

3.    <u>Wind-Down Account</u>. On or prior to the Effective Date, the Liquidating Trust shall establish the Wind-Down Account, and the Debtors shall fund such Wind-Down Account with Cash in an amount as specified in the Wind-Down Budget. On and after the Effective Date, the Wind-Down Account shall be funded from proceeds of Liquidating Trust Assets to (a) make payments in accordance with the Wind-Down Budget, including the fees and expenses of the Liquidating Trust Professionals and (b) make distributions to Holders of Allowed Administrative Claims, Allowed Priority Claims, Allowed Prepetition 2L Notes Claims and Allowed General Unsecured Claims in accordance with the terms and conditions set forth in this Plan, as well as, if the Liquidating Trustee determines in its sole discretion to do so, fund the Disputed Claims Reserve.  Any recovery of proceeds from the Liquidating Trust Assets shall be deposited by the Liquidating Trustee into the Wind-Down Account.

**L.    *Distributable Proceeds / Waterfall Recovery.***

After the Professional Fee Escrow Account and any Disputed Claims Reserve have been funded and after payment of the Initial GB Payment and any Allowed Professional Fee Claims above the amounts in the Professional Fee Escrow Account, from time to time, the Liquidating Trustee shall determine whether the Cash in the Wind-Down Account exceeds the amount of Cash needed to fund the Wind-Down Budget and, at such time and in its sole discretion, may distribute any such excess Cash in accordance with the following priorities:

1.    <u>Waterfall Recovery</u>. All remaining Distributable Proceeds held in the Wind-Down Account shall be allocated and paid to the applicable Holders of Allowed Claims until paid in full from time to time in the following priority (the "<u>Waterfall Recovery</u>"): (i) *first*, $5 million distributed Pro Rata among Allowed Administrative and Priority Claims, (ii) *second*, $9.8 million distributed among the following claims: (a) 50% distributed Pro Rata among Allowed Administrative and Priority Claims; and (b) 50% distributed Pro Rata among Prepetition 2L Notes Claims; and (iii) *third*, any remaining Distributable Proceeds shall be distributed Pro Rata among Prepetition 2L Notes Claims.

2.    <u>GUC Waterfall Recovery</u>.

a)    All remaining GUC Distributable Proceeds held in the Wind-Down Account shall be allocated and paid to the applicable Holders of Allowed Claims until paid in full from time to time in the following priority (the "<u>GUC Waterfall Recovery</u>"): (i) *first*, $1 million distributed Pro Rata among Allowed General Unsecured Claims (the "<u>GUC Distribution</u>"); and (ii) s*econd*, all monies above the initial $1 million GUC Distribution shall be distributed Pro Rata among Prepetition 2L Notes Claims and Allowed General Unsecured Claims, *provided* that for the purposes of this clause (ii), Pro Rata shall mean the proportion that the amount of an Allowed General

17215756

Unsecured Claim or Prepetition 2L Notes Claim, as applicable, bears to the aggregate amount of all Allowed and Disputed General Unsecured Claims and Prepetition 2L Notes Claims.

b) Holders of Prepetition 2L Notes Claims shall not receive any recovery on account of their deficiency claims from the GUC Distribution.

c) The Liquidating Trust's cost of pursuing and monetizing the GUC Assets shall be financed solely from "contingency" or other "litigation" funding and not, for the avoidance of doubt, from any account or reserve of the Wind-Down Debtors or the Liquidating Trust. The Liquidating Trustee shall have the sole discretion as to which Avoidance Actions or Commercial Torts are pursued, and to the extent any are pursued, the appropriate resolution of such GUC Assets.

## M.    *Release of Certain Avoidance Actions and Commercial Tort Claims*

The Debtors may release some or all of the Avoidance Actions and/or the Commercial Tort Claims, as applicable, pursuant to this Plan. To the extent not released, those Avoidance Actions and/or Commercial Tort Claims, as applicable, not released pursuant to this Plan will be identified in the Plan Supplement. For the avoidance of doubt, any Avoidance Actions and/or Commercial Tort Claims, as applicable, not released pursuant to this Plan shall constitute assets of and shall be transferred to and vest in the Liquidating Trust.

## N.    *Corporate Actions Regarding the Wind-Down Debtors*

The entry of the Confirmation Order shall constitute authorization for the Debtors, the Wind-Down Debtors and the Liquidating Trust, as applicable, to take or cause to be taken all corporate actions necessary or appropriate to implement all provisions of, and to consummate, the Plan prior to, on and after the Effective Date and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act or action under any applicable law, order, rule or regulation, including, without limitation: (a) the appointment of the Liquidating Trustee; (b) the transfer of assets to the Liquidating Trust; (c) the adoption, execution, delivery and implementation of all contracts, instruments, releases and other agreements or documents related to any of the foregoing; and (d) the other matters provided for under this Plan involving the corporate structure of the Debtors or corporate action to be taken by or required by the Debtors or the Liquidating Trustee. Notwithstanding any requirement under non-bankruptcy law, all matters provided for in the Plan or deemed necessary or desirable by the Debtors or the Liquidating Trustee, as applicable, before, on, or after the Effective Date involving the corporate structure of the Debtors, including the dissolution of the Debtors shall be deemed to have occurred and shall be in effect on the Effective Date or as otherwise provided under the Plan, without any requirement of further action by the security holders, directors, managers, members or officers of the Debtors.

## O.    *Effectuating Documents; Further Transactions*

The Debtors, the Wind-Down Debtors and the Liquidating Trustee are authorized to and may issue, execute, deliver, file, or record such contracts, instrument, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate,

implement and evidence the terms and conditions of this Plan, in each case, in the name of and on behalf of the Debtors, the Wind-Down Debtors, or the Liquidating Trust, as applicable, without the need for any approvals, authorization or consents except those expressly required pursuant to this Plan.

## P.   *Closing the Chapter 11 Cases*

On or after the Effective Date, the Liquidating Trustee shall be authorized to file a motion requesting entry of one or more orders of this Court closing any of the Chapter 11 Cases other than except for PCHI's Chapter 11 Case, which shall be designated as the lead case. All contested matters and adversary proceedings relating to any of the Debtors, including objections to Claims, shall be filed, administered and adjudicated in PCHI's Chapter 11 Case without the need to reopen any of the other Chapter 11 Cases; *provided* that for purposes of sections 546 and 550 of the Bankruptcy Code, the Chapter 11 Cases shall be deemed to remain open until PCHI's Chapter 11 Case is closed. The Liquidating Trustee shall, promptly after the full administration of the Chapter 11 Cases, file with this Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court and file a motion under Local Rule 3022-1(a) to close the Chapter 11 Case of PCHI's Chapter 11 Case and of any other Debtor whose case remains open at that time. Upon the filing of such a motion, the Liquidating Trustee shall file a final report with respect to all of the Chapter 11 Cases pursuant to Local Rule 3022-1(c)

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

## A.   *Rejection of Executory Contracts and Unexpired Leases*

On the Effective Date, except as otherwise provided in the Plan or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, all Executory Contracts and Unexpired Leases shall be deemed rejected, without the need for any further notice to or action, Order, or approval of the Bankruptcy Court, as of the Effective Date under section 365 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (1) was previously assumed by the Debtors, pursuant to an Order of the Bankruptcy Court; (2) previously expired or terminated pursuant to its terms; or (3) is the subject of a motion to assume, assume and assign, or reject or notice of the same pursuant to procedures for assumption, assumption and assignment, or rejection established by the Bankruptcy Court filed by the Debtors that is pending on or before the date of entry of the Confirmation Order.

Subject to and upon the occurrence of the Effective Date, entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the rejections of Executory Contracts and Unexpired Leases provided for in this Plan or the Confirmation Order, pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  Except as otherwise provided for in the Confirmation Order, each Executory Contract and Unexpired Lease assumed pursuant to this Plan, the Confirmation Order, or any other Order of the Bankruptcy Court shall re-vest in and be fully enforceable by Debtors and the Liquidating Trust, as applicable, in accordance with its terms, except as such terms may have been modified by the provisions of any Order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law (following notice and an opportunity to object to the affected counterparties).  Any guarantee of an Unexpired Lease that is assumed

34

pursuant to this Plan, the Confirmation Order, or any other Order of the Bankruptcy Court shall be reaffirmed by the applicable Wind-Down Debtor and remain in full force and effect as of the Effective Date.

**B.**   *Claims Based on Rejection of Executory Contracts and Unexpired Leases*

Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be Filed with the Bankruptcy Court within 30 days after the later of (1) entry of an Order of the Bankruptcy Court (including the Confirmation Order) approving such rejection and (2) the effective date of such rejection.  **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Bankruptcy Court within such time shall be Disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, the Wind-Down Debtors, the Estates, the Liquidating Trust or their respective property.**

**C.**   *Preexisting Obligations to the Debtors under Executory Contracts and Unexpired Leases*

Notwithstanding any non-bankruptcy law to the contrary, the Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased, or services previously received, by the contracting Debtors from counterparties to rejected or repudiated Executory Contracts or Unexpired Leases.  For the avoidance of doubt, the rejection of any Executory Contracts or Unexpired Leases pursuant to this Plan or otherwise shall not constitute a termination of pre-existing obligations owed to the Debtors under such Executory Contracts or Unexpired Leases.

**D.**   *Indemnification Obligations*

1.      Consistent with applicable law, all indemnification provisions in place prior to the Effective Date (whether in the by-laws, certificates of incorporation or formation, limited liability company agreements, other organizational documents, board resolutions, indemnification agreements, employment contracts, or otherwise) for current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of the Debtors, as applicable, shall (1) not be discharged, impaired, or otherwise affected in any way, including by the Plan, the Plan Supplement, or the Confirmation Order, (2) remain intact, in full force and effect, and irrevocable, (3) not be limited, reduced or terminated after the Effective Date, and (4) survive the effectiveness of the Plan on terms no less favorable to such current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of the Debtors than the indemnification provisions in place prior to the Effective Date irrespective of whether such indemnification obligation is owed for an act or event occurring before, on or after the Petition Date, *provided*, that all obligations under this Article V.D of the Plan shall be limited solely to recovery available under applicable Insurance Contracts and neither the Wind-Down Debtors, the Liquidating Trustee, the Liquidating Trust, nor any of their assets (other than the Insurance Contracts) shall be liable for any such obligations. For the avoidance of doubt, nothing herein shall be construed as the Debtors assuming any obligation with respect to any self-insured retention for which the applicable insurer has the ability to assert a prepetition

35

Claim against the applicable Debtor in accordance with the order setting the Bar Date or other order of the Court. All such obligations shall be deemed and treated as Executory Contracts to be assumed by the Debtors under the Plan and shall continue as obligations of the Liquidating Trust following the Effective Date.  Any Claim based on the Debtors' obligations under the Plan shall not be a Disputed Claim or subject to any objection, in either case, for any reason, including by reason of section 502(e)(1)(B) of the Bankruptcy Code. This provision for Indemnification Obligations shall not apply to or cover any Causes of Action against a Person that result in a Final Order determining that such Person seeking indemnification is liable for fraud, willful misconduct, gross negligence, bad faith, self-dealing, or breach of the duty of loyalty.

2.      On and after the Effective Date, the coverage under any of the D&O Policies in effect on the Petition Date shall not be terminated or otherwise reduced by or on behalf of the Debtors, and all directors and officers of the Debtors at any time shall be entitled to the full benefits of any such policy for the full term of such policy regardless of whether such directors and/or officers remain in such positions after the Effective Date.

**E.**      ***Modifications, Amendments, Supplements, Restatements or Other Agreements***

Unless otherwise provided in this Plan or the Confirmation Order, all Executory Contracts and Unexpired Leases that are assumed or assumed and assigned shall include all exhibits, schedules, modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contracts and Unexpired Leases, and affect Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under this Plan or the Confirmation Order.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter (1) the prepetition nature of such Executory Contracts and Unexpired Leases or (2) the validity, priority, or amount of any Claims that may arise in connection therewith, except as set forth under the express terms of any such modification, amendment, supplement, or restatement.

**F.**      ***Nonoccurrence of Effective Date***

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming, assuming and assigning, or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

**G.**      ***Reservation of Rights***

Neither the exclusion nor the inclusion by the Debtors of any contract or lease on any exhibit, schedule, or other annex to the Plan or in the Plan Supplement, nor anything contained in the Plan, shall constitute an admission by the Debtors or any other party that any contract or lease is in fact an Executory Contract or Unexpired Lease or that any Wind-Down Debtor has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Wind-Down Debtors, as

36

applicable, shall have forty-five (45) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

## ARTICLE VI.
## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

### A.    *Allowance of Claims*

After the Effective Date, the Liquidating Trustee shall be entitled to assert all of the Debtors', the Wind-Down Debtors', and the Liquidating Trust's rights, claims, defenses, offsets, rights of recoupment, setoffs, rights of disallowance, subrogation, recharacterization, and/or equitable subordination and counterclaims the applicable Debtor had with respect to any Claim immediately before the Effective Date. Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code, or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Cases allowing such Claim. Notwithstanding the releases in Article VIII of this Plan, the Liquidating Trust retains all defenses against any Claim asserted against the Debtors, including rights of recoupment, setoffs, rights of disallowance, subrogation, recharacterization, and/or equitable subordination.

For the avoidance of doubt, nothing in this Plan will supersede the Bar Date Order with respect to a party's right to file a Claim.

### B.    *Claims Administration Responsibilities*

Except as otherwise specifically provided in the Plan and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, after the Effective Date, the Liquidating Trustee shall have the sole authority to File and prosecute objections to Claims. The Liquidating Trustee shall have the sole authority to (1) settle, compromise, withdraw, litigate to judgment, or otherwise resolve any and all Claims, regardless of whether such Claims are in a Class or otherwise; (2) settle, compromise, or resolve any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

### C.    *Estimation of Claims*

Before, on, or after the Effective Date, the Debtors, the Wind-Down Debtors, or the Liquidating Trustee, as applicable may (but are not required to) at any time request that the Bankruptcy Court estimate any Claim pursuant to applicable law, including, without limitation, pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to estimate any such Claim, including during the litigation of any objection to any Claim or during the pendency of any appeal relating to such objection. Notwithstanding any provision to the contrary in the Plan, a Claim that has been expunged from the Claims Register, but that either is

subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any Claim, such estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions and discharge) and may be used as evidence in any supplemental proceedings, and the Debtors, the Wind-Down Debtors, or the Liquidating Trustee may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim. Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before seven (7) days after the date on which such Claim is estimated. Each of the foregoing Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

## D.      *Adjustment to Claims Without Objection*

The Liquidating Trustee shall be authorized to update the Claims Register to adjust or remove any Claim that has been paid in full or satisfied, or any Claim that has been amended or superseded.

## E.      *Time to File Objections to Claims*

Any objections to Claims shall be Filed on or before the Claims Objection Deadline.

## F.      *Disallowance of Claims*

Any Claims held by Entities from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Debtors, the Wind-Down Debtors, or the Liquidating Trustee, as applicable. All Proofs of Claim Filed on account of an indemnification obligation shall be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent such indemnification obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan, without any further notice to or action, order, or approval of the Bankruptcy Court.

Pursuant to the terms of the Administrative Claims Bar Date Order and the Bar Date Order, if Proofs of Claim are not received by the Notice and Claims Agent on or before the Claims Bar Date or the Administrative Claims Bar Date, as applicable, and except in the case of certain exceptions explicitly set forth in the Administrative Claims Bar Date Order and the Bar Date Order, the Holders of the underlying Claims shall be barred from asserting such claims against the Debtors and precluded from voting on any plans of reorganization filed in these Chapter 11 Cases and/or receiving distributions from the Debtors on account of such claims in these Chapter 11 Cases. The

38

Debtors and the Liquidating Trust, as applicable, shall be authorized to update the Claims Register to remove any claims not received by the Notice and Claims Agent before the Claims Bar Date or the Administrative Claims Bar Date, as applicable, and not subject to an exception as set forth above.

## G. *Amendments to Claims*

On or after the Effective Date, a Claim (other than a Claim arising from the rejection of an Executory Contract or Unexpired Lease or a Claim filed by the Administrative Claims Bar Date) may not be Filed or amended without the prior authorization of the Bankruptcy Court, the Debtors, or the Liquidating Trust, as applicable, and the Liquidating Trust shall be authorized to update the Claims Register to remove any such new or amended Claim Filed; *provided* that the Debtors will provide notice to such claimant at the address or email address on the Proof of Claim, to the extent such information is provided, informing such claimant that its Claim will be adjusted or removed from the Claims Register.

## H. *No Distributions Pending Allowance*

If an objection to a Claim or portion thereof is Filed, no payment or distribution provided under the Plan shall be made on account of such Claim or portion thereof unless and until such Disputed Claim becomes an Allowed Claim.

## I. *Disputed Claims Reserve*

1.      The Liquidating Trustee shall be authorized, but not directed, to establish a Disputed Claims Reserve, which shall be administered by the Liquidating Trustee.

2.      The Liquidating Trustee shall hold Cash in the Disputed Claims Reserve in trust for the benefit of Holders of Claims ultimately determined to be Allowed after the Effective Date. The Disbursing Agent shall distribute such amounts (net of any expenses, including any taxes relating thereto), as provided herein, as such Claims are resolved by a Final Order or agreed to by settlement, and such amounts will be distributable on account of such Claims as such amounts would have been distributable had such Claims been Allowed Claims as of the Effective Date solely to the extent of the amounts available in the applicable Disputed Claims Reserve.

3.      The Liquidating Trustee may adjust the Disputed Claims Reserve to reflect all earnings thereon (net of any expenses relating thereto, such expenses including any taxes imposed thereon or otherwise payable by the reserve). The taxes imposed on the Disputed Claims Reserve (if any) shall be paid from the property held in the Disputed Claims Reserve, and the Debtors, the Wind-Down Debtors, and the Liquidating Trustee shall have no liability for such taxes.

2.      After any reasonable determination by the Liquidating Trustee that the Disputed Claims Reserve should be adjusted downward in accordance with this Article VI.I.3 of the Plan, the Liquidating Trustee, (A) effect a distribution in the amount of such adjustment as required by the Plan or (B) transfer Cash in the amount of such adjustment to the Wind-Down Account.

3.      After all Disputed Claims have become either Allowed Claims or Disallowed Claims, and all distributions required pursuant the Plan have been made, the Liquidating Trustee,

either (A) effect a final distribution of the Cash remaining (if any) in the Disputed Claims Reserve in accordance with the priorities set forth in the Plan or (B) transfer the remaining Cash to the Wind-Down Account.

4.    The Liquidating Trustee may (A) make an election pursuant to United States Treasury Regulations section 1.468B-9 to treat the Disputed Claims Reserve as a "disputed ownership fund" within the meaning of that section and (B) allocate taxable income or loss to the Disputed Claims Reserve with respect to any taxable year that would have been allocated to the Holders of Disputed Claims had such Claims been Allowed on the Effective Date (but only for the portion of the taxable year with respect to which such Claims are Disputed Claims). The affected Holders of the Disputed Claims shall be bound by such election, if made by the Liquidating Trustee. For federal income tax purposes and, to the extent permitted by applicable law, state, and local income tax purposes, absent definitive guidance from the IRS or a contrary determination by a court of competent jurisdiction, the Liquidating Trustee shall report consistently with the foregoing characterization. All affected Holders of Disputed Claims shall report, for income tax purposes, consistently with the foregoing.

## J.    *Distributions After Allowance*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan. As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Liquidating Trust shall provide to the Holder of such Claim the distribution to which such Holder is entitled under the Plan as of the Effective Date, less any previous distribution (if any) that was made on account of the undisputed portion of such Claim, without any interest, dividends, or accruals to be paid on account of such Claim unless required under applicable bankruptcy law or as otherwise provided herein.

## ARTICLE VII.
## PROVISIONS GOVERNING DISTRIBUTIONS

## A.    *Disbursing Agent*

1.    The Debtors, the Wind-Down Debtors, or the Liquidating Trustee, as applicable, may retain and direct a Disbursing Agent to assist with the distributions to be made under the Plan. The Disbursing Agent shall make all distributions required under the Plan. The Prepetition 2L Notes Trustee will be considered the Disbursing Agent for the applicable Prepetition 2L Notes Claims; *provided*, *however*, that for the avoidance of doubt, the Senior Notes Indenture Trustee will not be considered a Disbursing Agent, or be responsible, for any non-DTC eligible distributions.

2.    Except as otherwise set forth herein, the Wind-Down Debtors shall be authorized, without further Bankruptcy Court approval, to reimburse any Disbursing Agent for its reasonable, documented, actual, and customary out-of-pocket expenses incurred in providing post-Confirmation services directly related to distributions pursuant to the Plan.

3.    If the Disbursing Agent is an independent third party designated to serve in such capacity, the Liquidating Trustee shall be permitted to provide to such Disbursing Agent from the

40

Wind-Down Account, without further Bankruptcy Court approval, reasonable compensation for distribution services rendered pursuant to the Plan and reimbursement of reasonable, actual, and documented out-of-pocket expenses incurred in providing post-Confirmation services directly related to distributions pursuant to the Plan.

**B.**     ***Timing and Delivery of Distributions***

    1.     <u>Timing</u>

        a)   Subject to any reserves or holdbacks established pursuant to the Plan, on the appropriate distribution date, Holders of Allowed Claims shall receive the distributions from the Liquidating Trust provided for Allowed Claims in the applicable Classes as of such date.

        b)   If and to the extent there are Disputed Claims as of the Effective Date, distributions on account of such Disputed Claims (which will only be made if and when they become Allowed Claims) shall be made pursuant to the provisions set forth in the Plan with respect to the treatment of Allowed Claims on or as soon as reasonably practicable after the next Distribution Date that is at least 20 calendar days after each such Claim is Allowed; *provided*, that distributions on account of Professional Fee Claims shall be made as soon as reasonably practicable after such Claims are Allowed by the Bankruptcy Court or as provided in any other applicable order of the Bankruptcy Court.

    2.     <u>*De Minimis* Distributions</u>

        a)   Notwithstanding any other provision of the Plan, none of the Wind-Down Debtors nor any Disbursing Agent shall be required to make any distributions to Holders of Allowed Claims aggregating less than $100.00. Cash that otherwise would be payable under the Plan to Holders of Allowed Claims but for this Article VII.B.2 of the Plan shall be available for distributions to Holders of other Allowed Claims.

        b)   Notwithstanding any other provision of the Plan, none of the Wind-Down Debtors, the Liquidating Trust, nor any Disbursing Agent shall have any obligation to make any distributions unless the sum of all distributions authorized to be made to all Holders of Allowed Claims on such date exceeds $10,000 in value.

    3.     <u>Delivery of Distributions—Allowed Claims</u>

        a)   Distributions shall only be made to the record Holders of Allowed Claims as of the Distribution Record Date. On the Distribution Record Date, at the close of business for the relevant register, all registers maintained by the Debtors, the Wind-Down Debtors, the Liquidating Trustee, the Disbursing Agent, the Prepetition 2L Notes Trustee, and each of the foregoing's respective agents, successors, and assigns shall be deemed closed for purposes of determining whether a Holder of such a Claim is a record Holder entitled to distributions

under the Plan. The Debtors, the Wind-Down Debtors, the Liquidating Trustee, the Disbursing Agent, the Prepetition 2L Notes Trustee, and each of the foregoing's respective agents, successors, and assigns shall have no obligation to recognize, for purposes of distributions pursuant to, or in any way arising from, the Plan (or for any other purpose), any Claims that are transferred after the Distribution Record Date. Instead, the foregoing parties shall be entitled to recognize only those record Holders set forth in the registers as of the Distribution Record Date, irrespective of the number of distributions made under the Plan or the date of such distributions. Furthermore, if a Claim is transferred 20 or fewer calendar days before the Distribution Record Date, the Disbursing Agent shall make distributions to the transferee only if the transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

b) If any dispute arises as to the identity of a Holder of an Allowed Claim that is entitled to receive a distribution pursuant to the Plan, the Disbursing Agent may, in lieu of making such distribution to such person, make the distribution into an escrow account until the disposition thereof is determined by Final Order or by written agreement among the interested parties to such dispute.

c) Subject to Bankruptcy Rule 9010, a distribution to a Holder of an Allowed Claim may be made by the Disbursing Agent in its sole discretion to (A) the address set forth on the first page of the Proof of Claim Filed by such Holder (or at the last known address of such Holder if no Proof of Claim is Filed or if the Debtors have been notified in writing of a change of address), (B) the last known address of such Holder on the books and records of the Debtors or their agents after the date of any related Proof of Claim, (C) the address set forth in any written notice of an address change delivered to the Disbursing Agent, (D) the address set forth on the Schedules, if no Proof of Claim has been Filed and the Disbursing Agent has not received a written notice of an address change or (E) the address of any counsel that has appeared in the Chapter 11 Cases on such Holder's behalf.

4.   Delivery of Distributions—Allowed Prepetition 2L Notes Claims; Surrender of Cancelled Instruments or Securities

a) All distributions to Holders of Allowed Prepetition 2L Notes Claims shall be deemed completed when made to (A) the Prepetition 2L Notes Trustee or (B) if agreed to by the Debtors and the Prepetition 2L Notes Trustee, through the facilities of DTC. The Prepetition 2L Notes Trustee or DTC, as applicable, shall hold or direct such distributions for the benefit of the Holders of Prepetition 2L Notes to the extent such Prepetition 2L Notes give rise to Allowed Prepetition 2L Notes Claims. As soon as practicable in accordance with the requirements set forth in this Article VII.B.4 of the Plan, the Prepetition 2L Notes Trustee or DTC, as applicable, shall arrange for the delivery of such distributions to or on behalf of such Holders.

42

b) For the avoidance of doubt, the Prepetition 2L Notes Trustee shall not bear any responsibility or liability for any distributions made hereunder by the Disbursing Agent or DTC. The Wind-Down Debtors shall reimburse the Prepetition 2L Notes Trustee for any reasonable and documented fees and expenses (including the reasonable and documented fees and expenses of its counsel and agents) incurred prior to or after the Effective Date; *provided* that the Wind-Down Debtors shall reimburse the Prepetition 2L Notes Trustee for reasonable and documented fees and expenses incurred after the Effective Date solely in connection with the implementation of the Plan, including, but not limited to, making distributions pursuant to and in accordance with the Plan.

## C.    *Manner of Payment Under the Plan*

At the Disbursing Agent's option, any Cash payment may be made by check, wire transfer, or any other customary payment method. In the case of foreign creditors, Cash payments may be made, at the option of the Disbursing Agent, in such funds and by such means as are necessary or customary in a particular jurisdiction.

## D.    *Allocation of Plan Distributions Between Principal and Interest*

To the extent that any Claim entitled to a distribution under the Plan is based upon any obligation or instrument that is treated for U.S. federal income tax purposes as indebtedness of any Debtor and accrued but unpaid interest thereon, such distribution shall be allocated first to the principal amount of the Claim (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid interest.

## E.    *Compliance Matters*

In connection with the Plan, each Debtor, each Wind-Down Debtor, the Disbursing Agent, the Liquidating Trust, and the Liquidating Trustee, as applicable, shall comply with all tax withholding, payment, and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Allowed Claims and distributions hereunder shall be subject to any such withholding and reporting requirements. In connection with the Plan and all distributions thereunder, the Disbursing Agent or the Liquidating Trustee, as applicable, on behalf of the Wind-Down Debtors, is authorized to take any and all actions that may be necessary or appropriate to comply with the foregoing requirements, including, without limitation, liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes or establishing any other mechanisms that the Debtors (with the consent of the Creditors' Committee, which consent shall not be unreasonably withheld), the Wind-Down Debtors, the Disbursing Agent, the Liquidating Trust, or the Liquidating Trustee, as applicable, believe are reasonable and appropriate, and all Allowed Claims and distributions hereunder shall be subject to any such withholding and reporting requirements. All Holders of Claims shall be required to provide any information necessary to allow the Liquidating Trustee to comply with all withholding, payment, and reporting requirements with respect to such taxes. The Disbursing Agent or the Liquidating Trustee, as applicable, reserves the right to withhold the full amount required by law on any distribution on account of any Holder of an Allowed Claim that fails to timely provide to the Disbursing Agent or the Liquidating Trustee, the required information. The

43

Debtors, the Wind-Down Debtors, the Liquidating Trust, the Liquidating Trustee, and the Disbursing Agent, as applicable, reserve the right to allocate and distribute all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support and other spousal awards, Liens, and similar encumbrances.

**F.**     *Foreign Currency Exchange Rate*

As of the Effective Date, any Claim asserted in a currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate on the Petition Date, as quoted at 4:00 p.m. (prevailing Central Time), midrange spot rate of exchange for the applicable currency as published in the *Wall Street Journal*, National Edition, on the day after the Petition Date.

**G.**     *Fractional Dollars*

Notwithstanding any other provision of the Plan, the Disbursing Agent shall not be required to make distributions or payments of fractions of dollars.  Whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual payment shall reflect a rounding of such fraction down to the nearest whole dollar.

**H.**     *Undeliverable or Non-Negotiated Distributions*

1.     If any distribution is returned as undeliverable or is otherwise unclaimed, no further distributions to the applicable Holder of an Allowed Claim shall be made unless and until the Disbursing Agent is notified in writing of such Holder's then-current address, at which time the undelivered distribution shall be made to such Holder without interest or dividends.  Undeliverable distributions shall be returned to Liquidating Trust until such distributions are claimed.  Any Holder of an Allowed Claim that does not claim an undeliverable or unclaimed distribution within 90 calendar days after the date such distribution was returned undeliverable shall be deemed to have forfeited its Claim for such undeliverable or unclaimed distribution and shall be forever barred and enjoined from asserting any such claim for an undeliverable or unclaimed distribution against the Debtors and their Estates, the Wind-Down Debtors, the Liquidating Trustee, the Disbursing Agent, and each of the foregoing's respective agents, attorneys, representatives, employees, or independent contractors and/or any of its or their property.  All title to and all beneficial interests in the Cash relating to such undeliverable or unclaimed distribution, including any dividends or interest attributable thereto, shall revert to the Wind-Down Debtors and such Cash shall be deposited in the Wind-Down Account for distribution in accordance with the Plan. The reversion of such Cash shall be free of any restrictions thereon notwithstanding any federal or state escheat laws to the contrary.  Nothing contained in the Plan or the Liquidating Trust Agreement shall require the Debtors, the Wind-Down Debtors, the Liquidating Trustee, or any Disbursing Agent to attempt to locate any Holder of an Allowed Claim.

2.     Checks issued on account of Allowed Claims shall be null and void if not negotiated within 120 calendar days from and after the date of issuance thereof.  Requests for reissuance of any check must be made directly and in writing to the Disbursing Agent by the Holder of the relevant Allowed Claim within such 120-calendar-day period.  Nothing contained in the Plan or the Liquidating Trust Agreement shall require the Debtors, the Wind-Down Debtors, the

44

Liquidating Trustee, or any Disbursing Agent to attempt to issue a new check following such 120-calendar-day period. After such 120-calendar-day period, the relevant Allowed Claim (and any Claim for reissuance of the original check) shall be automatically discharged and forever barred, and all title to and all beneficial interests in the Cash represented by any such non-negotiated check, including any dividends or interest attributable thereto, shall revert to the Wind-Down Debtors and such Cash shall be deposited in the Wind-Down Account for distribution in accordance with the Plan. The reversion of such Cash shall be free of any restrictions thereon notwithstanding any federal or state escheat laws to the contrary.

**I.**    ***Claims Paid by Third Parties***

1.    To the extent a Holder of an Allowed Claim receives a distribution on account of a Claim and also receives payment from a party that is not a Debtor or a Wind-Down Debtor on account of such Claim, such Holder shall, within 30 calendar days of receipt thereof, repay, and/or return the distribution to the applicable Wind-Down Debtor, to the extent that the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of the Claim as of the date of any such distribution under the Plan.

2.    A Claim may be adjusted or expunged on the Claims Register without a claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court to the extent that a Holder receives payment in full or in part on account of such Claim; *provided*, that, to the extent the non-Debtor party making the payment is subrogated to the Holder's Claim, the non-Debtor party shall have a 30-calendar-day grace period following payment in full to notify the Liquidating Trustee of such subrogation rights.

**J.**    ***Claims Payable by Third Parties***

To the extent that one or more of the Debtors' insurers satisfies any Claim in full or in part, then immediately upon such insurers' satisfaction, such Claim may be expunged (to the extent of such satisfaction) on the Claims Register without a claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court. Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that a Debtor or any Entity may hold against any other non-Debtor Entity (including Insurers) under any Insurance Contract(s), nor shall anything contained herein constitute or be deemed a waiver by such Insurers of any defenses, including coverage defenses, held by such Insurers under any such Insurance Contract(s).

**ARTICLE VIII.**
**SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS**

**A.**    ***Release of Liens***

**Except as otherwise specifically provided in this Plan, or in any other contract, instrument, release, or other agreement or document amended or created pursuant to the Plan, including on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Wind-Down Debtors and their**

45

successors and assigns, in each case, without any further approval or Order of the Bankruptcy Court and without any action or Filing being required to be made by the Debtors.  Any Holder of such a Secured Claim (and the applicable Prepetition ABL Agent or Prepetition 2L Notes Trustee for such Holder, if any) shall be authorized and directed, at the sole cost and expense of the Wind-Down Debtors, to release any collateral or other property of any Debtor (including any cash collateral and possessory collateral) held by such Holder (and the applicable Prepetition ABL Agent or Prepetition 2L Notes Trustee), and to take such actions as may be reasonably requested by the Wind-Down Debtors to evidence the release of such Liens and/or security interests, including as required under the laws of other jurisdictions for non-U.S. security interests and including the execution, delivery, and filing or recording of such releases, and shall authorize the Wind-Down Debtors to file UCC-3 termination statements (to the extent applicable) with respect thereto.  The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency, records office, or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

To the extent that any Holder of a Secured Claim that has been satisfied or discharged in full pursuant to the Plan, or the applicable Prepetition ABL Agent or Prepetition 2L Notes Trustee for such Holder, has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, then as soon as practicable on or after the Effective Date, such Holder (or the applicable Prepetition ABL Agent or Prepetition 2L Notes Trustee for such Holder) shall take any and all steps requested by the Debtors or the Wind-Down Debtors that are necessary or desirable to record or effectuate the cancellation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Wind-Down Debtors shall (a) pay the reasonable and documented fees and expenses of the applicable Prepetition ABL Agent or Prepetition 2L Notes Trustee, in each case including local and foreign counsel, to the extent payable under the Prepetition ABL Credit Agreement, or the Prepetition 2L Notes Indenture, as applicable, in connection with the foregoing and (b) be entitled to make any such filings or recordings on such Holder's behalf.

B.      *Debtor Release*

Notwithstanding anything else contained herein to the contrary, to the fullest extent permitted by applicable law and approved by the Bankruptcy Court, pursuant to section 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019 and in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is deemed to be, and hereby is conclusively, absolutely, unconditionally, irrevocably, finally, and forever released and discharged by each and all of the Debtors, the Wind-Down Debtors, and their Estates, including any successors to the Debtors or any Estate's representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action, including any derivative Claims asserted or assertable on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, asserted or unasserted, matured or unmatured, liquidated or unliquidated,

46

fixed or contingent, accrued or unaccrued, existing or hereafter arising, in law, equity, contract, tort, or otherwise, that the Debtors, the Wind-Down Debtors, or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Cause of Action against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Wind-Down Debtors, or their Estates (including the Debtors' capital structure, management, ownership, assets, or operation thereof), the purchase, sale, or rescission of any security of the Debtors or the Wind-Down Debtors, the assertion or enforcement of rights and remedies against the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim, Causes of Action, or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or an Affiliate of a Debtor, the Chapter 11 Cases, the Cash Collateral Orders, the Prepetition ABL Credit Agreement, the Prepetition 2L Notes Indenture, the formulation, preparation, dissemination, negotiation, or Filing of the Disclosure Statement, this Plan (including, for the avoidance of doubt, the Plan Supplement), or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, this Plan, the Confirmation Order, the Chapter 11 Cases, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of this Plan, any action or actions taken in furtherance of or consistent with the administration of this Plan, including the distribution of property under this Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to any of the foregoing.

Notwithstanding anything contained herein to the contrary, the foregoing release does not release (1) any post-Effective Date obligations of any party or Entity under the Plan, any act occurring after the Effective Date, (2) the rights of Holders of Allowed Claims to receive distributions under this Plan, or (3) any Claim, Cause of Action, or defense related to the failure to execute an agreed upon amendment to any Executory Contract or Unexpired Lease to the extent such issue is not resolved prior to the Effective Date.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the terms by which matters are subject to a compromise and settlement, including the Debtor Releases in <u>Article VIII.B</u>, which includes by reference each of the related provisions and definitions contained in this Plan, and, further, shall constitute the Bankruptcy Court's finding that the Debtor Releases in <u>Article VIII.B</u> are: (1) essential to Confirmation of this Plan; (2) an exercise of the Debtors' business judgment; (3) in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to this Plan; (4) a good-faith settlement and compromise of the Claims and Causes of Action released by the Debtor Releases in <u>Article VIII.B</u>; (5) in the best interests of the Debtors, their Estates, and all Holders of Claims and Interests; (6) fair, equitable, and reasonably given and made after due notice and opportunity for a hearing; and (7) a bar to any of the Debtors, the Wind-Down Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Releases in <u>Article VIII.B</u>.

47

C.      *Third-Party Release*

Except as otherwise expressly set forth in this Plan or the Confirmation Order, on and after the Effective Date, pursuant to Bankruptcy Rule 9019 and to the fullest extent permitted by applicable law and approved by the Bankruptcy Court, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is deemed to be, and hereby is conclusively, absolutely, unconditionally, irrevocably, finally, and forever released and discharged by each Releasing Party (in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities) from any and all Claims and Causes of Action, including any derivative Claims asserted or assertable on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, asserted or unasserted, matured or unmatured, liquidated or unliquidated, fixed or contingent, accrued or unaccrued, existing or hereafter arising, in law, equity, contract, tort, or otherwise that such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Cause of Action against, or Interest in, a Debtor based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the Debtors' capital structure, management, ownership, assets, or operation thereof), the purchase, sale, or rescission of any security of the Debtors or the Wind-Down Debtors, the subject matter of, or the transactions or events giving rise to, any Claim, Cause of Action, or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or an Affiliate of a Debtor, the Chapter 11 Cases, the Cash Collateral Orders, the Prepetition ABL Credit Agreement, the Prepetition 2L Notes Indenture, the formulation, preparation, dissemination, negotiation, or Filing of the Disclosure Statement, this Plan (including, for the avoidance of doubt, the Plan Supplement), or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, this Plan, the Confirmation Order, the Chapter 11 Cases, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of this Plan, any action or actions taken in furtherance of or consistent with the administration of this Plan, including the distribution of property under this Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to any of the foregoing.

Notwithstanding anything contained herein to the contrary, the foregoing release does not release (1) any post-Effective Date obligations of any party or Entity under the Plan, any act occurring after the Effective Date, (2)  the rights of Holders of Allowed Claims to receive distributions under this Plan, (3) the rights of any current employee of the Debtors under any employment agreement or plan, (4) the rights of the Debtors with respect to any confidentiality provisions or covenants restricting competition in favor of the Debtors under any employment agreement with a current or former employee of the Debtors, or (5) any Claim, Cause of Action, or defense related to the failure to execute an agreed upon

48

amendment to any Executory Contract or Unexpired Lease to the extent such issue is not resolved prior to the Effective Date.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the terms by which matters are subject to a compromise and settlement, including the Third-Party Releases in <u>Article VIII.D</u>, which includes by reference each of the related provisions and definitions contained in this Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Releases in this <u>Article VIII.C</u> are:  (1) essential to Confirmation of this Plan; (2) in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to implementing this Plan; (3) a good-faith settlement and compromise of the Claims and Causes of Action released by the Third-Party Releases in this <u>Article VIII.C</u>; (4) in the best interests of the Debtors and their Estates and all Holders of Claims and Interests; (5) fair, equitable, and reasonably given and made after due notice and opportunity for a hearing; and (6) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Releases in this <u>Article VIII.C</u>.

D.     *Exculpation*

Except as otherwise specifically provided in this Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action or Claim whether direct or derivate related to any act or omission in connection with, relating to, or arising out of the Chapter 11 Cases from the Petition Date to the Effective Date, the formulation, preparation, dissemination, negotiation, or Filing of the Disclosure Statement, this Plan, the Plan Supplement, or any contract, instrument, release, or other agreement or document created or entered into before or during the Chapter 11 Cases, any preference, fraudulent transfer, or other avoidance Claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable law, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of this Plan, including the distribution of property under this Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to any of the foregoing, except for Claims related to any act or omission that is determined in a Final Order to have constituted willful misconduct, gross negligence, or actual fraud, but in all respects such Exculpated Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan and the Confirmation Order.

The Exculpated Parties set forth above have, and upon Confirmation of this Plan shall be deemed to have, participated in good faith and in compliance with applicable law with respect to the solicitation of votes and distribution of consideration pursuant to this Plan and, therefore, are not and shall not be liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan.

17215756

E.      *Injunction*

Upon entry of the Confirmation Order, all Holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and Affiliates, and each of their successors and assigns, shall be enjoined from taking any actions to interfere with the implementation or Consummation of this Plan in relation to any Claim or Interest that is extinguished, discharged, or released pursuant to this Plan.

Except as otherwise expressly provided in this Plan or the Confirmation Order, or for obligations issued or required to be paid pursuant to this Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims, Interests, or Causes of Action that have been released, discharged, or are subject to exculpation pursuant to Article VIII, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against the Released Parties:

a) commencing, conducting, or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action;

b) enforcing, levying, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or Order against such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action;

c) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action;

d) except as otherwise provided under this Plan, asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and

e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action released or settled pursuant to this Plan or the Confirmation Order.

No Person or Entity may commence or pursue a Claim or Cause of Action of any kind against the Exculpated Parties that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action related to the Chapter 11 Cases prior to the Effective Date, the formulation, preparation, dissemination, negotiation, or Filing of the Disclosure Statement, this Plan, the Plan Supplement, or any contract, instrument,

release, or other agreement or document created or entered into before or during the Chapter 11 Cases, any preference, fraudulent transfer, or other avoidance Claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable law, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of this Plan, including the distribution of property under this Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to any of the foregoing, without regard to whether such Person or Entity is a Releasing Party, without the Bankruptcy Court (1) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim of any kind and (2) specifically authorizing such Person or Entity to bring such Claim or Cause of Action against any such Debtor, Wind-Down Debtor or Exculpated Party.

The Bankruptcy Court will have sole and exclusive jurisdiction to adjudicate the underlying colorable Claim or Causes of Action.

Notwithstanding anything to the contrary in the foregoing, the injunction does not enjoin any party under this Plan, the Confirmation Order or other document, instrument, or agreement (including those attached to the Disclosure Statement, or included in the Plan Supplement) executed to implement this Plan and the Confirmation Order from bringing an action to enforce the terms of this Plan, the Confirmation Order or such document, instrument, or agreement (including those attached to the Disclosure Statement, or included in the Plan Supplement) executed to implement this Plan and the Confirmation Order.  The injunction in this Plan shall extend to any successors and assigns of the Debtors and the Wind-Down Debtors and their respective property and interests in property.

## F.    *Waiver of Statutory Limitations on Releases*

Each Releasing Party in each of the releases contained in this Plan expressly acknowledges that although ordinarily a general release may not extend to Claims that the Releasing Party does not know or suspect to exist in its favor, which if known by it may have materially affected its settlement with the party released, each Releasing Party has carefully considered and taken into account in determining to enter into the above releases the possible existence of such unknown losses or Claims.  Without limiting the generality of the foregoing, each Releasing Party expressly waives any and all rights conferred upon it by any statute or rule of law that provides that a release does not extend to Claims that the claimant does not know or suspect to exist in its favor at the time of executing the release, which if known by it may have materially affected its settlement with the Released Party.  The releases contained in this Plan are effective regardless of whether those released matters are presently known, unknown, suspected or unsuspected, foreseen or unforeseen.

## G.    *Finality of Cash Collateral Orders*

On the Effective Date, (i) all Cash Collateral Stipulations shall (or, in the case of the Debtors, shall continue to) be effective and binding, in all circumstances and for all purposes, on (a) the Debtors, the Wind-Down Debtors and any and all of the Debtors' successors in interests and assigns, including the Liquidating Trust, and (b) all other Entities and each of their respective successors in interest and assigns; (ii) the Challenge Period (as defined in the Cash Collateral

Orders) shall be deemed terminated as to all Entities and each of their respective successors in interests and assigns; and (iii) any and all asserted or potential Challenges (as defined in the Cash Collateral Orders) shall be forever waived, released, enjoined, and barred.

### H.     *Protection against Discriminatory Treatment*

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Wind-Down Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, or discriminate with respect to such a grant against the Wind-Down Debtors, or another Entity with whom the Wind-Down Debtors have been associated, solely because each Debtor has been a debtor under chapter 11 of the Bankruptcy Code, may have been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases, but before the Debtors are granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

### I.     *Document Retention*

On and after the Effective Date, the Wind-Down Debtors and the Liquidating Trust may maintain documents in accordance with the Debtors' standard document retention policy, as may be altered, amended, modified, or supplemented by the Wind-Down Debtors or the Liquidating Trust, in their respective discretion.

### J.     *Reimbursement or Contribution*

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of Allowance or Disallowance, such Claim shall be forever Disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date: (1) such Claim has been adjudicated as non-contingent or (2) the relevant holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

## ARTICLE IX.
## CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN

### A.     *Conditions Precedent to the Effective Date*

It shall be a condition to Consummation of the Plan that the following conditions shall have been satisfied (or waived pursuant to the provisions of <u>Article IX.B</u> hereof):

1.     The Bankruptcy Court shall have entered the Confirmation Order, in form and substance acceptable to the Ad Hoc Noteholder Group which shall not have been stayed, reversed, vacated, amended, supplemented or otherwise modified, unless waived by the Ad Hoc Noteholder Group;

2.      The Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan;

3.      The final version of the schedules, documents, and exhibits contained in the Plan Supplement, and all other schedules, documents, supplements and exhibits to the Plan shall have been Filed, in all cases in form and substance acceptable to the Ad Hoc Noteholder Group;

4.      The Liquidating Trust Agreement shall have been executed by the parties thereto, the Liquidating Trustee shall have been appointed and assumed its rights and responsibilities under the Plan and the Liquidating Trust Agreement, as applicable, and the Liquidating Trust shall have been established in accordance with the terms of the Liquidating Trust Agreement;

5.      No Event of Default under the Cash Collateral Orders shall have occurred and be continuing and no Termination Date under the Cash Collateral Orders shall have occurred;

6.      All fees, expenses, and other amounts payable pursuant to the Cash Collateral Orders shall have been paid in full;

7.      All Allowed Professional Fee Claims approved by the Bankruptcy Court shall have been paid in full or amounts sufficient to pay such Allowed Professional Fee Claims after the Effective Date shall have been placed in the Professional Fee Escrow Account pending approval of the Professional Fee Claims by the Bankruptcy Court;

8.      All reasonable and documented fees of the Prepetition 2L Notes Trustee, Ad Hoc Group Advisors and the Prepetition 2L Notes Trustee Advisor shall have been paid in full in accordance with Article II.E of the Plan; and

9.      The aggregate amount of asserted Administrative Claims and Priority Claims (including both Allowed and Disputed Claims) held by Holders who have opted out of the Administrative / Priority Claim Consent Form is less than $1 million.

## B.      *Waiver of Conditions*

The conditions to Confirmation of the Plan and to the Effective Date of the Plan set forth in this Article IX may be waived only by consent of the Debtors, the Ad Hoc Noteholder Group, and the Creditors' Committee without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan.

## C.      *Substantial Consummation*

"Substantial Consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

## D.      *Effect of Nonoccurrence of Conditions to the Effective Date*

If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any Claims or Interests; (2) prejudice in any manner the rights of the Debtors, any Holders of a

53

Claim or Interest, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders, or any other Entity in any respect.

## ARTICLE X.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

### A.   *Modification and Amendments*

Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 (as well as those restrictions on modifications set forth in the Plan), the Debtors reserve the right, with the consent of the Ad Hoc Noteholder Group, to modify this Plan without additional disclosure pursuant to section 1125 of the Bankruptcy Code prior to the Confirmation Date and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not re-solicit votes on such modified Plan. After the Confirmation Date and before substantial consummation of the Plan, the Debtors may initiate proceedings in the Bankruptcy Court pursuant to section 1127(b) of the Bankruptcy Code to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Plan Supplement, the Disclosure Statement, or the Confirmation Order, relating to such matters as may be necessary to carry out the purposes and intent of the Plan.

After the Confirmation Date, but before the Effective Date, the Debtors may make appropriate technical adjustments and modifications to the Plan (including the Plan Supplement), with the consent of the Ad Hoc Noteholder Group, without further order or approval of the Bankruptcy Court; *provided* that such adjustments and modifications do not materially and adversely affect the treatment of Holders of Claims or Interests.

### B.   *Effect of Confirmation on Modifications*

Entry of the Confirmation Order shall mean that all modifications or amendments to this Plan since the solicitation thereof in accordance are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

### C.   *Revocation or Withdrawal of This Plan*

The Debtors reserve the right to revoke or withdraw the Plan before the Confirmation Date and to File subsequent plans of reorganization.  If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then, absent further order of the Bankruptcy Court: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise not previously approved by Final Order of the Bankruptcy Court embodied in the Plan (including the fixing or limiting to an amount certain of the Claims or Interests or Classes of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void; and (3) nothing contained in the Plan shall:  (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of such Debtor, any Holder, any Person, or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by such Debtor, any Holder, any Person, or any other Entity.

## ARTICLE XI.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Chapter 11 Cases and all matters arising out of, or related to, the Chapter 11 Cases, the Confirmation Order, and this Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

a) allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

b) decide and resolve all matters related to the granting and denying, in whole or in part, of any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code, the Confirmation Order, or this Plan;

c) resolve any matters related to: (i) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is a party or with respect to which a Debtor may be liable in any manner and to hear, determine, and, if necessary, liquidate any Claims arising therefrom; (ii) any dispute regarding whether a contract or lease is or was executory, expired, or terminated; (iii) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (iv) any other issue related to any Executory Contracts and Unexpired Leases; or (v) any dispute regarding whether the Plan trigger any cross-default or change of control provision in any contract or agreement;

d) resolve any disputes concerning whether an Entity had sufficient notice of the Chapter 11 Cases, the Disclosure Statement, any solicitation conducted in connection with the Chapter 11 Cases, any bar date established in the Chapter 11 Cases, in each case, for the purpose of determining whether a Claim or Interest is discharged hereunder or for any other purpose;

e) ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of this Plan and adjudicate any and all disputes arising from or relating to distributions under this Plan or the Confirmation Order;

f) adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

g) adjudicate, decide, or resolve any and all matters related to Causes of Action that may arise from or in connection with the Consummation, interpretation, or

55

enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

h) adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

i) enter and implement such Orders as may be necessary or appropriate to construe, execute, implement, or consummate the provisions of this Plan or the Confirmation Order and all contracts, instruments, releases, indentures, and other agreements or documents created or entered into in connection with this Plan, the Confirmation Order, or the Disclosure Statement;

j) enter and enforce any Order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

k) resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of this Plan or the Confirmation Order or any Entity's obligations incurred in connection with this Plan or the Confirmation Order and the administration of the Estates;

l) hear and determine disputes arising in connection with the interpretation, implementation, effect, or enforcement of this Plan, the Plan Supplement, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

m) issue injunctions, enter and implement other Orders, or take such other actions as may be necessary or appropriate in aid of execution, implementation, or Consummation of this Plan or to restrain interference by any Entity with Consummation or enforcement of this Plan or the Confirmation Order;

n) adjudicate, decide, or resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the settlements, compromises, discharges, releases, injunctions, exculpations, and other provisions contained in Article VIII, and enter such Orders as may be necessary or appropriate to implement such discharges, releases, injunctions, exculpations, and other provisions;

o) adjudicate, decide, or resolve any cases, controversies, suits, disputes or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim for amounts not timely repaid pursuant to the Plan;

p) enter and implement such Orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

q) determine any other matters that may arise in connection with or relate to this Plan, the Disclosure Statement, the Confirmation Order, the Plan Supplement,

56

or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement; *provided* that the Bankruptcy Court shall not retain jurisdiction over disputes concerning documents contained in the Plan Supplement that have a jurisdictional, forum selection, or dispute resolution clause that refers disputes to a different court or arbitration forum;

r) adjudicate any and all matters relating to the Liquidating Trust Assets;

s) adjudicate any and all disputes arising from or relating to distributions under this Plan or any transactions contemplated thereby;

t) consider any modifications of this Plan to cure any defect or omission or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

u) determine requests for the payment of Claims entitled to priority pursuant to section 507 of the Bankruptcy Code;

v) adjudicate, decide, or resolve disputes as to the ownership of any Claim or Interest;

w) adjudicate, decide, or resolve all matters related to any subordinated Claim;

x) adjudicate, decide, or resolve matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

y) grant any consensual request to extend the deadline for assuming or rejecting unexpired leases pursuant to section 365(d)(4) of the Bankruptcy Code;

z) enforce all Orders entered by the Bankruptcy Court in connection with the Chapter 11 Cases;

aa) hear and determine all matters relating to the establishment and administration of the Liquidating Trust and the implementation, interpretation, and enforcement of the Liquidating Trust Agreement;

bb) hear any other matter not inconsistent with the Bankruptcy Code;

cc) enter an Order concluding or closing any or all of the Chapter 11 Cases;

dd) enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Chapter 11 Cases with respect to any Person or Entity, and resolve any cases, controversies, suits, or disputes that may arise in connection with any Person or Entity's rights arising from or obligations incurred in connection with the Plan; and

17215756

ee) hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpations, discharges, injunctions, and releases granted in this Plan, including under Article VIII.

Nothing herein limits the jurisdiction of the Bankruptcy Court to interpret and enforce the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan, the Plan Supplement, or the Disclosure Statement without regard to whether the controversy with respect to which such interpretation or enforcement relates may be pending in any state or other federal court of competent jurisdiction.

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Cases, including the matters set forth in this Article XI, the provisions of this Article XI shall have no effect on and shall not control, limit, or prohibit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

Unless otherwise specifically provided herein or in a prior Order of the Bankruptcy Court, the Bankruptcy Court shall have exclusive jurisdiction to hear and determine disputes concerning Claims against or Interests in the Debtors that arose prior to the Effective Date.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

### A.     *Immediate Binding Effect*

Subject to Article IX.A and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of this Plan and the final versions of the documents contained in the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Wind-Down Debtors, any and all Holders of Claims or Interests (regardless of whether their Claims or Interests are deemed to have accepted or rejected this Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges and injunctions described in this Plan or the Confirmation Order, each Entity acquiring property under this Plan or the Confirmation Order, and any and all Non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.  All Claims and Interests shall be as fixed, adjusted, or compromised, as applicable, pursuant to this Plan and the Confirmation Order, regardless of whether any such Holder of a Claim or Interest has voted on this Plan.

### B.     *Waiver of Stay*

The requirements under Bankruptcy Rule 3020(e) that an order confirming a plan is stayed until the expiration of fourteen days after entry of the order shall be waived by the Confirmation Order.  The Confirmation Order shall take effect immediately and shall not be stayed pursuant to the Bankruptcy Code, Bankruptcy Rules 3020(e), 6004(h), 6006(d), or 7062 or otherwise.

### C.     *Additional Documents*

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents (in each case in form and substance acceptable to the Ad Hoc

Noteholder Group) as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan and the Confirmation Order. The Debtors or the Wind-Down Debtors, as applicable, and all Holders of Allowed Claims receiving distributions pursuant to this Plan and the Confirmation Order and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan and the Confirmation Order.

### D.    *Payment of Certain Fees*

All fees due and payable before the Effective Date pursuant to section 1930(a) of the Judicial Code shall be paid by each of the Debtors or the Wind-Down Debtors, as applicable, for each quarter (including any fraction thereof), until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first; provided that on and after the Effective Date, the Wind-Down Debtors shall (1) pay in full in cash when due and payable, and shall be responsible for paying, any and all such fees and interest with respect to any and all disbursements (and any other actions giving rise to such fees and interest) of the Debtors or the Wind-Down Debtors, and (2) File in the Chapter 11 Cases (to the extent they have not yet been closed, dismissed, or converted) quarterly reports as required by the Bankruptcy Code, Bankruptcy Rules, and Local Rules, as applicable, in connection therewith. The U.S. Trustee shall not be required to file any proof of claim or request for payment for quarterly fees.

### E.    *Reservation of Rights*

Except as expressly set forth in this Plan, this Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur. None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor or any other Entity with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor or any Entity unless and until the Effective Date has occurred.

### F.    *Successors and Assigns*

The rights, benefits, and obligations of any Entity named or referred to in this Plan or the Confirmation Order shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign, Affiliate, officer, director, manager, agent, representative, attorney, beneficiary, or guardian, if any, of each Entity.

### G.    *Notices*

To be effective, all notices, requests, and demands to or upon the Debtors shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

After the Effective Date, the Wind-Down Debtors and the Liquidating Trust have the authority to send a notice to Entities that, to continue to receive documents pursuant to Bankruptcy Rule 2002, they must File a renewed request to receive documents pursuant to Bankruptcy Rule

2002.  After the Effective Date, the Debtors, the Wind-Down Debtors and the Liquidating Trust are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

## H.    *Term of Injunctions or Stays*

Unless otherwise provided in this Plan or the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to section 105 or 362 of the Bankruptcy Code or any Order of the Bankruptcy Court, and existing on the Confirmation Date (excluding any injunctions or stays contained in this Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in this Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

## I.    *Entire Agreement*

Except as otherwise indicated, this Plan, the Confirmation Order, the Plan Supplement, and documents related thereto supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into this Plan, the Confirmation Order, the Plan Supplement, and documents related thereto.

## J.    *Exhibits*

All exhibits and documents included in this Plan, the Confirmation Order, and the Plan Supplement are incorporated into and are a part of this Plan as if set forth in full in this Plan.  After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Debtors' restructuring website at http://cases.ra.kroll.com/PCHI/ or the Bankruptcy Court's website at http://www.txs.uscourts.gov/.

## K.    *Deemed Acts*

Subject to and conditioned on the occurrence of the Effective Date, whenever an act or event is expressed under this Plan to have been deemed done or to have occurred, it shall be deemed to have been done or to have occurred without any further act by any party by virtue of this Plan and the Confirmation Order.

## L.    *Severability of Plan Provisions*

If, prior to Confirmation, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors (with the consent of the Ad Hoc Noteholder Group), may alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted; *provided* that any such alteration or interpretation shall be acceptable to the Ad Hoc Noteholder Group and the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial

60

determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to this Plan and may not be deleted or modified without the consent of the Debtors or the Wind-Down Debtors, as applicable; and (3) non-severable and mutually dependent.

**M.**     *Votes Solicited in Good Faith*

Upon entry of the Confirmation Order, each of the Released Parties and Exculpated Parties will be deemed to have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code and in a manner consistent with the Disclosure Statement, the Plan, the Bankruptcy Code, the Bankruptcy Rules, and all other applicable rules, laws, and regulations in connection with all of their respective activities relating to support and consummation of the Plan, and all other applicable protections and rights provided in the Plan. Without limiting the generality of the foregoing, upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on this Plan in good faith and in compliance with the Bankruptcy Code and other applicable law, and, pursuant to section 1125(e) of the Bankruptcy Code, any person will be deemed to have participated in good faith and, therefore, none of such parties or individuals or the Wind-Down Debtors will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on this Plan.

**N.**     *Request for Expedited Determination of Taxes*

The Debtors shall have the right to request an expedited determination under section 505(b) of the Bankruptcy Code with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Petition Date through the Effective Date.

**O.**     *No Waiver or Estoppel*

Upon the Effective Date, each Holder of a Claim or Interest shall be deemed to have waived any right to assert that its Claim or Interest should be Allowed in a certain amount, in a certain priority, be secured, or not be subordinated by virtue of an agreement made with the Debtors and/or their counsel, or any other Entity, if such agreement was not disclosed in this Plan, the Disclosure Statement, or papers filed with the Bankruptcy Court prior to the Confirmation Date.

**P.**     *Dissolution of the Creditors' Committee and Cessation of Fee and Expense Payment*

On the Effective Date, the Creditors' Committee and any other statutory committee appointed in the Chapter 11 Cases shall dissolve automatically and the members thereof shall be released and discharged from all rights and duties arising from, or related to, the Chapter 11 Cases, except with respect to final fee applications of the Professionals. The Wind-Down Debtors and the Liquidating Trust shall not be responsible for paying any fees or expenses incurred by the members of or advisors to the Creditors' Committee or any other statutory committee appointed in the Chapter 11 Cases after the Effective Date, other than reasonable and documented fees and expenses incurred by the Creditors' Committee's Professionals in connection with the preparation and prosecution of final fee applications, which shall be paid by the Liquidating Trust in the ordinary course without approval by the Bankruptcy Court.

**Q.**   *Creditor Default*

An act or omission by a Holder of a Claim or an Interest in contravention of the provisions of this Plan shall be deemed an event of default under this Plan.  Upon an event of default, the Liquidating Trustee, on behalf of the Wind-Down Debtors, may seek to hold the defaulting party in contempt of the Confirmation Order and may be entitled to reasonable attorneys' fees and costs of the Wind-Down Debtors in remedying such default.  Upon the finding of such a default by a Holder of a Claim or Interest, the Bankruptcy Court may: (1) designate a party to appear, sign, and/or accept the documents required under the Plan on behalf of the defaulting party, in accordance with Bankruptcy Rule 7070; (2) enforce the Plan by order of specific performance; (3) award judgment against such defaulting Holder of a Claim or Interest in favor of the Wind-Down Debtor in an amount, including interest, to compensate the Wind-Down Debtors for the damages caused by such default; and (4) make such other Order as may be equitable that does not materially alter the terms of the Plan.

Dated:   June 19, 2025              _/s/  Ian Heller_____
                                   Name:  Ian Heller
                                   Title:   Chief Wind Down Officer

17215756