IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| PARTY CITY HOLDCO INC., *et al.,* | Case No. 24-90621 (ARP) |
| Debtors.[1] | Jointly Administered |

**OBJECTION OF THE TRAVELERS INDEMNITY COMPANY TO CONFIRMATION OF JOINT PLAN OF LIQUIDATION OF PARTY CITY HOLDCO INC. AND ITS DEBTOR AFFILIATES**

The Travelers Indemnity Company and those certain of its property casualty insurance affiliates that provided one or more policies of insurance to one or more of the Debtors, (collectively, "Travelers"), by and through its undersigned counsel, objects to confirmation of the *Joint Chapter 11 Plan of Liquidation of Party City Holdco Inc. and its Debtor Affiliates* (the "Plan"), stating the following:

**I.
Preliminary Statement**

1. Travelers provided insurance to Party City Holdings Inc. and various of its affiliates, divisions and subsidiaries for more than three decades under various insurance program agreements, the most recent of which was for the policy period commencing December 1, 2024. The insurance programs are large, complex and loss sensitive; as of the Petition Date they were

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: Party City Holdco Inc. (9758); Amscan Inc. (1359); Am-Source, LLC (8427); Party City Corporation (3692); Party City Holdings Inc. (3029); PC Intermediate Holdings, Inc. (1229); and Trisar, Inc. (0659). The location of the Debtors' service address for purposes of these chapter 11 cases is: 100 Tice Boulevard, Woodcliff Lake, New Jersey 07677.

1

backed by letters of credit in the aggregate amount of $16,977,000, as well as cash collateral in the amount of $450,254.

2. Travelers holds claims entitled to priority treatment as administrative expenses under section 503(b) of the Bankruptcy Code in excess of $580,000 on account of unpaid postpetition premium, plus additional amounts for unreimbursed losses.

3. Travelers does not consent to the "waterfall" treatment of its section 503(b) claim proposed by the Plan. Travelers also objects to the treatment of its Other Secured Claim and certain other plan provisions, and respectfully requests that the Court deny confirmation of the Plan.

## II.
## Background Facts

4. Travelers provided insurance to Party City Holdings Inc. and various of its affiliates, divisions and subsidiaries for more than thirty years under various policies and associated insurance program agreements for periods beginning December 31, 1994, with the most recent policy term being December 1, 2024 through December 1, 2025. The policies issued for the December 1, 2024 to December 1, 2025 period have all been cancelled post-petition.

5. The Debtors filed voluntary petitions for relief under chapter 11 of the United States Code (the "Bankruptcy Code") on December 21, 2024 (the "Petition Date").

6. The Party City insurance programs are large and complex, and they include loss sensitive programs. Under a loss sensitive program, an insured is obligated to reimburse Travelers for certain losses, and to make minimum installment payments of premium, subject to later adjustment following audit based upon the insured's actual loss experience. An affiliate of Travelers, Constitution State Services LLC provided third party administration of certain claims for which Debtors are self-insured.

2

7. Insurance was a necessary expense of administration of the Debtors' bankruptcy case. The Debtors would have been unable to operate in Chapter 11 without insurance. *See* 11 U.S.C. §1112(b)(4)(C) (cause for dismissal includes failure to maintain insurance that poses a risk to the estate or to the public").

8. Travelers' claims include post-petition claims entitled to treatment as administrative priority expenses under section 503(b) of the Bankruptcy Code, as well as pre-petition claims. For example, the policies for the period beginning December 1, 2024 and ending December 1, 2025 required payment of minimum premium which was billed in monthly installments of $116,401; the Debtors are contractually obligated to make the minimum premium payments regardless of the cancellation of the policies before their expiration. The Debtors failed to make the post-petition installments payments due May 1, 2025 through September 1, 2025, aggregating more than $580,000. Due to the nature of loss sensitive insurance programs, it is not possible to fully liquidate Travelers' claims at this time.

9. As of the Petition Date, Travelers held the following letters of credit (the "<u>Letters of Credit</u>") in the aggregate amount of $16,977,000, which backed the insureds' obligations under the insurance programs: (1) letter of credit with number ended -8727 issued by JP Morgan Chase in the amount of $4,600,000 million, (2) letter of credit with number ended -6110 issued by Wells Fargo Bank in the amount of $252,000, (3) letter of credit with number ended -7082U issued by Wells Fargo Bank in the amount of $11,625,000, and (4) letter of credit with number ended -2458 issued by Wells Fargo Bank in the amount of $500,000.

10. The Letters of Credit have been drawn by Travelers and Travelers holds the proceeds. The proceeds of the Letters of Credit, however, are not property of the bankruptcy estate. As part of the insurance program agreements, Party City Holdco Inc. agreed that in the

event that any surplus Letter of Credit proceeds remain following satisfaction of the Debtors' obligations under the insurance program agreements, such surplus shall be remitted to the institution(s) that issued the Letter(s) of Credit.[2]

11. Travelers also holds $450,254 in cash collateral to back the obligations under the insurance program, which cash collateral is property of the Debtors' bankruptcy estate, subject to Travelers' liens, rights and claims.

12. On March 18, 2025, Travelers timely filed two proofs of claim, numbered 1196 and 1213, against Party City Holdings Inc. and Party City Holdco Inc., respectively, and as part of those proofs of claim, Travelers asserted its lien on $450,254 in cash collateral. Travelers is also entitled to apply the proceeds of the Letters of Credit to its general unsecured claims, until its claims are satisfied.

13. On March 18, 2025, Travelers also timely filed two administrative proofs of claim, numbered 1220 and 1221, against Party City Holdings Inc. and Party City Holdco Inc. Travelers is entitled to apply at its discretion, the cash collateral and/or proceeds of the Letters of Credit to any or all of its claims, in any order. Travelers is not obligated to apply any cash collateral and/or proceeds of the Letters of Credit to its administrative priority claims, until after satisfaction in full of its other claims.

---

[2] The Debtors' liquidation analysis appears to assume that (1) there will be substantial surplus proceeds of the Letters of Credit after payment of Travelers' claims, and (2) that any such surplus is payable to the Liquidating Trust. Travelers believes that there will be little to no surplus proceeds, and as stated above, the parties' agreements require Travelers to return any surplus to the issuer(s) of the Letter(s) of Credit.

WBD (US) 4932-7904-7008v5

### III.
### Legal Argument
### <u>The Plan Should Not Be Confirmed</u>

**A. Travelers Objects to the Impermissible Treatment of its Administrative Priority Claims**

14. As stated above, the insurance programs provided by Travelers were actual, necessary costs of administration of the Debtors' cases in chapter 11 – the Debtors could not have administered their estates and liquidated their assets in chapter 11 without insurance. Travelers holds claims entitled to priority treatment as administrative expenses under section 503(b)(1). Travelers' administrative priority claims, which have been only partially liquidated, exceed $580,000.[3]

15. Travelers' section 503(b)(1) administrative priority claim is not separately classified. The Plan provides that with respect to administrative priority claims, holders may either "consent" to Administrative/Priority Waterfall Treatment, or opt out of the proposed waterfall treatment.

16. If the holder of a 503(b)(1) administrative priority claim "consents" to the waterfall treatment, the claimant would receive Liquidating Trust Interests entitling the claimant to a pro rata recovery, rather than payment in full in cash. The pro rata recovery would be shared with holders of Class 1 Priority claims (which are junior to 503(b)(1) claims) and holders of Prepetition 2L Note Claims. *See* Plan, Article III.B.1.b. and IV.L. Further, the Plan provides that such treatment would be "in full and final satisfaction, compromise, settlement and release of" such administrative claims. Plan, Article III.B.1.b.

---

[3] To the extent that the Debtors may argue that a secured creditor is not entitled to an administrative priority claim, such argument fails. *See Brown & Cole Stores, LLC v. Associated Grocers, Inc., et al.* (*In re Brown & Cole Stores, LLC*), 375 B.R. 873, 878 (Bankr. 9th Cir. 2007) (holding that section 503(b)(9) priority is not limited to unsecured creditors).

17. If Travelers were to "consent" to the waterfall treatment, the Plan would not preserve Travelers' ability to apply Letter of Credit proceeds to its administrative priority claims, to the extent not paid through the Plan. Further, Travelers administrative priority claim would not receive payment in full as mandated by 11 U.S.C. §1129(b).

18. On the other hand, if Travelers opts out of the waterfall treatment, it appears that Travelers would receive the treatment required by section 1129(a)(9) of the Bankruptcy Code (unless otherwise agreed by Travelers and the Debtors, with the consent of the Ad Hoc Noteholder Group). *See* Plan, Article III.B.1.b. The Plan cautions, however, that if holders of claims exceeding $1 million in the aggregate opt out of the Waterfall Treatment, the plan may not be consummated. *Id.*

19. Travelers objects, and does not consent, to the Administrative/Priority Waterfall Treatment proposed in the Plan.

20. Further, to the extent applicable to the Plan's inappropriate treatment of administrative priority claimants and other claimants, and improper solicitation of "consent", Travelers joins the arguments made in the *Objection of Gwendolyn Hanlon, on Behalf of Herself and the Certified Class of Warn Claimants, to Confirmation of the Joint Chapter 11 Plan of Liquidation of Party City Holdco Inc. and its Debtor Affiliates* [Docket No. 1775].

**B. Travelers Objects to the Treatment of Its Class 2 Other Secured Claim**

21. With respect to Travelers' Class 2 Other Secured Claim, the proposed Plan offers to treat Travelers in one of four different ways – once its claim is "Allowed": (1) payment in full, (2) delivery of its collateral to Travelers, (3) reinstatement, or (4) some other unidentified treatment rendering Travelers unimpaired. Plan, Art. III.B.2.b.

22.     Notably, under the Plan, no claim evidenced by a timely-filed proof of claim is "Allowed" until the time for objecting to the claim has passed and no objection has been filed. *See* Plan, Art. I.A.10 (definition of "Allowed"). Because its claim will not be "Allowed" as of the Effective Date under application of the definition of "Allowed" in the Plan (which definition is contrary to 11 U.S.C. §502(a), which states that if proof of a claim is filed under section 501, the claim is allowed unless a party in interest objects) the Plan would also improperly "cancel" any documentation pertaining to liens and security interests, enjoin the rights of holders of Other Secured Claims, and potentially cause the collateral securing Reinstated Secured Claims to vest in the Liquidating Trust free and clear of liens. *See* Plan Arts. IV.A.2., IV.G., VIII.A. and VIII.E.

23.     Travelers objects to any provision in the Plan that would impair its rights to its cash collateral.

**C. Other Plan Provisions Are Objectionable**

24.     <u>Claims Cannot be Reclassified Without Appropriate Notice and Opportunity for a Hearing</u>. The Plan impermissibly broadens the scope of section 510 of the Bankruptcy Code by invoking it as the basis to, without notice to any claimholder, opportunity for a hearing, or order of the Court, "re-classify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto. Travelers objects to any provision in the Plan that would authorize reclassification of its claim without notice and opportunity for a hearing.

25.     <u>The Debtor Releases are Illusory</u>. The Disclosure Statement provides, with respect to each holder of an administrative or priority claim, that

> IF SUCH HOLDER DOES NOT TIMELY OPT OUF OF OR OTHERWISE OBJECT TO SUCH THE [sic] ADMINISTRATIVE PRIORITY WATERFALL TREATMENT, SUCH HOLDER SHALL BE DEEMED A RELEASED PARTY FOR ALL PURPOSES HEREUNDER.

7

*See Disclosure Statement for the Joint Chapter 11 Plan of Liquidation of Party City Holdco Inc. and its Debtor Affiliates* [Docket No. 1685-2] (the "<u>Disclosure Statement</u>"), p. 4.

26. Presumably, the inclusion of consenting priority creditors within the definition of "Released Party" is intended to incentivize such creditors to consent. However, the "releases" afforded by the Plan to claimants consenting to the Waterfall Treatment are, at best, contradicted by other provisions in the Plan. For example, treatment of avoidance actions is unclear. While Released Parties are released by the Debtors, the Wind-Down Debtors and the Estates from all "Claims" and "Causes of Action" in Article VIII.B, Article VIII.B is silent with respect to whether claims against Released Parties are retained by the Liquidating Trust. And, indeed, the Plan provides that "[n]otwithstanding the releases in Article VIII of this Plan, the Liquidating Trust retains all defenses against any Claim asserted against the Debtors, including rights of recoupment, setoffs, rights of disallowance, subrogation, recharacterization and equitable subrogation." Plan, Art. VI.A.

27. Holders of administrative and priority claims that "consent" to the waterfall treatment, believing that, in exchange for less than their statutorily mandated payment in full, they have been released from avoidance actions by the Debtors may nevertheless find their claims disallowed under Art. VI.F. of the Plan. Further confusion is created by Article IV.M, which provides that "[t]he Debtors *may release some* of the Avoidance Actions and/or the Commercial Tort Claims, as applicable, in Article VIII.B. of this Plan." (emphasis added). The only parties who are expressly released from avoidance actions are Exculpated Parties, in the "Exculpation" section of the Plan. See Art. VIII.D.

28. For those parties who consent to the waterfall treatment, the Plan should provide that Debtor Released Parties are also released by the Liquidating Trustee of all Claims and Causes

8

of Action, and that the claims of Released Parties are not subject to released defenses or disallowance or reduction under section 502 of the Bankruptcy Code.

29. <u>Preservation of Rights Under Insurance Program</u>.  The Plan provides that upon an insurer's satisfaction of a claim, the claim would be expunged from the claims register.  *See* Art. VII.J. (Claims Payable by Third Parties).  Travelers requests clarification that the expungement of a Claim upon an insurer's satisfaction thereof pursuant to shall not affect, impair or expunge any Claim filed by or on behalf of the paying insurer.

D. **Travelers Rejects the Plan and "Opts Out" of the Releases Provided by the Plan**.

30. Travelers advised Kroll Restructuring Administration, the Debtors' claims noticing agent, that it had filed proofs of claim 1196, 1220, 1213 and 1221, and requested that it be sent the associated ballots.  In response, Travelers received two E-Consent Form ID Numbers, associated with forms for eliciting Administrative/Priority Claim consents, which Travelers submitted electronically to indicate that it does not consent to, and "opt outs" of, the Waterfall Treatment. Travelers was not provided with a means to opt out of any third party releases, and Travelers requests that the Court deem that, by the filing of this objection, Travelers has also opted out of such third party releases.

31. This Objection is without prejudice to Travelers' rights to the Letter of Credit proceeds, to its secured interest in its cash collateral, to Travelers' general unsecured claims, and to any other right, claim or defense of Travelers.

9

WHEREFORE, Travelers respectfully requests that the Court enter an order (i) denying confirmation of the proposed Plan, and (ii) granting such other and further relief as may be just and proper.

Dated: August 20, 2025  
       Houston, Texas

**WOMBLE BOND DICKINSON (US) LLP**

*/s/ Todd A. Atkinson*
Todd A. Atkinson (Texas Bar No. 24121426)
717 Texas Avenue, Suite 2100
Houston, Texas 77002
Telephone: (346) 998-7801
Facsimile: (346) 998-5901
Email: todd.atkinson@wbd-us.com

and

Lisa Bittle Tancredi (*pro hac vice* to be filed)
100 Light Street, 26th Floor
Baltimore, MD 21202
Phone: (410) 545-5810
Fax:    (410) 545-5801
Email:  lisa.tancredi@wbd-us.com

*Counsel to The Travelers Indemnity Company*

WBD (US) 4932-7904-7008v5