UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 24-90621 (ARP) |
| | § | |
| **PARTY CITY HOLDCO INC.**, *et al.*, [1] | § | Chapter 11 |
| | § | |
| Debtor. | § | (Jointly Administered) |

**UNITED STATES TRUSTEE'S OBJECTION TO CONFIRMATION OF
THE JOINT CHAPTER 11 PLAN OF LIQUIDATION OF
PARTY CITY HOLDCO INC. AND ITS DEBTOR AFFILIATES**

*Relates to the Plan filed at ECF No. 1672 and ECF No. 1685-1*

TO THE HONORABLE ALFREDO R. PÉREZ, UNITED STATES BANKRUPTCY JUDGE:

Kevin M. Epstein, the United States Trustee for the Southern District of Texas (the "U.S. Trustee") hereby files this Objection to confirmation of the *Joint Chapter 11 Plan of Liquidation of Party City Holdco Inc. and Its Debtor Affiliates (*the "Plan") [2] [ECF No. 1672, as revised at ECF No. 1685-1], filed by Party City Holdco Inc. and its affiliated Debtors (collectively, the "Debtors"). The U.S. Trustee requests that confirmation be denied and represents as follows:

1. Since these cases were filed on December 21, 2024, the U.S. Trustee has taken steps to ensure proper notice, due process, and fairness for all creditors in connection with the administration of the cases and the Debtors' reorganization efforts.

2. As discussed below, the Court should deny confirmation of the Plan because it fails to comply with the Bankruptcy Code and applicable law and does not treat all creditors fairly. The U.S. Trustee initially objected to the Plan and Disclosure Statement due to the lack of transparency, clarity,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Party City Holdco Inc. (9758); Amscan Inc. (1359); Am-Source, LLC (8427); Party City Corporation (3692); Party City Holdings Inc. (3029); PC Intermediate Holdings, Inc. (1229); and Trisar, Inc. (0659). The location of the Debtors' service address for purposes of these chapter 11 cases is: 100 Tice Boulevard, Woodcliff Lake, New Jersey 07677.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Solicitation Motion, the Disclosure Statement, and Plan.

1

and consistency in the proposed solicitation procedures and Disclosure Statement. *See United States Trustee's Objection to Conditional Approval of Disclosure Statement for the Joint Chapter 11 Plan of Liquidation of Party City Holdco Inc. and Its Debtor Affiliates and Related Solicitation Procedures* (the "DS Objection") [ECF No. 1666]. Consistent with the U.S. Trustee's position documented in the DS Objection and as argued at the hearing on the approval of the Disclosure Statement, the U.S. Trustee opposes the use of the opt-out mechanism in the Plan as used in conjunction with both (i) administrative/priority claims, and (ii) third-party releases.

3. The Disclosure Statement and Plan continue to suffer from several fundamental flaws that render the Plan unconfirmable.

4. *First*, the Disclosure Statement does not provide adequate information and leaves administrative and priority creditors without the information or assurances needed to make an informed decision. 11 U.S.C. § 1125(a)–(b). The Disclosure Statement and Plan include a proposed procedure to obtain the "agreement" of administrative and priority claimants to accept less than full payment of their claims on the Effective Date, a proposition unsupported by the Bankruptcy Code or applicable law. Notably, the Disclosure Statement asks administrative and priority claimants to agree to this treatment without explaining the basis for the discount or why bankruptcy professionals—who hold the same administrative priority—will be paid in full on their allowed claims. What's more, even with this proposed procedure, the Debtors are uncertain when the Plan will go effective, if that will occur at all. This lack of clarity leaves administrative claimants in the dark as to when, or even if, their claims will be paid within a reasonable period.

5.  *Second*, the Plan proposes a $1,000,000 distribution to general unsecured creditors[3]—funds to which administrative claimants are entitled under the Bankruptcy Code. Yet, the Disclosure Statement fails to inform administrative claimants that the Bankruptcy Code *requires* that they be paid in full before distributions can be made to general unsecured creditors. The lack of adequate information in the Disclosure Statement is not merely a drafting flaw, but it is indicative of a structural defect in the Plan itself.

6.  *Third*, the Plan's "Administrative/Priority Waterfall Treatment" is fundamentally flawed and unconfirmable because it attempts to circumvent the Bankruptcy Code's mandate that *all* allowed administrative expenses to be paid in full on the effective date of the plan.  11 U.S.C. § 1129(a)(9)(A).  This is not a guideline, but a congressionally mandated safeguard that ensures those who provide goods, services, and credit during the bankruptcy cases are compensated promptly and without compromise. If the Court were to countenance this "consent" mechanism as a valid workaround, it would set a troubling precedent that could chill participation by administrative claimants in future reorganizations and potentially encourage future debtors to use the bankruptcy system to take advantage of the vendors, service providers, and other operational creditors who are essential to a debtor's post-petition operations.  Undermining the treatment of these claims, particularly while ensuring full payment to bankruptcy professionals holding the same priority, threatens to erode the trust and predictability that are foundational to the Chapter 11 process.

7.  The Plan's reliance on an opt out mechanism under the Administrative/Priority Waterfall Treatment is also problematic and conflicts with the plain language of Section 1129(a)(9). Under the proposed procedure, the Debtors were required to send opt out forms to

---

[3] The Disclosure Statement estimates the general unsecured creditors will receive between 0.1% on an estimated $927,953,720 in claims.

3

administrative/priority claimants (though not professionals as they will be paid in full), and any claimant who does not "timely, properly, and affirmatively opt-out" will be deemed to have agreed to reduced treatment of their claim. This approach contravenes the statutory requirement in Section 1129(a)(9)(A), which requires that, unless a holder of an allowed administrative claim *agrees* otherwise, the claimant *must* be paid in full on the effective date. While one out-of-circuit case, *In re Teligent, Inc*. 282 B.R. 765, 771 (Bankr. S.D.N.Y. 2002), held that the word "agree" in Section 1129(a)(9)(A) can be implied, this interpretation has been criticized and rejected by several other courts. For example, the court in *In re Molycorp*, 562 B.R. 67, 78 n.54 (Bankr. D. Del. 2018), described *Teligent* as a "novel approach" based on a "questionable fiction," and concluded that affirmative consent is required. Similarly in *In re Real Wilson Enters.*, No. 11–15697–B–11, 2013 WL 5352697, at *8 (Bankr. E.D. Cal. Sept. 21, 2013), held that "courts requiring affirmative consent have the better interpretation of 'agreed,'" and the court in *In re Cummins Util., L.P.*, 279 B.R. 195 (Bankr. N.D. Tex.2003), held that Section 1129(a)(9)(A) requires express consent to any deviation from full payment.

8. In the present cases, the opt-out mechanism in the Administrative/Priority Waterfall Treatment improperly shifts the burden onto administrative claimants to act to prevent the loss of a statutory right, rather than requiring the Debtors to obtain an actual agreement with administrative claimants. This is a legally insufficient and impermissible workaround to confirm a Plan encompassing estates that are insolvent and unable to pay administrative claimants by the effective date. Moreover, the Plan provision that the Effective Date will not occur if the aggregate amount of asserted administrative and priority claims exceed $1,000,000, emphasizes the fact that this Plan is patently not confirmable:

## ARTICLE IX.
## CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN

A. *Conditions Precedent to the Effective Date*

It shall be a condition to Consummation of the Plan that the following conditions shall have been satisfied (or waived pursuant to the provisions of Article IX.B hereof):

….

9. The aggregate amount of asserted Administrative Claims and Priority Claims (including both Allowed and Disputed Claims) held by Holders who have opted out of the Administrative / Priority Claim Consent Form is less than $1 million.

*See* Article IX.A (9).

9. Debtors' admission in their Disclosure Statement that the Effective Date will not occur if enough administrative and priority claimants do not "consent" to claim reductions raises the additional question of whether the Debtors can demonstrate that confirmation of the plan is not likely to be followed by the liquidation of the Debtors. 11 U.S.C. § 1129(a)(11). In addition, the U.S. Trustee objects to confirmation of the Plan on the grounds that the Debtors' estates are administratively insolvent and cannot satisfy all allowed administrative expenses on the effective date.

10. *Fourth,* the Plan also includes non-consensual third-party releases in direct violation of the Supreme Court's ruling in *Harrington v. Purdue Pharma L.P.*, 144 S. Ct. 2071, 2082-88 (2024). Specifically, the Plan seeks to involuntarily compel creditors—and even unidentified non-debtors—to release their claims against non-debtor third parties unless they timely submit an opt out form, regardless of whether they are eligible to vote on the Plan or actually do so. This structure wrongly equates silence or inaction with affirmative consent and improperly treats a creditor's failure to opt out as a binding agreement to third-party releases. Such a mechanism is not only inconsistent with state law and principle of contracts but also violates Supreme Court precedent.

11. Consistent with the U.S. Trustee's position set forth in his DS Objection, the U.S. Trustee continues to oppose the Plan's use of an opt-out mechanism for third-party releases. This

mechanism fails to meet the standard for establishing actual consent under applicable state law. In the absence of affirmative consent, the Plan impermissibly imposes third-party releases on non-debtors, which renders the Plan unconfirmable under *Purdue*.

12. Following the June 27, 2025, hearing, the Court conditionally approved the Disclosure Statement and solicitation procedures and set the hearings for confirmation of the Plan and final approval of the Disclosure Statement for August 27, 2025. ECF No. 1687. The U.S. Trustee hereby renews his objection to the Plan's use of an opt out mechanism to bind creditors to third-party releases, as such procedures render the Plan unconfirmable. The U.S. Trustee incorporates by reference the arguments previously raised in his DS Objection. ECF No. 1666.

13. *Lastly*, the U.S. Trustee objects to the Plan's proposed elimination of the 14-day stay imposed by Federal Rule of Bankruptcy Procedure 3020(e), which provides that "[a]n order confirming a plan is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 3020(e). As the Advisory Committee Notes explain, Rule 3020(e) was "added to provide sufficient time for a party to request a stay pending appeal of an order confirming a plan under chapter 9 or chapter 11 of the Code before the plan is implemented and an appeal becomes moot." *Id*. The Debtors have identified no exigent circumstances that would warrant overriding this important procedural safeguard. Eliminating the stay would unjustifiably curtail parties' rights to seek appellate review.

14. WHEREFORE, the United States Trustee respectfully request this Court deny confirmation of the Plan and grant such other and further relief as it may deem just and proper.

Dated: August 21, 2025                 Respectfully Submitted,

                                           KEVIN M. EPSTEIN
                                           UNITED STATES TRUSTEE
                                           REGION 7, SOUTHERN AND WESTERN
                                           DISTRICTS OF TEXAS

By: */s/ Jana Smith Whitworth*
Jana Smith Whitworth, Trial Attorney
SBOT No. 00797453/Fed I.D. 20656
515 Rusk Avenue, Suite 3516
Houston, Texas 77002
(713) 718-4650 – Telephone
(713) 718-4670 – Fax
Email: Jana.Whitworth@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that, a true and correct copy of foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas on those parties registered to receive electronic notices on the date this was filed.

*/s/ Jana Smith Whitworth*
Jana Smith Whitworth, Trial Attorney