IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| PARTY CITY HOLDCO INC., *et al.*,[1] | ) | Case No. 24-90621 (ARP) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

JOINT **EMERGENCY** MOTION FOR ENTRY OF
AN ORDER (I) PRELIMINARILY APPROVING SETTLEMENT AGREEMENT; (II)
APPROVING NOTICE TO CLASS MEMBERS; (III) SCHEDULING A FINAL
FAIRNESS HEARING; AND (IV) GRANTING RELATED RELIEF

---

**Emergency relief has been requested. Relief is requested not later than 9:00 a.m. on August 27, 2025.**

**If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the virtual hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

**A virtual hearing will be conducted on this matter on August 27, 2025 at 9:00 a.m. (prevailing Central Time). Participation at the hearing will only be permitted by an audio and video connection.**

**Audio communication will be by use of the Court's dial-in facility. You may access the facility at 832-917-1510. Once connected, you will be asked to enter the conference room number. Judge Perez's conference room number is 282694. Video communication will be by use of the GoTo platform. Connect via the free GoTo application or click the link on Judge Perez's home page. The meeting code is "JudgePerez." Click the settings icon in the upper right corner and enter your name under the personal information setting.**

**Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Perez's home page. Select the case name, complete the required fields and click "submit" to complete your appearance.**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Party City Holdco Inc. (9758); Amscan Inc. (1359); Am-Source, LLC (8427); Party City Corporation (3692); Party City Holdings Inc. (3029); PC Intermediate Holdings, Inc. (1229); and Trisar, Inc. (0659). The location of the Debtors' service address for purposes of these chapter 11 cases is: 100 Tice Boulevard, Woodcliff Lake, New Jersey 07677.

17398597

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), Gwendolyn Hanlon (the "Class Representative"), as class representative on behalf of the certified class (the "Class" or "Class Members") in the Hanlon Adversary (as defined herein), the HHA Plaintiffs,[2] and the Individual Defendants[3] (the Debtors, the Class Representative, the Class, the HHA Plaintiffs, and the Individual Defendants shall each be collectively referred to as the "Parties" and each individually a "Party") file this joint motion (the "Motion") seeking entry of a preliminary order, substantially in the form attached hereto (the "Preliminary Settlement Order"), pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 23 of the Federal Rules of Civil Procedure (the "Federal Rules") as made applicable by Bankruptcy Rule 7023: (i) preliminarily approving the terms of a settlement (the "Settlement") as memorialized in the settlement agreement attached to the Preliminary Settlement Order as **Exhibit 1** (the "Settlement Agreement")[4][5]; (ii) approving notice to Class Members; (iii) scheduling a final Fairness Hearing to consider final approval of the Settlement Agreement; and (iv) granting related relief. In support of the Motion, the Parties respectfully state as follows:

---

[2] The HHA Plaintiffs are fifty-eight plaintiffs in the Smith Adversary and Digirolamo Case who opted out of the Class: Samantha A. Acevedo, Sabeen Afzal, Ishita S. Ahmed, Stephen O. Andrews, Maria Barraza, Veronica Beckett, Alexandra Cappello, Dawn M. Casale, Colleen A. Celmer, Nicole Chmielewski, Vincent Cleary, Asierra L. Coleman, Jennifer Collins, Jensine May Dela Cruz, Jennifer L. DiGirolamo, Jennifer J. Ehlers, Kelly Fitzgerald, Yesenia C. Fitzsimmons, Sonia C. Garza, Mark Jacobson, Sharon Keith, Larry Kikuchi, Kartik Kolluri, Sandra Kuruc, Kevin Lauturner, Polina E. Lewkowicz, Walter J. Linsley, Alyssa Longo, Kate McHale, Edgar Mendoza, Mark A. Metzinger, Alexis Milone, Cory Mongno, Ashley N. Montes, John J. Morris, Melissa M. Munz, Joseph M. Orengo, Lauren Pacini, Veronica A. Palmisano, Brenna Phelan, Candace M. Piczon, Ryan Putman, Nicole M. Quinlan, Robin S. Robinson, Carmella Romania, Charles R. Romero, Nienu Roy, Ashley Ruppel, Jason W. Sakowski, Nicole A. Schroeder, Craig J. Smith, Per Sterner, Alisa Stewart, Cortnie Tango, Angela M. Van Druten, Andrew Warren, Lisa Wiley, and Pamela A. Wyman.

[3] The Individual Defendants are: Robert Frederick Hull, Barry Stuart Litwin, Ian Heller, Karen McGowan, Daniel Lamadrid, Ethan Isaac, John Capela, Marc Edward Ehle, Patrick Bartels, and Neal Goldman.

[4] Capitalized terms not defined herein shall have the meanings ascribed to such terms in the Settlement Agreement.

[5] As of the time of filing this Motion, the Parties continue to gather individual signatures to the Settlement Agreement and will supplement with the final compiled version prior to the Emergency hearing.

1

## BASIS FOR EMERGENCY RELIEF

1.      On August 19, 2025, the Parties participated in a successful mediation in good faith and entered into a mediated binding settlement term sheet. As a result, the Parties desire to resolve the Hanlon Adversary, the Smith Adversary (and together with the Hanlon Adversary, the "WARN Adversary Proceedings"), the Digirolamo Adversary, and the Debtors' Adversary (collectively with the WARN Adversary Proceedings and the Digirolamo Adversary, the "Litigation") amongst the Parties.

2.      As part of the proposed compromise, the Settling Class agreed to withdraw all objections to the *Joint Chapter 11 Plan of Liquidation of Party City Holdco Inc. and Its Debtor Affiliates* [Docket No. 1685-1] (as may be amended, modified, or supplemented from time to time, the "Plan"), vote in favor of the Plan, and opt into the Administrative/Priority Waterfall Treatment under the Plan.[6]  The Debtors' liquidation analysis included as part of the solicitation package provided an estimate for the Litigation claims at their statutory cap. No further solicitation is necessary because the proposed settlement amount is less than the potential statutory maximum of claims which was disclosed.  Accordingly, the Debtors request expedited consideration of this Motion and approval of the settlement immediately prior to the beginning of the confirmation hearing in order to ensure the Settling Class consents to the Plan.

## JURISDICTION AND VENUE

3.      The United States Bankruptcy Court for the Southern District of Texas

---

[6] The Plan provides, among other things, that (a) Holders of Priority Claims (Class 1), Prepetition 2L Notes Claims (Class 3), and General Unsecured Claims (Class 4) are entitled to vote on the Plan; and (b) that holders of administrative and priority claims will receive their pro rata share (over a period of years) of distributable proceeds per the Administrative/Priority Waterfall Treatment under the Plan as follows (the "Waterfall Recovery"): (i) First, $5 million distributed pro rata among allowed administrative and priority claims, (ii) Second, $9.8 million distributed among the following claims (x) 50% distributed pro rata among allowed administrative and priority claims and (y) 50% distributed pro rata among Prepetition 2L Notes Claims; and (iii) Third, any remaining distributable proceeds shall be distributed pro rata among Prepetition 2L Notes Claims.

17398597

(the "<u>Court</u>") has jurisdiction over the Motion under 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution. Venue is proper under 28 U.S.C. §§ 1408 and 1409.

4.      The statutory predicates for the relief sought herein are section 105(a) of the United States Code, 11 U.S.C. §§ 101–1532 (the "<u>Bankruptcy Code</u>"), Federal Rules of Bankruptcy Procedure ("<u>Bankruptcy Rules</u>") 6004 and 9019, rules 7041 and 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "<u>Bankruptcy Local Rules</u>"), the Procedures for Complex Chapter 11 Cases in the Southern District of Texas (the "<u>Complex Case Procedures</u>"), and Federal Rule of Civil Procedure 23 ("<u>Federal Rule 23</u>"), as made applicable by Bankruptcy Rule 7023.

## **BACKGROUND**

### I.    **The Chapter 11 Cases and the Plan**

5.      On December 21, 2024 (the "<u>Petition Date</u>"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  These cases have been procedurally consolidated and are being jointly administered pursuant to Bankruptcy Rule 1015(b).  *See Order (I) Directing Joint Administration of Related Chapter 11 Cases and (II) Granting Related Relief* [Docket No. 4].  No request for the appointment of a trustee or examiner has been made in the above-styled chapter 11 cases (the "<u>Chapter 11 Cases</u>").  On January 6, 2025, the United States Trustee appointed the Official Committee of Unsecured Creditors [Docket No. 167].

6.      A detailed description of the Debtors and their businesses, including the facts and circumstances giving rise to the Chapter 11 Cases, is set forth in the *Declaration of Deborah*

17398597

*Rieger-Paganis, Chief Restructuring Officer of Party City Holdco Inc., in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 45], which is incorporated herein.

7.      On June 30, 2025, the Debtors filed the Plan and a disclosure statement for the Plan [Docket No. 1685-2] (as may be amended, modified, or supplemented from time to time, the "Disclosure Statement").

8.      That same day, the Court entered an order [Docket No. 1687]: (a) conditionally approving the Disclosure Statement as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code, (b) authorizing the Debtors to solicit votes on the Plan, (c) approving the solicitation materials and documents to be included in the solicitation packages, (d) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan, and (e) establishing procedures relating to the treatment of administrative and priority claims.

9.      A hearing to consider confirmation of the Plan and the adequacy of the Disclosure Statement on a final basis is set to commence on August 27, 2025, at 9:00 a.m. (prevailing Central Time).

## II.      The WARN Adversary Proceedings

10.      On December 22, 2024, the Class Representative filed her Complaint on behalf of the Class initiating Adversary Proceeding No. 24-03273 (the "Hanlon Adversary").

11.      On December 31, 2024, a number of plaintiffs then represented by Harrison Harrison & Associates ("HHA") filed a Complaint initiating Adversary Proceeding No. 24-03277 (the "Smith Adversary").

12.      On February 7, 2025, a number of plaintiffs then represented by HHA also filed a Complaint initiating Case No. 2:25-cv-01099 (D.N.J.) against the Individual Defendants, with an

4

17398597

Amended Complaint filed on June 25, 2025 (the "Digirolamo Case").

13.     On February 26, 2025, the Debtors filed their Complaint initiating Adversary Proceeding No. 25-03062 on February 26, 2025 (the "Debtors' Adversary").

14.     Certain Debtors provided notice to the Insurer under the Policy on behalf of all Insureds under the Policy in connection with the Hanlon Adversary, the Smith Adversary, and the Digirolamo Case, and the Insurer agreed to provide coverage for certain covered Loss under the Policy, subject to a full reservation of rights, while denying coverage for other loss.

15.     On July 8, 2025, the Court granted class certification in the Hanlon Adversary appointing Gwendolyn Hanlon as Class Representative, appointing Raisner Roupinian LLP as Class Counsel, defining the Class, and approving the class notice and opt-out procedures.[7]

16.     On August 6, 2025, counsel to the HHA Plaintiffs emailed a zip file to Class Counsel containing DocuSign Exclusion Forms opting out 58 class members from the Class.

17.     On July 21, 2025, the Court entered a *Stipulation and Agreed Order Regarding WARN Litigation* [Adv. Pro. Docket No. 88] whereby the Parties agreed to participate in good faith in a global mediation of the Hanlon Adversary, the Smith Adversary, the Digirolamo Adversary, and the Debtors' Adversary with The Honorable Stacey G. C. Jernigan (the "Mediator").

18.     On August 19, 2025, the Parties participated in a successful mediation and entered into a Mediated Binding Settlement Term Sheet. As a result of such mediation, the Parties desire to resolve the Litigation amongst the Parties.

---

[7] The Court defined the "Class" as: "Plaintiff [Hanlon] and all similarly situated former employees (i) who worked at, reported to or received assignments from Defendants' [Debtors'] facility at 100 Tice Blvd., Woodcliff Lake, New Jersey, (ii) who were terminated without cause on or about December 20, 2024 or within 30 days of that date, or as the reasonably foreseeable consequence of the mass layoffs and/or plant closings ordered by Defendants on or about December 20, 2024, (iii) who are affected employees within the meaning of 29 U.S.C. § 2101(a)(5) and N.J.S.A. 34:21-1, et seq., and (iv) who have not filed a timely request to opt-out of the class."

5

## ESSENTIAL TERMS OF THE PROPOSED SETTLEMENT

19.     The essential terms of the Settlement Agreement are as follows:[8]

**a.      Confidential Insurer Settlement Amount:**

20.     The Insurer shall pay the Insurer Settlement Amount (as disclosed and defined in the Settlement Agreement) to the Settling Class, which shall be disbursed on a pro rata basis, pursuant to the terms of the Settlement Agreement. For these purposes, the pro rata value of the employee's claims means the higher of the employee's federal or New Jersey WARN damages as a quotient of the total damages of the full class (calculated under the higher of the federal or New Jersey WARN damages for each class member), based on the individual employees' (a) average monthly gross wages or salary and any benefit under any employee benefit plan, and (b) his or her hire date, notice date, and termination date ("Pro Rata Shares").

**b.      Allowed Priority Claim:**

21.     Each of the 394 members of the Settling Class shall receive an Allowed Priority Claim (as defined in the Plan) of $10,100 per Settling Class Member for a total Allowed Settling Class Claim amount of $3,979,400 (the "Settled Priority Claim"). All other claims arising out of the Litigation of the Settling Class are disallowed. No member of the Settling Class shall be required to file or amend a filed Proof of Claim to receive such Allowed Priority Claim. The Debtors' claims and noticing agent is directed to implement the terms of this section and reflect such Allowed Priority Claim of the Settling Class on the claims register.

**c.      Waiver of Remaining Claims:**

22.     The Settling Class waives any right to and shall be barred from asserting any other or further claims against the Debtors' estates on account of any and/or all claims asserted or that

---

[8] Any capitalized term not defined herein will have the meaning assigned to it in the Settlement Agreement.

17398597

could have been asserted in the Litigation arising out of the same facts, transactions, occurrences, or subject matter that gave rise to the Litigation, including, for the avoidance of doubt, any General Unsecured Claims.

### d.   Plan Support:

23.     Upon preliminary approval of the Settlement Agreement by the Bankruptcy Court pursuant to the Preliminary Settlement Order, the Settling Class agrees to support confirmation of the Debtors' Plan. The Settled Priority Claim shall be deemed voted to approve the Plan and all objections and opt-outs to the Plan previously filed or submitted by or on behalf of any member of the Settling Class shall be deemed withdrawn. The provisions of this section shall survive any failure to finally approve this Agreement and/or reversal on appeal.

### e.   Mutual Releases:

24.     The Settlement Agreement provides for broad Litigation Releases and Insurance Releases as fully described in the Settlement Agreement (collectively, the "Releases"). Such provisions contain releases of any claims that are related to the Litigation, including any and all claims asserted or that could have been asserted in the Litigation arising out of the same facts, transactions, occurrences or subject matter that gave rise to the Litigation.

### f.   Dismissal with Prejudice

25.     Upon the Effective Date, the Hanlon Adversary, the Debtors' Adversary, and the Smith Adversary shall be dismissed with prejudice, with each Party to bear its own fees, costs, and expenses. Within five (5) business days of the Effective Date, the HHA Plaintiffs shall cause the Digirolamo Case to be dismissed with prejudice, with each Party to bear its own fees, costs, and expenses.

17398597

g.     **No Further Claims or Additional Consideration:**

26.     The Insurer Settlement Payment, the Settled Priority Claim, the Releases, and the dismissals of the Litigation provided for in the Settlement Agreement shall be the full consideration for resolution of the Litigation. No further consideration, payments, or claims shall be sought or filed, with the Court or in any other forum, for all claims asserted or that could have been asserted in the Litigation arising out of the same facts, transactions, occurrences or subject matter that gave rise to the Litigation.

## BASIS FOR RELIEF REQUESTED

27.     In settling a class action within a bankruptcy case, courts must find that the settlement meets the requirements of Federal Rule 23 and Bankruptcy Rule 9019. *In re Motors Liquidation Co.*, 591 B.R. 501, 527 (Bankr. S.D.N.Y. 2018) ("[A] court must apply both [Federal Rule 23(e) and Bankruptcy Rule 9019] before settling a class claim."). Settlements approved under Bankruptcy Rule 9019 must be fair, reasonable, and in best interest of the estate. *See In re Age Ref. Inc.*, 801 F.3d 530, 540 (5th Cir. 2015). Federal Rule 23(e)(2) requires settlements to be fair, reasonable, and adequate.  Federal Rule 23(e) also requires that the class members who will be bound by the settlement's terms must be notified and given an opportunity to object or otherwise react to the proposed settlement. Fed. R. Civ. P. 23(e). It has become customary for courts to first conduct a preliminary fairness review. *See* Newberg on Class Actions § 13:10 (5th ed.). Here, approval of the Settlement is warranted for the reasons set forth below.

A.     **The Settlement Meets the Legal Standard Under Federal Rule 23(e).**

28.     Under Rule 23(e), a class action "may be settled, voluntarily dismissed, or compromised only with the court's approval" *In re Chesapeake Energy Corporation*, 567 F.Supp.3d 754, 767 (Bankr. S.D. Tex. 2021). A proposed settlement "will be preliminarily

17398597

approved unless there are obvious defects in the notice or other technical flaws, or the settlement

is outside the range of reasonableness or appears to be the product of collusion, rather than arms-

length negotiation." 2 McLaughlin on Class Actions § 6:7 (15th ed. 2015). The general standard

for final approval of a proposed settlement of a class action under Federal Rule 23(e)(2) remains

whether it is "fair, reasonable and adequate." To make that determination, Federal Rule 23(e)(2)

provides the following factors:

> (2) Approval of the Proposal. If the proposal would bind class members,
> the court may approve it only after a hearing and only on finding
> that it is fair, reasonable, and adequate after considering whether:
>
> (A)    the class representatives and class counsel have adequately
> represented the class;
>
> (B)    the proposal was negotiated at arm's length;
>
> (C)    the relief provided for the class is adequate, taking into
> account:
>
> > (i)    the costs, risks, and delay of trial and appeal;
> >
> > (ii)    the effectiveness of any proposed method of
> > distributing relief to the class, including the method
> > of processing class member claims;
> >
> > (iii)    the terms of any proposed award of attorney's fees,
> > including timing of payment; and
> >
> > (iv)    any agreement required to be identified under Rule
> > 23(e)(3); and
>
> (D)    the proposal treats class members equitably relative to each
> other.

Fed. R. Civ. P. 23(e)(2).

29.    Common-law criteria preceded the Federal Rule 23 factors. In *Reed v. General*

*Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983), the Fifth Circuit laid out six factors for courts to

consider in determining the fairness, reasonableness, and adequacy of a proposed class settlement:

(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of the plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members. *See Union Asset Mgmt. Holding A.G. v. Dell, Inc*., 669 F.3d 632, 639 n.11 (5th Cir. 2012) (*quoting Reed*, 703 F.2d at 172).

30.     "Because the Rule 23 and case-law factors overlap, courts in this circuit often combine them in analyzing class settlements" *Odonnell v. Harris County*, No. H-16-1414, 2019 U.S. Dist. LEXIS 151159, at *25 (S.D. Tex. Sep. 5, 2019) (citing *Hays v. Eaton Grp. Attorneys, LLC*, No. 17-88-JWD-RLB, 2019 Dist. LEXIS 17029, at *10-11 (M.D. La. Feb. 4, 2019); *Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*, No. H-17-3852, 2019 U.S. Dist. LEXIS 17652, at *8 (S.D. Tex. Jan. 30, 2019)); *see also* Fed. R. Civ. P. 23(e)(2) Committee Notes to 2018 amendments ("The goal of this amendment is not to displace any [circuit case law] factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.").

31.     "When considering factors, the court should keep in mind the strong presumption in favor of finding a settlement fair." *Purdie v. Ace Cash Express, Inc.*, No. 301CV1754L, 2003 U.S. Dist. LEXIS 22547, at *16 (N.D. Tex. Dec. 11, 2003); *see also In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014); *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico*, 910 F. Supp. 2d 891, 930-31 (E.D. La. 2012), *aff'd sub nom* ("Because the public interest strongly favors the voluntary settlement of class actions, there is a strong presumption in favor of finding the settlement fair, reasonable, and adequate."); *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 650 (N.D.

Tex. 2010) (There is a "strong presumption that an arms- length class action settlement is fair--especially when doing so will result in significant economies of judicial resources").

32.     Moreover, "(w)here, as here, the motion is for preliminary, and not final, approval, the standards are less stringent." *Hays*, 2019 U.S. Dist. LEXIS 17029, at *20–21 ("If the proposed settlement discloses no reason to doubt its fairness, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, does not grant excessive compensation to attorneys, and appears to fall within the range of possible approval, the court should grant preliminary approval.") (*citation omitted*).

33.     As explained below, the foregoing Federal Rule 23 and *Reed* factors weigh in favor of preliminary approval, as there are no grounds to doubt the fairness of the Settlement. Therefore, the proposed Settlement is fair, adequate, and reasonable under Federal Rule 23(e)(2)(B).

**1.   Class Representative and Class Counsel Have Adequately Represented the Class.**

34.     The Class Representative and Class Counsel have adequately represented the Class. The Class Representative has no conflicts of interest with other Class Members, and they and Class Counsel have vigorously prosecuted and continue to vigorously prosecute this case on behalf of the Class. Class Counsel are experienced in the successful litigation and settlement of class action litigation. *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1055 (S.D. Tex. 2012) (adequacy satisfied where class counsel had extensive experience in class-action litigation). Class Counsel conducted a thorough investigation of the facts both before and during the course of the litigation. The investigation allowed Class Counsel to better understand the key factual issues at the core of the litigation in negotiating the Settlement, *i.e.*, they had a "full understanding of the legal and factual issues surrounding this case." *Manchaca v. Chater*, 927 F. Supp. 962, 967 (E.D. Tex. 1996).

17398597

35.     Having completed an investigation and given the risks of no recovery at all against the Debtors or the Individual Defendants, Class Counsel, together with the Class Representative, have settled this litigation on a favorable basis to the Class without unduly prolonging it and without the expense and risk of a trial. Accordingly, the Class Representative and Class Counsel have adequately represented the Class, satisfying Rule 23(e)(2)(A).

### 2.   The Settlement Was the Result of Arms-length Negotiations and Without Fraud or Collusion.

36.     The Settlement should be approved under Rule 23(e)(2)(B) and the first *Reed* factor. As previously stated, before filing the Complaint, Class Counsel investigated the potential claims against the Debtors and Individual Defendants, interviewed the Class Representative about the responsibilities of being the named plaintiff, and gathered information about the terminations. Class Counsel's appreciation of the merits of this case prior to settlement allowed them to engage in vigorous, arms-length negotiations with Debtors, the Individual Defendants and the Insurer.

37.     The parties engaged in extensive arm's-length mediation overseen by an experienced mediator, Hon. Judge Stacey C.G. Jernigan. The mediation included the Class Representative, who made herself available by phone for the duration of the mediation.  Prior to mediation, the Debtors provided information to Class Counsel about relevant wage data for the Class Members so that the Parties could calculate the scope of potential damages. The Parties also exchanged mediation briefs to lay out the scope of issues in dispute. The Parties, with the mediator's assistance, agreed to resolve the Litigation and thereafter spent time negotiating the specific terms and language of the Settlement Agreement to ensure that it clearly expressed the intent of the Parties. "The Court may presume that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary." *Klein v. O'Neill, Inc.*, 705 F. Supp. 2d at 651

17398597

(quoting *Liger v. New Orleans Hornets NBA Ltd. P'ship*, Civ. A. No. 05-1969, 2009 U.S. Dist. LEXIS 857333 at *17 (E.D. La. Aug. 28, 2009)).

38.     Given the arm's-length negotiations that resulted in the proposed Settlement and that there is no evidence of fraud or collusion, the Settlement is fair, reasonable, and adequate under Federal Rule 23(e)(2)(B) and the second *Reed* factor. *Reed*, 703 F.2d at 172.

### 3.  The Settlement Is Favorable Given the Complexity, Expense, and Likely Duration of the Litigation.

39.     There exists "an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Assoc. for Disabled Am., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). "When the prospect of ongoing litigation threatens to impose high costs of time and money on the parties, the reasonableness of approving a mutually-agreeable settlement is strengthened." *Klein v. O'Neill, Inc.*, 705 F. Supp. 2d at 651 (citing *Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004)).

40.     The Settlement provides for an allowed priority claim of $3,979,400 to be paid in accordance with the Plan waterfall. The Settlement also provides for a confidential Insurer Settlement Amount. Class Counsel has calculated the Class's maximum priority damages, capped at the Bankruptcy Code's applicable priority amount of $15,150, is approximately $4.9 million for the 336 members of the Class. In contrast, the Debtors assert that they are administratively insolvent without ability to pay priority and administrative claims in full. The Individual Defendants and Insurer assert that they have no liability to any of the Class Members under the provisions of the NJ WARN Act.  The Settlement, including an immediate recovery from the Insurer Settlement Amount, represents approximately 50% of the Class damages.  By negotiating a Settlement at this stage of the litigation, the Parties have ensured that Class Members will receive

17398597

the substantial benefits described above while avoiding the risks and potential pitfalls of prolonged litigation. In this case, prolonged litigation presents real hurdles to collection for the Class because of Debtors' status as liquidating defendants. While confident in the strength of their claims, the Class Representative and Class Counsel are also pragmatic and recognize the risks inherent in litigation of a complex statute such as the WARN Act and its state law equivalents.

41.     The risks, expense, complexity, and likely duration of further litigation support preliminary approval of the Settlement. Should the case proceed in litigation, the Class Representative's claims could be dismissed or narrowed at summary judgment, at trial, or on a subsequent appeal. Further, the ability to collect upon any successful claims against the Debtors is doubtful without this Settlement. The Class Representative recognizes each risk, by itself, could impede the successful prosecution of her claims at trial and in an eventual appeal—which would result in zero recovery for the Class. And even if they prevailed at trial, any recovery could be delayed for years by an appeal. It is also possible that any non-negotiated outcome might never be recovered by the Class due to collectability issues.

42.     By contrast, the Settlement provides immediate and substantial benefits to hundreds of Class Members. This case is settling in its relatively early stages, prior to substantial discovery and conclusion of dispositive motion practice. If the Settlement is not approved, the Parties will likely need to litigate through further dispositive motions, among other things. That process would likely take years to resolve and involve expensive discovery. Yet there is no guarantee lengthy litigation and expensive discovery would lead to greater benefits for Class Members. Instead, there would be multiple inflection points at which the Class's claims could be narrowed or dismissed. Moreover, the Parties will bear the cost of this litigation if it continues. An early resolution, before both sides spend significant sums on litigation costs, is in the best interest of the Class. In short,

14

"settling now avoids the risks and burdens of potentially protracted litigation." *Ayers*, 358 F.3d at 369. Thus, the Settlement should be preliminarily approved under Federal Rule 23(e)(2)(C)(i) and the second *Reed* factor. *See* Fed. R. Civ. P. 23(e)(2)(C)(i); *Reed*, 703 F.2d at 172.

### 4. The State of Litigation and the Available Discovery.

43.     Under the third *Reed* factor, the key issue is whether "the parties and the district court possess ample information with which to evaluate the merits of the competing positions." *In re Heartland Payment Sys., Inc.*, 851 F. Supp. 2d at 1064 (quoting *Ayers*, 358 F.3d at 369). "A settlement can be approved under this factor even if the parties have not conducted much formal discovery." *Id.* (citations omitted). The "(s)ufficiency of information does not depend on the amount of formal discovery which has been taken because other sources of information may be available to show the settlement may be approved even when little or no formal discovery has been completed." *San Antonio Hispanic Police Officers' Org., Inc. v. City of San Antonio*, 188 F.R.D. 433, 459 (W.D. Tex. 1999). "The Court should consider all information which has been available to all parties." *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 292 (W.D. Tex. 2007).

44.     Here, prior to mediation, Debtors shared with Class Counsel wage and benefits data for each Class Member and documents purported to support its motion to dismiss and anticipated summary judgment motion. Drawing on their previous experience in similar WARN Act class action litigation, Class Counsel was able to determine the Settlement's adequacy in relation to the probability of success on the merits were this litigation to continue. Because the Parties "possess ample information with which to evaluate the merits of the competing positions," *Ayers*, 358 F.3d at 369, this factor also favors preliminary approval of the proposed Settlement. *See Reed*, 703 F.2d at 172.

**5. The Settlement Terms Represent a Highly Favorable Compromise that Appropriately Balances the Merits of the Class Representative's Claims and the Likelihood of Success with the Attendant Risks.**

45.     When evaluating a proposed class action settlement, "the most important factor is the [fourth *Reed* factor] probability of plaintiffs' success on the merits." *Parker v. Anderson*, 667 F .2d 1204, 1209 (5th Cir. 1982). "(T)he Court must compare the terms of the settlement with the rewards the class would have been likely to receive following a successful trial" *DeHoyos*, 240 F.R.D. at 287 (W.D. Tex. 2007) (citing *Reed*, 703 F.2d at 172 (5th Cir. 1983)). At the same time, a district court "must not try the case in the settlement hearings because the very purpose of the compromise is to avoid the delay and expense of such a trial." *Reed*, 703 F.2d at 172 (internal quotation marks and alteration omitted). This factor favors approval of the settlement when the class's likelihood of success on the merits is questionable. *See In re Corrugated Container Antitrust Litig.*, 659 F.2d 1322, 1326-27 (5th Cir. 1981) (affirming district court's finding that this factor favored approving the settlement when the class faced major obstacles in establishing proof of liability and damages); *DeHoyos*, 240 F.R.D. at 290 ("Because the laws of numerous states may be relevant to individual class member claims, plaintiffs would apparently face a further significant challenge to certifying the class outside the settlement context."). Here, the Class Representative's likelihood of success on the merits of her claims was not guaranteed. Even if the Class Representative proved her *prima facie* case on the WARN claim, Debtors and the Individual Defendants may have been able to meet their burden on a statutory defense, which could diminish or even excuse the alleged WARN violation. Similarly, the fifth *Reed* factor—the range of possible recovery—concerns "whether the range of possible recovery or the benefit of the settlement to plaintiffs outweighs the risks of proceeding through litigation." *DeHoyos*, 240 F.R.D. at 290-91. Both factors likewise weigh in favor of preliminary approval.

46.     First, the terms of the Settlement approximate the rewards the Class would have received following a successful trial. As described above, each Class Member will receive an allowed priority claim of 2/3 of the Bankruptcy Code's §507(a)(4) priority cap ($10,100). These amounts represent a highly favorable compromise that balances the merits of the Class Representative's claims, the likelihood of succeeding at trial and on appeal, and the attendant risks of continuing the litigation. Though the Class Representative and Class Counsel are confident that they ultimately would have been able to prove their claims, they also understand that the Class Representative's claims could be dismissed or narrowed at summary judgment, at trial, or on a subsequent appeal. The Class Representative also faces the risk that class certification could be unwound. Further, even if the Litigation was resolved in the Class Representative's favor, the amount that the Class Representative and the Class would have been awarded in damages, if any, is uncertain, as is collectability.

47.     The inherent uncertainty in litigation—even where, as here, the Class Representative is confident in their future success—presents a risk to the Class Representative of expending time and money on this case with the possibility of no recovery at all for the Class. Finally, even assuming success at trial and Debtors and/or the Individual Defendants' ability to pay a judgment in favor of the Class Representative, the case would likely continue with lengthy appeals. The proposed Settlement avoids these uncertainties and provides the Class with immediate, meaningful, and certain monetary relief. Under the circumstances, the Class Representative and Class Counsel appropriately determined that the benefits of the Settlement outweigh the risks of continued litigation.

17398597

48.    Accordingly, the Settlement should be preliminarily approved under Rule 23(e)(2)(C)(i) and the fourth and fifth Reed factors. *See* Fed. R. Civ. P. 23(e)(2)(C)(i); *Reed*, 703 F.2d at 172.

**6.    Class Counsel and the Class Representative Believe that the Settlement Is in the Best Interests of the Class.**

49.    Finally, the Class Representative and Class Counsel firmly believe that the Settlement is fair, reasonable, and adequate, and in the best interests of Class Members, which is an important consideration in any class settlement analysis. "The Fifth Circuit has repeatedly stated that the opinion of class counsel should be accorded great weight" when "evaluating a proposed settlement." *Klein*, 705 F. Supp. at 649 (citing *Pettway v. Am. Cast Iron Pipe Co.,* 576 F.2d 1157, 1216 (5th Cir. 1978)); *DeHoyos*, 240 F.R.D. at 292 ("The endorsement of class counsel is entitled to deference."). Class Counsel is highly experienced in class action litigation, including in the bankruptcy context and were well positioned to evaluate the strengths and weaknesses of continued litigation, as well as the reasonableness of the Settlement. They have collectively recovered millions of dollars for class members in other WARN Act class action litigation against bankrupt defendants. *See* Roupinian Decl., at ¶ 3. Accordingly, the sixth *Reed* factor supports approval of the proposed Settlement. *See Reed*, 703 F .2d at 1 72; *see also Stott v. Capital Fin. Servs., Inc.*, 277 F.R.D. 316, 346 (N.D. Tex. 2011) ("As class counsel tends to be the most familiar with the intricacies of a class action lawsuit and settlement, 'the trial court is entitled to rely upon the judgment of experienced counsel for the parties.'").

**7.    The Settlement Treats Class Members Equitably Relative to Each Other.**

50.    The final factor, Rule 23(e)(2)(D), looks at whether Class Members are treated equitably. *See* Fed. R. Civ. P. 23(e)(2)(D). Here, the Settlement provides for a notice plan that is designed to reach as many Class Members as possible and provides Class Members with direct

18

mail notice of the Settlement. It also informs Class Members of their right to object to the Settlement. Every Class Member will be entitled to his or her pro rata share of the Settlement proceeds based upon a common formula, as set forth in section 8 of the Settlement Agreement. Thus, the Settlement treats Settlement Class Members equitably relative to each other, satisfying Federal Rule 23(e)(2)(D). *See* Fed. R. Civ. P. 23(e)(2)(D).

**B.      The Settlement Meets the Legal Standard of Bankruptcy Rule 9019.**

51.      Bankruptcy Rule 9019(a) authorizes a bankruptcy court, after notice and a hearing, to approve a compromise or settlement proposed by the trustee or a debtor in possession that is "fair and equitable and in the best interest of the estate."  *In re Age Refining Inc.*, 801 F.3d 530, 540 (5th Cir. 2015); *In Re Royal Alice Properties, LLC*, 637 B.R. 465, 484 (Bankr. E.D. La. 2021) (same).  In determining whether a settlement is fair, equitable, and in the best interest of the estate, courts consider:  "(1) the probability of success in litigating the claim subject to settlement, with due consideration for the uncertainty in fact and law; (2) the complexity and likely duration of litigation and any attendant expense, inconvenience, and delay; and (3) all other factors bearing on the wisdom of the compromise." *In re Age Ref., Inc.*, 801 F.3d 530, 540 (5th Cir. 2015) (internal citation and quotation marks omitted). "Other factors" include: "(i) the best interests of the creditors, with proper deference to their reasonable views; and (ii) the extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion." *Id.*

52.      In determining the probability of success in litigation, the Court is not required to determine that the Settlement is the best possible compromise. *Id.* at 541 ("In evaluating a Rule 9019 settlement, a bankruptcy court need not 'conduct a mini-trial to determine the probable outcome of any claims waived in the settlement' . . . rather, the bankruptcy court must 'apprise (itself) of the relevant facts and law so that (it) can make an informed and intelligent decision[.]'"

17398597

(quoting *In re Cajun Electrical Power Co-op, Inc.*, 119 F.3d 349, 356 (5th Cir. 1997)). In this respect, it is unnecessary for a court to resolve factual disputes at issue before approving a proposed settlement. *Id.*

53.     The Settlement Agreement meets the 9019 standard. As explained above, the Settlement is fair to all of the Parties. In addition to being in the best interests of the Class Members, the Settlement is also in the best interests of the Debtors' estates and other creditors because it will curtail expensive and time-consuming litigation with an uncertain ultimate outcome. As explained above, the Parties carry some likelihood of success and loss in the Litigation. The Litigation involves complex legal and factual questions of both substantive federal WARN and NJ WARN with much legal and factual uncertainty and the possibility of lengthy appeals. The Debtors, Individual Defendants, and Insurer engaged in extensive and robust arm's-length negotiations with the Class Representative and Class Counsel and determined that the Settlement would provide the most efficient and cost-effective resolution of the Litigation. Accordingly, the Settlement is within the "range of reasonableness" as required by Bankruptcy Rule 9019. Because the Settlement satisfies all the applicable requirements of procedural and substantive fairness, it satisfies the requirements of Bankruptcy Rule 9019.

**C.      The Court Should Approve the Proposed Notice.**

54.     Pursuant to Federal Rule 23(e), this Court must direct notice in a reasonable manner to all class members who would be bound by the proposed Settlement. Fed. R. Civ. P. 23(e)(l). Notice of a proposed settlement to class members must be the "best notice practicable," which means "individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). *See, Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Pursuant to the terms of the Settlement Agreement, Class Counsel shall be responsible for the preparation and

20

mailing of the Class Notice through the Fund Administrator, the cost of which shall be payable from the Class Distribution Payment. The Fund Administrator's address will be used as the return address for the Class Notice so that any returned Class Notices will be returned to the Fund Administrator. Class Counsel shall ensure the mailing of the Class Notice by first class mail to the Class Members no later than fifteen (15) days after entry of the Preliminary Settlement Order by the Bankruptcy Court. In the event a Class Notice is returned as undeliverable, the Fund Administrator shall mail the Class Notice to the corrected address of the intended Class Member recipient as may be determined by the Fund Administrator or Class Counsel through a search of a national database or as may otherwise be obtained by the Parties.

55.     A Class Member may object to this Settlement by sending timely written notice of such objection to Class Counsel and counsel to the Debtors and filing such objection with the Bankruptcy Court. Any such objections shall state: (i) the objector's full name, mailing address, and telephone number, (ii) if applicable, the full name, mailing address, and telephone number of the objector's attorney, and (iii) all reasons for objecting to the Settlement and any supporting papers, materials, or briefs. Any such objections must be filed with the Bankruptcy Court by the objection deadline established by the Bankruptcy Court in its Preliminary Settlement Order.

56.     As to the contents of the proposed Notice, the Notice shall contain the following information:

       (i)      The Settlement shall become effective only if it is finally approved by the Bankruptcy Court under Rule 23;

      (ii)     Disclose the terms of the Settlement Agreement, including the confidential Insurer Settlement Amount;

    (iii)     Every Class Member has the right to object to the Settlement in accordance with Paragraph 55, above;

21

(iv)   Clearly set forth the Release provisions contained in the Settlement Agreement; and

(v)   Clearly set forth information regarding the request for the service payment to the Class Representative, and the request for payment of Class Counsel's fees and expenses.

57.   The proposed Notice shall provide in clear, plain language the procedure for objecting to the Settlement and for appearing at the Fairness Hearing. The proposed Notice complies with Federal Rule 23 and due process because, among other things, it informs Class Members directly of the nature of the action and the issues in contention, the essential terms of the Settlement, the binding effect of the Settlement, the process for objecting to the Settlement, including that Class Members may make an appearance through their own counsel. The Class Notice provides information regarding the request for the service payment to the Class Representative, and the request for payment of Class Counsel's fees and expenses. Fed. R. Civ. P. 23(c)(2)(B). In sum, Class Counsel proposes a notice process that best ensures that all Class Members will be informed of the pending Settlement and, if it is approved, will receive their Allowed Priority Claim and their pro rata distribution of the Insurer Settlement Payment.

**D.**   **The Court Should Set a Fairness Hearing and Finally Approve the Settlement at the Fairness Hearing.**

58.   At the fairness hearing to consider final approval of the Settlement Agreement (the "Fairness Hearing"), the Court should approve the Settlement Agreement on a final basis. Federal Rule 23(e) provides that "(t)he claims, issues, or defenses of a putative class may be settled, voluntarily dismissed or compromised only with the court's approval." *Id*. Final approval of a settlement pursuant to Federal Rule 23(e) turns on whether the settlement is "fair, reasonable and adequate." Fed. R. Civ. P. 23(e)(2); *In re Cendant Corp. Litig.*, 264 F.3d 201, 231 (3d Cir. 2001).

59.    The Settlement Agreement should be approved because: (i) further litigation will be complicated, protracted and expensive, (ii) the Class Representative supports the Settlement Agreement and Class Counsel believe that the bulk of the other Class Members will have a favorable reaction to the Settlement Agreement and will not object to it, (iii) the Settlement Agreement was reached after the essential facts had been thoroughly investigated by Class Counsel and the Parties had shared their respective views of the case during subsequent settlement negotiations and mediation, (iv) the risk that the Class Representative would be unable to establish liability was significant because of the potential defenses that could be asserted by the Debtors and Individual Defendants if litigation had continued, and (v) when considered in light of the best possible recovery and the attendant risks, the Settlement falls well within the range of reasonableness. The Settlement provides for an allowed priority claim of $3,979,400 to be paid in accordance with the Plan waterfall. The Settlement also provides for a confidential Insurer Settlement Amount. The Settlement, including an immediate recovery from the Insurer Settlement Amount, represents approximately 50% of the Class damages, which is a favorable result to the Class, particularly against the backdrop of liquidating Debtor defendants. Based on the foregoing, the Bankruptcy Court should finally approve the Settlement Agreement.

**E.    The Court Should Approve Class Counsel's Attorneys' Fees and Costs.**

60.    Class Counsel is entitled to be paid a fee out of the settlement fund created for the benefit of the Class. Fed. R. Civ. P. 23(h); *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478–79 (1980) (the Supreme Court has consistently recognized the common fund doctrine to permit attorneys who obtain a recovery for a class to be compensated from the benefits achieved because of their efforts); *Blum v. Stenson*, 465 U.S. 886, 900 n. 16 (1984) (calculation of fees based on the common fund doctrine is based on a percentage of the common fund recovered).  The Debtors and

Individual Defendants do not oppose this request and are neutral regarding the points discussed in this section.

61.     The Supreme Court and the Fifth Circuit have long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Barton v. Drummond Co.*, 636 F.2d 978, 982 (5th Cir. 1981). Courts recognize that awards of fair attorneys' fees from a common fund serve the "twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts." *Jenkins v. Trustmark Nat'l Bank*, 300 F.R.D. 291, 306 (S.D. Miss. 2014) (citation omitted).

62.     Fees awarded to counsel from a common fund can be determined by applying either the percentage-of-the-fund method or the lodestar method. *See Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 644 (5th Cir. 2012) (district courts have "the flexibility to choose between the percentage and lodestar methods in common fund cases"). Under either method, the fee requested here would be fair and reasonable.

## 1. The Requested Attorneys' Fees Are Reasonable Applying the Percentage-of-the-Fund Method.

63.     The Supreme Court has endorsed the percentage method, stating that "under the 'common fund doctrine'. . . a reasonable fee is based on a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984). The Fifth Circuit has also approved of the percentage method, noting that it "brings certain advantages . . . because it allows for easy computation" and "aligns the interests of class counsel with those of the class members." *Dell*, 669 F.3d at 643 ("district courts in this Circuit regularly use the percentage method"); *see also Schwartz*

24

*v. TXU Corp.*, No. 3:02-CV-2243-K, 2005 U.S. Dist. LEXIS 27007, at *81–82 (N.D. Tex. Nov. 8, 2005) ("there is a strong consensus in favor of awarding attorneys' fees in common fund cases as a percentage of the recovery"). First, the requested fee is within the range of percentage fees awarded by district courts within the Fifth Circuit. *Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 972 (E.D. Tex. 2000) ("based on the opinions of other courts and the available studies of class action attorneys' fees awards . . . this Court concludes that attorneys' fees in the range from twenty-five percent (25%) to (33%) have been routinely awarded in class actions"). *See, e.g.*, *Singh v. 21Vianet Group Inc*., Case No. 2:14-cv-00894-JRG-RSP, slip op. at 2 (E.D. Tex. Dec. 6, 2018) (awarding fee of 33.3% of $9 million settlement); *The Erica P. John Fund, Inc. v. Halliburton* Co., No. 3:02-cv-1152- M, 2018 U.S. Dist. LEXIS, at *57 (N.D. Tex. Apr. 25, 2018) (awarding 33.3% of $100 million settlement); *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714 at 729 (E.D. La. 2008) ("It is not unusual for district courts in the Fifth Circuit to award percentages of approximately one third.").

64.     Class Counsel submits that the application of the following factors to the WARN Adversary Proceedings show that the agreed attorneys' fee of one third of the Class Distribution Payment, net of the Class Representative Service Payment and Class Counsel's expenses, including the cost of the Fund Administrator ("Class Counsel's Expenses"), should be approved for the following reasons:

> • As to the size of the Class and the recovery, the Class is approximately 336 members and each Class Member shall receive an Allowed Priority Claim (as defined in the Plan) of $10,100 for a total Allowed Settling Class Claim amount of $3,393,600. The Settlement, including an immediate recovery from the Insurer Settlement Amount, represents approximately 50% of the Class damages.

> • The Class Representative supports the Settlement and Class Counsel anticipates that few, if any, Class Members will object, and that those objections, if any, will not be substantial or merited.

• As shown by the favorable settlement of this matter achieved in the face of the difficult liability issues and bankruptcy procedural issues, Class Counsel provided legal services with considerable skill. The services were rendered with efficiency, considering the complexity of the issues and the difficulty of addressing the several potential defenses, some of which were raised in the motion to dismiss.

• The risk of non-payment at the outset was substantial as it was not known at that time whether there would be sufficient funds available to pay the putative Class's claims. In addition, the potential statutory defenses asserted by the Defendant created further risk of non-payment.

• As to fees in similar cases, Class Counsel submits that in WARN class actions Class Counsel has prosecuted, Class Counsel's requests for attorneys' fees—almost always for one-third the class recovery—have never been denied or reduced.

• As to the percentage likely to have been negotiated between private parties in a similar case, Class Counsel was retained by the Class Representative and other Class Members on a one third contingency basis, plus expenses. Class Counsel has been consistently retained in other WARN class actions on a one third contingency basis. Class Counsel submits that each of the factors to be weighed in considering a fee request plainly favor the award of one third of the Class Distribution Payment, net of the Class Representative Service Payment and Class Counsel's Expenses.

65.     Class Counsel submits that the fees of one third of the Class Distribution Payment, net of the Class Representative Service Payment and Class Counsel's Expenses, should be approved under the multi-factor test applicable in this Circuit to fee awards from common fund recoveries.

66.     As to fees in similar cases, Class Counsel has consistently been awarded fees of one third of the class recovery in WARN Act cases by bankruptcy and district courts across the country, including the following bankruptcy courts: (*See*, Roupinian Decl., at ¶ 8, listing cases). Indeed, in all of Class Counsel's more than 100 WARN class action settlements, it has not been awarded less than its requested fee. *Id.*

67.    In addition to an attorney fee of one third of the Distribution Payment, Class Counsel is seeking reimbursement for out-of-pocket expenses incurred in the litigation. The percentage fee requested here is reasonable and should be approved.

**2.    The Requested Attorneys' Fees Are Reasonable Under the Lodestar Method.**

68.    In *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 642–43 (5th Cir. 2012), the Fifth Circuit clarified its previous decision in *In re: High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220 (5th Cir. 2008), and held that the lodestar method is not required in assessing attorneys' fees in class action suits with a common settlement fund. Rather, the *Dell* court "endorse(d) the district court's . . . use of the percentage method" when calculating attorneys' fees in common fund class action cases. *Id.* at 644. When using the "percentage method[,] . . . the court awards fees as a reasonable percentage of the common fund." *Id.* at 642. "[D]istrict courts in [the Fifth] Circuit regularly use the percentage method," which "allows for easy computation[,] . . . aligns the interests of class counsel with those of the class members" and "reduces incentives to protract litigation." *Id.* at 643; *see also Jenkins v. Trustmark Nat'l Bank*, 300 F.R.D. 291, 311 (S.D. Miss. 2014) (adopting percentage approach and awarding one third of the four-million-dollar common fund); *In re Vioxx Prods. Liab. Litig.*, MDL No. 1657, 2013 U.S. Dist. LEXIS, at *14 (E.D. La. Sept. 18, 2013) (adopting the percentage-of-the-fund approach to calculate attorneys' fees in a common fund class action case).

69.    While not required, the Court may "cross-check" the proposed fee for reasonableness by considering counsel's lodestar and the other considerations set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974) ("Johnson"). In the present case, the lodestar method—whether used directly or as a "cross-check" on the percentage method—strongly supports the reasonableness of the requested fee. Under the lodestar method,

17398597

"the court computes fees by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate and, in its discretion, applying an upward or downward multiplier." *Dell*, 669 F.3d at 642–43. For the Court's reference, Class Counsel's lodestar as of August 21, 2025, is $881,158.50, representing 961.9 hours of billable time.

70.    Class Counsel respectfully submits that a lodestar crosscheck at this junction would be inconclusive because additional hours will be expended to obtain preliminary and final approval and administer the proposed Settlement. *In re Catfish Antitrust Litigation*, 939 F. Supp. 493, 501 (N.D. Miss. 1996) (Under a percentage fee approach, not all the lodestar factors are necessarily relevant) (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)). Additional attorney time is likely to be required for the hearings on the Motion and the Final Fairness Hearing, to secure preliminary and final approval of the Settlement, to oversee the mailing of the Notice, to secure corrected addresses for Class Members, to review and verify the accuracy of the pro rata calculations, and to answer questions of Class Members about the Settlement.

71.    With the additional hours of attorney time expected, the proposed attorneys' fees represent a multiplier of approximately 1.6. In the Fifth Circuit, multipliers in this range are not uncommon in class action settlements. *Plunkett v. Firstkey Homes LLC*, No. 3:23-cv-2684-L-BN, 2024 U.S. Dist. LEXIS 224946, at *27 (N.D. Tex. Nov. 21, 2024) ("Multipliers ranging from one to four frequently are awarded in common fund cases when the lodestar method is applied [, but] the multiplier can far exceed that number"), *citing In re Combustion, Inc.*, 968 F. Supp. 1116, 1133 (W.D. La. 1997). *See also, DiGiacomo v. Plains All Am. Pipeline*, No. CIV.A.H-99-4137, 2001 U.S. Dist. LEXIS 25532, 2001 WL 34633373 (S.D. Tex. Dec. 19, 2001) (approving a multiplier of 5.3 in common fund settlement) ; *Kevin v. O'Neil, Inc.*, 705 F.Supp. 2d 632, 680 (N.D. Tex. 2010) (approving multiplier of 2.5 in common fund settlement); *Garza v. Sporting Goods Props.,*

*Inc.*, 1996 U.S. Dist. LEXIS 2009, SA-93-CA-1082, 1996 WL 56247, at *33 (W.D. Tex. 1996) ("The range of multipliers in large and complicated class actions have ranged from 2.26 to 4.5."); *Turner v. Murphy Oil USA, Inc.*, 472 F.Supp.2d 830, 869 (E.D. La. 2007) ("[T]he Court finds that a lodestar multiplier range of 2.5 to 3.5 would be appropriate and reasonable in this case."). Here, notwithstanding that the final lodestar amount is inconclusive, the requested multiplier of 1.6 is reasonable and within the applicable standards.

### 3. The Factors Considered by Fifth Circuit Courts Favor Approval of the Requested Attorneys' Fees

72.     The Fifth Circuit has set forth the following criteria for courts to consider when reviewing a request for attorneys' fees in a common fund case: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Johnson*, 488 F.2d at 717–19; *see also Union Asset Mngt v. Dell*, *Inc.*, 669 F.3d 632, 642 n.25 (5th Cir. 2012) (reiterating *Johnson* factors). Additionally, Courts may consider additional factors, such as (1) public policy considerations, (2) plaintiff's approval of the fee, and (3) the reaction of the class. Consideration of all of these factors supports the conclusion that the fee requested here is fair and reasonable.

17398597

### a.      The Time and Labor Required.

73.      The time and effort expended by Class Representative and Class Counsel in prosecuting the WARN Adversary Proceeding and achieving the Settlement show that the requested fee is justified.

### b.      The Novelty and Difficulty of the Issues.

74.      The work necessary to resolve the Litigation was substantial, involving federal WARN law, New Jersey law, and bankruptcy-related laws and procedures. Moreover, the priority level treatment under the Bankruptcy Code of any awarded WARN damages is, itself, a complex matter. As a gating issue, fierce opposition has been mounted against an employee's right to even file a WARN lawsuit in bankruptcy. This issue has been the subject of appeals in Class Counsel's practice, including the U.S. Circuit Court of Appeals for the Fifth Circuit. *Teta v. TWL Corp., et al.,* 712 F.3d 886 (5th Cir. 2013). WARN cases in bankruptcy proceedings thus present a formidable thicket of confounding legal and factual issues that must be navigated, given the complexity of the nexus of laws. Additionally, class certification in this case was opposed by Debtors on the basis that Class Representative could not satisfy the Rule 23 factors. Each of these issues presented complex and fact-intensive inquiries for the Parties to resolve, or to litigate in motion practice.

### c.      The Skill Required to Perform the Legal Services Properly, and the Experience, Reputation and Ability of the Attorneys.

75.      Class Counsel, in advocating on behalf of the Class Representative and Class, had to draw on their knowledge and skills obtained over 30 years prosecuting WARN claims in bankruptcy and district courts. *See* Roupinian Decl., at ¶ 3. None have obtained more reported court decisions than Class Counsel. The skilled advocacy Class Counsel utilized in resolving this complex case—with a minimum of discovery-heavy litigation—is, therefore, uncommon. It

30

provided value by safeguarding due process and assets for creditors. Class Counsel submit that their skill and experience conferred efficiencies and benefits to the Class, and to the bankruptcy estates and stakeholders.

**d.    The Customary Fee and Awards in Similar Cases**.

76.    Class Counsel has handled hundreds of WARN class actions, all of which have been on a one third contingency basis. No court has denied Class Counsel's request for a one third fee of the common fund in the cases that have been resolved by settlement. Moreover, as explained above, a fee of one third of the common fund is consistent with what other courts, including those in the Fifth Circuit, have approved for class settlements and in other WARN class actions. *See* Roupinian Decl., at ¶ 8 (listing cases).

**e.    The Contingent Nature of the Fee**.

77.    By accepting this case on a contingency basis, Class Counsel took on the risk of non-payment, a risk which was very real. Defendant is a liquidating entity, a fact that increases exponentially the risk of non-payment. The fully contingent nature of the fee requested by Class Counsel and the substantial risks posed by the litigation are also important factors supporting the requested fee. Courts have consistently recognized that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees. *See Billitteri v. Sec. Am., Inc.*, 3:09-cv-01568-F, 2011 U.S. Dist. LEXIS 93907, at *39 (N.D. Tex. Aug. 4, 2011) (the contingent nature of counsel's fee was "particularly relevant considering the difficulty presented by the facts and legal questions in this case and the very real risk of obtaining no recovery at all").

**f.    The Amount Involved and the Results Achieved.**

78.    Another *Johnson* factor is the "overall degree of success achieved." *Roussel v. Brinker Int'l, Inc.*, No. H-05-3733, 2010 U.S. Dist. LEXIS 36577, at *25 (S.D. Tex. Jan. 13, 2010),

*aff'd*, 441 F. App'x. 222 (5th Cir. 2011). Here, the results were strong. The settlement will result in an Allowed Priority Claim of $3,979,400 to the Settling Class to be paid in accordance with the Plan waterfall. The Settlement also provides for a confidential Insurer Settlement Amount to be distributed on a pro rata basis to members of the Settling Class, which provides certainty and ends litigation. This is a significantly favorable outcome for the Settling Class, given that the Debtors are liquidating in bankruptcy.

        **g.**        **The Undesirability of the Case.**

79.     This action presents numerous novel legal issues, including Debtors' and Individuals assertions that the cases should be dismissed, that could render class certification moot, improper, prevailing on liability, or recovering monetary damages. For these reasons, the risks of litigation were real, and Class Counsel's willingness to take on this case weighs in favor of granting the request for attorneys' fees. *See, e.g.*, *Schwartz v. TXU*, 2005 U.S. Dist. LEXIS 27077, at *27 ("Class Action cases that carry with them elevated risks, such as the present litigation and that also require lengthy investigation through informal discovery, not to mention a possibility of no recovery, certainly speaks to the undesirability of a case."); *Billitteri*, 2009 U.S. Dist. LEXIS 93907, at *34–35 (where a case "raised particularly difficult issues," including the risk of "no recovery whatsoever," this factor supported an increase in the fee).

80.     While litigation outcomes are unknown in every litigation, and the risk of a zero outcome is always present, there is often greater risk in bankruptcy. . . Ironically, even if it would have had sufficient funds at the outset, the estates' expenditure of defense costs in the WARN Adversary Proceedings would have dissipated at least a portion of the assets. Bankruptcy WARN litigation also adds an array of "political" concerns not often found in district court litigation. In bankruptcy, where there are many creditors seeking the same limited funds, the non-defendant

opponents to the WARN claims are numerous. They are all parties in interest and have the right to object to any settlement prior to confirmation of the Plan. Here, Class Counsel had to know how to confront and navigate this additional variable. Finally, the Class Representative's ability to overcome these obstacles could have come to naught, had the estates proved to be asset-less. The reality is that the Debtors' estates have limited funds to pay creditors, including administrative and priority claimants, and the Debtors and Individual Defendants asserted defenses in their motion to dismiss and indicated forthcoming motion for summary judgment, which posed a risk of the Class Members receiving nothing. The harder the Class Representative sought to establish her meritorious claims, the greater it increased the risk of receiving nothing for the Class Members. In other words, either party could have prevailed in motion practice, at trial or on appeal, resulting in no relief for Class Members.

> **h.** **Other Factors Considered by Courts Further Support the Requested Fee as Fair and Reasonable.**

81.     Another indicator of quality is the clients' satisfaction with the outcome. Class Representative are satisfied with the quality of the legal services rendered by Class Counsel, and they support a fee award equal to one third of the common fund.

82.     Public policy also weighs in favor of granting Class Counsel's requested fees. As outlined above, but for the work of Class Counsel and their willingness to bear the entire risk of bringing this litigation to fruition, Class Members likely would receive nothing on their claims. The WARN Act is a remedial statute designed to protect the rights of employees. Fair compensation for attorneys who take on such litigation furthers the remedial purpose of such statutes. Moreover, awarding Class Counsel's requested percentage of the fund encourages prompt

and efficient resolution of class litigation such as this. *See Swedish Hospital Corp. v. Shalala*, 1 F.3d 1261, 1268 (D.C. Cir. 1993).

  **i.      Class Counsel's Expenses Were Reasonable and Necessary to Achieve the Result Acquired.**

83.      Class Counsel seeks reimbursement of their actual litigation expenses, in an amount. These expenses were incurred during the course of litigation and include the following: court filing fees, legal research, local counsel fees, travel for mediation, postage, transcript fees, Pacer and ECF charges. These charges were necessary for the competent litigation of this action and are properly recovered by Class Counsel. *The Erica P. John Fund, Inc*., 2018 U.S. Dist. LEXIS 69143, at *45 ("Expenses and administrative costs expended by class counsel are recoverable from a common fund in a class action settlement.") (*quoting Billitteri*, 2011 U.S. Dist. LEXIS 39307).

**F.      The Court Should Approve the Service Payment to the Class Representatives.**

84.      The Class Representative should be awarded a Service Payment for the work she undertook on behalf of the Class. *Slipchemko v. Brunel Energy, Inc.*, No. H–11–1465, 2015 U.S. Dist. LEXIS 8177, at *32 (S.D. Tex. Jan. 23, 2015) ("Courts commonly permit payments to class representatives above those received in settlement by class members generally.") (*citing In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F.Supp.2d 1040, 1089 (S.D.Tex.2012)) (quoting *Turner v. Murphy Oil USA, Inc.*, 472 F.Supp.2d 830, 870 (E.D.La.2007)); *see also Smith v. Tower Loan of Miss., Inc.*, 216 F.R.D. 338, 367–68 (S.D. Miss. 2003). Debtors and Individual Defendants do not oppose the requested service payment to the Class Representative and is neutral regarding the points discussed in this section.

85.      The Class Representative filed a federal lawsuit that is searchable on the internet and may become known to prospective employers when evaluating their applications for employment. She retained Class Counsel to commence this action shortly after being terminated

from her employment with the Debtors, at a point when her future was uncertain and employment prospects potentially dimmed by suing her former employer. The Class Representative has expended time and effort to assist with the preparation of pleadings, informal discovery, moving for class certification, a mediation, and communicating with former colleagues about the status of the litigation. But for her efforts, the work done in prosecuting this case would have come to naught. Accordingly, the Service Payment is appropriate and justified as part of the overall Settlement considering the value of their services to the Class in the face of considerable risks.

86.    Finally, the proposed amount of $15,000 to the Class Representative is consistent and on scale with amounts awarded in other WARN Act class actions. The following is a sampling of WARN cases where approved service payments to class representatives are commensurate with the amount requested here: *Stringham v. GDC Technics, LLC*, Adv. Proc. No. 21-05035-CAG (Bankr. W.D.Tex.) ($15,000 service award in $1.375 million settlement); *Federman, et al. v. ITT Educational Corp.*, Case No. 16-50296-JMC (Bankr. S.D. Ind.) ($25,000 service payments to each of three class representatives in $10 million settlement); *Conn v. Dewey & LeBoeuf Liquidation Trust*, Adv. Proc. No. 12-01672-MG (Bankr. S.D.N.Y.) ($15,000 service award in $4.5 million settlement); *Thomay, et al. v. Klausner Lumber One, LLC*, Case No. 20-50602 (KBO) ($20,000 service award in $1.4 million settlement), *Etzelberger v. FAH Holdings, Inc*., Case No. 13-13087-BLS (Bankr. D. Del.) ($20,000 service award in $1.8 million settlement); *Walker v. Product Quest Manufacturing, LLC, et al.*, No. 18-06028-LMJ (Bankr. M.D. N.C.) ($20,000 service payment in $2.65 million settlement). *See also* Roupinian Decl., at ¶ 12 (listing cases).

## CONCLUSION

WHEREFORE, the Parties respectfully request the Court enter the Preliminary Settlement Order, substantially in the form attached hereto: (i) preliminarily approving the Settlement as

memorialized in the Settlement Agreement, attached to the Preliminary Settlement Order as Exhibit 1, pursuant to Bankruptcy Rule 7023, (ii) approving the form and manner of notice of settlement, (iii) scheduling a Fairness Hearing to consider entry of a final order, substantially in the form attached hereto, approving the Settlement on a final basis, and (iv) granting related relief.

[*Signature Page to Follow*]

17398597

Dated: August 22, 2025

**HAWASH CICACK & GASTON, LLP**

/s/ Rene S. Roupinian
Walter J. Cicack
3401 Allen Parkway Suite 200
Houston, Texas 777019
Tel: (713) 658-9003

**RAISNER ROUPINIAN LLP**
Jack A. Raisner
René S. Roupinian
270 Madison Avenue, Suite 1801
New York, New York 10016
Telephone: (212) 221-1747
Facsimile: (212) 221-1747
Email: rsr@raisnerroupinian.com
Email: jar@raisnerroupinian.com

*Class Counsel*


/s/ Julie Salwen
**HARRISON, HARRISON & ASSOC., LTD.**
David Harrison, Esq.
dharrison@nynjemploymentlaw.com
Julie Salwen, Esq.
jsalwen@nynjemploymentlaw.com
110 State Highway 35, 2nd Floor
Red Bank, NJ 07701
Telephone: (888) 239-4410

*Counsel for the HHA Plaintiffs*

**PORTER HEDGES LLP**

/s/ Megan Young-John
Aaron J. Power (TX Bar No. 24058058)
Heather K. Hatfield (TX Bar No. 24050730)
M. Shane Johnson (TX Bar No. 24083263)
Megan Young-John (TX Bar No. 24088700)
1000 Main St., 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Facsimile: (713) 226-6248
apower@porterhedges.com
hhatfield@porterhedges.com
sjohnson@porterhedges.com
myoung-john@porterhedges.com

*Attorneys to the Debtors and the Debtors in Possession*

**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**

/s/ Brandon R. Sher
Brandon R. Sher, Esq.
Michael J. Westwood-Booth, Esq.
1735 Market Street, Suite 3000
Philadelphia, PA 19103
Tel: (215) 995-2840
Fax: (215) 995-2801

*Attorneys P.H.V. for Defendants Party City Holdco, Inc. and its related Debtors and the Individual Defendants*

17398597

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 22, 2025, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Megan Young-John*
Megan Young-John

17398597